BRYAN W. PEASE (SB# 239139)
302 Washington St. #404
San Diego, CA 92103
ph: (619) 723-0369
fax: (619) 923-1001
email: bryanpease@bryanpease.com

Attorney for Plaintiffs

UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANIMAL PROTECTION AND RESCUE LEAGUE, a nonprofit corporation, and DOROTA VALLI, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>THE STATE OF CALIFORNIA, THE CITY OF SAN DIEGO DEPARTMENT OF PARKS AND RECREATION, MAYOR JERRY SANDERS, AND DOES 1 TO 100,<br><br>Defendants. | Civil Action, Case No. 07 CV 2320 JM AJB<br><br>MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION<br><br>Date:  January 25, 2007<br>Time:  1:30pm<br>Courtroom:  16 |

**INTRODUCTION**

In 1931, the State of California enacted a Tidelands Grant deeding Children's Pool Beach ("CPB") to the City of San Diego in trust and enumerated the specific purposes it was to be used for. See Declaration of Bryan W. Pease ¶ 14. In 2005, a state court judge ruled that a permanent rope barrier placed by the City in 1999 to protect harbor seals was a breach of the City's obligations under the Tidelands Grant to keep CPB as a "public park, bathing pool for children,...and [use for] playground and recreational purposes." See Declaration of Bryan W.

1   MEMO OF P'S AND A'S IN SUPPORT OF
     MOTION FOR PRELIMINARY INJUNCTION
     CASE NO. 07 CV 2320 JM AJB

Pease ¶ 12. However, Congress passed the Marine Mammal Protection Act in 1972 ("MMPA"). 16 U.S.C. § 1361, et. seq. The state court order specifically states that it is not to be construed to violate state or federal law. In 1994, Congress amended the MMPA to expand the definition of "harassment" to include "any act of pursuit, torment or annoyance" that "has the potential to injure a marine mammal or marine mammal stock in the wild." 16 U.S.C. § 1362(18). Acts are also prohibited that have "the potential to disturb a marine mammal or marine mammal stock in the wild by causing a disruption of behavioral patterns, including, but not limited to, migration, breathing, nursing, breeding, feeding, or sheltering." Id.

The state court's interpretation of the statutory trust was upheld by the Court of Appeal and is now binding as a matter of state law. However, to the extent that the Tidelands Grant requires CPB to be open to swimming during pupping season in direct contradiction of the MMPA, it should be struck down as violating federal law. In a letter dated November 30, 2007, NOAA[1] Special Agent in Charge Don Masters wrote to the San Diego City Attorney urging that CPB be closed during pupping season, from Dec. 15 through May 30. See Declaration of Bryan W. Pease ¶ 3. During the pendency of this action, plaintiffs will suffer great and irreparable injury if CPB is not closed during pupping season and defendants enjoined from removing seals and the sand on which they rest, give birth and nurse their young.

## ARGUMENT

**I. Plaintiffs have standing under the "zone of interests" test**

If a person "comes within the 'zone of interests' of the MMPA, it has standing to seek an injunction requiring that a permit be obtained, or, in the absence of a permit, forbidding an activity that constitutes a 'taking' of a marine mammal." City of Sausalito v. O'Neill, 386 F.3d 1186, 1202. "Implementation of the MMPA would be severely hampered if affected parties with

---

[1] The National Oceanic and Atmospheric Association, previously the National Marine Fisheries Service, will be referred to as "NOAA" throughout this brief.

conservationist, aesthetic, recreational, or economic interests in marine mammal protection were not allowed to bring suits challenging failures to apply for required permits." Id. at 1203.

Plaintiff VALLI is a full time employee of APRL and is in charge of the organization's harbor seal protection program. See Verified Complaint ¶ 8. Plaintiff VALLI spends approximately 35 to 60 hours per week at Children's Pool Beach ("CPB"), 850 Coast Blvd., San Diego, California observing the harbor seals there, educating the public about them, and working on APRL's seal protection campaign. See Verified Complaint ¶ 9. Plaintiff APRL has spent over $40,000 to date in fiscal year 2007 hiring staff to watch over the seals and educate the public about their need for space. The group maintains an active day and night presence at the beach with staff and volunteers. See Verified Complaint ¶ 10. Plaintiff VALLI and members of plaintiff APRL derive aesthetic pleasure from watching the seals at CPB. See Verified Complaint ¶ 11.

