BRYAN W. PEASE (SB# 239139)
302 Washington St. #404
San Diego, CA 92103
ph: (619) 723-0369
fax: (619) 923-1001
email: bryanpease@bryanpease.com

Attorney for Plaintiffs

UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANIMAL PROTECTION AND RESCUE LEAGUE, a nonprofit corporation, and DOROTA VALLI, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>THE STATE OF CALIFORNIA, THE CITY OF SAN DIEGO DEPARTMENT OF PARKS AND RECREATION, MAYOR JERRY SANDERS, AND DOES 1 TO 100,<br><br>Defendants. | Civil Action, Case No. 2007 CV 2320 JM AJB<br><br>DECLARATION OF BRYAN W. PEASE IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION<br><br>Date: January 25, 2007<br>Time: 1:30pm<br>Courtroom: 16 |

Pursuant to 28 U.S.C. § 1746, I, BRYAN W. PEASE, declare the following:

1.      I have personal knowledge of the facts contained herein and am competent to testify thereto.

2.      I am an attorney licensed to practice in the Southern District of California.

3.      Attached hereto as Exhibit A is a true and correct copy of the November 30, 2007 letter from NOAA Special Agent in Charge Donald Masters to the San Diego City Attorney's office asking that CPB be closed during pupping season, or at the very least for a rope to be put up to protect the pregnant and nursing seals.

4.      Attached hereto as Exhibit B is a true and correct copy of the January 24, 2007 Report to the Hearing Officer regarding the La Jolla Children's Pool Rope Barrier.

5.     Attached hereto as Exhibit C is a true and correct copy of the December 15, 2006 memorandum of law from the City Attorney to the Mayor and City Council regarding "Emergency Authorization to Replace the Rope Barrier at the Children's Pool and Implement City Council's December 5, 2006 Resolution."

6.     Attached hereto as Exhibit D is a true and correct copy of the April 19, 2006 City Council resolution to place a rope barrier at the La Jolla Children's Pool annually during harbor seal pupping season.

7.     Attached hereto as Exhibit E is a true and correct copy of the September 9, 2007 unpublished Court of Appeal decision in O'Sullivan v. City of San Diego.

8.     Attached hereto as Exhibit F is a true and correct copy of the November 15, 2006 Natural Resources and Culture Committee of the San Diego City Council's actions, Item 3 of which is to place the pupping season rope up December 15 rather than January 1, and take it down May 15 rather than May 1.

9.     Attached hereto as Exhibit G is a true and correct copy of the September 16, 2005 meeting minutes from a meeting between city and NOAA officials, in which an official from NOAA stated that the City could authorize themselves, under section 109(h) of the MMPA, to remove the seals and excavate the sand at CPB.

10.    Attached hereto as Exhibit H is a true and correct copy of the September 26, 2005 letter from deputy city attorney Shannon Thomas to Rodney McGinnis, the regional administrator for NOAA, which was then the National Marine Fisheries Service, stating the City's intent to use this exception to remove the seals and dredge CPB.

11.    Attached hereto as Exhibit I is a true and correct copy of the October 17, 2005 letter from Mr. McGinnis to April Penera in the City Manager's office, stating that use of this exception was fine with NOAA, and no permit would be needed.

12.    Attached hereto as Exhibit J is a true and correct copy of the August 25, 2005 state trial court order in O'Sullivan v. City of San Diego.

13.    Attached hereto as Exhibit K is a true and correct copy of a diagram showing defendants' site plan depicting the area of sand that would be removed from CPB.

14.     Attached as Exhibit L is a true and correct copy of the 1931 Tidelands Grant conveying CPB from the State of California to the City of San Diego in trust.

15.     On December 18, 2007, I performed a Lexis-Nexis search for all federal and state cases containing the terms "Marine Mammal Protection Act" AND "nuisance animal." The only case that came up was the unpublished O'Sullivan decision. I then searched for all federal and state cases containing "16 USCS § 1379," OR "16 U.S.C. 1379," which brought up 13 cases. O'Sullivan was the only one dealing with subsection (h). Plaintiffs are aware of no other case in which the 16 USCS § 1379(h) exception for "the nonlethal removal of nuisance animals" has ever been used to destroy an entire seal rookery and to physically remove the beach on which they rest, give birth and nurse their young.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on: December 19, 2007

By: /s/ bryanwpease
Bryan W. Pease

1

Table of Contents

2    **Exhibit A**: November 30, 2007 letter from NOAA Special Agent in Charge Donald Masters to

3    the San Diego City Attorney's office……………………………………....………...1

4    **Exhibit B**: January 24, 2007 Report to the Hearing Officer regarding the La Jolla Children's

5    Pool Rope Barrier…………………………………………………………………….3

6    **Exhibit C**: December 15, 2006 memorandum of law from the City Attorney to the Mayor and

7    City Council regarding "Emergency Authorization to Replace the Rope Barrier at the Children's

8    Pool and Implement City Council's December 5, 2006 Resolution."………..………..51

9    **Exhibit D**: April 19, 2006 City Council resolution to place a rope barrier at the La Jolla

10   Children's Pool annually during harbor seal pupping season………………….………60

11   **Exhibit E**: September 9, 2007 unpublished Court of Appeal decision in O'Sullivan v. City of

12   San Diego…………………………………………………………………………62

13   **Exhibit F**: November 15, 2006 Natural Resources and Culture Committee of the San Diego City

14   Council's actions…………………………………………………………………..117

15   **Exhibit G**: September 16, 2005 meeting minutes from a meeting between city and NOAA

16   officials……………………………………………………………………………120

17   **Exhibit H**: September 26, 2005 letter from deputy city attorney Shannon Thomas to Rodney

18   McGinnis, the regional administrator for NOAA………………………………………..124

19   **Exhibit I**: October 17, 2005 letter from Mr. McGinnis to April Penera in the City Manager's

20   office………………………………………………………………………………..126

21   **Exhibit J**: August 25, 2005 state trial court order in O'Sullivan v. City of San Diego…128

22   **Exhibit K**: diagram showing defendants' site plan depicting the area of sand that would be

23   removed from CPB……………………………………………………….…………159

24   **Exhibit L**: 1931 Tidelands Grant conveying CPB from the State of California to the City of San

25   Diego in trust…………………………………………………………………………160

26

28

Exhibit A



UNITED STATES DEPARTMENT OF COMMERCE
NATIONAL OCEANIC AND ATMOSPHERIC ADMINISTRATION
NOAA FISHERIES SERVICE
Office of Law Enforcement
501 W. Ocean Blvd., Suite 4300
Long Beach, CA 90802
November 30, 2007

San Diego City Attorney's Office
Nina M. Fain, Deputy City Attorney
1200 Third Ave, Suite 1100
San Diego, CA 92101

Dear Ms. Fain,

I am writing in regard to the marine mammals at La Jolla's Children's Pool and steps we can take to protect them and the people in the community. In the past few months, there have been numerous calls and other communications to NOAA's Office of Law Enforcement (OLE) regarding incidents of marine mammal harassment by the public at the Children's Pool Beach (CPB) in La Jolla, CA. As you know, under the Marine Mammal Protection Act (MMPA), 16 U.S.C. 1372 (a)(2)(A), *it is unlawful for any person or vessel or other conveyance to take any marine mammal in waters or on lands under the jurisdiction of the United States.* Harassment is listed under the definition of 'take.' Take means to harass, hunt, capture, collect, or kill, or to attempt to… any marine mammal.

Harassment (Level B) means any act of pursuit, torment, or annoyance which has the potential to disturb a marine mammal or marine mammal stock in the wild by causing disruption of behavioral patterns, including, but not limited to, migration, breathing, nursing, breeding, feeding, or sheltering but which does not have the potential to injure a marine mammal or marine mammal stock in the wild.

Joe Cordaro, NOAA Wildlife Biologist, advises that harbor seals haul out at CPB for breeding, nursing, molting, and resting. The first full-term pups are usually born in early-mid January. Pups wean from their mothers in approximately 4-7 weeks. The last pups of the season may not wean until the end of May.

The CPB receives numerous visitors each month which increases the potential for seal/human interaction. OLE has placed signs on the landings above the CPB, which warn the public to keep a safe distance from the hauled out harbor seals. While the guidelines are useful, they have not prevented actions that could be considered harassment from occurring at the beach, particularly during pupping season. OLE continues to receive HOTLINE calls reporting alleged marine mammal harassment at the CPB.

OLE is concerned that the public will continue to harass marine mammals and continue to be subject to citation under the MMPA at CPB. Therefore, we strongly recommend, that the City close the CPB starting December 15 through May 30 or, at a minimum, consider reinstating the CPB rope barrier that was once in place. Unfortunately, in the past the rope barrier did not deter the "determined" individual(s) from approaching the seals. The rope barrier will provide a clear message for those that have a sincere desire to respect the marine mammals present on the beach, and therefore will provide some level of heightened protection for the adults and newborn seals. The rope barrier will also aid in informing people when they are more likely to be found in violation of the MMPA and potentially cited.



We realize that this community be complicated by the recent result of the litigation. Nonetheless, NMFS remains concerned about the vulnerability of the seals at the rookery during the pupping season.

As in previous years, OLE appreciates your practice of implementing the rope barrier. The rope barrier has been a needed step in the right direction, but closing the beach would make a safer environment for the nursing seals. OLE appreciates and looks forward to a continued opportunity to work with you in assisting you achieving your goals as well as protecting the animals and citizens of our community.

Sincerely,

Donald W. Masters
Special Agent in Charge
NOAA Fisheries/OLE

cc:     April Penera, City Manager's Office
        Dale Jones, Director, Office of Law Enforcement
        Rod McInnis, Regional Administrator, SW Region
        Russ Strach, Assistant Regional Administrator for Protected Resources, SW Region

Exhibit B



THE CITY OF SAN DIEGO

# REPORT TO THE HEARING OFFICER

HEARING DATE:    January 24, 2007      REPORT NO. HO 07-023

ATTENTION:    Hearing Officer

SUBJECT:    LA JOLLA CHILDREN'S POOL ROPE BARRIER
**Project 1** – FOLLOW-UP TO EMERGENCY COASTAL
DEVELOPMENT PERMIT NO. 408292 - COASTAL DEVELOPMENT
PERMIT NO. 410971 AND SITE DEVELOPMENT PERMIT NO.
410975
**Project 2** - COASTAL DEVELOPMENT PERMIT NO. 250362 and SITE
DEVELOPMENT PERMIT NO. 250363
PTS PROJECT NUMBER: 119757

REFERENCE:    Emergency CDP No. 408292 (Attachment 5)

LOCATION:    Children's Pool, west of Coast Boulevard, near Jenner Street, La Jolla.

APPLICANT:    Park and Recreation Department, City of San Diego

SUMMARY

Requested Action –

1.    Should the Hearing Officer approve **Project 1** - a follow-up to Emergency Coastal
Development Permit No. 408292 - Coastal Development Permit No. 410971 and
Site Development Permit No. 410975 to erect a rope barrier, including support
posts, and support post foundations, at the La Jolla Children's Pool, during the
seal pupping season, **December 15th, 2006 through May 15th, 2007?**

2.    Should the Hearing Officer approve **Project 2** - Coastal Development Permit No.
250362 and Site Development Permit No. 250363 to **annually** erect a rope
barrier, including support posts, and support post foundations, at the La Jolla
Children's Pool?

Staff Recommendation -

1.    **Project 1** - APPROVE Coastal Development Permit No. 410971 and Site
      Development Permit No. 410975.

2.    **Project 2** - APPROVE Coastal Development Permit No. 250362 and Site
      Development Permit No. 250363.

Community Planning Group Recommendation – Due to the emergency nature of this
project, no recommendation was obtained from the La Jolla Community Planning
Association.

Environmental Review –

**Project 1** - This project is EXEMPT FROM THE CALIFORNIA ENVIRONMENTAL
QUALITY ACT (CEQA) pursuant to:  Section 15269 Emergency Projects (Attachment
13).

**Project 2** – This project is EXEMPT FROM THE CALIFORNIA ENVIRONMENTAL
QUALITY ACT (CEQA) pursuant to:  Section 15304 4 Minor Alterations to Land and
Section 15333 Small Habitat Restoration Projects (Attachment 14).

BACKGROUND

On December 5th, 2006, the San Diego City Council discussed a proposal to annually erect a rope
barrier at the La Jolla Children's Pool, from December 15th to May 15th. Following the
discussion, the City Council directed the Park and Recreation Department to immediately erect
the rope barrier, and to secure all required permits for the rope project as soon as possible. On
December 15th, 2006 the City Attorney's Office opined in a Memorandum of Law (Attachment
4) that an emergency existed at the La Jolla Children's Pool and that the emergency necessitated
the installation of a rope barrier.  The Development Services Department then approved an
emergency Coastal Development Permit to allow the emergency placement of a rope barrier at
the La Jolla Children's Pool (Attachment 5). The Park and Recreation Department erected the
rope barrier the following day, Saturday, December 16th, 2006. The site is in the LJPD-5 zone,
is immediately adjacent to Open Space and Park land use designations in the La Jolla Community
Plan (LJCP), is in the Coastal Zone (Appealable Area), the First Public Roadway and the La Jolla
Community Planning Area.

In the interest of efficiency and to avoid redundancy, this report covers two separate project items
located at the same site. **Project 1** is an application for a Coastal Development Permit and Site
Development Permit as a follow-up to Emergency Coastal Development Permit No. 408292 to
allow the installation of a temporary rope barrier at the La Jolla Children's Pool, during the seal
pupping season, **December 15th, 2006 through May 15th, 2007**. **Project 2** is an application for
a Coastal Development Permit and Site Development Permit to allow the **annual** installation of

the temporary rope barrier at the La Jolla Children's Pool, during the seal pupping season, December 15th through May 15th.

## DISCUSSION

### Project 1 - Follow up to Emergency Coastal Development Permit No. 408292

**Project 1**. Land Development Code (LDC) Section 126.0718 (Emergency Procedures for Coastal Development Permits) requires that any emergency development subsequently process a regular development permit. Due to its location in the Coastal Zone, LDC Section 126.0702 requires the project obtain a Coastal Development Permit. LDC Section 143.0110 requires that the rope barrier project obtain a Site Development Permit for Environmentally Sensitive Lands due to its proximity to the adjacent Coastal Beach and Coastal Bluff resources. The project includes the temporary installation of the rope barrier held in place by vertical post and their associated footings at the La Jolla Children's Pool, during the seal pupping season, **December 15th, 2006 through May 15th, 2007**. Postholes were hand dug and the removed sand was used to cover the footings following installation (Attachment 6).

