1  MICHAEL J. AGUIRRE, City Attorney
   GEORGE F. SCHAEFER,
2  California State Bar No. 139399
       Office of the City Attorney
3        1200 Third Avenue, Suite 1100
         San Diego, California 92101-4100
4        Telephone:  (619) 533-5800
         Facsimile:  (619) 533-5856
5

6  Attorneys for Defendant
   City of San Diego and
7  Mayor Jerry Sanders

8                 UNITED STATES DISTRICT COURT

9                SOUTHERN DISTRICT OF CALIFORNIA

10  ANIMAL PROTECTION AND RESCUE           ) Case No.  07 CV 2320 JM AJB
    LEAGUE a nonprofit corporation, and    )
11  DOROTA VALLI, an individual,           ) **DECLARATION OF SAMIR**
                                           ) **MAHMALJI IN SUPPORT OF THE**
12               Plaintiffs,               ) **OPPOSITION OF THE CITY OF SAN**
                                           ) **DIEGO AND MAYOR JERRY SANDERS**
13          v.                             ) **TO PLAINTIFFS' MOTION FOR A**
                                           ) **PRELIMINARY INJUNCTION**
14  THE STATE OF CALIFORNIA, THE CITY OF)
    SAN DIEGO DEPARTMENT OF PARKS          ) Judge:  Hon. Jeffrey T. Miller
15  AND RECREATION, MAYOR JERRY            ) Court Room:  16
    SANDERS, and DOES  1 TO 100,           ) Magistrate:  Hon. Anthony L. Battaglia
16                                         )
                 Defendants.               )
17  _____)

18        I, Samir Mahmalji, do declare as follows:

19        1.     I work for the City of San Diego as a Project Officer II in the City of San Diego's

20  Engineering & Capital Project Department.

21        2.     I make this declaration based upon my own personal knowledge, except as

22  to those matters set forth in this declaration on information and belief, and as to those matters, I

23
    believe them to be true.  If called upon to testify as to those matters stated in this declaration, I
24
    could and would competently testify to those matters.
25

26        3.     I received a bachelor of science degree in civil engineering from the University of

27  The Pacific in 1984.  I have worked for the City of San Diego since 1987.

28  ///

                                        1

4.     I am currently tasked with securing the necessary state and federal permits for the compliance with the injunction of the Superior Court of California, San Diego County, Super. Ct. No. GIC 826918 which requires, among other things, that, "Defendant City of San Diego is ordered to employ all reasonable means to restore the Children's Pool to it 1941 condition by removing the sand build-up and further to reduce the level of water contamination in the Children's Pool to levels certified by the County of San Diego as being safe for humans."

5.     At Exhibit A to my declaration is a true and correct copy of the City's application to the California Coastal Commission for a permit to dredge Children's Pool Beach.  On behalf of the City of San Diego, I submitted this application for a permit to the Coastal Commission on or about September 27, 2005.  The Coastal Commission has assigned the following permit application number:  06-05-98.

6.     At Exhibit B to my declaration is a true and correct copy of the City's application to the United States Department of the Army for a permit to dredge Children's Pool Beach.  On behalf of the City of San Diego, I submitted this application for a permit to the Army on or about March 13, 2006.  The Army has assigned the following permit application number:  200600022-JMB.

7.     At Exhibit C to my declaration is a true and correct copy of the City's application to the California Regional Water Quality Control Board for a Section 401 water quality certification which is a necessary prerequisite before dredging of Children's Pool Beach can take place.  On behalf of the City of San Diego, I submitted this certification to the Board on or about March 14, 2006.  The  Board has assigned the following application number:  WPC:18-2006051:MPORT.

8.     At Exhibit D to my declaration is a true and correct copy of the minutes of a meeting of September 16, 2005 attended by NOAA and City representatives, including myself.

2

1   Among the NOAA officials at this meeting were Regional Adminstrator McInnis and then NMFS

2   National Director for Protected Resources James Lecky.  Mr. Lecky and Mr. McInnis advised the

3   meeting participants that the City did not need a permit from NOAA in order to dredge Children

4   Pool's Beach.  Mr. Lecky further advised that although such a permit is not necessary, the City

5   could nevertheless request one. Lecky cautioned that if the sand removal operation is going to

6   take place close to the harbor seal pupping season (January through May), "intentional

7   harassment" of the seals will have to start in October or November.  These statements are

9   memorialized in the minutes of the meeting.  Based on these representations by NOAA officials, I

10  have not applied, on behalf of the City, for either an incidental harassment authorization ("IHA")

11  or incidental harassment permit ("IHP") from NOAA for removal of the colony of seals at

12  Children's Pool Beach.

14          9.      At Exhibit E to my declaration is a true and correct copy of a letter of October 17,

15  2005 of Mr. Rodney R. McInnis, the current Regional Administrator of NOAA.

16          10.     Before the Coastal Commission, Army, California Regional Water Quality Control

17  Board can issue permits to allow dredging to take place, an environmental impact document must

18  be prepared and submitted to those agencies.  The City has identified a consultant, Jones &

19  Stokes, to prepare the environmental impact document and is in the process of making the

20  financial arrangements to retain that firm.  It is projected that preparation of the environmental

22  impact document will cost the City at least $250,000.

23          11.     The City's Department of Development Services will be soliciting comments from

24  the resource agencies, including the NOAA, for possible inclusion in the environmental impact

25  document.  Once the environmental impact document of the dredging project is in draft form, I

26  intend to provide a copy to the NOAA.  The consultant and I will confer with the NOAA to

28  ensure that the City is complying with the Marine Mammal Protection Act.

3

12.    Exhibit F is a timeline I have prepared which projects how much time it will take the City to obtain the environmental impact document and secure the necessary state and federal permits for dredging Children's Pool.

13.    For all of the above reasons, I am reasonably certain based on my qualification, training, and experience as an engineer that the City will be unable to carry out the Superior Court's order of dredging Children's Pool Beach for at least 1.5 years and possibly as long as 3 years.

