1  Paul R. Kennerson, State Bar No. 45430
   **KENNERSON & GRANT**
2  101 West Broadway, Suite 1150
   San Diego, CA 92101
3  Telephone:    +1 619 236 1255
   Facsimile:    +1 619 236 0555         ,
4  Email:         paul@kennersongrant.com

5  Attorneys for Proposed Intervenor

6

7

8                    UNITED STATES DISTRICT COURT

9                 SOUTHERN DISTRICT OF CALIFORNIA

10  ANIMAL PROTECTION AND RESCUE          Case No. 07 CV 2320 JM (AJB)
    LEAGUE a nonprofit corporation, and
11  DOROTA VALLI, an individual,          **OPPOSITION TO *EX PARTE***
                                          **APPLICATION FOR TEMPORARY**
12             Plaintiffs,                **RESTRAINING ORDER**

13        v.                              **DATE:   1/25/08**
                                          **TIME:   1:30 p.m.**
14  THE STATE OF CALIFORNIA, THE CITY     **CRTRM:  16**
    OF SAN DIEGO DEPARTMENT OF PARKS
15  AND RECREATION, MAYOR JERRY
    SANDERS, and DOES 1 to 100,
16
               Defendants.
17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.  FACTUAL AND PROCEDURAL BACKGROUND.............................................................. 1

    A.    James Lecky's Testimony Before the City Council ................................. 2

    B.    Superior Court Judgment ......................................................................... 4

    C.    California Court of Appeals Decision....................................................... 4

    D.    Motion To Clarify The Court's Injunction Before The Superior Court ...................... 5

II.   THIS COURT SHOULD EXERCISE ITS DISCRETION TO DENY THE PLAINTIFFS' PROPOSED TEMPORARY RESTRAINING ORDER................................ 6

    A.    Plaintiffs Are Not Likely To Succeed On The Merits ................................................. 7

    B.    Plaintiffs Will Not Suffer Irreparable Harm By Failure To Issue A Temporary Restraining Order....................................................................... 7

    C.    The Balance of Harm Weighs Against Issuance Of A Temporary Restraining Order ...................................................................................... 8

    D.    The Public Interest Weighs Against Issuance Of A Temporary Restraining Order ...................................................................................... 8

    E.    Issuance of a Temporary Restraining Order Would Offend The Balance Of Power Between The State And Federal Governments................................................. 9

III.  CONCLUSION................................................................................................................ 11

Baker & McKenzie LLP
12544 High Bluff Drive,
Third Floor
San Diego, CA  92130
+1 858 523 6200

i

1

<u>**TABLE OF AUTHORITIES**</u>

2
<u>**Page**</u>

3

**FEDERAL CASES**

4

*Alaska v Native Village of Venetie,*
   856 F.2d 1384 (9th Cir 1988) ..................................................................6

5

6

*Apple Computer Inc v Formula Int'l, Inc,*
   725 F.2d 521 (9th Cir 1984) ....................................................................6

7

8

*Dumas v Gommerman,*
   865 F.2d 1093 (9th Cir 1989) ..................................................................6

9

10

*GASH Associates v. Village of Rosemont,*
   995 F.2d 726 (7th Cir. 1993) ...................................................................9

11

12

*Los Angeles Mem Coliseum Comm'n v National Football League,*
   634 F.2d 1197 (9th Cir 1980) ..................................................................6

13

14

*Noel v. Hall,*
   341 F.3d 1148 (9th Cir. 2003) .............................................................9, 10

15

16

*Pennzoil Co. v. Texaco, Inc.,*
   481 U.S. 1 (1987).....................................................................................9

17

18

*San Remo Hotel v. City and County of San Francisco,*
   145 F.3d 1095 (9th Cir. 1998) ...............................................................11

19

20

*Tom Doherty Assocs., Inc. v. Saban Entertainment, Inc.,*
   60 F.3d 27 (2d Cir. 2000)..........................................................................6

21

22

*United States v. United Mine Workers of America,*
   330 U.S. 258 (1947).................................................................................6

23

24

*Younger v. Harris,*
   401 U.S. 37 (1971)..................................................................................11

25

26

**STATE CASES**

27

*Lewis v. County of Sacramento,*
   218 Cal. App. 3d 214 (1990) .................................................................10

