BRYAN W. PEASE (SB# 239139)
302 Washington St. #404
San Diego, CA 92103
ph: (619) 723-0369
fax: (619) 923-1001
email: bryanpease@bryanpease.com

Attorney for Plaintiffs

UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANIMAL PROTECTION AND RESCUE LEAGUE, a nonprofit corporation, and DOROTA VALLI, an individual, <br><br> Plaintiffs, <br><br> v. <br><br> THE STATE OF CALIFORNIA, THE CITY OF SAN DIEGO DEPARTMENT OF PARKS AND RECREATION, MAYOR JERRY SANDERS, AND DOES 1 TO 100, <br><br> Defendants. | Civil Action, Case No. 07 CV 2320 JM AJB <br><br> REPLY IN SUPPORT OF *EX PARTE* APPLICATION FOR A TEMPORARY RESTRAINING ORDER |

## INTRODUCTION

The City concedes that a small, temporary rope would not infringe anyone's rights and would be an effective tool to prevent MMPA violations during seal pupping season. The City opposes the present application solely on the ground that a state law, the Tidelands Grant of 1931, prohibits the placement of such a rope. Plaintiffs submit that the Tidelands Grant is preempted by the federal Marine Mammal Protection Act and should be struck down or at least limited to not prohibit the pupping season rope requested by NOAA and mandated by the City

1 | Council. The State has not and will not file an opposition to this request. <u>See</u> Declaration of
2 | Bryan W. Pease in support of reply, ¶ 7.

**ARGUMENT**

A state court has previously determined what the City's responsibilities are under the Tidelands Grant, but the state court ruling included the caveat that the order was not to require violation of any state or federal law. In the present federal case, plaintiffs submit that the Tidelands Grant itself, not the state court's interpretation or implementation of any particular remedy, is preempted by the MMPA. The basis for this conclusion is that the Tidelands Grant requires Children's Pool Beach to be used as a "bathing pool," even though it is now a seal rookery, which is the scientific term for an area used by these site-specific animals for resting, giving birth, and nursing their young. Plaintiffs submit that a state law requiring a seal rookery to be used as a "bathing pool" violates the MMPA, particularly during seal pupping season.

**I.      State law prohibiting a pupping season rope is preempted by the MMPA**

Proposed intervenor concedes, if the City does not, that the new state court judge overseeing the City's compliance with the <u>O'Sullivan</u> order treated the City's request for clarification on the pupping season rope as a motion to "rehear the issue" and declined to do so. O'Sullivan Opp. to Ex Parte at 5:17. There is nothing new in Judge Hoffman's order in terms of what the City's obligations are, and Judge Hoffman did not make any *new* ruling on the legality of a pupping season rope. Plaintiffs agree that the original state court order by Judge Pate was "clear and unambiguous" with respect to a *permanent* rope blocking off the beach from human use being a violation of the Tidelands Grant.

Up until 2004, there was a permanent rope, and swimming at Children's Pool Beach was not permitted. <u>See</u> O'Sullivan's Exhibit 1 in opposition to *ex parte* application, page 29. However, the current City Council mandate, which Judge Pate's order could not have addressed because the resolution was enacted after he issued his order, is for there to be a small, temporary, pupping season guideline rope, but not to forbid swimming or use of the beach. Nonetheless, plaintiffs are not asking this court to reexamine or re-interpret a state court order and are willing

to assume for purposes of this motion that the Tidelands Grant as it is written prohibits a pupping season rope as a matter of settled state law. Plaintiffs are simply asking this court to enforce the MMPA and strike down or limit the Tidelands Grant as being preempted by the MMPA to not prohibit a temporary pupping season rope.

## II. Plaintiffs were not required to intervene in the O'Sullivan state court action

Proposed intervenor's argument that by not intervening in the O'Sullivan case, plaintiffs somehow waived their right to file the present federal action is entirely without merit, as both the issues raised and remedies sought are different. O'Sullivan Opp. to Ex Parte at 10. Additionally, plaintiffs would likely not have had standing in the state court action for the same reason proposed intervenor likely has no standing in the present case: a very compelling showing is needed to overcome the presumption that the state (or city) represents its citizens in defending a lawsuit. Arakaki v. Cayetano, 324 F.3d 1078, 1086 (9th Cir. 2003). In the state court action, proposed intervenor obtained a judgment against the City regarding what the City's duties are under the Tidelands Grant. In the present case, plaintiffs are seeking to enforce the federal Marine Mammal Protection Act. It is the job of the City and State to defend both actions.

