1  BRYAN W. PEASE (SB# 239139)
   302 Washington St. #404
2  San Diego, CA 92103
   ph: (619) 723-0369
3  fax: (619) 923-1001
   email: bryanpease@bryanpease.com
4
5  Attorney for Plaintiffs

6
                    UNITED STATES DISTRICT COURT
7
              FOR THE SOUTHERN DISTRICT OF CALIFORNIA
8

9  ANIMAL PROTECTION AND RESCUE      ) Civil Action, Case No. 07 CV 2320 JM AJB
   LEAGUE, a nonprofit corporation, and )
10 DOROTA VALLI, an individual,       ) DECLARATION OF BRYAN W. PEASE IN
                                      ) SUPPORT OF REPLY IN SUPPORT OF EX
11                                    ) PARTE APPLICATION FOR TEMPORARY
              Plaintiffs,             ) RESTRAINING ORDER
12                                    )
              v.                      )
13                                    )
                                      )
14 THE STATE OF CALIFORNIA, THE CITY )
   OF SAN DIEGO DEPARTMENT OF PARKS )
15 AND RECREATION, MAYOR JERRY       )
   SANDERS, AND DOES 1 TO 100,        )
16                                    )
                                      )
17            Defendants.             )
                                      )
18

19 I, Bryan W. Pease, declare the following:

20      1.    I have personal knowledge of the facts contained herein and am competent to

21 testify thereto.

22      2.    I am an attorney licensed to practice in the Southern District of California and am

23 the attorney of record for plaintiffs in this action.

24      3.    No *amici* parties appeared in the appeal of O'Sullivan because the Court of

25 Appeal rejected all seven *amici* briefs that were submitted.  Attached as Exhibit A is a true and

26

27                                    1          DECLARATION OF BRYAN W. PEASE
                                                         CASE NO. 07 CV 2320 JM AJB
28

correct copy of a May 30, 2007 La Jolla Light news article quoting Paul Kennerson speculating on why the briefs were denied.

4. APRL did not attempt to submit an *amici* brief to the Court of Appeal. APRL did send an *amicus* letter to the California Supreme Court asking that the case be accepted for review. On information or belief, nine other groups and individuals submitted *amici* letters urging the Court to accept review, including Congresswoman Susan H. Davis, the Humane Society of the United States, and the Sierra Club. Attached as Exhibit B is a true and correct copy of the letter APRL submitted.

5. Attached as Exhibit C is a true and correct copy of a January 25, 2008 Beach and Bay Press article quoting Paul Kennerson as stating, "There were 10 amicus letters sent to the court asking them to take the case, including one from Susan Davis. I wrote responses to them saying they were political and not legal. The court denied the petition and that is the end of the case." Mr Kennerson also states in the article, "When people start talking about what children want, that's not the best basis for deciding public policy," Kennerson said. "Why is that an argument?"

6. Attached as Exhibit D is a true and correct copy of a December 5, 2007 La Jolla Light article in which Paul Kennerson was quoted as saying, "Children want lollipops and they want not to go to school. But sometimes you have to tell them they can't have lollipops and they have to go to school. In this case, the law is saying, 'This is for children to use,' and what you should learn is that you must obey the law, even if you don't prefer that."

7. On January 25, 2008, I spoke with Christina Bull Arndt, who confirmed that the State of California would not be filing an opposition to plaintiffs' request for a TRO.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on: January 28, 2008

By: /s/ Bryan W. Pease_____
Bryan W. Pease

2   DECLARATION OF BRYAN W. PEASE
CASE NO. 07 CV 2320 JM AJB

Table of Contents

**Exhibit A**: "Rope barrier removed; seal advocates want it back up," by Dave Schwab, La Jolla Light, May 30, 2007……………..………………………………………………....………...1

**Exhibit B**: *Amicus* letter submitted on behalf of APRL to the California Supreme Court, Nov. 5, 2007………..……...…………………………………………………………………….3

**Exhibit C**: "Court upholds restoration of Children's Pool," by Alyssa Ramos, Beach & Bay Press, January 25, 2008……………………………………………………………………9

**Exhibit D**: "Courts rule Children's Pool belongs to people, not seals," by Dave Schwab, La Jolla Light, Dec. 5, 2007……………….………12

Declaration of Bryan W. Pease
Table of Contents
CASE NO. 07 CV 2320 JM AJB

Exhibit A







News

# Rope barrier removed; seal advocates want it back up

May 30, 2007
By Dave Schwab - La Jolla Light



The rope barrier separating seals and humans during pupping season was recently taken down.
Photo by: Danielle Cadieux

Now that the rope barrier at Children's Pool has been taken down, seal advocates are petitioning the city to get it put back up.

