# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANIMAL PROTECTION AND RESCUE LEAGUE; DOROTA VALLI,<br><br>　　　　　　　　　　Plaintiffs,<br><br>　vs.<br><br>STATE OF CALIFORNIA; CITY OF SAN DIEGO DEPARTMENT OF PARKS AND RECREATION; MAYOR JERRY SANDERS,<br><br>　　　　　　　　　　Defendants. | CASE NO. 07cv2320 JM(AJB)<br><br>ORDER VACATING FEBRUARY 1, 2008 ORDER; DENYING MOTION FOR TEMPORARY RESTRAINING ORDER; REQUEST FOR BRIEFING; SCHEDULING ORDER |

The court hereby vacates the order entered on February 1, 2008 (Docket No. 31). Through inadvertence, an earlier draft of the order was docketed. The corrected order is fully set forth below.

## INTRODUCTION

Plaintiffs Animal Protection and Rescue League ("APRL") and Dorota Valli move for a temporary restraining order ("TRO") to compel defendant City of San Diego ("City") to place a seasonal rope barrier at the La Jolla Children's Pool Beach ("CPB") to limit human interaction with harbor seals during pupping season. Defendants City and Mayor Jerry Sanders oppose the motion, defendant State of California did not file a response to the TRO application and represented at the time of oral argument that the

State of California took no position with respect to the rope barrier, and prospective Intervenor, Valerie O'Sullivan, opposes the motion. For the reasons set forth below, the TRO application is denied.

**BACKGROUND**

In 1930 Ellen Scripps requested and received approval for the construction of a 300-foot concrete breakwater in the Pacific Ocean adjacent to La Jolla to create a bathing pool.[1] The State of California granted lands, including the lands encompassing CPB to the City in trust. One condition of the trust provided that City was to devote the land "exclusively to public park, bathing pool for children, parkway, highway, playground and recreational purposes, and to such other uses as may be incident to, or convenient for the full enjoyment of, such purposes. . . ." By 1997, CPB was no longer usable as a bathing beach because of contamination caused by the presence of harbor seals and sea lions.

On March 12, 2004, Prospective Intervenor, Valerie O'Sullivan, commenced an action in San Diego alleging City violated the 1931 statutorily-created public trust for the area known as CPB (the "1931 Tidelands Grant"). O'Sullivan v. City of San Diego, No. GIC 826918, (S.D. Sup.Ct. 2004) (Intervenor's Exh. 1). Among other things, Superior Court Judge William Pate concluded: (1) since 1997, the beach and water inside the breakwater are polluted and pose a health risk to humans because of high concentrations of seal feces; (2) in its present state, CPB is not suitable for the uses enumerated in the 1931 Tidelands Grant; (3) placement of a rope barrier at CPB further restricted public access to CPB and contributed to the increase in pollution; (4) the Marine Mammal Protection Act ("MMPA") §109(h) permits the removal of the seal population from CPB; and (5) James Lecky, West Coast Administrator from the

---

[1] The background section is primarily based upon the factual background set forth by the California Superior Court and Court of Appeal. O'Sullivan v. City of San Diego, No. D047382 (Cal.App. September 7, 2007); O'Sullivan v. City of San Diego, No. GIC 826918 (S.D. Cal. Sup. August 26, 2005).

National Marine Fishery Services ("NMFS") advised the City that §109(h) of MMPA permitted the city to address the health and safety issues presented at CPB and that the harbor seals are not a threatened or endangered species. In light of the legal and factual findings of the Superior Court, the City was "ordered to employ all reasonable means to restore the Pool to its 1941 condition by removing the sand build-up and further to reduce the level of water contamination in the Pool to levels certified by the County of San Diego as being safe for humans." The order, entered on August 26, 2005, required the City to comply with the court's order within six months. The City has yet to comply with the court's order.

The City appealed; and the Court of Appeal affirmed the judgment of the Superior Court. The appellate court discussed the applicability of §109(h) of MMPA to the CPB, noting that the exception applied under the circumstances:

> Because feces from the substantial number of seals at the Children's Pool result in high levels of water pollution, it can reasonably be concluded there is damage to public property and danger to the health and safety of persons at the children's Pool within the meaning of those exceptions. Considering those circumstances, the trial court could reasonably conclude those exceptions to the MMPA applied and did not preclude its injunction against City requiring City to, in effect, remediate those problems by restoring the Children's Pool to its 1941 condition.

(Intervenor's Exh. 2, pp. 45-46).