Under the "zone of interests" test articulated in City of Sausalito v. O'Neill, 386 F.3d 1186, plaintiffs have standing to seek an injunction forbidding an activity that constitutes a "taking" of a marine mammal without a permit. Because plaintiffs will suffer great and irreparable injury if the seals are injured or driven away during the pendency of this action, they are entitled to a preliminary injunction.

**II.   Plaintiffs meet the requirements for a preliminary injunction**

Caribbean Marine Servs. Co. v. Baldrige, 844 F.2d 668, 675 (9th Cir. 1988), explains the test for issuing a preliminary injunction when public interest is at stake:

> Our cases have emphasized, however, that when the public interest is involved, it must be a necessary factor in the district court's consideration of whether to grant preliminary injunctive relief. Thus, under the "traditional test" typically used in cases involving the public interest, the district court should consider (1) the likelihood that the moving party will prevail on the merits, (2) whether the balance of irreparable harm favors the plaintiff, and (3) whether the public interest favors the moving party. Northern Alaska Environmental Center v. Hodel, 803 F.2d 466, 471 (9th Cir. 1986). We have allowed the

district court some latitude in assessing the first two factors as it fashions appropriate relief. In some cases, we have stated that a plaintiff may meet its burden by demonstrating a combination of probable success on the merits and a possibility of irreparable injury. E.g., Los Angeles Memorial Coliseum Commission v. National Football League, 634 F.2d 1197, 1201 (9th Cir. 1980) (L.A. Coliseum). At other times, we have stated that where the balance of hardships tips decidedly toward the plaintiff, the district court need not require a robust showing of likelihood of success on the merits, and may grant preliminary injunctive relief if the plaintiff's moving papers raise "serious questions" on the merits. Id. at 1201, 1203 & n.9. This latter formulation is known as the "alternative test." Under either test, however, the district court must consider the public interest as a factor in balancing the hardships when the public interest may be affected. See id. at 1200; see also American Motorcyclist Association v. Watt, 714 F.2d 962, 967 (9th Cir. 1983) (AMA).

In the present case, plaintiffs have at the very least raised "serious questions" on the merits. The harm that will be suffered by plaintiffs absent a preliminary injunction will be grave and irreparable, due to the loss of aesthetic and recreational pleasure in watching seals, as well as the emotional harm that will be caused by seeing seals injured and harassed. Defendants will suffer minimal harm in being required to close the beach during pupping season as requested by NOAA. See, e.g., UFO Chuting of Hawaii Inc. v. Smith, 2007 U.S. App. LEXIS 27465, in which closing off an area to commercial activity for part of the year to accommodate humpback whales was not deemed to violate anyone's rights. The argument for at least putting up a guideline rope is even stronger, as it has been specifically requested by the City Council and NOAA, the agency charged with enforcing the MMPA.

**III.    Defendants should be enjoined from harassing seals without a permit**

In a September 16, 2005 meeting between city and NOAA officials, Jim Lecky, the NOAA National Director of Protected Resources stated that it was NOAA's official position that the City could "remove the seals and excavate the sand" without a permit under the Section

109(h) exception in the MMPA for "nuisance animals."  See Declaration of Bryan W. Pease ¶ 9. The legal citation for this section is 16 U.S.C. § 1379(h) and reads as follows:

> (h) Taking of marine mammals as part of official duties.
>
>   (1) Nothing in this title or title IV shall prevent a Federal, State, or local government official or employee or a person designated under section 112(c) [16 USCS § 1382(c)] from taking, in the course of his or her duties as an official, employee, or designee, a marine mammal in a humane manner (including euthanasia) if such taking is for--
>
>     (A) the protection or welfare of the mammal,
>
>     (B) the protection of the public health and welfare, or
>
>     (C) the nonlethal removal of nuisance animals.
>
>   (2) Nothing in this title shall prevent the Secretary or a person designated under section 112(c) [16 USCS § 112(c)] from importing a marine mammal into the United States if such importation is necessary to render medical treatment that is not otherwise available.
>
>   (3) In any case in which it is feasible to return to its natural habitat a marine mammal taken or imported under circumstances described in this subsection, steps to achieve that result shall be taken.