Due to its emergency nature, the **Project 1** did not appear before the La Jolla Community Planning Association for an advisory vote. However, a combined notice for this hearing regarding both **Projects 1 and 2** was sent to the group, allowing it an opportunity to testify before the Hearing Officer at today's hearing.

Given the emergency nature of the project, only efforts deemed the minimum necessary to avert the emergency were employed. Postholes for the rope posts were dug by hand and at a minimum depth. Rope, and posts with foundations were hand carried to the project site.

### Project 2 – Coastal Development Permit and Site Development Permit for **Annual** Installation

**Project 2** is an application for a Coastal Development Permit and Site Development Permit for the **annual** placement of the rope barrier at the La Children's Pool, December 15th through May 15th. Due to its location in the Coastal Zone, LDC Section 126.0702 requires the project obtain a Coastal Development Permit. LDC Section 143.0110 requires that the rope barrier project obtain a Site Development Permit for Environmentally Sensitive Lands due to its proximity to the adjacent Coastal Beach and Coastal Bluff resources. The project includes the temporary installation of the rope barrier held in place by vertical post and their associated footings. Postholes would be hand dug and then the removed sand would be used to cover the footings following installation (Attachment 6).

Due to its emergency nature, the **Project 2** did not appear before the La Jolla Community Planning Association for an advisory vote. However, a combined notice for this hearing regarding both **Projects 1 and 2** was sent to the group, allowing it an opportunity to testify before the Hearing Officer at today's hearing.

The La Jolla Community Plan and Local Coastal Program Land Use Plan calls for maintaining recreation activities and public views at the Children's Pool. The area above the Children's Pool is also identified as a Viewshed area in the Plan. The public views to be protected have vantage points above the Children's Pool on the adjacent bluffs, and from Jenner Street to the northeast of the Children's Pool. The proposed rope would be placed on posts in the sand at a height not exceeding four feet, and the rope would not exceed one half-inch in diameter. Given the proposed rope barrier's height and diameter, the project would not block any public views as identified in the La Jolla Community Plan and Local Coastal Program Land Use Plan.

The Local Coastal Program also identifies beach access as an important community asset. While the proposed rope barrier would provide a buffer between humans and seals during the annual pupping season, the beach would remain open for public use and swimming would be allowed. Swimming may not be recommended due to bacteria levels possibly exceeding health standards, but the rope is not intended to prevent access to the sand beach or the ocean. In addition, existing vertical access (concrete stairs) would remain unchanged by the project.

The La Jolla Community Plan also emphasizes the importance of protecting the environmentally sensitive resources in the area. The Coastal Beach and the Coastal Bluff are environmentally sensitive resources at the Children's Pool, and permit conditions have been included in the draft Coastal Development Permit (Attachment 8) that would require any debris caused by construction to be removed from the site, and disposed of appropriately. All materials must be maintained and managed so they do not enter sensitive areas, including the adjacent coastal waters. In addition, at no time will the rope or support system contact the adjacent Coastal Bluff.

The purpose and intent of the rope barrier project is to create a buffer between humans who use the Children's Pool for recreational activities and the seals who haul out onto the sand during the annual pupping season. During installation the rope would require minimal disturbance to the sand beach and the adjacent coastal bluff would not be affected. Holes for the rope support system would be dug by hand, and the rope itself would be of minimal thickness. Environmentally Sensitive Resources in the area would not be negatively affected, recreational activities would be preserved and no public view would be blocked. Therefore, staff is recommending approval of the project.

ALTERNATIVES

1.   Approve Coastal Development Permit No. 410971 and Site Development Permit No. 410975, with modifications. **Project 1**

2.   Approve Coastal Development Permit No. 250362 and Site Development Permit No. 250363, with modifications. **Project 2**

3.   Deny Coastal Development Permit No. 250362 and Site Development Permit No. 250363, if the findings required to approve the project cannot be affirmed. **Project 2**

Respectfully submitted,

Morris E. Dye, Development Project Manager

Attachments:

1.   Aerial Photograph
2.   Community Plan Land Use Map
3.   Project Location Map
4.   City Attorney's Office Memorandum of Law
5.   Emergency Coastal Development Permit No. 408292 and Resolution No. 408292
6.   Project Photos
7.   Project Site Plan
8.   Draft Permit with Conditions, **Project 1**
9.   Draft Resolution with Findings, **Project 1**
10.  Draft Permit with Conditions, **Project 2**
11.  Draft Resolution with Findings, **Project 2**
12.  Ownership Disclosure Statement
13.  CEQA Exemption, **Project 1**
14.  CEQA Exemption, **Project 2**

E:ropebarrierhoreport.doc

ATTACHMENT 1



PACIFIC
OCEAN

Children's Pool

## AERIAL PHOTO

CITY OF SAN DIEGO • DEVELOPMENT SERVICES DEPARTMENT

ATTACHMENT 2



Legend
☐ Very Low Density Residential (0-5 DU/AC)
☐ Low Density Residential (5-9 DU/AC)
☐ Low Medium Residential (9-15 DU/AC)
▦ Medium Residential (15-30 DU/AC)
▦ Medium High Residential (30-45 DU/AC)
■ Commercial/Mixed Use
▦ Parks,Open Space
■ Schools
■ Cultural
■ Community Facilities

PROJECT SITE

PACIFIC OCEAN

Golf Course

N

## Community Land Use Map

**La Jolla Community Plan**
City of San Diego · Planning Department     -5-

Figure 1

ATTACHMENT 3

Location Map



Vicinity Map

**La Jolla Children's Pool Rope Barrier**

OFFICE OF

NINA M. FAIN
DEPUTY CITY ATTORNEY

# THE CITY ATTORNEY

CITY OF SAN DIEGO

1200 THIRD AVENUE, SUITE 1620
SAN DIEGO, CALIFORNIA 92101-4178
TELEPHONE (619) 236-6220
FAX (619) 236-7215

Michael J. Aguirre
CITY ATTORNEY

## MEMORANDUM OF LAW

**DATE:**      December 15, 2006

**TO:**        Honorable Mayor and City Council

**FROM:**      City Attorney

**SUBJECT:**   Emergency Authorization to Replace the Rope Barrier at the Children's
               Pool and Implement City Council's December 5, 2006 Resolution

### INTRODUCTION

The City Council at the December 5, 2006 meeting adopted a resolution extending the replacement period of the rope barrier at the Children's Pool from December 15th through May 15th of every year (starting December 15, 2006), and directed the Park and Recreation Department staff to make every effort to get the permits required for the rope placement, if any. The City Attorney's Office was directed to make the determination as to whether any permits are necessary, and if so which ones.

There has been a considerable amount of public testimony regarding the rope barrier at the Children's Pool and other related issues both at Natural Resources and Culture Committee meetings and City Council meetings. Through that testimony, it is clear that in order to protect the public health and safety and to prevent damage to life, health, and essential public services that an emergency exception to the permit requirements is appropriate. Specifically, public testimony has revealed that:

- Between mid-December and mid-May, more mother seals and their pups will need to haul out (rest) on the Children's Pool beach and for longer periods of time in order to prepare for birth, go through the birthing process, and nurse the seal pups.

- There are continually and on a regular basis (if not daily) conflicts and encounters between people who want to protect the seals from harassment and people who want to use the beach. These conflicts have the potential to turn violent, and often involve confrontations and yelling. It has been reported from the Park and Recreation Department staff that one member of the public went so far as to urinate on another in one of these confrontations.

Honorable Mayor and City                    -2-                    December 15, 2006
Council

- The presence of more seals on the beach and the increased sensitivity of the mother and baby seals as the pupping season approaches will likely cause these conflicts between members of the public to occur more often and to become more intense.

- Additionally, the mother seals may become more aggressive during pupping season due to their instinct to protect themselves and their baby seals from humans who are getting too close. The lives of the seal pups are also at stake because the stress of harassment caused by the mothers being flushed from the beach may cause the pups to be stillborn, among other things.

- As conflicts arise between people on either side of the issue and between people and seals, lifeguards are regularly brought into these situations by the public. Lifeguards are authorized to enforce state and local codes; however, they are continually asked to diffuse conflicts over the seals at the Children's Pool, which takes them away from providing essential public services as lifeguards by protecting swimmers from danger and drowning.

- The presence of the rope barrier would reduce the number of conflicts between humans and humans and between humans and seals because it would be a clear indicator to the public the appropriate distance from the seals to avoid harassing them.

- The California Coastal Commission [CCC] has indicated that this is a situation in which an emergency exists such that an Emergency Coastal Development Permit would be appropriate in order to get the rope barrier placed at the Children's Pool by the mid-December date. *See* Attachment A.

- The National Oceanic and Atmospheric Administration [NOAA] has newly indicated that it is urgent to replace the rope barrier at the Children's Pool from mid-December through mid-May of this year. *See* Attachment B.

### QUESTIONS PRESENTED

1. Does an emergency exist per the San Diego Municipal Code warranting the placement of a Children's Pool rope barrier by December 15, 2006?

2. Should Emergency Authorization be granted to replace the Children's Pool rope barrier without a Site Development Permit [SDP] by December 15, 2006 to protect public health and safety?

3. Should an Emergency Coastal Development Permit [ECDP] be issued by the City for the replacement of the Children's Pool rope barrier by December 15, 2006 to mitigate the loss of or damage to life, health, and essential public services?

Honorable Mayor and City                    -3-                    December 15, 2006
Council

4. Should the Park and Recreation Department apply for an SDP and a regular City Coastal Development Permit [CDP] for the emergency rope replacement and for all future rope barrier replacement periods at the Children's Pool?

## SHORT ANSWERS

1. Yes. As demonstrated herein, based upon an analysis of the information known at this time, an emergency exists per the San Diego Municipal Code warranting the placement of a Children's Pool rope barrier by December 15, 2006.

2. Yes. The rope barrier is needed to protect public health and safety by preventing human-to-human conflicts and violence, by preventing seal harassment and associated harm to seals and humans, and by allowing lifeguards to focus on protecting swimmers from danger and drowning.

3. Yes. The rope barrier will mitigate for damage to life, health, and essential public services by preventing human-to-human conflicts and violence, by preventing seal harassment and associated harm to seals and humans, and by allowing lifeguards to focus on protecting swimmers from danger and drowning. In addition, the CCC has stated an ECDP is appropriate, and it would be consistent for the City to issue a local ECDP.

4. Yes. When emergency work is authorized without an SDP and/or with an ECDP, applications for standard City SDP and CDPs must also be submitted for the emergency work. Additionally, a regular CDP and an SDP are required for all future rope replacement periods.

## ANALYSIS

### A. An Emergency Exists In Order to Protect Public Health and Safety

The Environmentally Sensitive Land Regulations [ESLRs] apply when *development* is proposed on *environmentally sensitive lands,* which include *coastal beaches.* SDMC § 143.0110. As *development* under the SDMC is defined in pertinent part as "the act of...erecting [or] placing...any...structure," the replacement of the rope barrier at the Children's Pool is considered development within the meaning of the code. However, the ESLRs specify that certain uses and activities are allowed on coastal beach areas, including lifeguard towers, public comfort stations, public piers, safety and public information signs, shoreline protective works, public stairs and ramps, and public recreational equipment. SDMC §§ 143.0130(b); 143.0144. Furthermore, development that is necessary to protect the public health and safety may be authorized without prior approval of an SDP or a public hearing. Specifically, the SDMC provides in section 143.0126:

Honorable Mayor and City                        -4-                        December 15, 2006
Council

### § 143.0126 Emergency Authorization to Impact Environmentally Sensitive Lands

Whenever *development* activity within *environmentally sensitive lands* is deemed necessary by order of the City Manager to protect the public health or safety, the City Manager may authorize, without a public hearing, the minimum amount of impact necessary to protect the public health or safety, subject to the following:

- a) If the emergency work involves only temporary impacts to *environmentally sensitive lands*, a Neighborhood Development Permit or Site Development Permit is not required provided the *environmentally sensitive lands* are restored, in a timely manner to their natural state, to the satisfaction of the City Manager. Restoration shall be in accordance with a restoration plan that conforms with the Biology Guidelines and is approved by the City Manager. The restoration plan shall be submitted to the City Manager within 60 days of completion of the emergency work and work on the approved restoration plan shall be initiated within 90 days of project completion or prior to the beginning of the next rainy season, whichever is greater.

- b) If the emergency work results in permanent impacts to *environmentally sensitive lands*, a subsequent Neighborhood Development Permit or Site Development Permit is required in accordance with all regulations of this division. The application for the Neighborhood Development Permit or Site Development Permit shall be submitted within 60 days of completion of the emergency work.

- c) Within the Coastal Overlay Zone, a Coastal Development Permit is required for any emergency *coastal development* in accordance with Section 126.0718.

The SDMC allows for an emergency authorization for development without an SDP where the development is necessary to protect public health and safety. SDMC § 143.0126. The rope barrier is needed to protect public health and safety by preventing human-to-human conflicts and violence, preventing encounters between mother seals and humans, and allowing lifeguards to focus on their duties protecting swimmers from danger and drowning. In addition, an ECDP is needed.

### B. An Emergency Coastal Development Permit Is Warranted to Mitigate For Damage to Life, Health, and Essential Public Services

A Coastal Development Permit is generally required for *coastal development* within the Coastal Overlay Zone, which includes the Children's Pool beach. SDMC § 132.0402, Diagram 132-04A. *Coastal development* in the SDMC has the same meaning

Honorable Mayor and City                    -5-                    December 15, 2006
Council

as under the state California Coastal Act, and is defined in pertinent part as "the placement or erection of any solid material or structure [or a] change in the intensity of use of water, or of access thereto. SDMC § 113.0103. An Emergency Coastal Development Permit may be issued on an expedited basis when there is a coastal emergency.

> A coastal emergency is a sudden, unexpected occurrence within the Coastal Overlay Zone that demands immediate action to prevent or mitigate loss of or damage to life, health, property, or essential public services.