I declare under penalty of perjury under the laws of the United States that the above is true and correct.

Executed this 11th day of January, 2008, at San Diego, California.

By: _____
Samir Mahmalji
City of San Diego Engineer



# EXHIBIT A

STATE OF CALIFORNIA—THE RESOURCES AGENCY                                                    ARNOLD SCHWARZENEGGER, *GOVERNOR*

## CALIFORNIA COASTAL COMMISSION
NORTH COAST DISTRICT OFFICE
710 E STREET, SUITE 200
EUREKA, CA 95501
VOICE (707) 445-7833
FAX (707) 445-7877



## PERMIT APPLICATION INSTRUCTIONS

A completed application includes the APPLICATION FOR COASTAL DEVELOPMENT PERMIT, the appendices to the application, and **Required Attachments**.

- Please answer all questions. If a question is not applicable to your project, indicate "N.A."
- Refer to pages 8 – 9 of the APPLICATION for a list of **Required Attachments**.
- Incomplete applications will not be accepted for filing.
- All exhibits must be legible.

The following checklist is provided for the convenience of applicants in gathering necessary application materials; it is not a complete statement of filing requirements.

|  |  | Page | Item |
|---|---|---|---|
| ☐ | Proof of applicant's interest in the property. | 7 | 1 |
| ☐ | Assessor's parcel map(s) showing the proposed development site and **all** adjacent properties within 100 feet of the property boundary. | 7 | 2 |
| ☐ | **Stamped** envelopes *(no postage meter please)* addressed to neighboring property owners and occupants and other interested parties *and* a list of the same. | 7, 8 | 4, 5 |
| ☒ | Vicinity map. | 8 | 6 |
| ☒ | One set of project plan(s), site plan(s), and applicable other plans. | 8 | 7, 11 |
| ☐ | Copy of any environmental documents (DRAFT AND FINAL EIRs, EISs, NEGATIVE DECLARATION) if prepared for the project and any comments and responses. | 8 | 9 |
| ☐ | Verification of all other permits, permissions or approvals applied for or granted by public agencies. | 8 | 10 |
| ☐ | Copy of geology or soils report (if necessary). | 8 | 11 |
| ☐ | Local approval of the project. | Appendix B | |
| ☐ | Has the Notice of Pending Permit been posted in a conspicuous place? | Appendix D | |
| ☐ | Filing fee. | Appendix E | |

☐ Have you and the agent (if appropriate) signed the application at the appropriate lines on pages 9, 10, and 13?

Revised 9/9/03



# EXHIBIT B

| APPLICATION FOR DEPARTMENT OF THE ARMY PERMIT (33 CFR 325) | OMB APPROVAL NO. 0710-003 |
|---|---|

Public reporting burden for this collection of information is estimated to average 5 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to Department of Defense, Washington Headquarters Service Directorate of Information Operations and Reports, 1215 Jefferson Davis Highway, Suite 1204, Arlington VA 22202-4302; and to the Office of Management and Budget, Paperwork Reduction Project (0710-003), Washington, DC 20503. Please DO NOT RETURN your form to either of those addresses. Completed applications must be submitted to the District Engineer having jurisdiction over the location of the proposed activity.

## PRIVACY ACT STATEMENT

Authority: 33 USC 401, Section 10; 1413, Section 404. Principal Purpose: These laws require permits authorizing activities in, or affecting, navigable waters of the United States; the discharge of dredged or fill material into waters of the United States, and the transportation of dredged material for the purpose of dumping it into ocean waters. Routine uses: Information provided on this form will be used in evaluating the application for a permit. Disclosure: Disclosure of requested information is voluntary. If information is not provided, however, the permit application cannot be processed nor can a permit be issued.

One set of original drawings or good reproducible copies which show the location and character of the proposed activity must be attached to this application (see sample drawings and instructions) and be submitted to the District Engineer having jurisdiction over the proposed activity. An application that is not completed in full will be returned.

### (ITEMS 1 THRU 4 TO BE FILLED BY THE CORPS)

| 1. APPLICATION NO. | 2. FIELD OFFICE CODE | 3. DATE RECEIVED | 4. DATE APPLICATION COMPLETED |
|---|---|---|---|
| | | | |

### (ITEMS BELOW TO BE FILLED BY APPLICANT)

| 5. APPLICANT'S NAME<br><br>City Of San Diego, Park & Recreation Department, | 8. AUTHORIZED AGENT'S NAME & TITLE (an agent is not required)<br><br>N/A |
|---|---|
| 6. APPLICANT'S ADDRESS<br><br>202 C Street M.S. 35,<br>San Diego, CA 92101-3860 | 9. AGENT'S ADDRESS<br><br>N/A |
| 7. APPLICANT'S PHONE NUMBERS WITH AREA CODE<br><br>a. Residence<br>. Business   (619)236-7342  Contact: Samir Mahmalji | 10. AGENT'S PHONE NUMBERS WITH AREA CODE<br><br>a. Residence<br>b. Business   N/A/ |

### STATEMENT OF AUTHORIZATION

11.

I hereby authorize _____ to act in my behalf as my agent in the processing of this application and to furnish, upon request, supplemental information in support of this permit application.

| APPLICANT'S SIGNATURE | DATE |
|---|---|

### NAME, LOCATION, AND DESCRIPTION OF PROJECT OR ACTIVITY

12. PROJECT NAME OR TITLE (see instructions)

La Jolla Children's Pool

| 13. NAME OF WATERBODY, IF KNOWN (if applicable)<br><br>Pacific Ocean | 14. PROJECT STREET ADDRESS (if applicable)<br><br>N/A |
|---|---|

15. LOCATION OF PROJECT

| San Diego | CA |
|---|---|
| COUNTY | STATE |

16. OTHER LOCATION DESCRIPTIONS, IF KNOWN (see instructions)

Located west of Coast Boulevard in La Jolla, CA

17. DIRECTIONS TO THE SITE

From downtown San Diego, I5 north to the La Jolla Pkwy west exit, merge onto La Jolla Pkwy(1.2 Mi), turn slight left onto Torrey Pines Road(0.0 mi), turn right onto Prospect Place(0.2 mi), Prospect place becomes Prospect Street(0.4 mi), turn right onto Jenner Street (0.1 mi), Jenner Street becomes Coast Boulevard. Children's pool is below lifeguard tower across from Casa De Manana.