28

Baker & McKenzie LLP
12544 High Bluff Drive,
Third Floor
San Diego, CA  92130
+1 858 523 6200

ii

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES
## (continued)

**Page**

### FEDERAL STATUTES

16 U.S.C. § 1371 ................................................................................................................5

16 U.S.C. § 1379 ................................................................................................................5

28 U.S.C. § 1738 ..............................................................................................................10

28 U.S.C. §2283 ................................................................................................................9

Baker & McKenzie LLP
San Diego

iii

1    Plaintiffs ask this Court to disturb the delicate balance of power between the state and federal

2    governments by issuing a temporary restraining order that effectively overturns a State Court

3    judgment.  Furthermore, Plaintiffs' seek to do so in an action where they are not likely to succeed on

4    the merits of their claim.  Plaintiffs' argument that the federal Marine Mammal Protection Act

5    ("MMPA") requires a separation rope be installed at the Children's Pool has already been

6    unsuccessfully litigated in the State Court system.  Plaintiffs present no evidence of irreparable harm

7    and the California State Court has already determined that proposed intervenor, Ms. Valerie

8    O'Sullivan, acts in furtherance of the interests of the people of the State of California on the issue

9    herein presented.  Since each factor to be considered by this Court before issuance of a temporary

10   restraining order weighs heavily against Plaintiffs, Ms. O'Sullivan respectfully requests that this

11   Court deny Plaintiffs' application.

12                                                     **I.**

13                          **FACTUAL AND PROCEDURAL BACKGROUND**

14   In 1931, Ellen Scripps completed construction of a 300-foot concrete breakwater and

15   resultant ocean water bathing pool, known as the Children's Pool.  *Id.*  The State of California

16   granted lands, including the Children's Pool, to be forever held by the City of San Diego in trust.  *Id.*

17   As a condition of the trust, the City of San Diego was to devote the land "exclusively to public park,

18   bathing pool for children, parkway, highway, playground and recreational purposes, and to such

19   other uses as may be incident to, or convenient for the full enjoyment of, such purposes…"  *Id.*

20   Despite the City of San Diego's obligations as trustee of the Children's Pool, the City of San

21   Diego allowed the condition of the Children's Pool to deteriorate to such a point that it could not,

22   and was not, being used as a public park or bathing pool for children.  NOL Exhibit 1: August 26,

23   2005 Final Statement of Decision, p. 29.  One condition preventing the Children's Pool from its

24   intended use was that the City of San Diego took action to separate the seals from humans by closing

25   off the Children's Pool to humans and *installing a separation rope.  Id.* at 30.

26   On March 12, 2004, Ms. O'Sullivan, as a private attorney general and resident of San Diego,

27   filed a Complaint against the City of San Diego in San Diego Superior Court for breach of its

28   obligations under the 1931 Trust to manage and maintain the Children's Pool for swimming ("State

                                                    1

1    Court Complaint").  *See* NOL Exhibit 2: September 7, 2007 Decision of the California Court of

2    Appeals, p. 9; Declaration of Paul Kennerson ("Kennerson Decl."), ¶ 2.

3    **A.    James Lecky's Testimony Before the City Council**

4          Entered into evidence in Ms. O'Sullivan's State Court Action was the September 14, 2004

5    testimony of James Lecky, from the National Marine Fishery Services ("NMFS"), the federal agency

6    charged with enforcing the MMPA, before the San Diego City Council regarding the NMFS's

7    position relative to the seal population at the Children's Pool.  Kennerson Decl., ¶ 8.  Mr. Lecky

8    testified in pertinent part:

9                There has been a fair amount of confusion about the Marine Mammal
             Act and its role in this thing, and I wanted to come and provide my
10            view, and the agency's view on what exactly the Marine Mammal Act
             has to do with this situation.  And the bottom line is we really view
11            this as a local government issue, and I'll explain that in my comments
             here.
12
             The Marine Mammal Protection Act was actually passed in 1972, and
13            this is a very protective piece of legislation.