Mr. Kennerson's sworn declaration stating that plaintiffs appeared *amicus curae* before the state court is false with respect to plaintiff VALLI and only true for APRL in the vaguest sense—APRL submitted a one page letter to the California Supreme Court urging the court to accept review of the case and citing an independent, scientific Zogby poll, included with the letter, which shows with a four percent margin of error that over 80 percent of San Diego residents want Children's Pool Beach to be used for seal watching rather than swimming and that three in four oppose dredging. See Declaration of Bryan W. Pease in Support of Reply, ¶ 4. A total of ten letters were submitted urging the Court to accept review, including letters from Congresswoman Susan H. Davis, the Humane Society of the United States, and the Sierra Club. See Id. A January 25, 2008 Beach & Bay Press article quotes Mr. Kennerson saying he knew that ten letters were submitted, so Mr. Kennerson's sworn statement that APRL

3

REPLY IN SUPPORT OF TRO
CASE NO. 07 CV 2320 JM AJB

1  "appeared…along with fourteen other *amici*" is also an exaggeration.  See Declaration of Bryan
2  W. Pease in Support of Reply, ¶ 5.
3      APRL did not submit an *amicus* brief to the Court of Appeal, and all seven *amici* briefs
4  that other groups and agencies attempted to file were rejected for filing by the court.  See
5  Declaration of Bryan W. Pease in Support of Reply, ¶ 4.  A May 30, 2007 La Jolla Light article
6  quotes Mr. Kennerson as commenting on the unusual blanket denial of permission by the Court
7  of Appeal for all seven groups, including the California Coastal Commision, to file *amici* briefs,
8  so Mr. Kennerson clearly knew that these groups and agencies were not permitted to appear
9  before the Court of Appeal, and their arguments were not even considered.  See Declaration of
10 Bryan W. Pease in Support of Reply, ¶ 3.

11 **III.    Plaintiffs are not seeking to overturn a state court ruling but rather seek to enforce**
12 **federal law**

13     Plaintiffs are not challenging the state court ruling, nor are they seeking to overturn the
14 judgment obtained there.  Proposed intervenor received an attorney's fees award of $468,906 in
15 state court, which is not under attack here.  See O'Sullivan's Exhibit 2 in opposition to *ex parte*
16 application, page 54.  Plaintiffs are not challenging anything in the state court's determination
17 regarding how the Tidelands Grant is to be interpreted and what the City's obligations under it
18 are as a matter of settled state law.  Rather, plaintiffs are simply seeking to have the MMPA
19 enforced, and for purposes of this TRO application, are seeking to limit the application of the
20 Tidelands Grant insofar as it is preempted by the MMPA so that a small guideline rope can be
21 placed on the beach during seal pupping season.  Such an order would also clearly not violate the
22 federal Anti-Injunction Act as urged by proposed intervenor, because this court would not be
23 ordering a state court to do or not do anything.  Once this court rules that the Tidelands Grant is
24 preempted by the MMPA, the state courts can continue to apply the facts to the existing law as it
25 would in any other case.

Proposed intervenor distorts the testimony of James Lecky and attempts to make it seem as though NOAA does not desire a pupping season rope. O'Sullivan Opp. to Ex Parte at 7. Nothing in Mr. Lecky's testimony addresses a pupping season rope, and the uncontradicted evidence before this court is that NOAA has formally requested not only a rope up during pupping season, but for Children's Pool Beach to be closed entirely during that limited time. See Declaration of Bryan W. Pease in support of a preliminary injunction, Exhibit A. The latter issue will be taken up at the preliminary injunction hearing schedule for February 22, but for purposes of the present application, plaintiffs simply request a guideline pupping season rope as mandated by the City Council. No court has considered whether the Tidelands Grant should be preempted by the MMPA to allow such a rope, and such a ruling would harm no one but prevent great and irreparable harm to plaintiffs and the seals.

**IV.  No harm will be caused to any party or non-party by limiting the Tidelants Grant to allow a temporary pupping season guideline rope**

Proposed intervenor has identified no specific harm that she would suffer by the temporary rope being placed, but raises the red herring of such an order interfering with the timeframe for the City's compliance with the state court order. O'Sullivan Opp. to Ex Parte at 8. However, a temporary pupping season rope will have no impact on the process the City has to go through to obtain permits to dredge the beach to return it to its 1941 configuration, which will take another 1.5 to three years. See Declaration of Samir Mahmalji filed in support of the City's opposition to motion for preliminary injunction, ¶ 13. Such a rope will also have no impact on proposed intervenor's right to use the beach. One is left to speculate what exactly proposed intervenor Valerie O'Sullivan's personal interest in this case is, when she has not signed any declaration, but instead her counsel places himself in the unusual position of testifying under oath to material facts. See Declaration of Paul Kennerson ¶ 9 ("I recently visited the Children's Pool and there is currently no separation rope in place.")