"We are in the process of looking at a proposal that both sides seem to be in agreement with, and the issue will be brought back to the Natural Resources and Culture Commitee of the City Council within a month," said Councilwoman Donna Frye, chair of that committee.

The rope barrier at La Jolla's Children's Pool, visually separating pinnipeds from humans during the marine mammals' pupping season, is now in place annually from Dec. 15 through May 15.

"We haven't worked out the details yet," said Kath Rogers, volunteer co-director of the Animal Protection and Rescue League. "We're working on something both sides can live with, and we're going to bring that before the City Council and hope they can stop the fighting between the two sides. We think it's crucial to protect the seals, especially at night and during some of the most vulnerable times."

Pro-seal advocates point to a Zogby International Poll of San Diego residents recently which found more than 80 percent of those polled believe the rope barrier at Children's Pool should be kept up year-round to protect the seals. That same poll claims support is even stronger in favor of seals in La Jolla, where 91 percent of residents believe the rope should be up year-round. The Zogby poll claims a margin of error of plus or minus 4 percent.

The Animal Protection and Rescue League added that it has declarations from nighttime security guards that the group has employed for the past two years observing seals at night, testifying that incidents of harassment and disturbance of the seals markedly decrease when the rope barrier is up at night.

Anne Cleveland, president of La Jolla Town Council, said her group's view of the situation with harbor seals at Children's Pool remains unchanged. "The town council's position on Children's Pool has always been that of shared use, plain and simple," said Cleveland.

Meanwhile, the city of San Diego's appeal of a lawsuit filed against it by plaintiff's attorney Paul Kennerson on behalf of Valerie O'Sullivan, alleging the city is in violation of its trust status over Children's Pool because it has allowed the pool to be taken over by seals to the exclusion of people, which was its intended use, continues and will likely be decided sometime this summer.

The lawsuit argues the city of San Diego is in violation of its trust status governing Children's Pool, because it has allowed, unchecked, a colony of harbor seals to take up residence there which has led to a fouling of the water caused by their fecal coliform waste, which has made the pool dangerous for human contact.

"Pro-seal advocates, with the city's sufferance, if not active assistance, have warded off legal users from the beach by practices that clearly bar the beach to human use," claims the lawsuit. "The city is ordered to reconfigure the beach and return it to human use."

Recently, the Court of Appeals denied permission by seven pro-seal groups, including the Sierra Club and the

**Reader Poll**
Do you think the national media is treating the Chargers unfairly?
○ Yes (34.62%)
○ No (65.38%)
This poll is closed.
Total Votes: 26
View Results

**Arts and Culture Calendar**
See the latest events in the La Jolla Arts and Culture Calendar
View Events >>

**Related Stories**
■ Restaurant Week brings a feast to La Jolla
Jan 23, 2008
■ Phyllis Pfeiffer returns as La Jolla Light publisher
Jan 22, 2008
■ Riford Center seeking to serve broader population
Jan 16, 2008
■ Seal Wars: the return of the lawsuits
Jan 16, 2008
■ Bird Rock homes to be open for tour for the second time
Jan 16, 2008
■ Torrey Pines ready for Invitational
Jan 16, 2008
■ Tackling those resolutions for 2008
Jan 9, 2008

**Community Links**
Community resources
● Surf Report
● La Jolla Village Cinemas
● La Jolla Recreation Center
● Promote La Jolla
● Historical Society
Internet
● uxCast
Newspapers
● Del Mar Times
Organizations
● U.S. Open
● La Jolla Town Council
● La Jolla Community Planning Association
● La Jolla Rough Water Swim
● Buick Invitational




California Coastal Commission, which had sought to present friend of the court briefs in favor of the city in its appeal of the Children's Pool lawsuit.

"That is very unusual in my experience," said Kennerson. "These were not passers-by but hefty players whose permission was denied."