After the California Supreme Court denied review, City filed a "Motion to Clarify the Court's Injunction" which requested the court to reconsider the "rope issue" and permit the City to place a rope barrier on the shore of CPB. (Intervenor's Exh. 4). Judge Hofmann declined to reconsider the "rope issue" stating:

> Specifically, the 'rope issue' was discussed in both this Court's and the Court of Appeal's final rulings in favor of Plaintiff and against the City. Ultimately, both Courts found that the placement of a 'rope barrier cutting off public access to the Pool' . . . resulted in the City's breach of its obligations as trustee under the subject Trust.

Id. Further, the court noted that "the relevant issue has been considered and decided, and the Court's directives to the City are clear and unambiguous." Id.

On December 11, 2007 Plaintiffs commenced the present action seeking injunctive relief to compel Defendants (1) to obtain a MMPA permit prior to

"attempting to scare the seals away," (Comp. ¶26); and (2) to place a rope barrier at CPB during pupping season. Plaintiffs now move for a TRO to compel Defendants to install a rope barrier at CPB during seal pupping season which began on December 15, 2007 and ends around May 15, 2008. The motion is opposed.

## DISCUSSION

**Legal Standards**

The Ninth Circuit has not articulated a specific test for temporary restraining orders but applies the same standards applicable for preliminary injunctions. See Superior Servs., Inc. v. Dalton, 851 F. Supp. 381, 384 (S.D. Cal. 1994). Preliminary injunctive relief is available if the party meets one of two tests: (1) a combination of probable success on the merits and the possibility of irreparable harm, or (2) the party raises serious questions and the balance of hardship tips in its favor. Arcamuzi v. Continental Air Lines, Inc., 819 F.2d 935, 937 (9th Cir. 1987). "These two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases." Id. Under both formulations, however, the party must demonstrate a "fair chance of success on the merits" and a "significant threat of irreparable injury." Id. The court also considers the relative balance of harm to the parties and the public interest at stake. Alaska v. Native Village of Venetie, 856 F.2d 1384, 1388 (9th Cir. 1988).

**Motion for a TRO**

Before reaching the merits of Plaintiffs' arguments, the court notes that threshold jurisdictional issues have yet to be fully briefed and decided. As noted at the time of oral argument, and further addressed herein, the court is concerned that abstention principles caution against the exercise of subject matter jurisdiction in this case. These concerns are more specifically set forth below.

<u>Likelihood of Success on the Merits</u>

Plaintiffs' argument on the merits is twofold. First, Plaintiffs contend that the 1931 Tidelands Grant is inconsistent with the MMPA in that the Tidelands Grant has

been construed to prohibit the placement of a temporary pupping season rope and therefore under (unidentified) preemption principles the MMPA trumps the Tidelands Grant. Second, as the MMPA limits harassment of marine mammals, the City is obligated to affirmatively place a temporary rope barrier at CPB. Each argument is addressed in turn.

Plaintiffs generally argue that the 1931 Tidelands Grant to the City with the condition that CPB is to be used as a bathing pool is preempted by the MMPA and therefore they are entitled to injunctive relief. However, Plaintiffs fail to explain how that is so. Plaintiffs, as the party seeking injunctive relief, bear the burden of showing a likelihood of success on the merits or the existence of serious issues. Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal, 546 U.S. 418, 429 (2006). Here, Plaintiffs fail to articulate any basis for the court to conclude that the 1931 Tidelands Grant is preempted. Plaintiffs cite no authorities nor provide any preemption analysis. The entire focus of Plaintiffs argument is that a barrier rope must be placed at CPB to prevent harassment of the seals during pupping season. This is an insufficient basis to establish the requisite showing of success on the merits or the existence of serious issues.

The court notes that federal law preempts state law under three different circumstances: express, conflict, or field preemption. Express preemption occurs when a federal statute expressly preempts state law. See Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 95-98 (1983). Under conflict preemption, state law is preempted to the extent it actually conflicts with federal law. Barnett Bank of Marion County, N.A. v. Nelson, 517 U.S. 25, 31 (1996). Conflict preemption is found where it is "impossible for a private party to comply with both state and federal requirements" or where state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." Freightliner Corp. v. Muyrick, 514 U.S. 280, 287 (1995). Finally, under the third type of preemption, field preemption occurs when Congress regulates in an area intended to be occupied exclusively by the federal government. Id.