On September 26, 2005, Deputy City Attorney Shannon Thomas wrote a letter to Rodney McGinnis, the regional administrator for NOAA, which was then called the National Marine Fisheries Service, stating the City's intent to use this exception to remove the seals and dredge CPB.  See Declaration of Bryan W. Pease ¶ 11.  On October 17, 2005, Mr. McGinnis wrote a letter to April Penera in the City Manager's office, and copied Ms. Thomas, stating that use of this exception was fine with NOAA, and no permit would be needed.  See Declaration of Bryan W. Pease ¶ 12.  On November 30, 2007, a deputy city attorney stated that in light of the California Supreme Court denying review of the O'Sullivan decision, he had heard talk of

defendant PARKS AND REC imminently sending rangers to CPB to scare the seals away. See Verified Complaint ¶ 25.

A Lexis-Nexis search for all federal and state cases containing the terms "Marine Mammal Protection Act" AND "nuisance animal" brings up only the unpublished O'Sullivan decision. A search for "16 USCS § 1379" brings up 13 cases, with O'Sullivan being the only one that deals with subsection (h). Plaintiffs are aware of no other case in which the 16 USCS § 1379(h) exception for "the nonlethal removal of nuisance animals" has ever been used to destroy an entire seal rookery and to physically remove the beach on which they rest, give birth and nurse their young. See Declaration of Bryan W. Pease ¶ 15. Further, it is probable that defendant PARKS AND REC's stated intention would have a lethal result if carried out during pupping season, because miscarriages would occur and nursing pups would become separated from their mothers and starve. Plaintiffs are therefore entitled to a preliminary injunction to stop defendant PARKS AND REC from removing seals and excavating sand during the pendency of this action without a permit.

**IV.   CPB should be closed during pupping season under the MMPA**

The MMPA preempts the 1931 Tidelands Grant. "Federal law may preempt state law in three ways: (1) federal law may explicitly preempt state law in a given area; (2) federal law may implicitly preempt state law by dominating regulation in a given area; or (3) state law may actually conflict with federal law. Barber v. State of Hawaii, 42 F.3d 1185, 1189 (9th Cir. 1994)." Young v. Coloma-Agaran, 340 F.3d 1053, 1055. "Actual conflict, or 'conflict preemption,' occurs 'where it is impossible . . . to comply with both state and federal requirements, or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.' Freightliner Corp. v. Myrick, 514 U.S. 280, 287, 131 L. Ed. 2d 385, 115 S. Ct. 1483 (1995) (internal citation and quotation marks omitted); see also Service Eng'g Co. v. Emery, 100 F.3d 659, 661 (9th Cir. 1996)." Young v. Coloma-Agaran, 340 F.3d 1053, 1055-1056.

Dorota Valli, APRL's seal protection campaign coordinator, spends an average of 35-60 hours per week at CPB and has observed many harassment incidents. <u>See</u> Verified Complaint ¶ 9. When the rope has been up, it has prevented many MMPA violations because the majority of the public respects the rope and the seals. <u>See</u> Declaration of Dorota Valli ¶ 6. However, there are a few individuals intent on harassing the seals, and they began doing so in an organized and intense fashion the day after pupping season began. <u>See</u> Declaration of Dorota Valli ¶ 2-3. Finally, Don Masters, the NOAA Special Agent in Charge, has asked that CPB be closed during pupping season to avoid MMPA violations. To the extent that the Tidelands Grant as interpreted by the state court prohibits closing the beach during pupping season, it is in direct contradiction to the MMPA and should be struck down.

**V.    Plaintiffs are at the very least entitled to a writ of mandate requiring Parks and Rec to put up the pupping season rope as required by the City Council**

The court has supplemental jurisdiction over state law claims that form part of the same case or controversy as the federal claims raised. 28 U.S.C. § 1367. To obtain a writ of mandate, the petitioner must generally show a duty on the part of the respondent, Cal. Code Civ. Proc. § 1085(a), the petitioner's beneficial interest in compelling the performance of that duty, and the inadequacy of other legal remedies. Cal. Code Civ. Proc. § 1086.

The requirement concerning the nature of the petitioner's right is greatly relaxed, if not virtually abandoned, if the question involved is one of public interest. <u>Residents of Beverly Glen, Inc. v. City of Los Angeles</u> (1973) 34 Cal. App. 3d 117, 127. That is, the petitioner is not required to show any legal or special interest in the result when the question is one of public right and the object of the petition is to procure the enforcement of a public duty. <u>Common Cause v. Board of Supervisors</u> (1989) 49 Cal. 3d 432, 439; <u>Green v. Obledo</u> (1981) 29 Cal. 3d 126, 144; <u>Timmons v. McMahon</u> (1991) 235 Cal. App. 3d 512, 518 ("beneficial interest" requirement for mandate satisfied when public right is at stake and relator is citizen interested in having laws executed and duty in question enforced). Stated differently, if the respondent's duty is sharp and the public need weighty, mandate will be granted if petitioner is a citizen who is merely seeking