SDMC § 126.0718(a).

The purpose of the CDP procedures is to make the City's management and treatment of coastal resources comply and be consistent with those of the California Coastal Act as enforced and implemented by the CCC. Cal Pub Resources Code §§ 30108.6, 30240. Specifically, the SDMC section 126.0701 provides:

> The purpose of these procedures is to establish a City review process for *coastal development* that is consistent with the *Local Coastal Program*, the California Coastal Act of 1976 (Public Resources Code section 30000, et seq.) and the California Code of Regulations, Title 14, Division 5.5., Chapter 8, Subchapter 2, Article 17.

Thus, the SDMC Coastal Development Procedures are a local implementation of the state standards under the Coastal Act. Cal Pub Resources Code § 30108.6.

The rope barrier at the Children's Pool is coastal development because it places a structure on the beach that changes public access to water. The City has jurisdiction over CDPs for development proposed above (or landward of) the mean high water line at the Children's Pool beach, and the Coastal Commission has jurisdiction over CDPs for proposed development seaward of the mean high water line. SDMC § 126.0702; *See also* Cal. Pub. Resources Code § 30600. City CDP grants are appealable to the Coastal Commission. SDMC § 126.0710.[1] However, there are no administrative appeal procedures established for City issued ECDPs. The CCC has indicated that generally ECDPs are not appealable to the CCC, but a regular City permit must be applied for at the same time or soon after the emergency work which is appealable to the CCC.

---

[1] If the rope barrier were erected below the mean high water line, then the Coastal Commission could grant the ECDP. However, as demonstrated by maps of the location of the mean high water line, it appears that the placing of the rope barrier at that level on the beach would provide little protection for the seals. A large area above the mean high water line is currently used for hauling out.

Honorable Mayor and City                    -6-                    December 15, 2006
Council

       The Park and Recreation Department indicated it was unaware until late
November of this year that a CDP was required for the replacement of the rope barrier at
the Children's Pool.[2] Last April, the rope was erected without a permit. Thus, on
December 5, 2006 the City Council became newly apprized that no steps had been taken
to erect the rope barrier pursuant to the April 2006 resolution. At the same time, the City
Council took new action by approving the replacement of the rope barrier at the
Children's Pool beginning on December 15, 2006 rather than January 1, 2007. On
December 11, 2006, NOAA issued a new letter indicating that the rope barrier needs to
be erected by mid-December of this year to protect the seals and the public. As explained
in the Introduction to this memorandum, seal harassment leads to conflicts between
people and loss of essential lifeguard services to conflict resolution.

       Immediate action is required because a normal CDP could only be processed by
mid-January with a more realistic date of mid-March or later. By that time, the pupping
season would be half, if not completely over, and the City Council's action to have the
rope barrier placed from December 15, 2006 to May 15, 2007 would be rendered moot.
The CCC has stated that an ECDP is appropriate for the current Children's Pool situation
where NOAA provided new direction as to the urgency of the rope barrier.

## C. Procedures and Findings for Emergency Development Approval

       Notice of the emergency work must be given to the CCC and the public. SDMC
§ 126.0718(h). The following findings are required under SDMC section 126.0718(f) for
an ECDP:

>       1) A coastal emergency exists that requires action more quickly than would
>          be permitted by the normal procedures for acquiring a Coastal
>          Development Permit and the *development* can and will be completed
>          within 30 days unless otherwise specified in the permit;
>       2) Public comment on the proposed coastal emergency action has been
>          solicited and reviewed to the extent feasible; and
>       3) The proposed emergency work is consistent with the *Local Coastal
>          Program*.

---

[2] The CCC's Laurinda Owens provided written confirmation that the an ECDP is appropriate.;
however, in a phone conversation, Lee McEachern from the CCC stated that the City should
have and did know as early as April of this year that a CDP was required. Lee stated that with
further direction from NOAA, the recent unexpected event requirement could be met. NOAA
Special Agent in Charge, Don Masters, agreed that the replacement of the rope barrier to protect
the seals from this mid-December through mid-May is urgent. His letter is attached hereto as
Attachment B.

Honorable Mayor and City                    -7-                    December 15, 2006
Council

In addition, the related finding that it is necessary to protect the public health and safety
to take emergency action to replace the rope barrier without an SDP is required. SDMC
§ 143.0126. As explained below, these findings are supported by the facts.

First, there is ample evidence that emergency conditions exist as explained in the
Introduction to this memorandum such that the findings can be made for emergency
authorizations under SDMC sections 126.0718 and 143.0126. The City Council, the
CCC, and NOAA have all newly indicated it is important to get the rope barrier up by
December 15, 2006 in order to protect the seals and the public. The regular permitting
process will not allow the replacement of the rope barrier by that time. The rope barrier is
needed immediately to protect public health and safety and to mitigate for damage to life,
health, and essential public services by preventing human-to-human conflicts and
violence, by preventing seal harassment and associated harm to seals and humans, and by
allowing lifeguards to focus on protecting swimmers from danger and drowning. The
rope barrier was previously erected within days of authorization and can be replaced well
within the 30 day limit on completion time. It must be erected by December 15, 2006, or
as soon as possible, and remain up through May 15, 2007.

Second, the placement of this rope barrier during pupping season and additionally
from December 15th through December 31st and from May 1st through May 15th annually
has been open for public comment extensively. In the last City Council meeting on
December 5, 2006, the Park and Recreation Department presented oral testimony
regarding the need to evaluate expedited permitting procedures in order to effectuate the
City Council's action. Public comment was received on the issue of the permit. The City
Council at the December 5, 2006 meeting directed the Park and Recreation Department
staff to make every effort to get the permits required for the rope placement. Now, City
Council is in legislative recess, and the December 15th date is rapidly approaching. The
California Coastal Commission has indicated that it would be appropriate to take
emergency action to replace the rope barrier as was newly directed by NOAA. Thus, it
would be appropriate for the City to also deem it necessary to authorize an ECDP.

Third, the replacement of the rope barrier is consistent with the *Local Coastal
Program*. The *Local* Coastal Program is an implementation of the California Coastal Act
on the local level. The Coastal Act provides that the Coastal Zone is a delicately balanced
eco-system and that development needs to be carefully planned to protect the resources.
Cal Pub Resources Code § 30001. In addition, the goals of the Coastal Act are to:

(a) Protect, maintain, and, where feasible, enhance and restore the overall quality
of the coastal zone environment and its natural and artificial resources.
(b) Assure orderly, balanced utilization and conservation of coastal zone
resources taking into account the social and economic needs of the people of
the state.
(c) Maximize public access to and along the coast and maximize public
recreational opportunities in the coastal zone consistent with sound resources

conservation principles and constitutionally protected rights of private
property owners.
(d) Assure priority for coastal-dependent and coastal-related development over
other development on the coast.
(e) Encourage state and local initiatives and cooperation in preparing procedures
to implement coordinated planning and development for mutually beneficial
uses, including educational uses, in the coastal zone.

Cal Pub Resources Code § 30001.5. The state legislature declared that where there are
conflicts between these goals created by proposed development, such conflicts should be
resolved in a way that is "the most protective of significant coastal resources" and
"specific wildlife habitat." Cal Pub Resources Code § 30007.5. Thus, it is consistent with
the Local Coastal Program to replace the rope barrier because it better protects the seals
and their habitat. The public may still access the beach up to the rope barrier, and the
rope will only be erected on a seasonal basis so that it allows the maximum appropriate
public access consistent with sound conservation principles.

## D. Regular Permit Applications are Required after Emergency Work and for Future Rope Barrier Replacements at the Children's Pool

The authorization under an ECDP may only be for "the minimum necessary to
stabilize the emergency. In addition, emergency development requires the subsequent
processing of a standard Coastal Development Permit application for any work
authorized on an emergency basis by these procedures." SDMC § 126.0718(b). This
means that the ECDP should only be granted for this December 15, 2006 through May
15, 2007 rope placement. Also, even though the rope may be erected immediately by the
December 15, 2006 date, subsequent processing of a regular CDP is required for the
emergency placement and in advance of all future placements of the rope barrier. *See
also* SDMC § 126.0718(g) (requiring that the subsequent processing of a regular CDP
must be included as a condition on the ECDP).[3]

Additionally, an emergency exception to the SDP requires that where there are
permanent impacts to environmentally sensitive lands [ESL], an application for a regular
SDP must be submitted within 60 days of the completion of the emergency work.[4]
SDMC § 143.0126(b). Therefore, where this emergency rope replacement is authorized
without an SDP and/or with an ECDP, applications for standard City SDP and CDPs
must also be submitted for the emergency replacement. Additionally, a regular CDP and
an SDP are required for all future rope replacement periods.

---

[3] All of the procedures contained in the SDMC for the processing of the ECDP must be complied with,
even if not specifically addressed herein.
[4] While the installation of the rope barrier is only replaced from December 15th through
May 15th, it will be installed annually on a continuing basis, so it should be assumed for the
purposes of the SDP requirement that it will be a permanent impact.

ATTACHMENT 4

Honorable Mayor and City                    -9-                    December 15, 2006
Council

## CONCLUSION

Based upon an analysis of the information available at this time, it is clear that an
emergency exists within the meaning of the San Diego Municipal Code warranting the
placement of a Children's Pool rope barrier by December 15, 2006. Given the existing
emergency, no further City council action is needed at this time to proceed, and,
therefore, the Mayor is authorized to place the robe barrier at the Children's Pool by
December 15, 2006. A standard Coastal Development Permit application must be
submitted for the emergency work and be a required condition on the ECDP. Both a CDP
and an SDP will be required for all future rope replacement periods, and the regular
application processes must be complied with to effectuate the City Council's December
5, 2006 action.

MICHAEL J. AGUIRRE, City Attorney

By _J. Kc. for_
Nina M. Fain
Deputy City Attorney

NMF:mm:pev
Attachments
cc:     April Penera, Park Planning and Development Deputy Director
        Samir Mahmalji, Project Officer II
ML-2006-32

# ATTACHMENT A



# California Coastal Commission

San Diego Coast Area  7575 Metropolitan Drive, Suite 103  San Diego, CA 92108

# FAX

| | |
|---|---|
| Date: | **December 5, 2006** |
| Number of pages including cover sheet: | **1** |

---

**To: Nina Fain, City Attorney's Office**

Phone:

Fax phone:   619/533-5856

CC:

---

**From: Laurinda Owens**

Phone:         (619) 767-2370

Fax phone:    (619) 767-2384

---

**REMARKS:**   ☒ Urgent   ☐ For your review   ☐ Reply ASAP   ☐ Please comment

Dear Ms. Fain,

Per your request, this fax is a summary of the phone conversation we had this morning pertaining to your request as to whether or not the Coastal Commission can issue an emergency permit for the placement of a temporary rope barrier at Children's Pool Beach to protect the seals during the pupping season. In response to your inquiry, this office concurs that an emergency permit would be appropriate either through the City or possibly the Coastal Commission. However, we still need to do a little more research on this matter including how this request was addressed last year. In any case, we are supportive of reinstating the rope barrier as a temporary means of protecting the seals.

I will coordinate with you regarding any permits, if necessary, or any other kind of written authorization from this office as soon as possible. Thank you.

# ATTACHMENT B

ATTACHMENT 5

**RECORDING REQUESTED BY**
CITY OF SAN DIEGO
DEVELOPMENT SERVICES
PERMIT INTAKE, MAIL STATION 501

SPACE ABOVE THIS LINE FOR RECORDER'S USE

JOB ORDER NUMBER: 031012

## EMERGENCY COASTAL DEVELOPMENT PERMIT NO. 408292
### La Jolla Children's Pool Rope Barrier

This Emergency Coastal Development Permit is granted by the City of San Diego to the City of San Diego Park and Recreation Department, Owner/Permittee, reliant on the City Attorney's Memorandum of Law determining that an emergency exists at the La Jolla Children's Pool, dated December 15, 2006, and pursuant to San Diego Municipal Code [SDMC] sections 126.0718 and 143.0126. The site is located at the Children's Pool, west of Coast Boulevard, near Jenner Street in the Coastal Overlay zone of the La Jolla Community Plan.

Subject to the terms and conditions set forth in this Permit, permission is granted to Owner/Permittee to install, on an emergency basis, a temporary rope barrier to protect seals during their pupping season, December 15 through May 15, as described and identified by size, dimension, quantity, type, and location on the approved exhibits [Exhibit "A"] dated December 15, 2006, on file in the Development Services Department.

The project shall include:

Rope, supporting posts, and footings;

The applicant shall apply for a standard Coastal Development Permit and Site Development Permit for any work authorized by this emergency permit, pursuant to SDMC sections 126.0178 and 143.0126.

All structures shall be maintained in place as shown in exhibits [Exhibit "A"] dated December 15, 2006, on file in the Development Services Department.

All structures approved by this emergency permit shall be kept out of the water at the Children's Pool.

APPROVED by the City of San Diego on December 15, 2006, Resolution No. 5607.

ATTACHMENT 5

CITY OF SAN DIEGO
RESOLUTION NO. 5607
EMERGENCY COASTAL DEVELOPMENT PERMIT NO. 408292
**La Jolla Children's Pool Rope Barrier**

WHEREAS, the City of San Diego Park and Recreation Department, Owner/Permittee, applied to the City of San Diego for an emergency permit to install a temporary rope barrier at the La Jolla Children's Pool (as described in and by reference to the approved Exhibits "A" and corresponding conditions of approval for the associated Permit No. 408292;

WHEREAS, reliant on the City Attorney's Memorandum of Law, dated December 15, 2006, determining that an emergency exists at the La Jolla Children's Pool;

WHEREAS, the project site is located west of Coast Boulevard, near Jenner Street, in the Coastal Overlay Zone of the La Jolla Community Plan;

WHEREAS, installation of the rope barrier is the minimum necessary to stabilize the emergency;

WHEREAS, on December 15, 2006, the City of San Diego considered Emergency Coastal Development Permit No. 408292 pursuant to the Land Development Code of the City of San Diego; NOW, THEREFORE,

BE IT RESOLVED by the City of San Diego as follows:

That the City of San Diego adopts the following written Findings, dated December 15, 2006.