ENG FORM 4345 – ONLINE

CESPK-CO-R

**18. NATURE OF ACTIVITY** (Description of project, include all features)

Removal of approximately 3000 C.Y. of sand from the Children's Pool beach to return the beach to the 1941's configuration as per the court order. Sand will be disposed of to the west & southwest of the breakwater . Two sites have been identified.

**19. PROJECT PURPOSE** (Describe the reason or purpose of the project, see instructions)

Sand has accreted in the Children's Pool area behind the breakwater since 1931. Presently, the sand has advance all the way close to the end of the breakwater and it is becoming less safe for swimming due to the strong rip currents. Additionally the bateria level is high in the water due to the fecal coliform feom the harbor seals.

## USE BLOCKS 20-22 IF DREDGED AND/OR FILL MATERIAL IS TO BE DISCHARGED

**20. REASON(S) FOR DISCHARGE**

The sand excavated from the children's pool will be disposed of to the west and south west of the breakwater. This way sand will be kept in the surrounding area.

**21. TYPE(S) OF MATERIAL BEING DISCHARGED AND THE AMOUNT OF EACH TYPE IN CUBIC YARDS**

Approximately 3000 C.Y.

**22. SURFACE AREA IN ACRES OF WETLANDS OR OTHER WATERS FILLED** (see instructions)

N/A

**23. IS ANY PORTION OF THE WORK ALREADY COMPLETE?  YES ◯    NO ◉    IF YES, DESCRIBE THE WORK**

**ADDRESSES OF ADJOINING PROPERTY OWNERS, LESSEES, ETC. WHOSE PROPERTY ADJOINS THE WATERBODY** (If more than can be entered here, please attach a supplemental list)

See attached

**25. LIST OF OTHER CERTIFICATIONS OR APPROVALS/DENIALS RECEIVED FROM OTHER FEDERAL, STATE, OR LOCAL AGENCIES FOR WORK DESCRIBED IN THIS APPLICATION**

| AGENCY | TYPE APPROVAL* | IDENTIFICATION NUMBER | DATE APPLIED | DATE APPROVED | DATE DENIED |
|--------|----------------|------------------------|--------------|---------------|-------------|
| Coastal Commission | | Permit # 6-05-098 | 9/28/05 | | |

* Would include but is not restricted to zoning, building and flood plain permits.

**26.** Application is hereby made for a permit or permits to authorize the work described in this application.  I certify that the information in this application is complete and accurate.  I further certify that I possess the authority to undertake the work described herein or am acting as the duly authorized agent of the applicant.

| *Samuel L.* | 3/13/06 | | |
|---|---|---|---|
| SIGNATURE OF APPLICANT | DATE | SIGNATURE OF AGENT | DATE |

This application must be signed by the person who desires to undertake the proposed activity (applicant) or it may be signed by a duly orized agent if the statement in block 11 has been filled out and signed.

18 U.S.C. Section 1001 provides that: Whoever, in any manner within the jurisdiction of any department or agency of the United States knowingly and will fully falsifies, conceals, or covers up any trick, scheme, or disguises a material fact or makes any false, facticious, or fraudulent statements or representations or makes or uses any false writing or document knowing same to contain any false, fictitious or fraudulent statements or entry, shall be fined not more than $10,000 or imprisoned not more than five years or both.

ENG FORM 4345 – ONLINE                                                                    CESPK-CO-R



City of San Diego
**Development Services**
1222 First Ave., MS-301
San Diego, CA 92101-4154
(619) 446-5000
www.ci.san-diego.ca.us/development-services

# General Application

Approval Type: • **Construction Permits:** □ Structure □ Grading □ Public Right-of-Way; • Electrical □ Plumbing/Mechanical • □ Sign • □ Subdivision □ Demolition/Removal • **Development Permits:** □ Neighborhood Use ☒ Coastal □ Neighborhood Development □ Site Development □ Planned Development □ Conditional Use □ Variance • □ Other _____

| 2. Project Address: *Include Building or Suite No.*  La Jolla | Project Title: | Project No. *For City Use Only* |
|---|---|---|
| Children's Pool Located West of Coast Blvd. | La Jolla Children's Pool - Joint Use | 71362 |

| Lot No. | Block No. | Subdivision Name | Unit No. | Map No. |
|---|---|---|---|---|
| | | N/A | | |

| Existing Use: Beach | Parcel No. N/A | Parcel Map No. | Assessor's Parcel No. |
|---|---|---|---|

| Project Description: Remove approx. 3000 C.Y. of Sand from the beach area to return the beach to that Present of 1940's. | Total Floor Area |
|---|---|

3. Designer name    Hani ELWani    Address 2166 Avenida De La Playa, Suite E    Fax Number

| City La Jolla | State CA | Zip Code 92037 | Telephone (858) 459-0008 | License Number |
|---|---|---|---|---|

4. Applicant Name *Please check one* □ Contractor □ Agent for Contractor ☒ Owner □ Agent for Owner    Fax Number
City of San Diego, Park & Recreation Dept. (Contact SAMIR MAHMALJI (619) 236-7342)

| Address 202 'C' Street, M.S. 35 | City San Diego | State CA | Zip Code 92101-3860 | Telephone (619) 236-7342 |
|---|---|---|---|---|

5. Property Owner/Lessee Tenant Name *Please check one* ☒ Owner □ Lessee or Tenant    Fax Number

| Address Same As Above | City | State | Zip Code | Telephone |
|---|---|---|---|---|

6. Contractor Name *(not required for development permits)*    Fax Number

| Address N/A | City | State | Zip Code | Telephone |
|---|---|---|---|---|

| State License No. | License Class | City Business Tax No. |
|---|---|---|

**Part I**

Licensed Contractor's Declaration: I hereby affirm that I am licensed under provisions of Chapter 9 (commencing with Section 7000) of Division 3 of the Business and Professions Code, and my license is in full force and effect.

| Signature | Title | Date |
|---|---|---|

7. Workers' Compensation Declaration: I hereby affirm under penalty of perjury one of the following declarations:

□ a. I have and will maintain a certificate of consent to self-insure for workers' compensation as provided by Section 3700 of the Labor Code, for the performance of the work for which this permit is issued.