14            * * *

15            It doesn't anticipate very well what we do with healthy populations
             and it didn't really provide much in the way of tools, although there
16            have been amendments recently to improve the situation to deal with
             expanding pinniped populations.  I think we're really fortunate in
17            California to be adjacent to the most diverse population of marine
             mammals in the world off our Southern California coast.  Included in
18            that are 3 species of pinnipeds – seals and sea lions – that are
             increasing at regular rates on the order of 6% per year, and
19            approaching optimum sustainable population levels which are sort of
             the floor of the level we like to see all these populations at.
20
             They are causing problems as they expand up and down the coast in
21            terms of invading harbors, causing property damage, and limiting
             access to beaches that are important for other public uses.  The tools
22            that are available to the City and other local government agencies
             really reside in §109(h).  And §109(h) of the statute allows local city
23            government agencies and their employees to 'take' marine mammals.
             'Take' is defined as harass, harm, hunt or kill – the limitations under
24            109(h) are that it's non-lethal, for the most part, there is an exception
             for euthanasia.  But in this circumstance we are really talking about
25            moving animals through use of harassment.  And animals can be
             moved out of an area if they are either presenting a public nuisance or
26            they're causing a public health hazard.  So, it's up to the City to decide
             whether the water quality problem is considered a public health hazard
27            they want to deal with or whether the ongoing conflicts on this beach
             are presenting a public nuisance that they want to resolve.  109(h) is an
28            authority that is granted to local governments and state agencies and it

                                              2

SDODMS1/685087.3

1       doesn't require approval or permit from the federal agency. So it's up to the local entities to use 109(h), and hence, that's the rationale when I say it's a local government issue – the federal government is not going to weigh in and say that you can or can't use 109(h) as a rationale for managing the situation at Children's Pool.

\*\*\*

Peters: So, I just want to make sure – some of these things you already dealt with – but harbor seals are not endangered or threatened, is that correct?

Lecky: That's correct.

\*\*\*

Peters: Would it be fair to say that the population is healthy?

Lecky: It's healthy.

Peters: The Children's Pool itself, is that necessary for the survival of the seal population, or for its health?

Lecky: No, it's not.

Peters: And there are other haul-out sites, at least some along the California coast, the Southern California coast?

Lecky: There are many haul-out sites along the California coast, and on the Channel Islands – both North and South.

Peters: You answered the question about 109(h). Now, the Marine Mammal Protection Act does not make it illegal to step onto the beach or swim at the Children's Pool if there are no seals on beach, is that correct?

Lecky: No, it doesn't.

\*\*\*

Lecky: … A rookery has no specific status or designation under the Marine Mammal Protection Act that's different from any other habitat.

Peters: Okay, so, just to make sure, there's no designation that the agency's made that would change the regulatory status of the [Children's Pool]?

Lecky: That's correct.

NOL Exhibit 5: September 14, 2004 Testimony of James Lecky.

3

**B.    Superior Court Judgment**

Ms. O'Sullivan's State Court Complaint proceeded in the Superior Court to judgment.  NOL Exhibit 1: October 4, 2005 Judgment.  The California Superior Court's October 4, 2005 Judgment required the City of San Diego, *inter alia*, to:

(1)    employ all reasonable means to restore the Pool to its 1941 condition by removing the sand build-up;

(2)    reduce the level of water contamination in the Pool to levels certified by the County of San Diego as being safe for humans;

(3)    maintain the beach sand so that it does not pose a health hazard to humans; and

(4)    fully comply with the court order "no later than six (6) months after the date this order is issued." *Id.*; NOL Exhibit 1:  August 26, 2005 Final Statement of Decision, p. 31.

In its Final Statement of Decision, the California Superior Court addressed the City of San Diego's argument that removal of the seals from the Children's Pool is prohibited by the Marine Mammal Protection Act ("MMPA").  In response, the court stated,

> The City's position is refuted by its own evidence… the City has been repeatedly advised the its City Manager and NMFS [the federal agency charged with enforcement of the MMPA] that the City can take appropriate action to remediate the safety and health situation at Children's Pool without violating the MMPA…The City knew as early as 1997 that under these exceptions [in the MMPA] it could deter the seals at the Children's Pool.

*Id.* at p. 25.