One has to assume that Ms. O'Sullivan has not even visited Children's Pool Beach recently if she cannot testify to this fact, and Dorota Valli who is at the beach an average of six hours a day has not seen Ms. O'Sullivan at the beach since April 2006, nor did Ms. O'Sullivan bother to attend the hearing on the appeal in her state court action.  See Declaration of Dorota Valli ¶ 4.  Ms. O'Sullivan has not signed a declaration stating any reason she needs to intervene in this case, let alone that she would be harmed by a small pupping season rope that does not prevent her from using the beach if she ever does decide to go there.

For someone who claims to represent the interests of the public, Mr. Kennerson made one of the more remarkable comments regarding this controversy, responding to criticism that most children prefer watching seals at Children's Pool Beach: "Children want lollipops and they want not to go to school. But sometimes you have to tell them they can't have lollipops and they have to go to school. In this case, the law is saying, 'This is for children to use,' and what you should learn is that you must obey the law, even if you don't prefer that."  See Declaration of Bryan W. Pease, ¶ 6.  Plaintiffs contend that the only law being broken here is the Marine Mammal Protection Act.  The City is complying with the state court's order to dredge the beach by seeking the necessary permits and exploring the most reasonable means to restore the beach to its 1941 configuration, but in the meantime, a state law cannot prevent the City from complying with the MMPA by putting up a guideline pupping season rope at the request of NOAA while the seals are there on the beach giving birth and nursing their young.

**V.      No court has yet considered striking down or limiting the Tidelands Grant**

No court has ruled on whether the Tidelands Grant should be struck down or limited as being preempted by the MMPA, nor has the issue ever been raised previously.  The prospect of endless litigation heralded by proposed intervenor is yet another red herring, as standard rules of issue preclusion prevent new parties from relitigating issues that have already had a final ruling on the merits.  Proposed intervenor's argument that plaintiffs are in "privity" with the City and State is also obviously flawed since both entities are opposing plaintiffs' suit rather than

conceding. As proposed intervenor knows, the City previously defended not one but two lawsuits in 2004 and 2005 *against* being required to put a rope up at Children's Pool Beach. See Declaration of Dorota Valli ¶ 5. In 2004, San Diego Animal Advocates sued the City Council for voting to take down the permanent rope that had been up, arguing that the California Environmental Quality Act prevented the City from removing the rope without a permit. In 2005, the Humane Society of the United States sued the City Council as well, arguing that it should at least be required to keep a rope up during pupping season. Both actions were brought in state court and alleged violations of state law, and the City successfully defended both suits.

The fact that the City Council has now decided that there *should* be a pupping season rope does not mean plaintiffs are now in privity with defendants, as the City is still obligated to comply with the Tidelands Grant, which plaintiffs and not the City are seeking to have struck down or limited as being preempted by the federal MMPA. Plaintiffs wanted the pupping season rope up December 15 as mandated by the City Council, yet defendants CITY OF SAN DIEGO DEPARTMENT OF PARKS AND RECREATION and MAYOR JERRY SANDERS have failed to put the rope up and state that they will continue to refuse to put the rope up pursuant to state law, and the State has moved to dismiss plaintiffs' suit, so clearly no defendant is in privity with plaintiffs.

**VI. Plaintiffs are suffering irreparable harm caused by defendants' failure to place a temporary pupping season rope**

Plaintiffs have been and will continue to be harmed by defendants' failure to put up the pupping season rope. Plaintiff Dorota Valli has been at the beach nearly every day since pupping season began December 15. Almost every day, there have been harassment incidents that a rope would have prevented and that were only prevented by plaintiffs' presence. See Declaration of Dorota Valli, ¶ 2. There is no telling what took place at times of day when plaintiffs have not been present, especially at night. There have also been incidents that plaintiffs could not prevent but that a rope would have. The posts and cement bases for the rope

are at the beach waiting to be put up, and the only reason they are not up is because an outdated state law is standing in the way of the City Council's clear mandate for there to be a pupping season rope. . <u>See</u> Declaration of Dorota Valli, ¶ 3. That state law, the Tidelands Grant of 1931, should be limited as being preempted by the MMPA to not prohibit an imminently needed temporary pupping season rope.

## CONCLUSION

Limiting the state Tidelands Grant to comply with the federal MMPA so that the term "bathing pool" does not prohibit a temporary guideline rope during seal pupping season would harm no one, as conceded by the City and not opposed by the State. Proposed intervenor has also failed to submit any evidence to show how she would be personally harmed by such a ruling. On the other hand, plaintiffs are being harmed on a daily basis by the rope not being up, and the public interest weighs squarely in favor of allowing the City Council mandate and NOAA recommendation to be carried out in favor of a temporary pupping season rope.

Dated: January 28, 2008

                                                          By: /s/ Bryan W. Pease_____
                                                              Bryan W. Pease