Asked to speculate on why the environmental groups were denied, Kennerson replied: "I think it's because the various grounds differed from one group to the other, and because they're trying to make a political case out of a law case, just using the briefing as a pulpit to hawk their political wares."

George Schaefer, deputy city attorney, said it was fully within the discretion of the appeals court to deny the applications brought by the seven different groups on behalf of the city of San Diego. In the previous court case lost by the city, San Diego was ordered to dredge the beach in an attempt to cleanse it, deepen it and return it to shared use by humans and seals.

Schaefer said dredging was considered by the city, but that decision was postponed pending the outcome of the appeal of the O'Sullivan lawsuit. "This litigation sort of aborted the whole process," said Schaefer. "We're now waiting for the appeal court's decision."

Schaefer said a three-judge panel will hear the appeal of the O'Sullivan case.

Kennerson said he's waiting for a court date to present oral arguments in the Children's Pool appeal. "I expect the (court) notice any day now," he said, "at which time they will set a date within 30 days. We're looking at something on the order of 60 days out for a decision."

**Dave Schwab**
Dave Schwab is the Managing Editor and a reporter for La Jolla Light. Contact Dave Schwab at (858) 875-5951 or daves@lajollalight.com.

Email a Friend   Print   Reader Poll: vote now

Exhibit B

LAW OFFICES OF BRYAN W. PEASE
302 Washington St. #404, San Diego, CA 92103
Ph. (619) 723-0369 | Fax (619) 923-1001

November 5, 2007

Honorable Justices of the California Supreme Court
350 McAllister Street
San Francisco, California 94102-4783

**RE: Valerie O'Sullivan v. City of San Diego, No. S-157299**

Dear Honorable Justices of the California Supreme Court:

I am writing on behalf of the Animal Protection and Rescue League (APRL), a San Diego based nonprofit organization, to support the City of San Diego's petition for review of the above case. The 1931 tidelands grant from the State of California consisted of land only, and not money. It is entirely unreasonable and a violation of separation of powers for a judge to require the City to spend its own money to constantly remove sand in order to maintain an artificial and unnatural configuration of a beach.

Additionally, the federal Marine Mammal Protection Act, 50 CFR 216, makes it illegal to disturb the seals that now rest and give birth on the sand that the Court of Appeal has ordered the City to remove. Seal watching is a recreational activity that is equally permissible to swimming under the tidelands grant and current City policy, yet the Court of Appeal insists on favoring swimming as the favored use.

Enclosed please find the results of an independent, scientific opinion poll conducted by Zogby International that APRL sponsored. The poll results show with a 4% margin of error that over 80% of San Diegans want the beach in question to be used for seal watching and not swimming, and desire having a rope barrier to protect the seals. After asking if people "agree" with the above, the poll then asked if people "disagree" with dredging (removing sand), thus eliminating any positive response bias. Three in four disagree with dredging.

While the Zogby results were not part of the trial court record, I am providing them to the Court as context only, to illuminate the importance of this issue to the citizens of San Diego. The Court has discretion to depart from the restriction that amicus letters ordinarily must be confined to the issues raised in the petition and answer. See Fisher v. City of Berkeley (1984) 37 C3d 644, 709-713, 209 CR 682.

Thank you for your consideration of this matter.

Sincerely,

Bryan W. Pease
Pro bono general counsel
Animal Protection & Rescue League

3



Zogby International

Polling/Market Research
Public Relations Services
Marketing Strategies

**Date:** May 11, 2007

**To:** Bryan Pease
bryan@aprl.org

**From:** Rebecca Wittman
rebecca@zogby.com

**RE:** Results from San Diego poll

**Survey Methodology:** Survey of San Diego California, 5/9/07 through 5/11/07

This is a telephone survey of adults, conducted by Zogby International. The target sample is 602 interviews with approximately 15 questions asked. Samples are randomly drawn from telephone CDs of national listed sample. Zogby International surveys employ sampling strategies in which selection probabilities are proportional to population size within area codes and exchanges. Up to six calls are made to reach a sampled phone number. Cooperation rates are calculated using one of AAPOR's approved methodologies[1] and are comparable to other professional public-opinion surveys conducted using similar sampling strategies.[2] Weighting by age, race, and gender is used to adjust for non-response. The margin of error is +/- 4.1 percentage points. Margins of error are higher in sub-groups.