1  State laws may be impliedly preempted where Congress has so comprehensively
2  legislated in an area the federal law occupies the field, leaving no room for state
3  regulation. <u>Pacific Gas Elec. Co. v. State Energy Resources Conservation & Develp.</u>
4  <u>Comm'n</u>, 461 U.S. 190, 204 (1983). The Supreme Court has determined that there are
5  only three statutory schemes that completely occupy the field: cases arising under the
6  Labor Management Act and ERISA and usury claims under the National Bank Act.
7  <u>Beneficial Nat. Bank v. Anderson</u>, 539 U.S. 1, 8 (2003).

8        While the moving papers are silent on the type of preemption at issue, at the time
9  of oral argument Plaintiffs represented that either express or conflict preemption
10 applies. With respect to express preemption, Plaintiffs fail to identify any federal
11 statute expressly preempting the 1931 Tidelands Grant. With respect to conflict
12 preemption, Plaintiffs argue that it is impossible to comply with both the Tidelands
13 Grant and MMPA (because MMPA requires the placement of a rope barrier and the
14 Tidelands Grant prohibits such a rope barrier) and therefore, under <u>Freightliner Corp.</u>,
15 514 U.S. 280, the Tidelands Grant is preempted. Absent additional analysis, this facile
16 argument is not persuasive for several reasons. First, such an argument fails to address
17 §109(h) of MMPA. This section permits local governments to "take" marine mammals
18 that present a danger to the health and safety of persons using CPB. <u>See</u> 13 U.S.C.
19 §1379(h). The term "take" means "to harass, hunt, capture, or kill" any marine
20 mammal. 13 U.S.C. §1362(13). While government agencies may not use lethal force
21 to remove marine mammals that pose a health and safety threat, 13 U.S.C. §1379(h),
22 all other means are available to local governments to remediate such health and safety
23 issues. Accordingly, the 1931 Tidelands Grant and MMPA do not necessarily conflict
24 since MMPA specifically permits the taking (i.e. harassment, hunting, and capturing)
25 of the seal population at CPB. Such conduct is not inconsistent with the 1931 Tidelands
26 Grant because, under the present circumstances, the MMPA does not preclude the
27 taking of marine mammals that present a safety or health risk to the human population.
28       Further, the limited evidentiary record before the court fully supports the view

1  that the MMPA and Tidelands Grant are not inconsistent. James Lecky from the
2  National Marine Fishery Services ("NMFS"), the agency charged with enforcing the
3  MMPA, provided testimony regarding NMFS's position relative to the seal population
4  at CPB. Mr. Lecky testified that §109(h) of the MMPA allows local goverments to
5  remove the harbor seals (by non-lethal means of harassment, capture, or hunting) from
6  CPB because of public health and safety concerns. (Prospective Intervenor's Exh. 5).
7  Seen in this light, the court concludes that the MMPA and the 1931 Tidelands Grant are
8  not in conflict and therefore MMPA does not preempt the Tidelands Grant.

9        Second, in order to prevail on the merits, Plaintiffs must also show that the
10 MMPA requires the placement of the rope barrier during pupping season. Plaintiffs do
11 not cite a single provision of MMPA that requires the placement of such a rope barrier
12 nor do Plaintiffs address the impact of §109(h), the MMPA provision authorizing local
13 governments to "harass, hunt, [or] capture," 13 U.S.C. §1362(13), marine mammals in
14 the course addressing public health and safety issues. Accordingly, Plaintiffs fail to
15 adequately establish that MMPA requires the placement of a rope barrier at CPB

16       In sum, the court concludes that Plaintiffs have failed to establish the requisite
17 likelihood of success on the merits or the existence of serious issues on both the
18 preemption and the placement of a rope barrier issue. Even assuming significant
19 irreparable harm, the minimal showing of the likelihood of success on the merits
20 warrants against the issuance of a TRO.

21       <u>Irreparable Harm and Balance of Hardships</u>

22       Plaintiffs argue that they will suffer irreparable harm because "there have been
23 harassment incidents that a rope would have prevented and that were only prevented by
24 plaintiffs' presence." (Reply at p.7:22-23). Plaintiff Valli declares that she spends
25 about six hours per day at CPB and that people come close to the pregnant seals, scaring
26 them into the water, and that some individuals throw objects at the seals. (Valli Decl.
27 ¶2). Ms. Valli also declares that a seasonal rope is effective in preventing the public
28 from getting too close to the seals. She also declares that there have been miscarriages

in the past due to the disturbances at the CPB.  Id. ¶3.