the enforcement of the law.  Marshall v. Pasadena Unified School District (2004) 119 Cal. App. 4th 1241, 1252 (contractor and taxpayer had standing to file petition challenging school district's failure to use competitive bidding procedure when petition sought to protect public fisc); McDonald v. Stockton Met. Transit Dist. (1973) 36 Cal. App. 3d 436, 440.  This exception remains viable despite United States Supreme Court precedent limiting a similar public interest exception.  California Homeless & Housing Coalition v. Anderson (1995) 31 Cal. App. 4th 450, 457-458.

A writ of mandate must be issued in all cases when there is not a plain, speedy, and adequate remedy in the ordinary course of law.  Code Civ. Proc. § 1086; Phelan v. Superior Court (1950) 35 Cal. 2d 363, 366; Vineyard Springs Estates, LLC v. Superior Court (2004) 120 Cal. App. 4th 633, 643.

On April 19, 2006, the San Diego City Council passed a resolution calling for an annual pupping season rope at CPB.  See Declaration of Bryan W. Pease ¶ 6.  Defendant PARKS AND REC has stalled implementing that resolution due to confusion over whether Judge Pate's order prohibits it.  However, the 1931 Tidelands Grant as interpreted by Judge Pate is only valid insofar as it does not violate federal law.  Defendant PARKS AND REC has a clear legal duty to follow the mandate of the City Council and install the pupping season rope.

**VI.    This court can order defendants to install the rope even if the state court has already ruled that it violates the Tidelands Grant, because the Tidelands Grant violates the MMPA**

Ordinarily, the *Rooker-Feldman* doctrine prohibits a federal court, other than the U.S. Supreme Court, from exercising appellate jurisdiction over a state court judgment.  Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 292.  However, "[w]hen there is parallel state and federal litigation, *Rooker-Feldman* is not triggered simply by the entry of judgment in state court."  Id.  "Disposition of the federal action, once the state-court adjudication is complete, would be governed by preclusion law."  Id. at 293.

Preclusion law falls into two categories: issue preclusion and claim preclusion. A party asserting issue preclusion must prove that the issue was raised, actually submitted for determination, and determined, and that contrary evidence on issue was not restricted. Schaefer/Karpf Productions v. CNA Ins. Companies (1998) 64 Cal. App. 4th 1306, 1314; Barker v. Hull (1987) 191 Cal. App. 3d 221, 226. For claim preclusion to apply, the prior action relied on must have been a final judgment on the merits, the present action must be on the same cause of action as the prior action, and there must be privity between the parties to the prior action and the present action. Busick v. Workmen's Comp. Appeals Bd. (1972) 7 Cal. 3d 967, 974.

Plaintiffs are not asking this court to revisit Judge Pate's ruling on how the 1931 Tidelands Grant should be interpreted. Rather, plaintiffs are challenging the Tidelands Grant itself as violating the MMPA. After the present motion is filed but before it will be heard, the City will be going before the new state court judge assigned to the O'Sullivan case to clarify whether a pupping season rope violates Judge Pate's order, as he is now retired. Even if the new judge rules that it does violate the original order, such a ruling will necessarily only be based on the application of the Tidelands Grant, because that is what the original order was based on. However, if the federal court in the case at bar strikes down all or part of the Tidelands Grant as violating the MMPA, any state court order prohibiting a pupping season rope based on the Tidelands Grant will become moot.

## CONCLUSION

As a matter of state law, Judge Pate's order is the only way the Tidelands Grant of 1931 can now be interpreted. To the extent that the Tidelands Grant requires CPB to be open to swimming during pupping season or does not allow a guideline rope barrier to be put up by the City as ordered by the City Council, it should be struck down as violating the MMPA. Plaintiffs are entitled to a preliminary injunction to require defendants to obtain a permit from NOAA before violating the MMPA by removing seals and the sand on which they rest during the pendency of this action, and for an order directing defendants to close the beach during pupping season as requested by NOAA, or to at least install the rope as directed by the City Council.

9   MEMO OF P'S AND A'S IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION
CASE NO. 07 CV 2320 JM AJB

Dated: December 18, 2007

By: /s/ bryanwpease
Bryan W. Pease
Attorney for Plaintiffs