FINDINGS:

**Findings for Emergency Coastal Development Permit - Section 126.0718**

**1.    A coastal emergency exists that requires action more quickly than would be permitted by the normal procedures for acquiring a Coastal Development Permit and the development can and will be completed within 30 days unless otherwise specified in the permit; and**

There is ample evidence that emergency conditions exist. The City Council, the California Coastal Commission, and the National Oceanic and Atmospheric Administration (NOAA) have all newly indicated it is important to get the rope barrier up by December 15, 2006 in order to protect the seals and the public. The regular permitting process will not allow the replacement of the rope barrier by that time. The rope barrier is needed immediately to protect public health and safety and to mitigate for damage to life, health and essential public services by preventing human-to-human conflicts and violence, by preventing seal harassment and associated harm to seals and humans, and by allowing lifeguards to focus on protecting swimmers from danger and drowning. The rope barrier was previously erected within days of authorization and can be replaced well within the 30 day limit on completion time. It must be erected by December 15, 2006, or as soon as possible, and remain up through May 15, 2007. It has been determined that the installation of the rope barrier is the minimum necessary to stabilize the emergency. In addition, as required by SDMC Section 126.0718, a standard Coastal Development Permit and Site Development Permit will be applied for by the applicant. Therefore, a coastal emergency exists that

requires action more quickly than would be permitted by the normal procedures for acquiring a Coastal Development Permit and the development can and will be completed within 30 days unless otherwise specified in the permit.

## 2.    Public comment on the proposed coastal emergency action has been solicited and reviewed to the extent feasible; and

The placement of this rope barrier during pupping season and additionally from December 15th through December 31st and from May 1st through May 15th annually has been open for public comment extensively. In the last City Council meeting on December 5, 2006, the Park and Recreation Department presented oral testimony regarding the need to evaluate expediting permitting procedures in order to effectuate the City Council's action. Public comment was received on the issue of the permit. The City Council at the December 5, 2006 meeting directed the Park and Recreation Department staff to make every effort to get the permits required for the rope placement. Now, City Council is in legislative recess, and the December 15th date is rapidly approaching. The California Coastal Commission has indicated that it would be appropriate to take emergency action to replace the rope barrier as was newly directed by NOAA. Thus, it would be appropriate for the City to also deem it necessary to authorize an Emergency Coastal Development Permit.

## 3.    The proposed emergency work is consistent with the Local Coastal Program.

The replacement of the rope barrier is consistent with the Local Coastal Program. The Local Coastal Program is an implementation of the California Coastal Act on the local level. The Coastal Act provides the Coastal Zone is a delicately balanced eco-system and that development needs to be carefully planned to protect the resources. Cal Pub Resources Code Section 30001. In addition, the goals of the Coastal Act are to:

(a) Protect, maintain, and, where feasible, enhance and restore the overall quality of the coastal zone environment and its natural and artificial resources.
(b) Assure orderly, balanced utilization and conservation of coastal zone resources taking into account the social and economic needs of the people of the state.
(c) Maximize public access to and along the coast and maximize public recreational opportunities in the coastal zone consistent with sound resources conservation principles and constitutionally protected rights of private property owners.
(d) Assure priority for coastal-dependent and coastal-related development over other development on the coast.
(e) Encourage state and local initiatives and cooperation in preparing procedures to implement coordinated planning and development for mutually beneficial uses, including educational uses, in the coastal zone.

Cal Pub Resources Code Section 30001.5. The stat legislature declared that where there are conflicts between these goals created by proposed development, such conflicts should be resolved in a way that is "the most protective of significant coastal resources" and "specific wildlife habitat." Cal Pub Resources Code Section 30007.5. Thus, it is consistent with the Local Coastal Program to replace the rope barrier because it better protects the seals and their habitat. The public may still access the beach up to the rope barrier, and the rope will only be erected on a seasonal basis so that it allows the maximum appropriate

public access consistent with sound conservation principles. Therefore, the proposed emergency work is consistent with the Local Coastal Program.

BE IT FURTHER RESOLVED that, based on the findings hereinbefore adopted by the City of San Diego, Emergency Coastal Development Permit No. 408292 is hereby GRANTED by the City of San Diego to the referenced Owner/Permittee, in the form, exhibits, terms and conditions as set forth in Permit No. 408292 a copy of which is attached hereto and made a part hereof.

Morris E. Dye
Development Project Manager
Development Services

Adopted on: December 15, 2006

Job Order No. 031012

cc:     Legislative Recorder, Planning Department



City crew digs hole
for post

Install post with
attached footing

Posts and rope
installed

**La Jolla Children's Pool Rope Barrier**



ATTACHMENT 7



PROJECT SITE PLAN

**RECORDING REQUESTED BY**
CITY OF SAN DIEGO
DEVELOPMENT SERVICES
PERMIT INTAKE, MAIL STATION 501

SPACE ABOVE THIS LINE FOR RECORDER'S USE

JOB ORDER NUMBER: 4900

# COASTAL DEVELOPMENT PERMIT NO. 410971
# SITE DEVELOPMENT PERMIT NO. 410975
## La Jolla Children's Pool Rope Barrier

This Coastal Development Permit/Site Development Permit is granted by the City of San Diego to the City of San Diego Park and Recreation Department, Owner/Permittee, pursuant to San Diego Municipal Code [SDMC] sections 126.0718 and 143.0126. The site is located at the Children's Pool, west of Coast Boulevard, near Jenner Street in the Coastal Overlay zone of the La Jolla Community Plan.

Subject to the terms and conditions set forth in this Permit, permission is granted to Owner/Permittee to install a temporary rope barrier during the seal pupping season, December 15th, 2006 through May 15, 2007 as a follow up to Emergency Coastal Development Permit No. 408292 as described and identified by size, dimension, quantity, type, and location on the approved exhibits [Exhibit "A"] dated January 24, 2007, on file in the Development Services Department.

The project shall include:

Rope, supporting posts, and support post footings;

All structures shall be maintained in place approximately as shown in exhibits [Exhibit "A"] dated January 24, 2007, on file in the Development Services Department.

## STANDARD REQUIREMENTS:

1.    This permit must be utilized within thirty-six (36) months after the date on which all rights of appeal have expired. Failure to utilize and maintain utilization of this permit as described in the SDMC will automatically void the permit unless an Extension of Time has been granted. Any such Extension of Time must meet all SDMC requirements and applicable guidelines in affect at the time the extension is considered by the appropriate decision maker.

2.     This Coastal Development Permit shall become effective on the eleventh working day following receipt by the California Coastal Commission of the Notice of Final Action following all appeals.

3.     No permit for the construction, occupancy or operation of any facility or improvement described herein shall be granted, nor shall any activity authorized by this Permit be conducted on the premises until:

   a.     The Owner/Permittee signs and returns the Permit to the Development Services Department; and

   b.     The Permit is recorded in the Office of the San Diego County Recorder.

4.     Unless this Permit has been revoked by the City of San Diego the property included by reference within this Permit shall be used only for the purposes and under the terms and conditions set forth in this Permit unless otherwise authorized by the Development Services Department.

5.     This Permit is a covenant running with the subject property and shall be binding upon the Owner/Permittee and any successor or successors, and the interests of any successor shall be subject to each and every condition set out in this Permit and all referenced documents.

6.     The continued use of this Permit shall be subject to the regulations of this and any other applicable governmental agency.

7.     Issuance of this Permit by the City of San Diego does not authorize the Owner/Permittee for this permit to violate any Federal, State or City laws, ordinances, regulations or policies including, but not limited to, the Endangered Species Act of 1973 [ESA] and any amendments thereto (16 U.S.C. § 1531 et seq.).

8.     All of the conditions contained in this Permit have been considered and have been determined to be necessary in order to make the findings required for this Permit. It is the intent of the City that the holder of this Permit be required to comply with each and every condition in order to be afforded the special rights which the holder of the Permit is entitled as a result of obtaining this Permit.

    In the event that any condition of this Permit, on a legal challenge by the Owner/Permittee of this Permit, is found or held by a court of competent jurisdiction to be invalid, unenforceable, or unreasonable, this Permit shall be void. However, in such an event, the Owner/Permittee shall have the right, by paying applicable processing fees, to bring a request for a new permit without the "invalid" conditions(s) back to the discretionary body which approved the Permit for a determination by that body as to whether all of the findings necessary for the issuance of the proposed permit can still be made in the absence of the "invalid" condition(s). Such hearing shall be a hearing de novo and the discretionary body shall have the absolute right to approve, disapprove, or modify the proposed permit and the condition(s) contained therein.

**PLANNING/DESIGN REQUIREMENTS:**

9.    All debris caused by construction must be removed from the site and disposed of appropriately.

10.    All materials shall be maintained and managed so as to prevent them from entering sensitive areas including the coastal waters. Placement shall be maintained in location identified on Exhibit "A", during the identified time periods.

APPROVED by the Hearing Officer of the City of San Diego, on January 24, 2007, Resolution No.

CITY OF SAN DIEGO
RESOLUTION NO.
COASTAL DEVELOPMENT PERMIT NO. 410971
SITE DEVELOPMENT PERMIT NO. 410975
**La Jolla Children's Pool Rope Barrier**

WHEREAS, the City of San Diego Park and Recreation Department, Owner/Permittee, applied to the City of San Diego for a permit to erect a temporary rope barrier (including support posts and foundations), during seal pupping season, December 15th, 2006 through May 15th, 2007 and

WHEREAS, the project is located at the La Jolla Children's Pool, west of Coast Boulevard, near Jenner Street, La Jolla, within the Coastal Overlay Zone (Coastal Commission Appeal Jurisdiction) and the La Jolla Community Planning Area; and

WHEREAS, the project is a follow-up to an emergency coastal development permit and emergency authorization to impact environmentally sensitive lands, issued on December 15, 2006, (as described in and by reference to the approved Exhibits "A" and corresponding conditions of approval for the associated Coastal Development Permit No. 410971 and Site Development Permit No. 410975); NOW, THEREFORE,

BE IT RESOLVED, by the City of San Diego as follows:

That the City of San Diego adopts the following written Findings, dated January 24, 2007.

FINDINGS:

**Findings for Coastal Development Permit - Section 126.0708**

1.  **The proposed coastal development will not encroach upon any existing physical access way that is legally used by the public or any proposed public accessway identified in a Local Coastal Program land use plan; and the proposed coastal development will enhance and protect public views to and along the ocean and other scenic coastal areas as specified in the Local Coastal Program land use plan; and**

The project is located on the sand of the La Jolla Children's Pool west of Coast Boulevard, near Jenner Street, in La Jolla. On December 15th, 2006 the City Attorney's Office opined in a Memorandum of Law (Attachment 4) that an emergency existed at the La Jolla Children's Pool and that the emergency necessitated the installation of a rope barrier. The project includes the rope barrier supported by poles, with pole foundations buried in the sand, above the Mean High Tide Line. A rope barrier was erected, and stretches from near the concrete access stairs on the east side of the beach to the sea wall on the west side, as shown on Exhibit "A."

The area above the Children's Pool is identified as a Viewshed area in the La Jolla Community Plan and Local Coastal Program Land Use Plan. The proposed rope was placed at a height not exceeding four feet and not exceeding one half-inch in diameter. Given this height and diameter, the rope does not block any public views as identified in the La Jolla Community Plan and Local Coastal Program Land Use Plan. While the proposed rope barrier provides a buffer between humans and seals during the annual pupping

season, the beach remains open for public use and swimming is allowed. Swimming may not be recommended due to bacteria levels possibly exceeding health standards, but the rope is not intended to prevent access to the sand beach or the ocean. In addition, existing vertical access (concrete stairs) remain unchanged by the project. Given that the sand beach and ocean remain open to the public while the rope is in place and that the rope's location and type of rope used does not block any identified public views at the Children's Pool, the proposed coastal development does not encroach upon any existing physical access way that is legally used by the public or any proposed public accessway identified in a Local Coastal Program land use plan, and the coastal development will enhance and protect public views to and along the ocean and other scenic coastal areas as specified in the Local Coastal Program land use plan.

## 2.    The proposed coastal development will not adversely affect environmentally sensitive lands; and

The adjacent Coastal Beach and Coastal Bluff are the environmentally sensitive resources potentially affected by the project. The installation of the rope included hand digging small holes (less than 18 inches deep) in the sand, above the Mean High Tide Line, placing the foundation portion of the rope supports in the holes and covering the foundations with sand. The rope does not touch the adjacent Coastal Bluff. Proposed permit conditions require that any debris caused by construction, must be removed from the site and disposed of appropriately. Permit conditions also require that all materials shall be maintained and managed so as to prevent them from entering sensitive areas, including the adjacent coastal waters. Placement is required to be maintained in location identified on Exhibit "A," during the identified time period. In addition, environmental review was performed and an exemption was prepared for the project per Section 15269, Emergency Projects (Attachment 13). As the project involved digging relatively shallow holes in the beach sand above the Mean High Tide Line, permit conditions prohibit any debris or construction materials from entering the ocean, and permit conditions also prohibit the project affecting the adjacent Coastal Bluff, the proposed coastal development is in conformity with the certified Local Coastal Program land use plan and complies with all regulations of the certified Implementation Program.

## 3.    The proposed coastal development is in conformity with the certified Local Coastal Program land use plan and complies with all regulations of the certified Implementation Program; and

The project includes the rope barrier supported by poles, with the pole foundations buried in the sand above the Mean High Tide Line. The rope barrier stretches from near the concrete access stairs on the east side of the beach to the sea wall on the west side, as shown on Exhibit "A."

The area above the Children's Pool is identified as a Viewshed area in the La Jolla Community Plan and Local Coastal Program Land Use Plan. The rope is placed at a height not exceeding four feet, and not exceeding one half-inch in diameter. Given this height and diameter, the rope does not block any public views as identified in the La Jolla Community Plan and Local Coastal Program Land Use Plan. While the rope barrier provides a buffer between humans and seals during the annual pupping season, the beach remains open for public use and swimming is allowed. Swimming may not be recommended due to bacteria levels possibly exceeding health standards, but the rope is not intended to prevent access to the sand beach or the ocean. In addition, existing vertical access (concrete stairs) remains unchanged by the project. Given that the sand beach and ocean remain open to the public while the rope is in place, and that the rope's location and type of rope used does not block any identified public views at the Children's

Pool, the proposed coastal development is in conformity with the certified Local Coastal Program land use plan and complies with all regulations of the certified Implementation Program.