□ b. I have and will maintain workers' compensation, as required by Section 3700 of the Labor Code, for the performance of the work for which this permit is issued. My workers' compensation insurance carrier and policy number are:
Insurance Company ___ N/A ___ Policy No. ___ Expiration Date ___
(This section need not be completed if the permit is for one hundred dollars ($100) or less.)

□ c. I certify that in the performance of the work for which this permit is issued, I shall not employ any person in any manner so as to become subject to the Workers' Compensation Laws of California, and agree that if I should become subject to the workers' compensation provisions of Section 3700 of the Labor Code, I shall forthwith comply with those provisions.

| Signature | Date |
|---|---|

Warning: Failure to secure workers' compensation coverage is unlawful, and shall subject an employer to criminal penalties and civil fines up to one hundred thousand dollars ($100,000), in addition to the cost of compensation, damages as provided for in Section 3706 of the Labor Code, interest, and attorney's fees.

8. Owner-Builder Declaration: I hereby affirm that I am exempt from the Contractor's License Law for the following reason [Sec. 7031.5, Business and Professions Code: Any city or county which requires a permit to construct, alter, improve, demolish, or repair any structure, prior to its issuance, also requires the applicant for such permit to file a signed statement that he is licensed pursuant to the provisions of the Contractor's License Law (Chapter 9, commencing with Section 7000, of Division 3 of the Business and Professions Code) or that he is exempt therefrom, and the basis for the alleged exemption. Any violation of Section 7031.5 by any applicant for a permit subjects the applicant to a civil penalty of not more than five hundred dollars ($500)]:

□ I, as owner of the property, or my employees with wages as their sole compensation, will do the work and the structure is not intended or offered for sale (Sec. 7044, Business and Professions Code: The Contractor's License Law does not apply to an owner of property who builds or improves thereon, and who does such work himself or through his own employees, provided that such improvements are not intended or offered for sale. If, however, the building or improvement is sold within one year of completion, the owner-builder will have the burden of proving that he did not build or improve for the purpose of sale.).

□ I, as owner of the property, am exclusively contracting with licensed contractors to construct the project (Sec. 7044, Business and Professions Code: The Contractor's License Law does not apply to an owner of property who builds or improves thereon, and contracts for such projects with contractor(s) licensed pursuant to the Contractor's License Law).

□ I am exempt under Section _____ B.&P.C. for this reason: _____

| Signature | Date |
|---|---|

**Part II**

9. Construction Lending Agency: I hereby affirm that there is a construction lending agency for the performance of the work for which this permit is issued (Sec. 3097, Civ. C).

| Lender's Name | Lender's Address |
|---|---|

Applicant's Signature

| Signature Samir M. | Date 4/26/05 |
|---|---|

**Part III**

*CONTINUED ON REVERSE SIDE*

This information is available in alternative formats for persons with disabilities.
To request this information in alternative format, call (619) 446-5446 or (800) 735-2929 (TT)

DS-3032 (02-01)



# EXHIBIT C

# California Regional Water Quality Control Board San Diego Region

Over 50 Years Serving San Diego, Orange, and Riverside Counties Recipient of the 2004
Environmental Award for Outstanding Achievement from USEPA

9174 Sky Park Court, Suite 100, San Diego, California 92123-4340 (858)
467-2952' Fax (858) 571-6972 http://www.waterboards.ca.gov/sandiego

an C. Lloyd, Ph.D.
*Secretary for Environmental Protection*

Arnold Schwarzenegger
*Governor*

## APPLICATION FOR CLEANWATER ACT §401 WATER QUALITY CERTIFICATION

All applicants must provide a complete and detailed response to all sections of the application or the application will be deemed incomplete. Responses by reference shall indicate the specific document(s) and page number(s) (include copies of the entire document). Indicate by Not Applicable (NA) all sections that do not apply, along with an explanation of why the project is exempt from the section.

### APPLICANT/AGENT INFORMATION

| APPLICANT'S NAME | AUTHORIZED AGENT'S NAME AND TITLE |
|---|---|
| City of San Diego, Park & Recreation Department | N/A |

| APPLICANT'S ADDRESS | AGENT'S ADDRESS |
|---|---|
| 202 C Street<br>San Diego, CA 92101-3860 | N/A |

| APPLICANT'S PHONE, FAX, E-MAIL | AGENT'S PHONE, FAX, E-MAIL |
|---|---|
| (619) 236-7342<br>FAX:  (619) 525-8224 | N/A |

**STATEMENT OF AUTHORIZATION**

I hereby authorize _____ N/A _____ to act in my behalf as my agent in the processing of this application, and to furnish upon request, supplemental information in support of this permit application.

_____     _____
Applicant's Signature                                         Date
(This must be signed by the applicant, not the authorized agent)

## OWNERSHIP

Does the applicant own the project site?    Yes  X          No  _____

If the project site is not owned by the applicant, provide the name, address, and phone number for the property owner as well as evidence that the applicant has the necessary approvals to construct the project at this location.

Does the applicant plan on selling all or a portion of the site after receiving the necessary approvals and prior to starting construction? Yes  _____    No    X

If yes, provide the name, address, and phone number of the future land owner, if available

## PROJECT/ACTIVITY INFORMATION

### PROJECT NAME OR TITLE

La Jolla Children's Pool – Joint Use

### AFFECTED WATER BODY(IES) (Provide a clear written description and clearly indicate affected water body(ies) on maps of appropriate scale.)