**C.    California Court of Appeals Decision**

The City of San Diego appealed from the October 4, 2005 Judgment to the California Court of Appeals.  The California Court of Appeals affirmed the Judgment of the Superior Court in its entirety.  *See* NOL Exhibit 2: September 7, 2007, Decision of the California Court of Appeals, p. 9. The California Court of Appeals specifically addressed the argument that the MMPA prohibits the injunction issued by the California Superior Court.  After a lengthy discussion of the language and exceptions of the MMPA, the Court of Appeals held as follows:

> We, like the trial court and the parties, assume marine mammals located at the Children's Pool are *generally* subject to the MMPA. However, the evidence admitted at trial supports a reasonable

4

1

> inference that the section 109(h) exception to the MMPA (i.e., 16 U.S.C. s1379(h)) and a similar exception under title 16 United States Code section 1371(a)(4)(A) apply to allow the relief sought by O'Sullivan and awarded by the trial court. Because feces from the substantial number of seals at the Children's Pool result in high levels of water pollution, it can reasonably be concluded there is damage to public property and danger to the health and safety of persons at the Children's Pool within the meaning of those exceptions. Considering those circumstances, the trial court could reasonably conclude those exceptions to the MMPA applied and did not preclude its injunction against City requiring City to, in effect, remediate those problems by restoring the Children's Pool to its 1941 condition.

NOL Exhibit 2:  September 7, 2007 Decision of the California Court of Appeals, pp. 45-46.

The City of San Diego petitioned the Supreme Court of California for review.  On November 28, 2007, the Supreme Court of California denied the petition for review.  NOL Exhibit 3: November 28, 2007 Supreme Court of California Denial of Review.

**D.     Motion To Clarify The Court's Injunction Before The Superior Court**

After the California Supreme Court's denial of review, the City of San Diego filed a "Motion to Clarify the Court's Injunction" which requested that the Superior Court to reconsider the "rope issue" and permit the City of San Diego to place a rope barrier on the shore of the Children's Pool cutting off public access thereto. *See* NOL Exhibit 4: January 3, 2008 Tentative Ruling of the Superior Court of California; Kennerson Decl., ¶ 7.  The Superior Court declined to rehear the issue stating:

> Specifically, the 'rope issue' was discussed in both this Court's and the Court of Appeal's final rulings in favor of Plaintiff and against the City.  Ultimately, both Courts found that the placement of a 'rope barrier cutting off public access to the Pool'… resulted in the City's breach of its obligations as trustee under the subject Trust.

*Id.*  The court further stated, "the relevant issue has been considered and decided, and the Court's directives to the City are clear and unambiguous."  *Id.*

Notwithstanding the State Court Action, and the California Superior Court's clear and unambiguous order, the Plaintiffs in this matter filed their Complaint and request that this Court issue a temporary restraining order.  The Plaintiffs' Complaint is based upon the allegation that the MMPA "requires a permit to be issued for activities that will involve disturbance of marine mammals".  Pltfs' Cmplt, ¶ 18.  Plaintiffs' Ex Parte Application for Temporary Restraining Order

5

1  seeks to require the installation of a rope barrier at the Children's Pool.  Pltfs' *Ex Parte App.* for

2  TRO.  The Plaintiffs seek an order in *direct contravention* with the California Superior Court

3  Judgment in the State Court Action.  Plaintiffs essentially ask this Federal District Court to overturn

4  Ms. O'Sullivan's state court victory.

## II.

### THIS COURT SHOULD EXERCISE ITS DISCRETION TO DENY THE PLAINTIFFS' PROPOSED TEMPORARY RESTRAINING ORDER

8  A district court may issue a temporary restraining order to "preserve existing conditions

9  while [the court is] determining its own authority to grant injunctive relief."  *United States v. United*

10  *Mine Workers of America*, 330 U.S. 258, 293 (1947).  There is currently no rope in place at the

11  Children's Pool.  Kennerson Decl., ¶ 9.  Plaintiffs seek a temporary restraining order to require the

12  City of San Diego to install a rope and thereby disturb the status quo.  Pltfs' *Ex Parte* App. for TRO.

13  Where a party seeks to disturb the status quo with a temporary restraining order, such a request will

14  be subjected to high scrutiny and carry a heavy burden of persuasion.  *See Tom Doherty Assocs., Inc.*

15  *v. Saban Entertainment, Inc.*, 60 F.3d 27, 32-33 (2d Cir. 2000).