Zogby International's sampling and weighting procedures also have been validated through its political polling: more than 95% of the firm's polls have come within 1% of actual election-day outcomes.

---

[1] See COOP4 (p.38) in Standard *Definitions: Final Dispositions of Case Codes and Outcome Rates of Surveys.* The American Association for Public Opinion Research, (2000).

[2] *Cooperation Tracking Study: April 2003 Update*, Jane M. Sheppard and Shelly Haas. The Council for Marketing & Opinion Research (CMOR). Cincinnati, Ohio (2003).

901 Broad Street
Utica, New York, 13501
Phone: (315) 624-0200  Fax: (315) 624-0210
E-Mail: mail@zogby.com
Web Page: http//:www.zogby.com

1600 K Street NW, Suite 600
Washington, DC 20006
Phone: (202) 429-0022

4

Zogby International

Polling/Market Research
Public Relations Services
Marketing Strategies

## Narrative Summary

*201. Do you strongly agree, somewhat agree, somewhat disagree or strongly disagree that wild animals should be protected?*

| | | | |
|---|---|---|---|
| Strongly agree | 77% | | |
| Somewhat agree | 15 | **Agree** | **92%** |
| Somewhat disagree | 3 | | |
| Strongly disagree | 3 | **Disagree** | **6** |
| Not sure | 2 | | |

Most every respondent (92%) agrees that wild animals should be protected, including over three-fourths (77%) who agree strongly. Only 6% disagree.

*202. A sea wall was built at the Children's Pool in La Jolla in 1931. It was built on top of what was previously called "seal rock" because harbor seals used it for resting. Since the early 1990's, harbor seals have come back to this area and now use the beach for resting, and they give birth to pups right on the sand every spring. Swimming at this beach can disturb the seals, sometimes causing mothers to become separated from their pups, and is not recommended due to the presence of seal fecal matter. Do you strongly agree, somewhat agree, somewhat disagree or strongly disagree that this beach should be reserved for educational seal watching, and not swimming?*

| | | | |
|---|---|---|---|
| Strongly agree | 68% | | |
| Somewhat agree | 13 | **Agree** | **81%** |
| Somewhat disagree | 4 | | |
| Strongly disagree | 14 | **Disagree** | **18** |
| Not sure | 1 | | |

San Diego adults are more than four times as likely to agree than disagree that the beach should be reserved for educational seal watching, and not swimming. Four out of five respondents (81%) agree, with two-thirds overall strongly agreeing. Just fewer than one in five (18%) disagree, with disagreement more likely to be "strong" (14%) than "somewhat" (4%).

901 Broad Street
Utica, New York, 13501
Phone: (315) 624-0200  Fax: (315) 624-0210
E-Mail: mail@zogby.com
Web Page: http//:www.zogby.com

1600 K Street NW, Suite 600
Washington, DC 20006
Phone: (202) 429-0022

Zogby International

Polling/Market Research
Public Relations Services
Marketing Strategies

*203. The City currently maintains a rope barrier on the beach during pupping season, December 15 through May 15, to give the seals space from people. The rope is a guideline, instructing people to watch the seals from a respectful distance. Most people respect the rope even though it is not illegal to cross it. During seven months out of the year, there is no rope, and people often go right up to the seals and end up scaring them away. Do you strongly agree, somewhat agree, somewhat disagree or strongly disagree that the rope should be kept up year round?*

| | | | |
|---|---|---|---|
| Strongly agree | 64% | | |
| Somewhat agree | 16 | **Agree** | **80%** |
| Somewhat disagree | 8 | | |
| Strongly disagree | 10 | **Disagree** | **18** |
| Not sure | 2 | | |

A vast four-fifths majority (80%) agrees this rope should be kept up year round. This includes nearly two out of three overall (64%) who agree strongly. In contrast, less than one in five (18%) disagree that the rope should be kept up year round.

*204. Do you strongly agree, somewhat agree, somewhat disagree or strongly disagree that crossing the rope should be illegal during pupping season, which is Dec. 15 through May 15?*

| | | | |
|---|---|---|---|
| Strongly agree | 68% | | |
| Somewhat agree | 12 | **Agree** | **80%** |
| Somewhat disagree | 5 | | |
| Strongly disagree | 14 | **Disagree** | **19** |
| Not sure | 1 | | |

Respondents are four times as likely to agree than disagree that crossing this rope should be illegal during pupping season. Four in five (80%) agree, with two in three (68%) in strong agreement. One in five (19%) disagrees, with one in seven (14%) disagreeing strongly.