This evidence fails to establish irreparable harm.  As noted by prospective Intervenor O'Sullivan, the pupping season began on December 15, 2007 and Plaintiffs fail to identify a single incident of harm or harassment occurring during this period of time.  As there is not currently a rope barrier at CPB, nor any identifiable present harm to the seal population, a TRO is not warranted to maintain the status quo.  A TRO "may only be granted when the moving party has demonstrated a significant [and immediate] threat of irreparable injury, irrespective of the magnitude of the injury."  Simula, Inc. v. Autoliv, Inc., 175 F.3d 716, 725 (9th Cir. 1999); Caribbean Marine Serv. Co., Inc. v. Baldridge, 844 F.2d 668, 674 (9th Cir. 1988) (plaintiff "must demonstrate immediate threatened harm").  Here, Plaintiffs fail to carry their burden of demonstrating a significant threat of immediate irreparable harm.  Plaintiff Valli declares that there have been past instances of harassment at CPB but fails to identify a single incident of harassment occurring since December 15, 2007. (Valli Decl.) Moreover, Plaintiffs fail to establish that frightening seals such that they retreat into the water causes irreparable harm.  Plaintiff Valli also declares, in conclusory fashion, that miscarriages in seals are attributable to people walking "right up to the seals and distrub[ing] them." (Valli Decl. ¶2).  Plaintiff Valli fails to identify any causal nexus between miscarriages and people walking up to the seals. Such speculative injury, identified by a lay witness, fails to "demonstrate immediate threatened harm."  Caribbean Marine Serv., 844 F.2d at 674.

Finally, the court notes that both Plaintiffs and the City agree and argue that the placement of the rope barrier "would not harm anyone because it is an effective tool in preventing unlawful harassment incidents of pregnant and nursing seals." (City Oppo. at p.1:24-25).  This argument misses the mark.  The focus of irreparable harm is on the harm sought to be prevented (i.e. harassment of the seals), not on the harm or difficulty in carrying out the task (i.e. the placement of the rope barrier).

In sum, Plaintiffs have failed to adequately articulate and support their claims of irreparable harm under any of the Arcamuzi formulations required for injunctive relief.

**Subject Matter Jurisdiction**

In light of the extensive state court proceedings concerning CPB, the court is concerned that abstention doctrines may apply to deprive the court of subject matter jurisdiction to entertain this action. For example, the Rooker-Feldman doctrine deprives district courts of jurisdiction over claims "inextricably intertwined" with claims adjudicated in state courts. See Rooker v. Fidelity Trust Co., 263 U.S. 413, 415 (1923); District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 483 (1983). The rationale for this doctrine is that 28 U.S.C. §1257 vests jurisdiction to review state court judgments exclusively with the United States Supreme Court, and not the district court. Exxon Mobil Corp. v. Saudi Basic Industries Corp, 544 U.S. 280, 292-93 (2005). Similarly, the Younger abstention doctrine may apply as vital state interests are at play in this case. The "policy objective behind Younger abstention is to avoid unnecessary conflict between state and federal governments." United States v. Morros, 268 F.3d 695, 707 (9th Cir. 2001). In light of the court's concern that abstention may be appropriate, the court requests further briefing, as set forth below.

**Scheduling Orders**

In order to provide an efficient means of resolving the complex issues raised by the parties, the court sets the following briefing schedule:

- Prospective Intervenor's motion to intervene is scheduled for February 21, 2008 at 4:00 p.m.

- Parties advocating application of abstention principles to the present case shall file supporting briefs no later than by February 8, 2008; opposition briefs shall be filed and served no later than by February 14, 2008; and reply briefs by February 18, 2008. Oral argument is scheduled for February 21, 2008 at 4:00 p.m.

- Plaintiffs' motion for preliminary injunction will also be heard on February 21, 2008 at 4:30 p.m. (The court would entertain a joint motion

to continue this motion in the event any party desires to submit additional briefing and/or evidence on this motion.).

- The court vacates the State of California's motion to dismiss hearing date and advises the parties that the motion will be recalendared, if necessary, after ruling on the above identified motions.

In sum, the court denies the motion for a TRO, requests briefing on the applicability of abstention principles to the present case, and sets a briefing schedule on (1) the motion to intervene; (2) abstention issues; and (3) Plaintiffs' motion for preliminary injunction.

**IT IS SO ORDERED.**

DATED: February 4, 2008

Hon. Jeffrey T. Miller
United States District Judge

cc: All parties