**4.    For every Coastal Development Permit issued for any coastal development between the nearest public road and the sea or the shoreline of any body of water located within the Coastal Overlay Zone the coastal development is in conformity with the public access and public recreation policies of Chapter 3 of the California Coastal Act.**

Section 30211 of the California Coastal Act requires that no development interfere with the public's right of access to the sea, the use of dry sand and the use of rock coastal beaches up to the first line of terrestrial vegetation. The purpose and intent of Section 30211 is ensure that the public can access the sea and its associated rock coastal beaches. The purpose and intent of the rope barrier is to create a buffer between the public utilizing the sand beach and accessing the sea at the Children's Pool, and the seals, as they are hauled out on the sand during the current seal pupping season. The rope is not intended to keep the public from reaching either the beach or the sea at the Children's Pool. The public is able to enter the sea at the Children's Pool while the rope is in place. In addition, signage that is posted at the Children's Pool indicates that the beach is open to the public. Therefore, the rope would not interfere with the public's right of access to the sea, the use of dry sand and the use of rock coastal beaches up to the first line of terrestrial vegetation as described in Section 30211.

Section 30220 of the California Coastal Act requires that coastal areas suited for water-oriented recreational activities that cannot be provided at inland water areas, be protected for such uses. The rope barrier does not prevent the use of the Children's Pool for recreational activities. The rope is not intended to keep the public from reaching either the beach or the sea at the Children's Pool. The public is able to enter the sea at the Children's Pool, while the rope is in place. In addition, signage that is posted at the Children's Pool indicates that the beach is open for public use.

As the project would not block public access and the beach and ocean would remain open for public recreation, the project is in conformity with the public access and public recreation policies of Chapter 3 of the California Coastal Act.

## Site Development Permit - Section 126.0504

### A.    Findings for all Site Development Permits

### 1.    The proposed development will not adversely affect the applicable land use plan;

One of the goals of the Community Facilities, Parks, and Services Element of the LJCP (p. 113) is to, "Ensure that all new and existing public facilities are designed and developed in a manner that will not contribute any adverse impacts to the environmentally sensitive areas of La Jolla." The Children's Pool is located in an area designated as Environmentally Sensitive Lands containing Coastal Beaches and Coastal Bluffs. The rope installation has no significant affect on either of these resources. The rope installation included hand digging holes in the sand (not exceeding 18 inches), placing the foundation portion of the rope supports in the holes and covering the foundations up with sand. Proposed permit conditions require that any debris caused by construction, must be removed from the site and disposed of appropriately, and would also require that all materials shall be maintained and managed so as to prevent them from entering sensitive areas, including the coastal waters. Placement is required to be maintained in location identified on Exhibit "A," during the identified time period. The La Jolla Community Plan

also calls for the protection of public views. The rope is placed at a height not exceeding four feet and does not exceed one half-inch in diameter. Given this height and diameter, the rope does not block any public views. As the project does not have any adverse impacts on the Coastal Beach or the Coastal Bluffs, and the project does not negatively affect any public views, the development does not adversely affect the applicable land use plan.

## 2.    The proposed development will not be detrimental to the public health, safety, and welfare; and

The primary objective of the rope installation is to serve as a buffer between humans and seals during the current pupping season. Lifeguards advise beachgoers to avoid unattended seal pups, as a pup's mother may be foraging and conflicts could arise upon a mother's return. Users are also advised not to place themselves between a seal mother and her pup. While the beach is open to public use, and beachgoers may pass the rope to enter the beach, the rope's presence serves as a caution, and allows users to read signage warning them that it is unlawful to harass the seals, and that the water may cause illness due to bacteria levels that may exceed health standards. The signs also inform users that swimming is allowed, but is not recommended, and that the beach is open for public use. As the project is intended to create a safety buffer between humans and seals, and information is provided to the beach-going public regarding potential health hazards, the project is not detrimental to the public health, safety, and welfare.

## 3.    The proposed development will comply with the applicable regulations of the Land Development Code.

Land Development Code regulations require that the construction of a project potentially affecting an environmentally sensitive resource, result in minimum disturbance to that resource. The rope installation included digging shallow (not exceeding 18 inches) holes for each post footing and covering them with the sand. Standard, cord (not exceeding one half-inch) was then strung between the posts. Informational signage mounted to the posts provides the public with safety information. In addition, the height of the rope does not exceed four feet, no public views are obstructed, and the project is temporary and removable. As a result, the rope barrier does not disturb the Coastal Beaches or Coastal Bluffs. In addition, environmental review was performed and an exemption was prepared for the project per Section 15269, Emergency Projects (Attachment 13). As such, the proposed development would not create a disturbance of the environmentally sensitive lands, and, therefore, complies with the Land Development Code.

## B.    Supplemental Findings--Environmentally Sensitive Lands

## 1.    The site is physically suitable for the design and siting of the proposed development and the development will result in minimum disturbance to environmentally sensitive lands;

The project site is the sand at the Children's Pool beach. There is ample sand at the beach to allow the rope support posts to be placed in hand dug holes in the sand, and to cover the post foundations with the sand. Standard, half-inch cord is strung between the posts. Informational signage is mounted to the posts to provide the public with safety information. The installation of the rope barrier at the La Jolla Children's Pool was considered to be the minimum necessary to avert the emergency. The height of the rope does not exceed four feet, and no public views are obstructed. Hand dug holes do not exceed 18 inches, minimizing any effect on the Coastal Beach Resource. The rope barrier does not disturb the

Coastal Beach or Coastal Bluff resources and is temporary and removable. As the site readily accommodates the installation of the rope barrier project with a temporary and minimal change to the Children's Pool beach, and neither the Coastal Beach nor the Coastal Bluff are negatively affected by the project, the site is physically suitable for the design and siting of the proposed development and the development results in a minimum disturbance to environmentally sensitive lands.

**2.    The proposed development will minimize the alteration of natural land forms and will not result in undue risk from geologic and erosional forces, flood hazards, or fire hazards;**

The rope installation includes digging shallow holes for each post footing and covering them with the sand. The rope is placed above the Mean High Tide Line and, as such, does not create erosional conditions. No geologic forces are expected to be factors with this type of development, and because no structures are included in the project, no flood or fire hazards are anticipated. Therefore, the development minimizes the alteration of natural landforms and does not result in undue risk from geologic and erosional forces, flood hazards, or fire hazards.

**3.    The proposed development will be sited and designed to prevent adverse impacts on any adjacent environmentally sensitive lands;**

The installation of the rope includes digging small holes in the sand, placing the foundation portion of the rope supports in the holes and covering the foundations up with sand. The rope is installed in dry sand above the Mean High Tide Line, ensuring the project can be installed and removed with minimal affect on the Coastal Beach and Coastal Bluff. In addition, proposed permit conditions require that any debris caused by construction to be removed from the site and disposed of appropriately. Permit conditions also require that all materials shall be maintained and managed so as to prevent them from entering sensitive areas, including the coastal waters. Placement is required to be maintained in location identified on Exhibit "A," during the identified time period. . In addition, environmental review was performed and an exemption was prepared for the project per Section 15269, Emergency Projects (Attachment 13). Therefore, the proposed development would be sited and designed to prevent adverse impacts on any adjacent environmentally sensitive lands.

**4.    The proposed development will be consistent with the City of San Diego's Multiple Species Conservation Program (MSCP) Subarea Plan;**

The project is not located in or near the Multiple Species Conservation Program (MSCP) Subarea. Therefore, the proposed development is consistent with the City of San Diego's Multiple Species Conservation Program (MSCP) Subarea Plan

**5.    The proposed development will not contribute to the erosion of public beaches or adversely impact local shoreline sand supply; and**

The rope barrier pole foundations are placed in dry sand above the Mean High Tide Line. As such, the project does not create erosional conditions. Sand removed to hand dig the holes for pole installation, was used to cover the foundations, and therefore, sand was not removed from the Children's Pool Beach as a result of the project. Therefore, the development does not contribute to the erosion of public beaches or adversely impact local shoreline sand supply

**6.    The nature and extent of mitigation required as a condition of the permit is reasonably related to, and calculated to alleviate, negative impacts created by the proposed development.**

No mitigation is required of this project. The project is temporary in nature and is removable. Therefore, the nature and extent of mitigation required as a condition of the permit is reasonably related to, and calculated to alleviate, negative impacts created by the proposed development.

BE IT FURTHER RESOLVED that, based on the findings hereinbefore adopted by the Hearing Officer, Coastal Development Permit No. 410971 and Site Development Permit No. 410975 are hereby GRANTED by hearing Officer to the referenced Owner/Permittee, in the form, exhibits, terms and conditions as set forth in Coastal Development Permit No. 410971 and Site Development Permit No. 410975 a copy of which is attached hereto and made a part hereof.

Morris E. Dye
Development Project Manager
Development Services

Adopted on:  January 24, 2007

Job Order No. 4900

cc:    Legislative Recorder, Planning Department

**RECORDING REQUESTED BY**
CITY OF SAN DIEGO
DEVELOPMENT SERVICES
PERMIT INTAKE, MAIL STATION 501

SPACE ABOVE THIS LINE FOR RECORDER'S USE

JOB ORDER NUMBER: 4900

# COASTAL DEVELOPMENT PERMIT NO. 250362
# SITE DEVELOPMENT PERMIT NO. 250363
### La Jolla Children's Pool Rope Barrier

This Coastal Development Permit/Site Development Permit is granted by the City of San Diego to the City of San Diego Park and Recreation Department, Owner/Permittee, pursuant to San Diego Municipal Code [SDMC] sections 126.0702 and 143.0126. The site is located at the Children's Pool, west of Coast Boulevard, near Jenner Street in the Coastal Overlay zone of the La Jolla Community Plan.

Subject to the terms and conditions set forth in this Permit, permission is granted to Owner/Permittee to annually install a temporary rope barrier during the seal pupping season, December 15th through May 15th, as described and identified by size, dimension, quantity, type, and location on the approved exhibits [Exhibit "A"] dated January 24, 2007, on file in the Development Services Department.

The project shall include:

    Rope, supporting posts, and support post footings;

All structures shall be maintained in place approximately as shown in exhibits [Exhibit "A"] dated January 24, 2007, on file in the Development Services Department.

## STANDARD REQUIREMENTS:

1.    This permit must be utilized within thirty-six (36) months after the date on which all rights of appeal have expired. Failure to utilize and maintain utilization of this permit as described in the SDMC will automatically void the permit unless an Extension of Time has been granted. Any such Extension of Time must meet all SDMC requirements and applicable guidelines in affect at the time the extension is considered by the appropriate decision maker.

2.     This Coastal Development Permit shall become effective on the eleventh working day following receipt by the California Coastal Commission of the Notice of Final Action following all appeals.

3.     No permit for the construction, occupancy or operation of any facility or improvement described herein shall be granted, nor shall any activity authorized by this Permit be conducted on the premises until:

    a.     The Owner/Permittee signs and returns the Permit to the Development Services Department; and

    b.     The Permit is recorded in the Office of the San Diego County Recorder.

4.     Unless this Permit has been revoked by the City of San Diego the property included by reference within this Permit shall be used only for the purposes and under the terms and conditions set forth in this Permit unless otherwise authorized by the Development Services Department.

5.     This Permit is a covenant running with the subject property and shall be binding upon the Owner/Permittee and any successor or successors, and the interests of any successor shall be subject to each and every condition set out in this Permit and all referenced documents.

6.     The continued use of this Permit shall be subject to the regulations of this and any other applicable governmental agency.

7.     Issuance of this Permit by the City of San Diego does not authorize the Owner/Permittee for this permit to violate any Federal, State or City laws, ordinances, regulations or policies including, but not limited to, the Endangered Species Act of 1973 [ESA] and any amendments thereto (16 U.S.C. § 1531 et seq.).

8.     All of the conditions contained in this Permit have been considered and have been determined to be necessary in order to make the findings required for this Permit. It is the intent of the City that the holder of this Permit be required to comply with each and every condition in order to be afforded the special rights which the holder of the Permit is entitled as a result of obtaining this Permit.

    In the event that any condition of this Permit, on a legal challenge by the Owner/Permittee of this Permit, is found or held by a court of competent jurisdiction to be invalid, unenforceable, or unreasonable, this Permit shall be void. However, in such an event, the Owner/Permittee shall have the right, by paying applicable processing fees, to bring a request for a new permit without the "invalid" conditions(s) back to the discretionary body which approved the Permit for a determination by that body as to whether all of the findings necessary for the issuance of the proposed permit can still be made in the absence of the "invalid" condition(s). Such hearing shall be a hearing de novo and the discretionary body shall have the absolute right to approve, disapprove, or modify the proposed permit and the condition(s) contained therein.

**PLANNING/DESIGN REQUIREMENTS:**

9.    All debris caused by construction must be removed from the site and disposed of appropriately.

10.    All materials shall be maintained and managed so as to prevent them from entering sensitive areas including the coastal waters. Placement shall be maintained in location identified on Exhibit "A", during the identified time periods.

APPROVED by the Hearing Officer of the City of San Diego, on January 24, 2007, Resolution No.

CITY OF SAN DIEGO
RESOLUTION NO.
COASTAL DEVELOPMENT PERMIT NO. 250362
SITE DEVELOPMENT PERMIT NO. 250363
**La Jolla Children's Pool Rope Barrier**

WHEREAS, the City of San Diego Park and Recreation Department, Owner/Permittee, applied to the
City of San Diego for a permit to annually erect a temporary rope barrier (including support posts and
foundations), during seal pupping season, December 15th through May 15$^{th;}$ and

WHEREAS, the project is located at the La Jolla Children's Pool, west of Coast Boulevard, near Jenner
Street, La Jolla, within the Coastal Overlay Zone (Coastal Commission Appeal Jurisdiction) and the La
Jolla Community Planning Area; and

WHEREAS, on January 24, 2007, the Hearing Officer considered Coastal Development Permit No.
250362 and Site Development Permit No. 250363 (as described in and by reference to the approved
Exhibits "A" and corresponding conditions of approval for the associated Coastal Development Permit
No. 250362 and Site Development Permit No. 250363) pursuant to the Land Development Code of the
City of San Diego; NOW, THEREFORE,

BE IT RESOLVED, by the City of San Diego as follows:

That the City of San Diego adopts the following written Findings, dated January 24, 2007.