See Grading Plan attached (attachment #9)

Are any of the waterbody(ies) considered isolated per SWANCC?
Yes  X  No  _____

### LOCATION OF PROJECT (Attach map(s) showing project location.)
Street address

| Latitude | Longitude | |
|---|---|---|
| Assessors Parcel Number(s) | N/A | |
| County | City | San Diego, CA |

### DIRECTIONS TO PROJECT SITE
From downtown San Diego, I-5 North to La Jolla Parkway exit, merge onto La Jolla Parkway (1.2 miles), turn left into Torrey Pines Road (0.9 miles), turn right onto Prospect Place (0.2 miles), Jenner Street becomes Coast blvd. Children's Pool is below Lifeguard Tower across from the Casa de Manana.

### PROJECT PURPOSE (Describe the reason or purpose for the overall project.)
To excavate approximately 3000 c.y. of sand from the Children's Pool beach to return the beach to the 1941 configuration.  See feasibility study & grading plans attached.

2 of 1 0

Ver: April 2005

**DESCRIPTION OF ACTIVITY** (Provide a full, technically accurate description of the entire activity and associated environmental impacts. Include proposed start and completion dates and dates for major phases of the project. If reference is made to documents submitted with this application, provide the specific document title and page numbers.)

See Feasibility Study attached

**AVOIDANCE AND MINIMIZATION OF IMPACTS** (Describe efforts to avoid and minimize direct impacts to waters of the U.S.)

See Feasibility Study attached

**PROTECTION OF WATER QUALITY - CONSTRUCTION** Describe efforts to avoid and minimize impacts to water quality during project construction. Include a discussion of erosion and sediment control measures, project scheduling, flow diversions, staging and material storage yards.

See Feasibility Study attached

**PROTECTION OF WATER QUALITY - <u>POST-CONSTRUCTION</u>** Describe efforts to avoid and minimize impacts to water quality following project construction.

. Include a description of each proposed land use (e.g., residential, street, commercial) identify the expected pollutants, specific post-construction BMPs, their effectiveness with regards to the expected pollutants, maintenance requirements, and party(ies) responsible for maintenance*.

. Also include a detailed description of how the project will address post-construction changes in flow rates,

velocities, and shear stresses.

. Include a figure showing the location and type of all post-construction BMPs.

See Feasibility Study attached

* The applicant must submit proof with this application that the parties designated as responsible for BMP maintenance have accepted the maintenance responsibility and are aware of the maintenance requirements

**PROTECTION OF WATER QUALITY - IMPAIRED WATER BODY(IES).**
Are any of the water body(ies) within the project area, including impacted and preserved water body(ies),
list as impaired on the Clean Water Act Section 303(d) list? Yes - No

Are any of the water body(ies) within the project area a tributary to a Clean Water Act Section 303(d)
water body(ies)?
 Yes- No
Are any of the water body(ies) within the project area the subject of an adopted Total Maximum Daily Load
(TMDL)? Yes- No

If yes, provide a detailed description of the actions that will be taken to ensure that the project does not
contribute additional pollutants to the water body(ies). Include a discussion of the pollutants causing the
impairment, potential sources of pollutants, and construction and post-construction BMPs.

---

**FILL INFORMATION** (indicate in ACRES and LINEAR FEET the proposed waters to be impacted, and
identify the impacts(s) as permanent and/or temporary for each water body type listed below.) For
purposes of this application, fill is defined as "rock, sand, soil, clay, plastics, construction debris, wood
chips, overburden from mining or other excavation activities, and any materials used to create any
structure or infrastructure in waters of the U.S."

| Water Body Type* | Permanent Impact | | Temporary Impact | |
|---|---|---|---|---|
| | Acres | Linear Feet | Acres | Linear feet |
| ACOE vegetated Waters | | | | |
| ACOE unvegetated Waters | | | | |
| Lake/Reservoir | | | | |
| Ocean/Estuary/Bay | | | | |
| Isolated waters (per SWANCC) | | | | |
| CDFG jurisdiction only | | | | |

* Provide a detailed description of the vegetated and unvegetated water body(ies) in an attachment.
Include the plant community, type of water body (e.g., ephemeral, intermittent, perennial), designated
beneficial uses, and a discussion of functions. Attach a copy of the completed wetland delineation to this
application.

---

**DREDGING** Provide a description of the dredging activity and specific location, cubic yards of material to
be dredged, disposal location and necessary approvals, dewatering methods, stockpile location, best
management practices, and reason for dredging.


Excavating approximately 3,000 C.Y. (see Grading Plans, attachment #9, as well as Feasibility
Study)

## OTHER LICENSES/PERMITS/AGREEMENTS

**OTHER APPROVALS** List all applicable federal, state, and local permits, licenses, and agreements that will be required for any construction, operation, maintenance, or other actions associated with the project. Include permits from CDFG, ACOE (include permit number), RWQCB, California Coastal Commission, flood control agency, local planning agencies, etc. include date of application and status (e.g., pending, approved) of each. Attach copies of all draft or final documents and copies of CDFG and ACOE applications.

| Agency | Contact (Include phone number, email) | License/Permit/Agreement | Date Applied | Status |
|---|---|---|---|---|
| CCC | Lurinda Oldens (619) 767-2370 | #6-05-98 | | Under review (see attached 6 & 8) |
| ACOE | Jeannette Baker (858) 674-5385 | | | (See attachment 6 & 8) |
| NMFS | Rod McInnis (562) 980-4005 | | | (See attachment 6) |
| CADFG | Marilyn Fluharty (858) 467-4231 | | | (See attachment 6) |
| USFWL | Carolyn Liberman (760) 431-9440 | | | (See attachment 6) |

## COMPENSATORY MITIGATION

Is compensatory mitigation proposed? Yes _____    No __X__

**For all mitigation areas, provide a draft mitigation plan that includes, but is not limited to the information contained in Attachment 1.**

Indicate in ACRES and LINEAR FEET (where appropriate) the total quantity of waters of the United States proposed to be Created, Restored, Enhanced, or Preserved for purposes of providing Compensatory Mitigation.

| Water Body Type/Plant Community Type | Created | Restored | Enhanced | Preserved |
|---|---|---|---|---|
| Pacific Ocean | 0-637 Ac. | 0-637 Ac. | 0-637 Ac. | |
| | | | | |

Note: Creation is defined as creating waters of the U.S. where none have previously existed; restoration is restoring waters of the U.S. where they have previously existed but have since been eliminated; enhancement is improving existing waters of the U.S. (e.g., removing exotic species and replanting with natives); and preservation is protecting an area in perpetuity and place by a conservation easement, deed restriction, or other legal instrument

Is the mitigation site owned by the applicant?    Yes _____    No_____

(If no, provide the name, address, and phone number of the land owner and evidence (e.g., agreements, contracts, etc.) that the applicant has the necessary approvals to implement mitigation at this location. If the land is to be purchased, provide the expected date that the purchase will be complete.)