16  The traditional test within the Ninth Circuit for issuing a temporary restraining order includes

17  consideration of four factors: (1) the likelihood of the plaintiffs' success on the merits; (2) the threat

18  of irreparable harm to the plaintiffs if the injunction is not imposed; (3) the relative balance of this

19  harm to the plaintiffs and the harm to the defendant if the injunction is imposed; and (4) the public

20  interest.  *Alaska v Native Village of Venetie*, 856 F.2d 1384, 1388 (9th Cir 1988) (citing *Los Angeles*

21  *Mem Coliseum Comm'n v National Football League*, 634 F.2d 1197, 1200 (9th Cir 1980)).  Courts

22  within the Ninth Circuit have collapsed these factors into a two-prong test requiring the moving

23  party to show either (1) a combination of probable success on the merits and the possibility of

24  irreparable harm, or (2) that serious questions are raised and the balance of hardships tips sharply in

25  the moving party's favor.  *Dumas v Gommerman*, 865 F.2d 1093, 1095 (9th Cir 1989); *Apple*

26  *Computer Inc v Formula Int'l, Inc*, 725 F.2d 521, 525 (9th Cir 1984).  Regardless of how the Ninth

27  Circuit test is applied, none of the factors weigh in Plaintiffs' favor.

28

A.    **Plagiarism Are Not Likely To Succeed On The Merits**

Plaintiffs' entire case is premised upon Plaintiffs' erroneous allegation that the final orders of the California State Courts in *O'Sullivan v. City of San Diego*[1] violate the MMPA. *See Cmplt.*, ¶¶ 18, 20. Plaintiffs' entire application for a temporary restraining order is based on the erroneous premise that placement of a guideline rope at the Children's Pool is required by the MMPA. *See* Pltfs' *Ex Parte App.* for TRO. The propriety of the State Court orders and requirement of a guideline rope under the MMPA have already been litigated and finally determined by both the California Superior Court and California Court of Appeals. *See* NOL Exhibit 1: Judgment; NOL Exhibit 2: Decision of the California Court of Appeals.

James Lecky, the California Superior Court and the California Court of Appeals each specifically addressed the MMPA and guideline rope issues, ultimately concluding placement of a guideline rope is not required by the MMPA. *See id.; see also,* NOL Exhibit 5: Lecky Testimony. The California State Courts took extensive care to acknowledge, discuss, protect and implement the MMPA. Plaintiffs present no evidence or argument that was not fully considered by the State Court. As a result, there is no reason to believe any other court, state or federal, would come to a different conclusion.

B.    **Plaintiffs Will Not Suffer Irreparable Harm By Failure To Issue A Temporary Restraining Order**

Plaintiffs allege the guideline rope is necessary to prevent irreparable harm from occurring during seal pupping season, which began on December 15, 2007. Cmplt., Prayer, at ¶ 2. It has now been over one month since the beginning of pupping season with no guideline rope in place. Despite Plaintiffs' argument that a temporary restraining order is necessary to prevent irreparable harm, Plaintiffs have offered no evidence that any irreparable harm has occurred since December 15, 2007. Plaintiffs offer no evidence to suggest that a delay of one more month will result in any irreparable harm. To the contrary, this Court has already found that "a short continuance of the hearing date on

---

[1] *O'Sullivan v. City of San Diego*, California Superior Court, County of San Diego (Case No. GIC826918), California Court of Appeals, 4th Appellate District (Case No. D047382), Supreme Court of California (Case No. S157299).

7

1  Plaintiffs' motion for preliminary injunction... will not likely prejudice Plaintiffs." January 17,

2  2008 Scheduling Order On Motion To Intervene, p. 2, n. 1.