901 Broad Street
Utica, New York, 13501
Phone: (315) 624-0200  Fax: (315) 624-0210
E-Mail: mail@zogby.com
Web Page: http//:www.zogby.com

1600 K Street NW, Suite 600
Washington, DC 20006
Phone: (202) 429-0022

Zogby International

Polling/Market Research
Public Relations Services
Marketing Strategies

*203. The City currently maintains a rope barrier on the beach during pupping season, December 15 through May 15, to give the seals space from people. The rope is a guideline, instructing people to watch the seals from a respectful distance. Most people respect the rope even though it is not illegal to cross it. During seven months out of the year, there is no rope, and people often go right up to the seals and end up scaring them away. Do you strongly agree, somewhat agree, somewhat disagree or strongly disagree that the rope should be kept up year round?*

| | | | |
|---|---|---|---|
| Strongly agree | 64% | | |
| Somewhat agree | 16 | **Agree** | **80%** |
| Somewhat disagree | 8 | | |
| Strongly disagree | 10 | **Disagree** | **18** |
| Not sure | 2 | | |

A vast four-fifths majority (80%) agrees this rope should be kept up year round. This includes nearly two out of three overall (64%) who agree strongly. In contrast, less than one in five (18%) disagree that the rope should be kept up year round.

*204. Do you strongly agree, somewhat agree, somewhat disagree or strongly disagree that crossing the rope should be illegal during pupping season, which is Dec. 15 through May 15?*

| | | | |
|---|---|---|---|
| Strongly agree | 68% | | |
| Somewhat agree | 12 | **Agree** | **80%** |
| Somewhat disagree | 5 | | |
| Strongly disagree | 14 | **Disagree** | **19** |
| Not sure | 1 | | |

Respondents are four times as likely to agree than disagree that crossing this rope should be illegal during pupping season. Four in five (80%) agree, with two in three (68%) in strong agreement. One in five (19%) disagrees, with one in seven (14%) disagreeing strongly.

901 Broad Street
Utica, New York, 13501
Phone: (315) 624-0200  Fax: (315) 624-0210
E-Mail: mail@zogby.com
Web Page: http//:www.zogby.com

1600 K Street NW, Suite 600
Washington, DC 20006
Phone: (202) 429-0022

Zogby International

Polling/Market Research
Public Relations Services
Marketing Strategies

*205. A Superior Court judge recently ordered the City to dredge much of the sand from Casa Beach to return the beach to a pool for swimming. This would give the seals less space to rest and could drive them away entirely. The dredging would cost the City roughly $500,000. The City is appealing the decision. Do you strongly agree, somewhat agree, somewhat disagree or strongly disagree that the beach should be dredged?*

| | | | |
|---|---|---|---|
| Strongly agree | 15% | | |
| Somewhat agree | 8 | **Agree** | **23%** |
| Somewhat disagree | 11 | | |
| Strongly disagree | 63 | **Disagree** | **74** |
| Not sure | 3 | | |

San Diego adults are more than three times as likely to disagree than agree that the sand from Casa Beach should be dredged. Three in four (74%) disagree, including nearly two-thirds (63%) who disagree strongly. In comparison, fewer than one in four (23%) agrees the beach should be dredged, with one in seven (15%) agreeing strongly.

901 Broad Street
Utica, New York, 13501
Phone: (315) 624-0200  Fax: (315) 624-0210
E-Mail: mail@zogby.com
Web Page: http//:www.zogby.com

1600 K Street NW, Suite 600
Washington, DC 20006
Phone: (202) 429-0022

Exhibit C



Friday, January 25, 2008

**Beach & Bay Press**

# Court upholds restoration of Children's Pool

by ALYSSA RAMOS
December 13, 2007

After years of litigation, Valerie O'Sullivan's fight against the city over the condition of the Children's Pool in La Jolla is over now that the California Supreme Court has upheld a previous decision to return the pool to its original 1941 condition.

"That decision becomes final," said La Jollan Paul Kennerson, attorney for O'Sullivan. "Judge Pate's decision was affirmed. The Children's Pool must be restored to its initial 1941 condition, and sand and water have to be cleaned out so it's safe for human use."