FINDINGS:

**Findings for Coastal Development Permit - Section 126.0708**

1. **The proposed coastal development will not encroach upon any existing
   physical access way that is legally used by the public or any proposed public accessway
   identified in a Local Coastal Program land use plan; and the proposed coastal development
   will enhance and protect public views to and along the ocean and other scenic coastal areas
   as specified in the Local Coastal Program land use plan; and**

The project is located on the sand of the La Jolla Children's Pool west of Coast Boulevard, near Jenner
Street, in La Jolla. The project would include the rope barrier supported by poles, with pole foundations
buried in the sand above the Mean High Tide Line. A rope barrier would be annually erected, and stretch
from near the concrete access stairs on the east side of the beach to the sea wall on the west side, as
shown on Exhibit "A."

The area above the Children's Pool is identified as a Viewshed area in the La Jolla Community Plan and
Local Coastal Program Land Use Plan. The proposed rope would be placed at a height not exceeding
four feet and the rope would not exceed one half-inch in diameter. Given this height and diameter, the
rope would not block any public views as identified in the La Jolla Community Plan and Local Coastal
Program Land Use Plan. While the proposed rope barrier would provide a buffer between humans and
seals during the annual pupping season, the beach would remain open for public use and swimming
would be allowed. Swimming may not be recommended due to bacteria levels possibly exceeding health

standards, but the rope is not intended to prevent access to the sand beach or the ocean. In addition, existing vertical access (concrete stairs) would remain unchanged by the project. Given that the sand beach and ocean would remain open to the public while the rope would be in place and that the rope's location and type of rope used would not block any identified public views at the Children's Pool, the proposed coastal development will not encroach upon any existing physical access way that is legally used by the public or any proposed public accessway identified in a Local Coastal Program land use plan, and the proposed coastal development will enhance and protect public views to and along the ocean and other scenic coastal areas as specified in the Local Coastal Program land use plan.

2.    **The proposed coastal development will not adversely affect environmentally sensitive lands; and**

The adjacent Coastal Beach and Coastal Bluff are the environmentally sensitive resources potentially affected by the project. The proposed installation of the rope includes hand digging small holes (less than 18 inches deep) in the sand, above the Mean High Tide Line, placing the foundation portion of the rope supports in the holes and covering the foundations with sand. This would occur each year to allow for the rope barrier to be in place during the annual seal pupping season, December 15th through May 15th. At no time would the rope touch the adjacent Coastal Bluff. Proposed permit conditions would require that any debris caused by construction, must be removed from the site and disposed of appropriately. Permit conditions would also require that all materials shall be maintained and managed so as to prevent them from entering sensitive areas, including the adjacent coastal waters. Placement would be required to be maintained in location identified on Exhibit "A," during the identified time periods. As the project involves digging relatively shallow holes in the beach sand above the Mean High Tide Line, permit conditions would prohibit any debris or construction materials from entering the ocean, and permit conditions would also prohibit the project affecting the adjacent Coastal Bluff, the proposed coastal development is in conformity with the certified Local Coastal Program land use plan and complies with all regulations of the certified Implementation Program.

3.    **The proposed coastal development is in conformity with the certified Local Coastal Program land use plan and complies with all regulations of the certified Implementation Program; and**

The project would include the rope barrier supported by poles, with the pole foundations buried in the sand above the Mean High Tide Line. A rope barrier would be annually erected, and stretch from near the concrete access stairs on the east side of the beach to the sea wall on the west side, as shown on Exhibit "A."

The area above the Children's Pool is identified as a Viewshed area in the La Jolla Community Plan and Local Coastal Program Land Use Plan. The proposed rope would be placed at a height not exceeding four feet and would not exceed one half-inch in diameter. Given this height and diameter, the rope would not block any public views as identified in the La Jolla Community Plan and Local Coastal Program Land Use Plan. While the proposed rope barrier would provide a buffer between humans and seals during the annual pupping season, the beach would remain open for public use and swimming would be allowed. Swimming may not be recommended due to bacteria levels possibly exceeding health standards, but the rope is not intended to prevent access to the sand beach or the ocean. In addition, existing vertical access (concrete stairs) would remain unchanged by the project. Given that the sand beach and ocean would remain open to the public while the rope would be in place, and that the rope's location and type of rope used would not block any identified public views at the Children's Pool, the proposed coastal

development is in conformity with the certified Local Coastal Program land use plan and complies with all regulations of the certified Implementation Program.

**4.    For every Coastal Development Permit issued for any coastal development between the nearest public road and the sea or the shoreline of any body of water located within the Coastal Overlay Zone the coastal development is in conformity with the public access and public recreation policies of Chapter 3 of the California Coastal Act.**

Section 30211 of the California Coastal Act requires that no development interfere with the public's right of access to the sea, the use of dry sand and the use of rock coastal beaches up to the first line of terrestrial vegetation. The purpose and intent of Section 30211 is ensure that the public can access the sea and its associated rock coastal beaches. The purpose and intent of the proposed rope is to create a buffer between the public utilizing the sand beach and accessing the sea at the Children's Pool, and the seals, as they are hauled out on the sand during the annual seal pupping season. The rope is not intended to keep the public from reaching either the beach or the sea at the Children's Pool. The public will be able to enter the sea at the Children's Pool while the rope is installed. In addition, signage that is posted at the Children's Pool indicates that the beach is open to the public. Therefore, the proposed rope would not interfere with the public's right of access to the sea, the use of dry sand and the use of rock coastal beaches up to the first line of terrestrial vegetation as described in Section 30211.

Section 30220 of the California Coastal Act requires that coastal areas suited for water-oriented recreational activities that cannot be provided at inland water areas, be protected for such uses. The rope barrier would not prevent the use of the Children's Pool for recreational activities. The rope is not intended to keep the public from reaching either the beach or the sea at the Children's Pool. The public is able to enter the sea at the Children's Pool, while the rope has been installed. In addition, signage that is posted at the Children's Pool indicates that the beach is open for public use.

As the project would not block public access and the beach and ocean would remain open for public recreation, the project is in conformity with the public access and public recreation policies of Chapter 3 of the California Coastal Act.

### Site Development Permit - Section 126.0504

### A.    Findings for all Site Development Permits

### 1.    The proposed development will not adversely affect the applicable land use plan;

One of the goals of the Community Facilities, Parks, and Services Element of the LJCP (p. 113) is to, "Ensure that all new and existing public facilities are designed and developed in a manner that will not contribute any adverse impacts to the environmentally sensitive areas of La Jolla." The Children's Pool is located in an area designated as Environmentally Sensitive Lands containing Coastal Beaches and Coastal Bluffs. The proposed rope installation would have no significant affect on either of these resources. The proposed rope installation would include hand digging holes in the sand (not exceeding 18 inches in depth), placing the foundation portion of the rope supports in the holes and covering the foundations up with sand. Proposed permit conditions would require that any debris caused by construction, must be removed from the site and disposed of appropriately, and would also require that all materials shall be maintained and managed so as to prevent them from entering sensitive areas, including the coastal waters. Placement would be required to be maintained in location identified on Exhibit "A,"

during the identified time periods. The La Jolla Community Plan also calls for the protection of public views. The proposed rope would be placed at a height not exceeding four feet and would not exceed one half-inch in diameter. Given this height and diameter, the rope would not block any public views. As the project would not have any adverse impacts on the Coastal Beach or the Coastal Bluffs, and the project would not negatively affect any public views, the proposed development will not adversely affect the applicable land use plan.

## 2. The proposed development will not be detrimental to the public health, safety, and welfare; and

The primary objective of the proposed rope installation is to serve as a buffer between humans and seals during the annual pupping season. Lifeguards advise beachgoers to avoid unattended seal pups, as a pup's mother may be foraging and conflicts could arise upon a mother's return. Users are also advised not to place themselves between a seal mother and her pup. While the beach is open to public use, and beachgoers may pass the rope to enter the beach, the rope's presence serves as a caution, and allows users to read signage warning them that it is unlawful to harass the seals, and that the water may cause illness due to bacteria levels that may exceed health standards. The sign also informs users that swimming is allowed, but is not recommended, and that the beach is open for public use. As the project would create a safety buffer between humans and seals, and would provide information to the beach-going public regarding potential health hazards, the project would not be detrimental to the public health, safety, and welfare.

## 3. The proposed development will comply with the applicable regulations of the Land Development Code.

Land Development Code regulations require that the construction of a project potentially affecting an environmentally sensitive resource, result in minimum disturbance to that resource. The proposed rope installation would include digging shallow holes for each post footing and covering them with the sand. Standard, cord (not exceeding one half-inch in diameter) would then be strung between the posts. Informational signage would be mounted to the posts to provide the public with safety information. In addition, the height of the rope would not exceed four feet, and no public views would be obstructed. None of these activities would significantly disturb the Coastal Beach or Coastal Bluff. As such the proposed development would result in minimum disturbance of the environmentally sensitive lands, and, therefore, would comply with the Land Development Code.

## B. Supplemental Findings--Environmentally Sensitive Lands

## 1. The site is physically suitable for the design and siting of the proposed development and the development will result in minimum disturbance to environmentally sensitive lands;

The proposed project site is the sand at the Children's Pool beach. There is ample sand at the beach to allow the rope support posts to be placed in holes that would be hand dug in the sand, and to cover up the post foundations with the sand when the installation is complete. The proposed rope installation would include digging shallow holes for each post footing and covering them with the sand. Standard, half-inch cord would then be strung between the posts. Informational signage would be mounted to the posts to provide the public with safety information. In addition, the height of the rope would not exceed four feet, and no public views would be obstructed. None of these activities would significantly disturb the Coastal

Beach or Coastal Bluff resources. As the site can readily accommodate the installation of the rope barrier project with minimal disturbance to the Children's Pool beach, and neither the Coastal Beach nor the Coastal Bluff would be negatively affected by the project, the site is physically suitable for the design and siting of the proposed development and the development will result in minimum disturbance to environmentally sensitive lands.

**2.    The proposed development will minimize the alteration of natural land forms and will not result in undue risk from geologic and erosional forces, flood hazards, or fire hazards;**

The proposed rope installation would include digging shallow holes (not exceeding 18 inches in depth) for each post footing and covering them with the sand. The rope would be placed above the Mean High Tide Line and, as such, would not create erosional conditions. No geologic forces are expected to be factors with this type of development, and because no structures are proposed, no flood or fire hazards are anticipated. Therefore, the proposed development will minimize the alteration of natural landforms and will not result in undue risk from geologic and erosional forces, flood hazards, or fire hazards.

**3.    The proposed development will be sited and designed to prevent adverse impacts on any adjacent environmentally sensitive lands;**

The proposed installation of the rope would include digging shallow holes (not exceeding 18 inches in depth) in the sand, placing the foundation portion of the rope supports in the holes and covering the foundations up with sand. The rope will be installed in dry sand above the Mean High Tide Line, ensuring the project can be installed and removed with minimal affect on the Coastal Beach and Coastal Bluff. In addition, proposed permit conditions would require that any debris caused by construction to be removed from the site and disposed of appropriately. Permit conditions would also require that all materials shall be maintained and managed so as to prevent them from entering sensitive areas, including the coastal waters. Placement would be required to be maintained in location identified on Exhibit "A," during the identified time periods. Therefore, the proposed development would be sited and designed to prevent adverse impacts on any adjacent environmentally sensitive lands.

**4.    The proposed development will be consistent with the City of San Diego's Multiple Species Conservation Program (MSCP) Subarea Plan;**

The project is not located in or near the Multiple Species Conservation Program (MSCP) Subarea. Therefore, the proposed development will be consistent with the City of San Diego's Multiple Species Conservation Program (MSCP) Subarea Plan

**5.    The proposed development will not contribute to the erosion of public beaches or adversely impact local shoreline sand supply; and**

The rope barrier pole foundations would be placed in dry sand above the Mean High Tide Line. As such, the project would not create erosional conditions. Sand removed to hand dig the holes for pole installation, would be used to cover the foundations, and therefore, sand would not be removed from the Children's Pool Beach as a result of the project. Therefore, the proposed development will not contribute to the erosion of public beaches or adversely impact local shoreline sand supply.

**6.     The nature and extent of mitigation required as a condition of the permit is reasonably related to, and calculated to alleviate, negative impacts created by the proposed development.**

No mitigation is required of this project. Therefore, the nature and extent of mitigation required as a condition of the permit is reasonably related to, and calculated to alleviate, negative impacts created by the proposed development.

BE IT FURTHER RESOLVED that, based on the findings hereinbefore adopted by the City of San Diego, Coastal Development Permit No. 250362 and Site Development Permit No. 250363 is hereby GRANTED by the City of San Diego to the referenced Owner/Permittee, in the form, exhibits, terms and conditions as set forth in Coastal Development Permit No. 250362 and Site Development Permit No. 250363 a copy of which is attached hereto and made a part hereof.

Morris E. Dye
Development Project Manager
Development Services

Adopted on:  January 24, 2007

Job Order No. 4900

cc:     Legislative Recorder, Planning Department



City of San Diego
**Development Services**
Division Name
1222 First Ave., MS-302
San Diego, CA 92101
(619) 446-5000

THE CITY OF SAN DIEGO

# Ownership Disclosure Statement

---

**Project Title**    Project No. *For City Use Only*

La Jolla Children's Pool — Joint Use

**Project Address:**  Children's Pool Beach is located west of Coast Blvd,
La Jolla . (See attached vicinity Map)

---

**Part I - To be completed when property is held by Individual(s)**

Please list below the owner(s) and tenant(s) (if applicable) of the above referenced property. The list must include the names and addresses of all persons who have an interest in the property, recorded or otherwise, and state the type of property interest (e.g., tenants who will benefit from the permit, all individuals who own the property). A signature is required of at least one of the property owners. Attach additional pages if needed. **Note:** The applicant is responsible for notifying the Project Manager of any changes in ownership during the time the application is being processed or considered. Changes in ownership are to be given to the Project Manager at least thirty days prior to any public hearing on the subject property. Failure to provide accurate and current ownership information could result in a delay in the hearing process.