**MITIGATION BANK/IN-LIEU FEE PROGRAM** (If proposed)

Mitigation Bank/In-Lieu Fee Name:

Name of Mitigation Bank/In-Lieu Fee Operator:

Office Address of Operator/Phone Number:

Mitigation Bank/In-Lieu Fee Location (Latitude/Longitude, County, and City):

Mitigation Area (acres or linear feet) and cost (dollar):

## APPLICATION FEE

**FILING FEE** A fee deposit of $500.00 is required to be submitted with this application. Additional fees, based on the extent of impacts, may be due. A fee schedule and calculator can be found at: http://wvvw.swrcb.ca.Qov/rwqcb9/programs/401cert.html

Is check payable to the "State Water Resources Control Board" attached? Yes - No

Check No. _____    Amount _____

## CALIFORNIA ENVIRONMENTAL QUALITY ACT (CEQA)

Document Type/Title <u>Development Services still reviewing application to determine what type of document is required</u>

Lead Agency and Contact Information (name, address, phone number)
<u>Mike Westlake, PH # (619) 446-5220</u>

State Clearing House Number: _____

Has the document been certified/approved or has a Notice of Exemption been filed? Yes - No (If yes, include a copy of the certification. If no, provide the expected approval date.)

Is this project considered an "emergency" pursuant to CEQA? Yes _____ No __X__

Include a copy of the draft or final CEQA document with this application.

Note: The Regional Board is required to comply with CEQA before issuing a certification. Section 401 certification will **not** be granted without a certified CEQA document.

## ADDITIONAL INFORMATION

Has any portion of the work been initiated? Yes _____ No _____

If yes, describe the initiated work and explain why it was initiated prior to obtaining a permit; indicate whether any enforcement action has been taken against the project.

**PAST/FUTURE IMPACTS** (Briefly list/describe any projects carried out in the last 5 years or planned for implementation in the next 5 years that are in any way related to the proposed activity or may impact the same receiving body of water. Include actual or estimated adverse impacts.)

See Feasibility Study attached

**SIGNATURE**

I herby certify under penalty of perjury that the information provided in this application and in any attachments are true and accurate to the best of my knowledge. I further certify that I possess the necessary authority to undertake the work described in this application.

*Samer M.*
_____
Applicant's Signature
(This must be signed by the applicant, not the authorized agent)

3/14/06
_____
Date

Attach the appropriate fee and any additional documents and submit this application to:

California Regional Water Quality Control Board, San Diego
Attn: 401 Water Quality Certification
9174 Sky Park Court, Suite 100
San Diego, CA 92123



# EXHIBIT D



# THE CITY OF SAN DIEGO

PARK & RECREATION

DATE:        September 20, 2005

FROM:        Samir Mahmalji, Project Manager, City Of San Diego

PARK PLANNING &
DEVELOPMENT DIVISION

TO:          Attendees

SUBJECT:     September 16, 2005 Meeting Minutes

RE:          La Jolla Children's Pool, held at the National Oceanic & Atmospheric
             Administration (NOAA)/National Marine Fisheries Service (NFMS) offices in
             Long Beach

**ATTENDANCE:**

Samir Mahmalji, City of San Diego, Parks & Recreation, Project Manager, (619) 236-7342
April Penera, City of San Diego, Parks & Recreation, Deputy Director, (619) 525-8265
Shannon Thomas, City of San Diego, Deputy City Attorney, (619) 533-5824
Jim Lecky, NOAA, NMFS, National Director Protected Resources (301) 713-2332
Rick Hawkins, NOAA, NMFS,OLE, (562) 980-4052
Otha Easley, NOAA, NMFS, OLE, Acting SAC, (562) 980-4050
Scott Hill, NOAA, NMFS, SWR, (562) 980-4029
Rod McInnis, NOAA, NMFS, Regional Administrator, South West Region, (562) 980-4005
Michelle Z̶w̶o̶w̶, NOAA, NMFS, OLE, (619) 525-8265

A meeting was held on September 16, 2005, between the City of San Diego (City) and
NOAA/NMFS to discuss the appropriate actions that are needed to return the La Jolla Children's
Pool to the year 1941 configuration in order to comply with the court order in the O'Sullivan
case. Specifically, the City needed to determine what appropriate permits are required from
NOAA/NMFS to excavate the sand from the Children's Pool.

**DISCUSSION**

April Penera, Deputy Director of Park & Recreation Department, gave a presentation on the La
Jolla Children's Pool situation including the latest Court Judgment.  She further explained that
the Judge has ordered the City to return 60 days (from August 26, 2005), with a plan and
schedule showing how the City intends to accomplish the task in 6 months (from August 26,
2005).