3  **C.     The Balance of Harm Weighs Against Issuance Of A Temporary Restraining Order**

4          A temporary restraining order would cause harm to Ms. O'Sullivan.  Ms. O'Sullivan litigated

5  for five years to obtain the Judgment requiring the City of San Diego to return the Children's Pool to

6  a bathing pool.  *See* Kennerson Decl., ¶ 2.  An important part of that Judgment is an injunction

7  preventing the City of San Diego from installing a guideline rope, such as the one requested by the

8  Plaintiffs.  The Judgment, entered by Judge Pate on October 4, 2005 also requires the City of San

9  Diego to comply with its terms *within six months of the order*.  *See* Judgment, p. 2 (fully comply

10 with the court order "no later than six (6) months after the date this order is issued").  Due to the

11 lengthy appellate process, Ms. O'Sullivan has now waited two and one-half years for compliance

12 with the State Court Judgment.

13 **D.     The Public Interest Weighs Against Issuance Of A Temporary Restraining Order**

14         Both the California Superior Court and California Court of Appeals determined that Ms.

15 O'Sullivan acted as a private attorney general and conferred a significant benefit on the general

16 public because of her State Court Action.  The Court of Appeals stated:

17             However, the trial court expressly rejected that assertion, finding that a
             significant benefit *had* been conferred on the general public by
18           O'Sullivan's action because she obtained injunctive relief that
             protected 'the rights of the people of California to the full use and
19           enjoyment of a unique asset, the Children's Pool.'  We conclude the
             trial court did not abuse its discretion by concluding the injunctive
20           relief obtained by O'Sullivan conferred a significant benefit on the
             general public by requiring City to restore the Children's Pool to its
21           1941 condition, thereby making it both available and safe for
             swimming by children and others.  Although one effect of that
22           required restoration may be to discourage seals from hauling out and
             thereby reducing the number of, or eliminating, seals at the Children's
23           Pool that people can view, that purported 'negative' impact does not
             outweigh or countervail the significant public benefit obtained by
24           O'Sullivan in enforcing the terms of the Trust, which, as discussed
             above, is a public trust requiring that the Children's Pool be used for a
25           public park and bathing pool for children.

26 NOL Exhibit 2:  Decision of the California Court of Appeals, pp. 49-50.

27         Since it has already been determined that Ms. O'Sullivan is acted in the interest of the people

28 of California when obtaining her State Court Judgment, the public interest factor also weighs heavily

8

1   against issuance of a temporary restraining order.

2   **E.    Issuance of a Temporary Restraining Order Would Offend The Balance Of Power**
        **Between The State And Federal Governments**

3

4       Regardless of the outcome of the weighing of the above factors, issuance of a temporary

5   restraining order will offend the balance of power between state and federal governments.

6       The federal Anti-Injunction Act prohibits a federal court from enjoining proceedings in a

7   state court. 28 U.S.C. §2283. None of the Act's statutory exceptions apply in this instance. *See id.*

8   The State Court proceedings are ongoing as the Judgment specifically states the "court will maintain

9   jurisdiction to oversee compliance with this order" and the City has not yet complied with the

10  Judgment. NOL Exhibit 1: Judgment, p. 2.

11      This lawsuit is barred by the *Rooker-Feldman* doctrine. "Under *Rooker-Feldman*, a federal

12  district court does not have subject matter jurisdiction to hear a direct appeal from the final judgment

13  of a state court." *Noel v. Hall*, 341 F.3d 1148, 1154 (9th Cir. 2003). Where the federal plaintiff

14  complains of "harm caused by a state court judgment that directly withholds a benefit from (or

15  imposes a detriment on) the federal plaintiff, based on an allegedly erroneous ruling by that court,"

16  the federal court lacks jurisdiction under *Rooker-Feldman. Id.* at 1162. The *Rooker-Feldman*

17  doctrine looks to the relief sought and asks "is the federal plaintiff seeking to set aside a state

18  judgment, or does he present some independent claim." *Id.* at 1164, citing *GASH Associates v.*

19  *Village of Rosemont*, 995 F.2d 726, 728-29 (7th Cir. 1993) (holding *Rooker-Feldman* applies where

20  GASH's injury was caused by the judgment). "Where federal relief can only be predicated upon a

21  conviction that the state court was wrong, it is difficult to conceive the federal proceeding as, in

22  substance, anything other than a prohibited appeal of the state-court judgment." *Pennzoil Co. v.*

23  *Texaco, Inc.,* 481 U.S. 1, 25 (1987) (concurring opinion of Marshall, J.). Plaintiffs' Complaint rests

24  entirely upon alleged injury sustained as a result of the State Court Judgment,

25          "The Tidelands Grant as interpreted by Judge Pate and upheld by the
            State Court of Appeal violates the MMPA by requiring the City of San
26          Diego to maintain an artificial configuration of CPB that will harm
            marine mammals by removing their resting spot and allowing and
27          encouraging the beach to be used in such a manner that is detrimental
            to marine mammals."