The Nov. 28 decision by the California Supreme Court to deny the city attorney's petition for review of the O'Sullivan case puts an end to the court rulings, Kennerson said.
"This has been a long, tortured road," Kennerson said. "It's been really a long hassle and difficult, with opposition all along the way.

"There were 10 amicus letters sent to the court asking them to take the case, including one from Susan Davis. I wrote responses to them saying they were political and not legal. The court denied the petition and that is the end of the case."

According to Kennerson, there was major political motivation to pursue the case. The city attorney said he received "scores of letters from school kids wanting to keep the seals."

Kennerson said he offered the city attorney's office many deals to refrain from pressing forward, including an offer to forgive all attorneys' fees awarded.

9

"When people start talking about what children want, that's not the best basis for deciding public policy," Kennerson said. "Why is that an argument?"

Now the city must dredge the pool unless someone comes up with another case. But opponents said the decision is based on removal of the seals, and many residents say they want the seals to remain at the Children's Pool.

"Nobody's out to hurt the seals," Kennerson said. "The main point is that the property is a trust property. It's in trust as a children's pool. That's as sacred as if I gave someone money to use as a trust. They must use it for the purpose of the trust."

Kennerson originally filed the suit on behalf of O'Sullivan, one of several swimmers who swam into the cove, causing the seals to flee, in March 2003. O'Sullivan and the nine other swimmers wanted to demonstrate that humans and seals can share the beach.

The city first applied for a permit to excavate the sand after the City Council ruled on Sept. 14, 2004 to return Children's Pool to its original purpose as a beach for children. The city removed the rope separating the public from the seals and posted a sign that permits public use of the beach. Last year, the city voted to reinstate the rope during pupping season to protect the mother seals and their pups.

The following history of Children's Pool was reported in the Tentative Statement of Decision issued by Judge William C. Pate following the hearing on Aug. 26, 2005:
• In 1930, the city gave Ellen Browning Scripps permission to construct the breakwater to create a pool for children.
• In 1993, the city council unanimously agreed to create a Marine Mammal Reserve approximately 100 yards from Children's Pool to accommodate an increasing number of harbor seals. The rookery was temporarily established for a five-year trial period and was off-limits to swimmers, divers and tourists. Divers were still able to swim in and out of Children's Pool, however.
• Between 1995 and '96, lifeguards began to erect boundaries to protect beachgoers from the increasing number of seals on the beach. In 1997, the City Manager issued a report stating that the pool had been closed due to high fecal coliform counts from the seals. In 1999, the city council voted to permanently erect a rope barrier to separate humans and seals.
• In October 1999, the National Marine Fisheries Service advised the city that it did not agree with closing the beach for the expanding seal population, and that the city should decide whether Children's Pool should be used by seals or by humans, but not by both.
• One month later, the city manager recommended that the city terminate the seal haul-out after its five-year trial ended. The city council rejected the proposal and voted to make the reserve permanent with a five-year review.
• In February 2000, the NMFS notified the city that it had decided to manage the Children's Pool as a natural seal haul-out and rookery. The NMFS told the city that it could temporarily

10

displace the seals by dredging the sand but that the city could not harass the seals. A month later, the U.S. Fish & Wildlife Service advised the city that it did not have the authority to create a seal reserve on public trust tidelands, partly because it violated the pool's 1933 trust.
• In June 2004, the city manager issued a comprehensive report for dredging Children's Pool to reduce the level of contamination to acceptable levels and return the pool to its original status.

The city council approved the dredging and directed that the rope barriers and signposts be removed to allow public access.

Three years ago, the court recognized that the city had breached the 1931 trust by not maintaining the beach as a children's pool, and by taking no steps to prevent it from becoming a seal haul-out.

The city further ignored the 1999 legislation that mandated "closed" signs only be posted due to human pollution, and that Children's Pool was polluted from non-human causes and should have received an "advisory" sign instead.

Finally, the court contended that the city ignored recommendations by the city manager and NMFS to return the pool to its original status without harassing the seals.
— Reporter Adriane Tillman contributed to this story.

© 2008 Beach & Bay Press | Accessibility

11

Exhibit D

## Courts rule Children's Pool belongs to people, not seals

Wednesday, December 05, 2007

By Dave Schwab (daves@lajollalight.com)

The courts have concluded the 1931 trust that deeds Children's Pool over from the state to the city of San Diego for use as a children's wading pool has been violated. The city must now dredge sand from it to return it the condition it was in in 1941 when it was jointly used by humans and harbor seals.