**Additional pages attached**    ☐ Yes    ☒ No

---

| | |
|---|---|
| Name of Individual (type or print): <br> SAMIR MAHMALJI <br> ☒ Owner    ☐ Tenant/Lessee <br> City of San Diego, Park & Rec Dept. <br> Street Address: <br> 202 'C' Street , M.S. 35 <br> City/State/Zip: <br> San Diego   CA    92101 - 3860 <br> Phone No: <br> (619) 236-7342 <br> Signature : Samir M.    Date: 4/26/05 | Name of Individual (type or print): <br> ☐ Owner    ☐ Tenant/Lessee <br> Street Address: <br> City/State/Zip: <br> Phone No:    Fax No: <br> Signature :    Date: |
| Name of Individual (type or print): <br> ☐ Owner    ☐ Tenant/Lessee <br> Street Address: <br> City/State/Zip: <br> Phone No:    Fax No: <br> Signature :    Date: | Name of Individual (type or print): <br> ☐ Owner    ☐ Tenant/Lessee <br> Street Address: <br> City/State/Zip: <br> Phone No:    Fax No: <br> Signature :    Date: |
| Name of Individual (type or print): <br> ☐ Owner    ☐ Tenant/Lessee <br> Street Address: <br> City/State/Zip: <br> Phone No:    Fax No: <br> Signature :    Date: | Name of Individual (type or print): <br> ☐ Owner    ☐ Tenant/Lessee <br> Street Address: <br> City/State/Zip: <br> Phone No:    Fax No: <br> Signature :    Date: |

---

This information is available in alternative formats for persons with disabilities.
To request this information in alternative format, call (619) 446-5446 or (800) 735-2929 (TDD)
Be sure to see us on the World Wide Web at www.sandiego.gov/development-services
DS-318 (5-03)

# DETERMINATION OF: ENVIRONMENTAL EXEMPTION

## Pursuant to The California Environmental Quality Act (CEQA) and State CEQA Guidelines

| Agency: CITY OF SAN DIEGO | PROJECT NO.: 119757 | DATE: December 15, 2006 |
|---|---|---|

Action/Permit(s) Coastal Development Permit/Site Development Permit       Permit No. 119757

Description of Activity: CHILDREN'S POOL ROPE BARRIER. The project proposes to erect a temporary rope barrier during the seal pupping season, December 15th through May 15th.

Location of Activity: The project site is located at the Children's pool beach, 850 Coast Boulevard, in the La Jolla Community planning area.

1.      [ ] This activity is **EXEMPT FROM CEQA** pursuant to:

   [ ]    Section 15061(b)(1) of the State CEQA Guidelines (the activity is not
          a project as defined in Section 15378).

   [ ]    Section 15061(b)(3) of the State CEQA Guidelines ("General Rule").

2.      [X]    This project is EXEMPT FROM CEQA pursuant to State CEQA Guidelines Section
               checked below:

**ARTICLE 19 of GUIDELINES**
**CATEGORICAL EXEMPTIONS**
(Incomplete list)

**ARTICLE 18 of GUIDELINES**
**STATUTORY EXEMPTIONS**
(Incomplete list)

| Sec. | Short Name | | Sec. | Short Name |
|---|---|---|---|---|
| [ ] 15301 1 | Existing Facilities | | [ ] 15261 | Ongoing Project |
| [ ] 15302 2 | Replacement or Reconstruction | | [ ] 15262 | Feasibility and |
| [ ] 15303 3 | New Construction or Conversion | | | Planning Studies |
| | of Small Structures | | [ ] 15265 | Adoption of Coastal |
| [ ] 15304 4 | Minor Alterations to Land | | | Plans and Programs |
| [ ] 15305 5 | Minor Alterations in Land Use | | [ ] 15268 | Ministerial Projects |
| | Limitations | | [X] 15269 | Emergency Projects |
| [ ] 15306 6 | Information Collection | | [ ] Other | |
| [ ] 15311 11 | Accessory Structures | | | |
| [ ] 15312 12 | Surplus Government Property Sales | | | |
| [ ] 15315 15 | Minor Land Divisions | | | |
| [ ] 15317 17 | Open Space Contracts or Easements | | | |
| [ ] 15319 19 | Annexation of Existing Facilities | | | |
| | and Lots for Exempt Facilities | | | |
| [ ] 15325 25 | Transfer of Ownership of Interest | | | |
| | in Land to Preserve Open Space | | | |

It is hereby certified that the City of San Diego
has determined the above activity to be exempt:

Distribution:
Exemption or Project file
Responsible Departments:
   Morris Dye, DPM
   Tracy Elliott-Yawn, Senior Planner
   Exemption File

*allison Sherwood*

Allison Sherwood
Environmental Analysis Section

ATTACHMENT 14

# DETERMINATION OF: ENVIRONMENTAL EXEMPTION

## Pursuant to The California Environmental Quality Act (CEQA) and State CEQA Guidelines

Agency: CITY OF SAN DIEGO          PROJECT NO.:  119757          DATE: January 8, 2007

Action/Permit(s) Coastal Development Permit/Site Development Permit          Permit No.  119757

Description of Activity: CHILDREN'S POOL ROPE BARRIER. The project proposes to erect a temporary rope barrier (annually) during the seal pupping season, December 15th through May 15th.

Location of Activity: The project site is located at the Children's pool beach, 850 Coast Boulevard, in the La Jolla Community planning area.

1.          [ ] This activity is **EXEMPT FROM CEQA** pursuant to:

    [ ]          Section 15061(b)(1) of the State CEQA Guidelines (the activity is not
                 a project as defined in Section 15378).

    [ ]          Section 15061(b)(3) of the State CEQA Guidelines ("General Rule").

2.          [X]          This project is EXEMPT FROM CEQA pursuant to State CEQA Guidelines Section
                         checked below:

| **ARTICLE 19 of GUIDELINES**<br>**CATEGORICAL EXEMPTIONS**<br>(Incomplete list) | | **ARTICLE 18 of GUIDELINES**<br>**STATUTORY EXEMPTIONS**<br>(Incomplete list) | |
|---|---|---|---|
| Sec. | Short Name | Sec. | Short Name |
| [ ] 15301  1 | Existing Facilities | [ ] 15261 | Ongoing Project |
| [ ] 15302  2 | Replacement or Reconstruction | [ ] 15262 | Feasibility and |
| [ ] 15303  3 | New Construction or Conversion | | Planning Studies |
| | of Small Structures | [ ] 15265 | Adoption of Coastal |
| [X] 15304  4 | Minor Alterations to Land | | Plans and Programs |
| [ ] 15305  5 | Minor Alterations in Land Use | [ ] 15268 | Ministerial Projects |
| | Limitations | [ ] 15269 | Emergency Projects |
| [ ] 15306  6 | Information Collection | [X] Other | |
| [ ] 15311  11 | Accessory Structures | 15333 | Small Habitat Restoration |
| [ ] 15312  12 | Surplus Government Property Sales | | Projects |
| [ ] 15315  15 | Minor Land Divisions | | |
| [ ] 15317  17 | Open Space Contracts or Easements | | |
| [ ] 15319  19 | Annexation of Existing Facilities | | |
| | and Lots for Exempt Facilities | | |
| [ ] 15325  25 | Transfer of Ownership of Interest | | |
| | in Land to Preserve Open Space | | |

It is hereby certified that the City of San Diego
has determined the above activity to be exempt:

*allison Sherwood*

Allison Sherwood
Environmental Analysis Section

Distribution:
Exemption or Project file
Responsible Departments:
          Morris Dye, DPM
          Exemption File

Exhibit C

NINA M. FAIN
DEPUTY CITY ATTORNEY

OFFICE OF

THE CITY ATTORNEY

CITY OF SAN DIEGO

Michael J. Aguirre
CITY ATTORNEY

1200 THIRD AVENUE, SUITE 1620
SAN DIEGO, CALIFORNIA 92101-4178
TELEPHONE (619) 236-6220
FAX (619) 236-7215

## MEMORANDUM OF LAW

**DATE:** December 15, 2006

**TO:** Honorable Mayor and City Council

**FROM:** City Attorney

**SUBJECT:** Emergency Authorization to Replace the Rope Barrier at the Children's Pool and Implement City Council's December 5, 2006 Resolution

## INTRODUCTION

The City Council at the December 5, 2006 meeting adopted a resolution extending the replacement period of the rope barrier at the Children's Pool from December 15th through May 15th of every year (starting December 15, 2006), and directed the Park and Recreation Department staff to make every effort to get the permits required for the rope placement, if any. The City Attorney's Office was directed to make the determination as to whether any permits are necessary, and if so which ones.

There has been a considerable amount of public testimony regarding the rope barrier at the Children's Pool and other related issues both at Natural Resources and Culture Committee meetings and City Council meetings. Through that testimony, it is clear that in order to protect the public health and safety and to prevent damage to life, health, and essential public services that an emergency exception to the permit requirements is appropriate. Specifically, public testimony has revealed that:

- Between mid-December and mid-May, more mother seals and their pups will need to haul out (rest) on the Children's Pool beach and for longer periods of time in order to prepare for birth, go through the birthing process, and nurse the seal pups.

- There are continually and on a regular basis (if not daily) conflicts and encounters between people who want to protect the seals from harassment and people who want to use the beach. These conflicts have the potential to turn violent, and often involve confrontations and yelling. It has been reported from the Park and Recreation Department staff that one member of the public went so far as to urinate on another in one of these confrontations.

Honorable Mayor and City                    -2-                    December 15, 2006
Council

- The presence of more seals on the beach and the increased sensitivity of the mother and baby seals as the pupping season approaches will likely cause these conflicts between members of the public to occur more often and to become more intense.

- Additionally, the mother seals may become more aggressive during pupping season due to their instinct to protect themselves and their baby seals from humans who are getting too close. The lives of the seal pups are also at stake because the stress of harassment caused by the mothers being flushed from the beach may cause the pups to be stillborn, among other things.

- As conflicts arise between people on either side of the issue and between people and seals, lifeguards are regularly brought into these situations by the public. Lifeguards are authorized to enforce state and local codes; however, they are continually asked to diffuse conflicts over the seals at the Children's Pool, which takes them away from providing essential public services as lifeguards by protecting swimmers from danger and drowning.

- The presence of the rope barrier would reduce the number of conflicts between humans and humans and between humans and seals because it would be a clear indicator to the public the appropriate distance from the seals to avoid harassing them.

- The California Coastal Commission [CCC] has indicated that this is a situation in which an emergency exists such that an Emergency Coastal Development Permit would be appropriate in order to get the rope barrier placed at the Children's Pool by the mid-December date. *See* Attachment A.

- The National Oceanic and Atmospheric Administration [NOAA] has newly indicated that it is urgent to replace the rope barrier at the Children's Pool from mid-December through mid-May of this year. *See* Attachment B.

## QUESTIONS PRESENTED

1. Does an emergency exist per the San Diego Municipal Code warranting the placement of the Children's Pool rope barrier by December 15, 2006?

2. Should Emergency Authorization be granted to replace the Children's Pool rope barrier without a Site Development Permit [SDP] by December 15, 2006 to protect public health and safety?

3. Should an Emergency Coastal Development Permit [ECDP] be issued by the City for the replacement of the Children's Pool rope barrier by December 15, 2006 to mitigate the loss of or damage to life, health, and essential public services?

Honorable Mayor and City                    -3-                    December 15, 2006
Council

    4.   Should the Park and Recreation Department apply for an SDP and a regular City Coastal Development Permit [CDP] for the emergency rope replacement and for all future rope barrier replacement periods at the Children's Pool?

## SHORT ANSWERS

1.   Yes. As demonstrated herein, based upon an analysis of the information known at this time, an emergency exists per the San Diego Municipal Code warranting the placement of the Children's Pool rope barrier by December 15, 2006.

2.   Yes. The rope barrier is needed to protect public health and safety by preventing human-to-human conflicts and violence, by preventing seal harassment and associated harm to seals and humans, and by allowing lifeguards to focus on protecting swimmers from danger and drowning.

3.   Yes. The rope barrier will mitigate for damage to life, health, and essential public services by preventing human-to-human conflicts and violence, by preventing seal harassment and associated harm to seals and humans, and by allowing lifeguards to focus on protecting swimmers from danger and drowning. In addition, the CCC has stated an ECDP is appropriate, and it would be consistent for the City to issue a local ECDP.

4.   Yes. When emergency work is authorized without an SDP and/or with an ECDP, applications for standard City SDP and CDPs must also be submitted for the emergency work. Additionally, a regular CDP and an SDP are required for all future rope replacement periods.

## ANALYSIS

### A.    An Emergency Exists In Order to Protect Public Health and Safety

      The Environmentally Sensitive Land Regulations [ESLRs] apply when *development* is proposed on *environmentally sensitive lands,* which include *coastal beaches*. SDMC § 143.0110. As *development* under the SDMC is defined in pertinent part as "the act of…erecting [or] placing…any…structure," the replacement of the rope barrier at the Children's Pool is considered development within the meaning of the code. However, the ESLRs specify that certain uses and activities are allowed on coastal beach areas, including lifeguard towers, public comfort stations, public piers, safety and public information signs, shoreline protective works, public stairs and ramps, and public recreational equipment. SDMC §§ 143.0130(b); 143.0144. Furthermore, development that is necessary to protect the public health and safety may be authorized without prior approval of an SDP or a public hearing. Specifically, the SDMC provides in section 143.0126:

Honorable Mayor and City
Council

-4-

December 15, 2006

### § 143.0126  Emergency Authorization to Impact Environmentally Sensitive Lands

Whenever *development* activity within *environmentally sensitive lands* is deemed necessary by order of the City Manager to protect the public health or safety, the City Manager may authorize, without a public hearing, the minimum amount of impact necessary to protect the public health or safety, subject to the following:

*a)* If the emergency work involves only temporary impacts to *environmentally sensitive lands*, a Neighborhood Development Permit or Site Development Permit is not required provided the *environmentally sensitive lands* are restored, in a timely manner to their natural state, to the satisfaction of the City Manager. Restoration shall be in accordance with a restoration plan that conforms with the Biology Guidelines and is approved by the City Manager. The restoration plan shall be submitted to the City Manager within 60 days of completion of the emergency work and work on the approved restoration plan shall be initiated within 90 days of project completion or prior to the beginning of the next rainy season, whichever is greater.