April explained it was the City's goal to meet with NOAA/NMFS regarding the dispensation of
the seals first, since the other agencies in the past have deferred the seal issue to them as the
enforcer of the Marine Mammal Protection Act (MMPA), prior to meeting with the other

**Park Planning and Development Division**
Park and Recreation • Balboa Park • San Diego, CA 92101
Tel (619) 525-8222  Fax (619) 525-8224
Mailing Address: 202 C Street, MS 35 • San Diego, CA 92101-3860


DIVERSITY
BRINGS US TOGETHER

resource agencies. She then intends to meet with the California Coastal Commission, State Department of Fish & Game, U.S. Fish and Wildlife Service, U.S. Army Corp of Engineers and the San Diego Regional Water Quality Board with respect to all the other agency concerns regarding the project. The City would then take the information from this meeting (these Meeting Minutes) to the other permitting agencies and discuss their conditions. The City would then tailor the project around the concerns of the permitting agencies to ensure regulatory compliance and to show the Judge the City's good faith effort to speed the process along.

Samir Mahmalji (Park & Recreation) explained that City Staff met with a contractor to determine the means and methods of work, including the amount of material to be excavated and the type of equipment expected to be used. A copy of the plan, profile & equipment to be used was distributed to the group. Details are as follows:

- The proposed project scope is to excavate approximately 3,000 cubic yards of sand from the Children's Pool and place the sand just west of the breakwater in a beach sandy area (not the rock area) that is above the Mean High High Water Line. The City hired a biologist to locate the area for dumping and provide a technical report on the impact for review. After the sand is deemed clean via testing, and it is dumped as noted, the City intends to have the current wash the sand to sea where the current could redistribute the sand by natural means. However, it was noted that if the sand relocation became an issue, the City could haul the material off site. The City does not want the issue of where to dump the excess sand to be detrimental to the timeline. The amount of material to be excavated is between 250 cubic yards to 500 cubic yards a day. The actual amount will depend on the tide and the start and finish time of the work.
- The City intends to perform the work during the day, no night work is planned.
- The City also intends to start work sometime between 7 a.m. and 9 a.m., preferably when the seals are out foraging.
- The City will build up a berm with sand along the waters edge. This will allow the work to commence without current/water infiltration. It also will likely keep the seals confined from hauling out up high along the beach toward the lifeguard tower and restrooms. However, the City acknowledged that if seals continued to lie out on the beach by between 8 a.m. to 9 a.m., they intended to take action to flush them into the water. The City would like assistance from NOAA/NMFS on how to accomplish this safely (for humans and the seals).
- The City intends to have 24 hour security.
- The City feels the work will take about 4 to 6 weeks to complete once the area is set up.
- Staging will occur on the beach.
- Fueling and such will be properly contained with Best Management Practices monitored by the City.
- Coordination with the Lifeguards for life and rescue will be done.

Additional items noted to NOAA/NMFS by the City included discussions about the existing sluiceways. There are four sluiceways in the breakwater that, in the past, have been plugged. The original field engineer's notes stated that when the sluiceways were open, the wave action was strong and that when they were closed, it was noticed that the beach area filled in with sand. The notes state that the beach users liked having more beach, so they remained closed for some

time. It is unknown why they were permanently closed, except that there are unsubstantiated rumors that a child was drowned by getting stuck in them. They have since been buried with sand. By opening the sluiceways, there is some logic that the beach area and sand removal can naturally balance out and preclude the need for future excavation actions. However, the City would have to analyze the safety issues that arise from this action. Therefore, it will likely be looked at as a Phase II project. This will likely not affect NOAA/NMFS if seals are no longer hauling out on the beach. The City will keep them advised.

April also noted that the determination of the type of environmental document the City needs to prepare for the project for compliance with the California Environmental Quality Act (CEQA) is underway. She noted that the Development Services Department (DSD), who is a department in the City independent of her office and who handles the drafting of CEQA documents, called NOAA about a month ago for information and was told the area is an "official rockery." Lecky and McInnis both noted the statute does not have a definition for an official rockery. April stated that is what she explained to the DSD staff based upon Lecky's past testimony at City Council; however, NOAA is the guiding agency and it is really up to NOAA to tell staff the correct information. McInnis asked that calls on this project be referred to Cathy Campbell of his office to ensure accurate information is being given on the matter. Cathy can be reached at (562)980-4060. April asked NOAA what permits are required and what their issues are with the proposed project.

Jim Lecky stated that NOAA's position is that the City can authorize themselves, under Section 109(h) of the Marine Mammal Protection Act, to remove the seals and excavate the sand for the following reasons:

- Health & water quality issues
- Safety of animals and humans
- Court order requires the City to return the beach to human use under the Trust
- Restore the beach for swimming purposes

Jim added that no permits are required under 109(h) and asked for the City to formally send a letter to NOAA/MNFS notifying NOAA/NMFS that the City intends to exercise its authority under 109(h), and seeking NOAA's/NMFS's technical assistance. Jim stated that they will officially acknowledge the City's letter and offer to provide technical assistance in dealing with the seals.

Jim stated that a permit is not necessary (see above) but the City could request a permit of them. If the City took the permit application approach, approval would take NOAA/NMFS 6-9 months (to process).

Jim Lecky stated that City officials (not the public) can harass the seals before, during and after construction operations under the 109(h) rule. However, if the sand removal operation is going to be done close to the pupping season (starts in January and ends around May), the harassment will need to start in October or November.

Rick Hawkins from NOAA/MNFS asked what would happen if a seal gets trapped behind the sand berm that is proposed to be constructed during the construction operation. Samir stated that it is hoped that the berm will deter the seals from going up high onto the beach. However, the contractor is going to have at least one and maybe two security guards at the site full time and they would call the designated City Official when necessary to get the seal back to the water.

Rod McInnis from NOAA/NMFS asked if the excavated sand that is going to be placed west of the breakwater is going to be clean sand. Samir indicated that the City will excavate the clean sand first and place it west of the breakwater, or the City might excavate the polluted sand and let it dry for few days so it will be clean sand. A test will be done on the sand by biologists before we place the sand west of the breakwater to insure it is clean sand.

Jim Lecky asked if the City was not able to get permitting from the other agencies within the six months period, what would happen. Shannon Thomas from the City Attorney's Office read the order which states that no state or federal law should be broken. The City will have to state to the judge what the other agencies require as far as permits and time needed to review the permits by October 27, 2005.