28

9

1   Cmplt. at ¶ 20.  Since Plaintiffs allege injury allegedly caused by a State Court Judgment and seek a

2   *de facto* federal district court appeal, under *Rooker-Feldman*, this Court lacks jurisdiction to

3   entertain this matter.

4        Full faith and credit and collateral estoppel bar this lawsuit.  Under 28 U.S.C. § 1738, federal

5   courts must give "full faith and credit" to judgments of state courts.  *Noel v. Hall*, 341 F.3d 1148,

6   1166 (9th Cir. 2003).  Full faith and credit "commands a federal court to accept the rules chosen by

7   the State from which the judgment is taken."  *Id.* (under full faith and credit, applying Washington

8   preclusion laws).

9        Under the substantive laws of the State of California, Plaintiffs' lawsuit is also barred by

10  collateral estoppel.

11           "[A] party will be collaterally estopped from relitigating an issue only
             if (1) the issue decided in a prior adjudication is identical with that
12           presented in the action in question; *and* (2) there was a final judgment
             on the merits; *and* (3) the party against whom the plea is asserted was
13           a party or in privity with a party in the prior adjudication."

14  *Lewis v. County of Sacramento*, 218 Cal. App. 3d 214, 217 (1990).  Here, as demonstrated above,

15  each issue presented by Plaintiffs' Complaint and *Ex Parte* Application was precisely determined by

16  the California Superior and Appellate Courts to final judgment.  Further, because the Plaintiffs had

17  an identity of interest with the City of San Diego in the State Court Action (both parties purport to

18  represent the interests of those residents who desire that the seals remain at Children's Pool and

19  advance the exact same arguments in support of their position), the Plaintiffs are in privity with the

20  City of San Diego and subject to collateral estoppel.  Kennerson Decl., ¶ 3.  Furthermore, the parties

21  are in privity because rather than intervene in the State Court Action as parties, the Plaintiffs elected

22  to file *amicus* briefs and take the disfavored "wait and see" approach.  *Id.* ("Plaintiff had a full and

23  fair opportunity to litigate… We cannot help but wonder what plaintiff's position on collateral

24  estoppel would be had the [prior action been determined in his favor].")  The California Court of

25  Appeals entertained fifteen *amicus* briefs.  Kennerson Decl. at ¶ 3.  To permit fifteen different

26  interested parties to "wait and see" and then file separate lawsuits until one of them prevails would

27  result in an endless farrago of litigation.

28

SDODMS1/685087.3

1    Lastly, this Court should abstain under *Younger*. In *Younger*, the United States Supreme

2  Court held that a federal court should not intervene in ongoing state proceedings for reasons of

3  comity. *Younger v. Harris*, 401 U.S. 37, 43-44 (1971). "The normal thing to do when federal courts

4  are asked to enjoin pending proceedings in state court is not to issue such injunctions." *Id.* at 45.

5  Because in this instance, the State Court Action is ongoing, implicates important state interests, and

6  provided Plaintiffs an adequate opportunity to litigate their claims, this Court should abstain from

7  hearing this lawsuit. *San Remo Hotel v. City and County of San Francisco*, 145 F.3d 1095, 1103

8  (9th Cir. 1998) (*Younger* can be invoked if state proceedings are ongoing, implicate important state

9  interests, and provide the plaintiff an adequate opportunity to litigate federal claims).

10                                            **III.**

11                                     **CONCLUSION**

12    Based on the foregoing, this Court should deny Plaintiffs' *Ex Parte* Application for a

13  temporary restraining order.

14  Dated:  January 23, 2008                KENNERSON & GRANT

15

16                                   By:/s/Paul R. Kennerson
                                        _____
17                                      Attorneys for Proposed Intervenor
                                        Email:  paul@kennersongrant.com

18

19

20

21

22

23

24

25

26

27

28

SDODMS1/685087.3