Last week, the California Supreme Court refused to hear an appeal brought to it by the city of San Diego of a Court of Appeal, Fourth Appelate District's September ruling that San Diego violated its trust status over La Jolla's Children's Pool by allowing it to be used for purposes other than as "a public park and children's pool."

Since Sept. 4, 1997, La Jolla's Children's Pool has been closed to human contact due to high bacteria coliform counts from accumulated seal waste caused by a burgeoning pool seal population. Since then, the pool has been a de facto seal rookery and haul-out. That reality led to the filing of the case of O'Sullivan vs. the city of San Diego, which alleged that the city breached its trust status of Children's Pool by allowing the pool to be taken over by seals to the exclusion of people, especially children, for whom it was originally designed.

Council President Scott Peters, whose First District includes La Jolla, hailed the legal ruling as "the right thing to do," noting the pool ought to be used for the purpose for which it was intended: as a safe children's wading area.

"This has been a difficult issue for the community," said Peters, "but it affirms what a lot of us have been saying, that this was intended for children to be able to swim. Now we need to turn toward finding a humane, cost-effective way to comply with this court order. We certainly hope to resolve that pretty soon."

For plaintiff's attorney Paul Kennerson, the state Supreme Court's denial of the city's appeal of the O'Sullivan case marked the end of a five-year legal struggle to determine legitimate uses for the pool. It was also a vindication of his legal position that the pool's trust status should be narrowly, not broadly, construed.

"Everybody from the City Attorney to the City Council to the Parks and Rec Department to the mayor were all driven by some perception that children preferred to have seals at Children's Pool, rather than have it as a place for children to go in the water," said Kennerson. "The Children's Pool is in trust: Nobody seemed to pay any attention to that. Nothing is more sacred. Everybody kept saying to me, 'Well, the children want seals.' My point is, that's not a good basis for a policy decision, to determine what is right by what a child wants.

"Children want lollipops and they want not to go to school. But sometimes you have to tell them they can't have lollipops and they have to go to school. In this case, the law is saying, 'This is for children to use,' and what you should learn is that you must obey the law, even if you don't prefer that."

Deputy City Attorney George Schaefer, who argued the city's case in O'Sullivan, noted the state Supreme Court's decision was not unexpected in that the court takes up fewer than 5 percent of the cases it is petitioned to hear. He added that the Supreme Court's denial of the city's appeal effectively seals the deal on the pool's fate. "The only other possibility would be for the state Legislature to pass legislation to remove the city as trustee and have the state assume all obligation for managing that beach," Schaefer said. "The Legislature could amend the statute that created the (pool) trust to explicitly provide that a marine mammal park could be established, if the city wanted to establish such a park."

Melinda Merryweather, a longtime La Jollan who has actively supported returning Children's Pool to shared use by humans and pinnipeds, was elated by the state Supreme Court's decision to deny the city's appeal. For Merryweather, carrying the fight to have Children's Pool returned to use by children was all about honoring a promise that had been made previously to the community.

"This was always clear-cut to me from the beginning," said Merryweather. "You've got a gift (the Children's Pool) the city accepted and they have to honor it. It was their responsibility to maintain it and they never did. They let it be turned into something else (a seal rookery), and you can't do that. Ellen Browning Scripps gave it (the pool) to San Diego on the condition that it be for fishing and swimming."

Brian Pease, an attorney representing the Animal Protection & Rescue League, pointed out there are several significant environmental hurdles to be cleared before sand from Children's Pool can be dredged. "There is a whole environmental impact review (the city) must

12

go through," Pease said. "They have to get a permit from the Army Corps of Engineers which, historically, is very protective. There are a lot of problems that have to be looked into. Dredging all that sand from that beach could contribute to coastal erosion of other nearby beaches and cliffs. The city is being asked to maintain an artificial configuration of beach and will have to continually remove sand, year after year, that is going to build up. It's not likely to go forward: It's so unfeasible."

**Dave Schwab**
Dave Schwab is the Managing Editor and a reporter for La Jolla Light. Contact Dave Schwab at (858) 875-5951 or daves@lajollalight.com.

13