*b)* If the emergency work results in permanent impacts to *environmentally sensitive lands*, a subsequent Neighborhood Development Permit or Site Development Permit is required in accordance with all regulations of this division. The application for the Neighborhood Development Permit or Site Development Permit shall be submitted within 60 days of completion of the emergency work.

*c)* Within the Coastal Overlay Zone, a Coastal Development Permit is required for any emergency *coastal development* in accordance with Section 126.0718.

The SDMC allows for an emergency authorization for development without an SDP where the development is necessary to protect public health and safety. SDMC § 143.0126. The rope barrier is needed to protect public health and safety by preventing human-to-human conflicts and violence, preventing encounters between mother seals and humans, and allowing lifeguards to focus on their duties protecting swimmers from danger and drowning. In addition, an ECDP is needed.

### B.    An Emergency Coastal Development Permit Is Warranted to Mitigate For Damage to Life, Health, and Essential Public Services

A Coastal Development Permit is generally required for *coastal development* within the Coastal Overlay Zone, which includes the Children's Pool beach. SDMC § 132.0402, Diagram 132-04A. *Coastal development* in the SDMC has the same meaning

Honorable Mayor and City                    -5-                    December 15, 2006
Council

as under the state California Coastal Act, and is defined in pertinent part as "the placement or erection of any solid material or structure [or a] change in the intensity of use of water, or of access thereto. SDMC § 113.0103. An Emergency Coastal Development Permit may be issued on an expedited basis when there is a coastal emergency.

> A coastal emergency is a sudden, unexpected occurrence within the Coastal Overlay Zone that demands immediate action to prevent or mitigate loss of or damage to life, health, property, or essential public services.

SDMC § 126.0718(a).

The purpose of the CDP procedures is to make the City's management and treatment of coastal resources comply and be consistent with those of the California Coastal Act as enforced and implemented by the CCC. Cal Pub Resources Code §§ 30108.6, 30240. Specifically, the SDMC section 126.0701 provides:

> The purpose of these procedures is to establish a City review process for *coastal development* that is consistent with the *Local Coastal Program*, the California Coastal Act of 1976 (Public Resources Code section 30000, et seq.) and the California Code of Regulations, Title 14, Division 5.5., Chapter 8, Subchapter 2, Article 17.

Thus, the SDMC Coastal Development Procedures are a local implementation of the state standards under the Coastal Act. Cal Pub Resources Code § 30108.6.

The rope barrier at the Children's Pool is coastal development because it places a structure on the beach that changes public access to water. The City has jurisdiction over CDPs for development proposed above (or landward of) the mean high water line at the Children's Pool beach, and the Coastal Commission has jurisdiction over CDPs for proposed development seaward of the mean high water line. SDMC § 126.0702; *See also* Cal. Pub. Resources Code § 30600. City CDP grants are appealable to the Coastal Commission. SDMC § 126.0710.[1] However, there are no administrative appeal procedures established for City issued ECDPs. The CCC has indicated that generally ECDPs are not appealable to the CCC, but a regular City permit must be applied for at the same time or soon after the emergency work which is appealable to the CCC.

---

[1] If the rope barrier were erected below the mean high water line, then the Coastal Commission could grant the ECDP. However, as demonstrated by maps of the location of the mean high water line, it appears that the placing of the rope barrier at that level on the beach would provide little protection for the seals. A large area above the mean high water line is currently used for hauling out.

Honorable Mayor and City                    -6-                    December 15, 2006
Council

        The Park and Recreation Department indicated it was unaware until late
November of this year that a CDP was required for the replacement of the rope barrier at
the Children's Pool.[2] Last April, the rope was erected without a permit. Thus, on
December 5, 2006 the City Council became newly apprized that no steps had been taken
to erect the rope barrier pursuant to the April 2006 resolution. At the same time, the City
Council took new action by approving the replacement of the rope barrier at the
Children's Pool beginning on December 15, 2006 rather than January 1, 2007. On
December 11, 2006, NOAA issued a new letter indicating that the rope barrier needs to
be erected by mid-December of this year to protect the seals and the public. As explained
in the Introduction to this memorandum, seal harassment leads to conflicts between
people and loss of essential lifeguard services to conflict resolution.

        Immediate action is required because a normal CDP could only be processed by
mid-January with a more realistic date of mid-March or later. By that time, the pupping
season would be half, if not completely over, and the City Council's action to have the
rope barrier placed from December 15, 2006 to May 15, 2007 would be rendered moot.
The CCC has stated that an ECDP is appropriate for the current Children's Pool situation
where NOAA provided new direction as to the urgency of the rope barrier.

### C.        Procedures and Findings for Emergency Development Approval

        Notice of the emergency work must be given to the CCC and the public. SDMC
§ 126.0718(h). The following findings are required under SDMC section 126.0718(f) for
an ECDP:

    1) A coastal emergency exists that requires action more quickly than would
       be permitted by the normal procedures for acquiring a Coastal
       Development Permit and the *development* can and will be completed
       within 30 days unless otherwise specified in the permit;
    2) Public comment on the proposed coastal emergency action has been
       solicited and reviewed to the extent feasible; and
    3) The proposed emergency work is consistent with the *Local Coastal
       Program*.

---

[2] The CCC's Laurinda Owens provided written confirmation that the an ECDP is appropriate; however, in a phone
conversation, Lee McEachern from the CCC stated that the City should have and did know as early as April of this
year that a CDP was required. Lee stated that with further direction from NOAA, the recent unexpected event
requirement could be met. NOAA Special Agent in Charge, Don Masters, agreed that the replacement of the rope
barrier to protect the seals from this mid-December through mid-May is urgent. His letter is attached hereto as
Attachment B.

Honorable Mayor and City
Council
                                    -7-                          December 15, 2006

In addition, the related finding that it is necessary to protect the public health and safety
to take emergency action to replace the rope barrier without an SDP is required. SDMC
§ 143.0126. As explained below, these findings are supported by the facts.

      First, there is ample evidence that emergency conditions exist as explained in the
Introduction to this memorandum such that the findings can be made for emergency
authorizations under SDMC sections 126.0718 and 143.0126. The City Council, the
CCC, and NOAA have all newly indicated it is important to get the rope barrier up by
December 15, 2006 in order to protect the seals and the public. The regular permitting
process will not allow the replacement of the rope barrier by that time. The rope barrier is
needed immediately to protect public health and safety and to mitigate for damage to life,
health, and essential public services by preventing human-to-human conflicts and
violence, by preventing seal harassment and associated harm to seals and humans, and by
allowing lifeguards to focus on protecting swimmers from danger and drowning. The
rope barrier was previously erected within days of authorization and can be replaced well
within the 30 day limit on completion time. It must be erected by December 15, 2006, or
as soon as possible, and remain up through May 15, 2007.

      Second, the placement of this rope barrier during pupping season and additionally
from December 15th through December 31st and from May 1st through May 15th annually
has been open for public comment extensively. In the last City Council meeting on
December 5, 2006, the Park and Recreation Department presented oral testimony
regarding the need to evaluate expedited permitting procedures in order to effectuate the
City Council's action. Public comment was received on the issue of the permit. The City
Council at the December 5, 2006 meeting directed the Park and Recreation Department
staff to make every effort to get the permits required for the rope placement. Now, City
Council is in legislative recess, and the December 15th date is rapidly approaching. The
California Coastal Commission has indicated that it would be appropriate to take
emergency action to replace the rope barrier as was newly directed by NOAA. Thus, it
would be appropriate for the City to also deem it necessary to authorize an ECDP.

      Third, the replacement of the rope barrier is consistent with the *Local Coastal
Program*. The *Local* Coastal Program is an implementation of the California Coastal Act
on the local level. The Coastal Act provides that the Coastal Zone is a delicately balanced
eco-system and that development needs to be carefully planned to protect the resources.
Cal Pub Resources Code § 30001. In addition, the goals of the Coastal Act are to:

    (a) Protect, maintain, and, where feasible, enhance and restore the overall quality
       of the coastal zone environment and its natural and artificial resources.
    (b) Assure orderly, balanced utilization and conservation of coastal zone
       resources taking into account the social and economic needs of the people of
       the state.
    (c) Maximize public access to and along the coast and maximize public
       recreational opportunities in the coastal zone consistent with sound resources

Honorable Mayor and City                     -8-                        December 15, 2006
Council

      conservation principles and constitutionally protected rights of private
      property owners.
  (d) Assure priority for coastal-dependent and coastal-related development over
      other development on the coast.
  (e) Encourage state and local initiatives and cooperation in preparing procedures
      to implement coordinated planning and development for mutually beneficial
      uses, including educational uses, in the coastal zone.

Cal Pub Resources Code § 30001.5. The state legislature declared that where there are
conflicts between these goals created by proposed development, such conflicts should be
resolved in a way that is "the most protective of significant coastal resources" and
"specific wildlife habitat." Cal Pub Resources Code § 30007.5. Thus, it is consistent with
the Local Coastal Program to replace the rope barrier because it better protects the seals
and their habitat. The public may still access the beach up to the rope barrier, and the
rope will only be erected on a seasonal basis so that it allows the maximum appropriate
public access consistent with sound conservation principles.

     **D.**     **Regular Permit Applications are Required after Emergency Work and for
             Future Rope Barrier Replacements at the Children's Pool**

      The authorization under an ECDP may only be for "the minimum necessary to
stabilize the emergency. In addition, emergency development requires the subsequent
processing of a standard Coastal Development Permit application for any work
authorized on an emergency basis by these procedures." SDMC § 126.0718(b). This
means that the ECDP should only be granted for this December 15, 2006 through May
15, 2007 rope placement. Also, even though the rope may be erected immediately by the
December 15, 2006 date, subsequent processing of a regular CDP is required for the
emergency placement and in advance of all future placements of the rope barrier. *See
also* SDMC § 126.0718(g) (requiring that the subsequent processing of a regular CDP
must be included as a condition on the ECDP).[3]

      Additionally, an emergency exception to the SDP requires that where there are
permanent impacts to environmentally sensitive lands [ESL], an application for a regular
SDP must be submitted within 60 days of the completion of the emergency work.[4]
SDMC § 143.0126(b). Therefore, where this emergency rope replacement is authorized
without an SDP and/or with an ECDP, applications for standard City SDP and CDPs
must also be submitted for the emergency replacement. Additionally, a regular CDP and
an SDP are required for all future rope replacement periods.

---

[3] All of the procedures contained in the SDMC for the processing of the ECDP must be complied with,
even if not specifically addressed herein.
[4] While the installation of the rope barrier is only replaced from December 15th through May 15th, it will be installed
annually on a continuing basis, so it should be assumed for the purposes of the SDP requirement that it will be a
permanent impact.

Honorable Mayor and City                    -9-                        December 15, 2006
Council

## CONCLUSION

Based upon an analysis of the information available at this time, it is clear that an emergency exists within the meaning of the San Diego Municipal Code warranting the placement of the Children's Pool rope barrier by December 15, 2006. Given the existing emergency, no further City Council action is needed at this time to proceed, and, therefore, the Mayor is authorized to place the rope barrier at the Children's Pool by December 15, 2006. A standard Coastal Development Permit application must be submitted for the emergency work and be a required condition on the ECDP. Both a CDP and an SDP will be required for all future rope replacement periods, and the regular application processes must be complied with to effectuate the City Council's December 5, 2006 action.

MICHAEL J. AGUIRRE, City Attorney

By

Nina M. Fain
Deputy City Attorney

NMF:mm:pev
Attachments
cc:     April Penera, Park Planning and Development Deputy Director
        Samir Mahmalji, Project Officer II
ML-2006-32

Exhibit D

(R-2006-856)

RESOLUTION NUMBER R-301368

DATE OF FINAL PASSAGE APRIL 19, 2006

A RESOLUTION OF THE COUNCIL OF THE CITY OF SAN DIEGO TO PLACE A ROPE BARRIER AT THE LA JOLLA CHILDREN'S POOL ANNUALLY DURING HARBOR SEAL PUPPING SEASON.

WHEREAS, on March 21, 2006, the National Oceanic and Atmospheric Agency (NOAA), the federal agency charged with protecting marine mammals under the Marine Mammal Protection Act, requested that the City of San Diego either temporarily close the Children's Pool beach through the end of April or replace the rope barrier that was once in place at the Children's Pool beach. NOAA expressed concerns that despite having placed two of its signs on the beach warning the public to keep a safe distance from hauled out seals, the signs have not prevented actions that could be considered harassment from occurring at the beach, particularly during pupping season; and

WHEREAS, on April 5, 2006, the Natural Resources and Culture Committee determined that a rope barrier during harbor seal pupping season was advisable to protect the marine mammals and the public as well as to prevent violations of the Marine Mammal Protection Act from occurring. The Committee voted 4-0 to recommend to the City Council that the Council replace the rope barrier at the Children's Pool beach during harbor seal pupping season from January 1 though May 1 each year and for the remainder of this year's pupping season; and

WHEREAS, the Environmental Analysis Section of the City of San Diego Department of Development Services has determined that replacement of the rope is exempt from the provisions of the California Environmental Quality Act (CEQA) pursuant to CEQA Guidelines section 15333 because it is a project "not to exceed five acres in size to assure the maintenance,

(R-2006-856)

restoration, enhancement, or protection of habitat for fish, plants, or wildlife;" NOW,

THEREFORE,

BE IT RESOLVED, by the Council of the City of San Diego that the rope barrier at the

Children's Pool beach will be reinstated for the remainder of this year's pupping season and will

be placed at the beach from January 1 through May 1 every year from this point forward.


APPROVED:  MICHAEL J. AGUIRRE, City Attorney


By  _____
      Julie Teel
      Deputy City Attorney

JT:mm
04/06/06
Or.Dept:NR&CC
R-2006-856
MMS#3200

I hereby certify that the foregoing Resolution was passed by the Council of the City of San
Diego at its meeting of April 18, 2006.


                              ELIZABETH S. MALAND
                              City Clerk

                              By_____
                              Deputy City Clerk


Approved: _____        _____
                  (date)                              JERRY SANDERS, Mayor


Vetoed: _____        _____
                  (date)                              JERRY SANDERS, Mayor