Michelle from NOAA/NMFS asked if she can place their sign on the beach. It was decided that the City will ask the Judge on October 27, 2005 if that is appropriate. The City took a sign to show the judge.

Action:
- The City will send a letter to NOAA/NMFS requesting to utilize Section 109(h) of the MMPA
- NOAA/NMFS will respond to the letter ASAP agreeing with our request
- NOAA/NMFS will provide technical assistant to the City in utilizing 109(h)

If there are any conflicts or corrections, please advise our office in writing within five (5) days of receipt of this letter; otherwise, these notes will be deemed correct.


April Penera, P.E.
Deputy Director
Park and Recreation Dept
City of San Diego

Rod McInnis
Regional Administrator
South West Region
NOAA/NMFS


Prepared by:   Samir Mahmalji
Distribution:   All Attendees



# EXHIBIT E

OCT 17 '05  08:06AM NMFS SWR PRD



**UNITED STATES DEPARTMENT OF COMMERCE**
**National Oceanic and Atmospheric Administration**
NATIONAL MARINE FISHERIES SERVICE

Southwest Region
501 West Ocean Boulevard, Suite 4200
Long Beach, California 90802- 4213

In response refer to:
151422SWR2005PR20267:CEC

OCT 17 2005

April Penera
City Manager's Office
City of San Diego
202 "C" Street
San Diego, California 92101

Dear Ms. Penera:

I am sending this letter in response to the September 26, 2005, letter from Shannon Thomas, Deputy City Attorney of the City of San Diego, notifying the National Marine Fisheries Service (NMFS) that the City of San Diego intends to exercise its authority under section 109(h) of the Marine Mammal Protection Act (MMPA), 16 U.S.C. § 1379(h), to intentionally harass harbor seals at Children's Pool Beach in La Jolla, CA.

Section 109(h) of the MMPA authorizes Federal, State or local governments to intentionally take marine mammals, if the taking is done in a humane manner and is for: (a) the protection or welfare of the mammal; (b) the protection of the public health and welfare; and (c) the nonlethal removal of nuisance animals. This authority is limited to Federal, State or local government officials or employees taking marine mammals in the course of their duties as an official, employee, or designee.

My understanding based on our meeting with you on September 16, 2005, is that the City of San Diego intends to excavate sand from Children's Pool Beach in order to restore the beach for exclusive human use and that the City will be taking further actions as necessary to permanently exclude marine mammals from Children's Pool Beach in order to ensure the beach is safe for human use. NMFS agrees that the MMPA allows the City to restore the beach for exclusive human use provided the City determines one or more of the above provisions of section 109(h) apply and can document the decision. No formal approval or permit is needed in order for the City to take action under section 109(h).

The City will be required to report every six months to the Secretary of Commerce regarding any take of marine mammals carried out under authority of section 109(h). Generally, the report must include a description of: 1) the animal(s) involved; (2) the circumstances surrounding the taking; 3) the method of taking; 4) the name and official position of the official or employee involved; 5) the disposition of the animal, including in cases where the animal has been retained in captivity, a description of the place and means of confinement and the measures taken for its maintenance and care; and 5) such other information that the Secretary may require. See 50 CFR 216.22(b).

If the sand removal operations are expected to occur during harbor seal pupping season (January through April), then NMFS recommends the City consider removing the animals (in compliance with section 109(h)) from the area by November 2005 to ensure they have left the area before the beginning of pupping season.

NMFS appreciates the opportunity to provide guidance regarding the City's responsibility and authority under the MMPA and looks forward to providing technical assistance as the City moves forward with this project.

Sincerely,

Rodney R. McInnis
Regional Administrator

cc:  Shannon Thomas, Office of the City Attorney



# EXHIBIT F

# La Jolla Children's Pool Dredging, Tentative Schedule
## January 10, 2008

The estimated schedule for the remaining work to dredge the Children's Pool (This is based on the normal process time):

| Activity | Start Date | Finish Date | Comments |
|---|---|---|---|
| Identify Funds for the project | 1/08 | 2/08 | We need $475,000 to complete the EIR & obtain all the necessary permitting from. |
| Prepare a 1472 to amend the As Needed Consultant agreement. | 1/08 | 4/08 | |
| Consultant negotiation / prepare consultant agreement | 4/08 | 5/08 | |
| Award consultant contract and agreement (1544) | 5/08 | 6/08 | |
| Process the PO for the consultant & Issue NTP | 6/08 | 6/08 | One week process time |
| Draft EIR (Consultant to complete the necessary technical reports, plans, coordinate with all the resource agencies and obtain the necessary permits (Army Corps of Engineers, Regional Water Quality Control Board, Coastal Commission, Fish & Games, fish and wildlife).Additionally the consultant needs to complete a site development permit from the Development Services Department. | 7/08 | 7/09 | EIR usually takes approximately 12 months to prepare depending on the complexity of the project. |
| Forward the local permits and draft EIR to the resource agencies. | 8/09 | 8/09 | |
| **Coastal Commission:** Once they receive the draft EIR they will start their review process and public hearings. | 9/09 | * | * Unknown at this time, this could take from a year to two years. |
| The project needs to be heard and approved by the Coastal Commission. The next meetings are schedule in May 2008 (San Pedro), Oct 2008 (San Pedro), and in November 2008 (San Diego). | | | |
| **Army Corps of Engineers:** Once they receive the draft EIR they will start their review process and public hearing. | 9/09 | * | * Unknown at this time, this could take from a year to two years. |

| Activity | START DATE | FINISH DATE | Comments |
|---|---|---|---|
| Regional Water Quality Control Board: Once they receive the draft EIR they will start their review process and public hearing. | 9/09 | * | * Unknown at this time, this could take from a year to two years. |
| Finalize the EIR report | | | 3 Weeks |
| Certify the EIR | | | 4 Weeks |
| Advertise & Award | | | 5-6 month process |
| Construction Phase The construction phase has to start between September to December 15th | | | 4 months depending on the final scope of work |

**Summary: The EIR process & obtaining the necessary permits from the resource agencies could take from 1.5 to 3 years under the normal process.**