MICHAEL J. AGUIRRE, City Attorney
GEORGE F. SCHAEFER,
California State Bar No. 139399
    Office of the City Attorney
    1200 Third Avenue, Suite 1100
    San Diego, California 92101-4100
    Telephone: (619) 533-5800
    Facsimile: (619) 533-5856

Attorneys for Defendant
City of San Diego and
Mayor Jerry Sanders

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANIMAL PROTECTION AND RESCUE LEAGUE a nonprofit corporation, and DOROTA VALLI, an individual,<br><br>    Plaintiffs,<br><br>v.<br><br>THE STATE OF CALIFORNIA, THE CITY OF SAN DIEGO DEPARTMENT OF PARKS AND RECREATION, MAYOR JERRY SANDERS, and DOES 1 TO 100,<br><br>    Defendants. | Case No. 07 CV 2320 JM AJB<br><br>**OPPOSITION OF THE CITY OF SAN DIEGO AND MAYOR JERRY SANDERS TO VALERIE O'SULLIVAN'S MOTION TO INTERVENE**<br><br>Judge: Hon. Jeffrey T. Miller<br>Court Room: 16<br>Magistrate: Hon. Anthony L. Battaglia<br>Hearing Date: February 21, 2008<br>Hearing Time: 4:00 p.m. |

    Defendants Mayor Jerry Sanders ("Mayor") and the City of San Diego ("City"), erroneously sued as the City of San Diego Department of Parks and Recreation, oppose the motion of Valerie O'Sullivan to intervene in this case. As a preliminary matter, the motion is fatally flawed because it is not supported by a declaration or affidavit from O'Sullivan setting forth her interest in this controversy. On that basis alone this Court should deny the motion to intervene. Putting aside this glaring omission, O'Sullivan has failed to satisfy the threshold legal requirements to permit intervention.

### I. STATEMENT OF FACTS

    O'Sullivan's motion to intervene includes an incomplete and unobjective summary of the litigation that she pursued in State Court in the case of *Valerie O'Sullivan v. City of San Diego*, San Diego Superior Court Case No. GIC 826918 ("*O'Sullivan* case"), and the City's

1  unsuccessful appeal of the dredging order and injunction rendered in that case. Defendants City
2  and Mayor are therefore compelled to provide the following summary.  References to exhibits
3  and testimony in the *O'Sullivan* case are included in the City's request for judicial notice
4  contemporaneously filed in support of this opposition. The request for judicial notice includes
5  copies of pleadings, exhibits, and excerpts of hearings and trial testimony in the *O'Sullivan* case.
6        The City of San Diego is the trustee of a 1931 Tidelands Trust governing Children's Pool
7  Beach in La Jolla, California. (Stats. 1931 Chap. 937). The 1931 Tidelands Trust requires that
8  Children's Pool Beach be used for a public park, bathing pool for children, parkway, highway,
9  playground and recreational purposes. (*Id.*)  The citizens of San Diego, through their elected
10 representatives on the San Diego City Council, opted to permit joint use of Children's Pool
11 Beach by the public and seals. (City's Request for Judicial Notice at Ex. T).  Over a million
12 visitors a year come to Children's Pool Beach to view the seals. (*Id.* at Ex. Q). A photograph is
13 included to give the reader a visual image of Children's Pool. (*Id.* at Ex. P).
14       The Marine Mammal Protection Act, 16 U.S.C. § 1361 *et seq.* ("MMPA") forbids
15 individuals from harassing marine mammals.  The definition of harassment includes an act of
16 annoyance which has the potential to disturb a marine mammal in the wild by disrupting
17 behavioral patterns. (*Id.* at Ex. S). In 2003 Valerie O'Sullivan, and eight other La Jolla residents
18 who demanded that only public swimming be allowed at Children's Pool Beach, protested the
19 City's joint use policy with a "swim-in" which caused some of the seals to flush into the ocean.
20 (*Id.* at Ex.L at pp. 219:26-220:25; & Ex. M at 338:15-17). Federal agents cited O'Sullivan and
21 the other eight swimmers, who became known as the "La Jolla Nine," for violation of the
22 MMPA. (*Id.* at Ex.L at pp. 20:24-25; 223:2-20; & Ex. M at 338:18-21).  Although O'Sullivan
23 succeeded in getting the NOAA citation dismissed, she decided to stop swimming at Children's
24 Pool Beach in 2003 because of the citation.  (*Id.* at Ex. L, p. 219: 13-17).
25       O'Sullivan later sued the City of San Diego alleging the City's joint use policy violated
26 the 1931 Tidelands Trust because the seals created a public nuisance Children's Pool Beach.  (*Id.*
27 at Ex.A p. 5).  Although O'Sullivan alleged the seals caused pollution at the beach, she neglected
28 to comply with California law by serving a copy of her complaint on the Attorney General of the

State of California within 10 days after filing suit. *See* Cal. Code Civ. Proc. § 388. Thus, O'Sullivan assumed the role as a "private attorney general" in the litigation without giving the California Attorney General timely notice of the lawsuit for possible intervention.

The trial court denied a motion for intervention by a non-profit environmental organization, Bay Keeper, which asserted it represented citizens who recreate at Children's Pool Beach by watching the seals. (*Id.* at Ex.J pp. 1:2-2:4). The trial court reasoned that Bay Keeper's intervention was not allowed because O'Sullivan, as a private attorney general, represented all of the people of the State of California in the lawsuit. (*Id.* at Ex. J pp. 2:17-21; 11:9-12:4).

Approximately one year after O'Sullivan filed her lawsuit, the trial court ruled that the State of California was an indispensable party to the litigation. O'Sullivan then amended her complaint to add the State of California as a party defendant and included as an exhibit to the amended complaint a copy of the order. (*Id.* at Ex. C). The California Attorney General, appearing on behalf of the State, entered into a stipulation later adopted by the trial court that provided the State would be dismissed from the lawsuit, but bound by the judgment; however, the State reserved its right to apply to file an amicus curiae brief in the Court of Appeal should there be an appeal. (*Id.* at Ex. E).

The State's position in the litigation was that the use of Children's Pool Beach advocated by O'Sullivan (public swimming) and the uses allowed by the City (marine mammal watching and/or public swimming) were permissible trust uses. The State Lands Commission, which by law has the sole authority to oversee trust grants, also issued an opinion letter that the City had complied with the terms of the trust. (*Id.* at Ex. R).[1]

The case then proceeded to a court trial. It was undisputed at the court trial that the late Ellen Browning Scripps, at her expense, constructed a breakwater at Children's Pool Beach which was donated and later became part of the 1931 Tidelands Trust. (*Id.* at Ex. D at ¶ 4). At the court trial, O'Sullivan presented evidence consisting of correspondence and a March 1931

---

[1] In the appeal the parties disputed whether the opinion letter had been received into evidence. The Court of Appeal assumed that the trial court considered the entire letter and also declined to defer to the State Land Commission's opinion. (*See* Opinion at 34 n. 23 included at Ex. 2 to O'Sullivan's Notice of Lodgment).

1  report of an engineer that her counsel retrieved from a local public library about the construction
2  of the breakwater at Children's Pool Beach. (*Id.* at Ex. N at p. 454: 11-15). Based on this
3  historical account that the breakwater was constructed to create a bathing pool for children, the
4  trial court found that the City had breached its fiduciary duty as trustee of the Tidelands Trust by
5  allowing the beach to become unsafe for humans because of pollution caused by the seals. (*See*
6  Opinion at p. 21: 11-22 included at Ex. 2 to O'Sullivan's Notice of Lodgment, hereafter referred
7  to as the "Dredging Order").  The trial court held that the Legislature intended that Children's
8  Pool Beach be used exclusively for a children's pool and could not be used as a habitat, animal
9  sanctuary, zoo, or seal watching facility.  (Dredging Order at p. 20: 26-28).

10       The City defended itself in the lawsuit by asserting that O'Sullivan's requested relief
11  violated the constitutional separation of powers doctrine and the MMPA. (City's Request for
12  Judicial Notice at Ex.B, pp. 2:24-25; 4:13-15).  O'Sullivan's counsel argued, "The seals are not a
13  threatened species…so there's no harm in getting rid of them." (*Id.* at Ex. K, p.111:1-2; 5-6).
14  Persuaded by this argument, the trial court rejected the City's separation of powers and MMPA
15  defenses and ordered the City to dredge Children's Pool Beach to return it to its condition in
16  1941. (Dredging Order pp. 25:7-11; 31:6-13).  The trial court also criticized the City for not
17  harassing the seals away from the beach as early as 1997. (Dredging Order p. 25:18-27).  The
18  parties agreed that the court-ordered dredging would force the City to evict the colony of seals
19  inhabiting the beach. (City's Request for Judicial Notice at Ex.O at pp. 686:28-687:7; 687:20-
20  22). The trial court awarded O'Sullivan attorneys' fees totaling $468,906 based on its finding that
21  O'Sullivan's successful lawsuit had conferred a significant benefit on the public.  (*Id.* at Ex. F).
22       The City appealed the dredging order and fees award which were stayed by California
23  law pending the City's appeal. During the pendency of the appeal before the Court of Appeal, the
24  Attorney General filed an amicus application on behalf of the California Coastal Commission in
25  ///
26  ///
27  ///
28  ///

support of the City's legal position, but the Court of Appeal denied the amicus application.[2] The Court of Appeal affirmed the trial court's dredging order and the award of attorneys' fees. (*See* Unpublished Opinion included at Ex. 3 to O'Sullivan's Notice of Lodgment).

The Animal Protection Rescue League (APRL) filed an amicus letter in support of the City's petition for review before the California Supreme Court. (City's Request for Judicial Notice at Ex. X)  The California Supreme Court denied the City's petition for review and remittitur issued on December 3, 2007. (*Id.* at Ex. W; Ex. 4 to O'Sullivan's Notice of Lodgment).

The City then received a letter from a law enforcement officer with NOAA requesting that a rope barrier be installed at Children's Pool Beach during the harbor seal pupping season. The City requested clarification from the State Court on whether its injunction permitted the City to honor this request. (City's Request for Judicial Notice at Ex. G).  The State Court ruled that the injunction did forbid placement of the rope barrier. (Ex. 5 to O'Sullivan's Notice of Lodgment). The City is in the process of complying with the State Court's dredging order by securing the necessary state and federal permits for dredging.[3]

The City has completely complied with the State Court's order awarding fees and costs, with interest, to O'Sullivan's counsel by paying him $587,812.72 in December 2007.[4] O'Sullivan's counsel recently filed a motion in the State Court demanding an additional

///

///

---

[2] The Court of Appeal also denied the applications to file an amicus curiae brief in support of the City's legal arguments that were filed by the following organizations: 1) the California League of Cities; 2) Friends of La Jolla Seals; 3) the Humane Society of the United States of America; 4) the Institute for Animal Rights Law; 5) the International Society of Animal Rights; 6) the Sierra Club; and 7) the San Diego Animal Rights Advocates. (City's Request for Judicial Notice at Ex.U & V).

[3] *See* declaration of Samir Mahmalji in Support of the Opposition of the City and Mayor to Plaintiffs' Motion for a Preliminary Injunction.  On January 18, 2008 the City also filed a notice of compliance with the injunction with the State Court. (City's Request for Judicial Notice at Ex.H).  The voluminous supporting documentation to that notice is omitted here.

[4] The City's check was processed faster than the anticipated payment date, so O'Sullivan's counsel agreed to credit the excess amount on any subsequent award.

$799,748.77 for additional legal services, including appellate work. (City's Request for Judicial Notice at Ex. I).[5]

Notwithstanding the State Court's judgment, the notion that O'Sullivan is represents the public interest in pursuing the State Court litigation remains a matter of growing public controversy. This is best evidenced by a December 18, 2007 editorial in the *San Diego Union Tribune* entitled, "Humans v. seals." As the editorial notes, "It's hard to fathom a more muddled mess that the legal tangle surrounding the colony of seals at the Children's Pool in La Jolla. Once the plaintiff's lawyers intruded on the matter, there was little hope of an amicable resolution of the clash between humans and seals….All it took was one swimmer to file suit, and an endless legal embroglio erupted." (*Id.* at Y). Now O'Sullivan seeks to intervene in the pending litigation before this Court.

It remains to be seen whether O'Sullivan's lawyer will seek even more fees and costs in the pending State Court case based on a theory that O'Sullivan's role as a private attorney general compelled her to seek intervention in this federal case to defend the State Court judgment. O'Sullivan's latest fees motion in State Court hints that this is a motive in intervening in this case: "As this court is now aware, an ancillary action has been filed in federal court seeking to obliterate the result obtained in the state court. Plaintiff Valerie O'Sullivan is obviously legally interested in that case, and must intervene in it or in some way make her position known in the federal court so as not to permit the abridgement of her rights hard fought-for and now established apropos of the Children's Pool and duties of the City as trustee to administer it." *Id.* at Ex. I, Memorandum in Support of Motion for Award of Fees, p. 7:10-15.

**II. ARGUMENT**

O'Sullivan seeks to intervene in this litigation under the provisions of Fed. R. Civ. P. 24 and alternatively seeks leave to appear as amicus curiae. Defendants Mayor and City adamantly oppose this motion to intervene on the ground the motion lacks merit.

///

---

[5] This demanded amount includes a credit to the City for overpayment by the City on the previous award.

6

07 CV 2320 JM AJB

## A. INTERVENTION AS OF A MATTER OF RIGHT

Per Fed. R. Civ. P. Rule 24(a), a non-party is permitted to intervene in a federal action "when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties."

The City concurs with O'Sullivan that there is a four-part test for Rule 24(a): 1) the application for intervention must be timely; 2) the applicant must have a "significantly protectable" interest relating to the property or transaction that is the subject of the action; 3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect the interest; and 4) the applicant's interest must not be adequately represented by the existing parties to the lawsuit. *Northwest Forest Resource Council v. Glickman*, 82 F. 3d 825, 836 (9th Cir. 1996).

O'Sullivan's motion is timely, but she has failed to establish *with evidence* that she *currently* has a "significantly protectable" interest relating to APRL's complaint in this case seeking declarative and injunctive relief. As previously noted, O'Sullivan's lawyer has failed to file either a declaration or affidavit in this case in support of the motion to intervene. It is true that O'Sullivan persuaded the State Court that she represented all of the citizens of the State of California as a "private attorney general" in the lawsuit she filed even though she neglected to give the California Attorney General timely notice of that lawsuit. It does not follow, however, that she is therefore entitled to intervene as a matter of right in this case to defend the State Court's injunction. The State Court issued its injunction for the stated purpose of restoring Children's Pool Beach to its original configuration so that it is a bathing pool for children. O'Sullivan's interest in the enforcement of the injunction is no different than the interest of the general public. In fact, she stopped swimming at Children's Pool Beach in 2003 because of the NOAA citation. If O'Sullivan is entitled to intervene, then surely any member of the public would have the same right.

///

1   Moreover, O'Sullivan has not shown that her interest in this case would not be
2   adequately represented by the City and Mayor. There is a presumption of adequate
3   representation when the representative is a government acting on behalf of it citizens. *United*
4   *States v. City of Los Angeles*, 288 F.3d 391, 401 (9th Cir. 2002). There is also a presumption of
5   adequacy where the proposed intervenor and an existing party have the same "ultimate
6   objective." *Northwest Forest*, 82 F.3d at 838. At the hearing on the Plaintiffs' application for a
7   temporary restraining order, the State of California, represented by the California Attorney
8   General, made it clear that the State wants to preserve the trust. The Mayor and City have
9   vigorously opposed the Plaintiffs' application for a TRO and motion for preliminary injunction
10  on *Rooker v. Feldman* grounds and raised the issue of judicial abstention at the hearing on
11  Plaintiffs' application for a TRO. The Defendants' ultimate objective of defeating the Plaintiffs'
12  requested relief is the same as O'Sullivan's.
13  O'Sullivan has not satisfied the requirements for intervention as a matter of right.
14  Accordingly, her motion to intervene under Fed. R. Civ. P. 24(a) should be denied.

### B. PERMISSIVE INTERVENTION

16  Upon timely application, a non-party may be permitted to intervene in a federal action
17  "when an applicant's claim or defense and the main action have a question of law or fact in
18  common." Fed. R. Civ. P. 24(b). A court's discretion under Rule 24(b) to permit such
19  intervention is constrained. A court "shall consider whether the intervention will unduly delay or
20  prejudice the adjudication of the rights of the original parties."
21  Ironically, O'Sullivan's attempt to intervene has already substantially delayed these
22  proceedings. The Plaintiffs' motion for a preliminary injunction was originally scheduled for
23  January 25, 2008, but that hearing had to be postponed to permit fair consideration of
24  O'Sullivan's application to intervene. This, in turn, led the Plaintiffs to file their application for
25  a TRO resulting in more labor by all of the parties and the Court. Valuable time that could have
26  been spent briefing the abstention issue now has to be spent briefing the intervention issue with
27  very little time left to brief the abstention issue in the time frame allotted by the Court.
28  ///

The City and Mayor seek to ultimately prevail in this litigation and fear that if O'Sullivan is permitted to intervene, the focus on the merits of the Defendants' defenses will become blurred. The City is the trustee for Children's Pool Beach and is therefore obliged to carry out its obligations under State law as defined by the State Court. The City's rights in this action will be prejudiced by O'Sullivan's intervention because of the risk that the issue of judicial abstention and other defenses to the lawsuit will become overshadowed by O'Sullivan's persistent goal of advancing her anti-seal agenda.[6]

It is unduly prejudicial to the Defendants to allow a person who has been cited for violating the MMPA at Children's Pool Beach to fully participate in litigation seeking to define the Defendants' obligations to comply with the MMPA at Children's Pool Beach. The fact of the matter is that O'Sullivan is an individual who chose to engage in civil disobedience that resulted in a citation for violating federal law. O'Sullivan cannot possibly be objective on the merits of this litigation filed against the Mayor and City in light of the fact that she was cited for violating the very law that the Plaintiffs now claim the Defendants are violating. Based on the probability that intervention would create additional delay and prejudice the Defendants, this Court should exercise its discretion to deny permissive intervention by O'Sullivan.

### C. AMICUS STATUS

O'Sullivan's motion to intervene concludes, "If Ms. O'Sullivan is not permitted to intervene in this action, Ms. O'Sullivan respectfully requests leave to file *amicus* briefs at all stages of this action. "An amicus brief should normally be allowed when a party is not represented competently or is not represented at all, when the amicus has an interest in some other case that may be affected by the decision in the present case, or when the amicus has unique information or perspective that can help the court beyond the help that the lawyers for the parties are able to provide." *Ryan v. Commodity Futures Trading Commission*, 125 F.3d 1062,

---

[6] For example, O'Sullivan's counsel recently notified the City that he construes the State Court's injunction to require immediate removal of the seal colony at Children's Pool Beach. Not only is O'Sullivan's construction of the injunction patently wrong, but it would invite needless federal intervention. NOAA officials have made it quite clear to the City that no "harassment" of the seals may take place during the harbor seal pupping season.

9

1063 (7th Cir. 1997).  Leave to file an amicus brief must be denied if these standards are not met. *Northern Securities Company v. United States*, 191 U.S. 555 (1903).

O'Sullivan has failed to state upon what basis she should be permitted to file amicus briefs at all stages of this case.  Her alternative request to file amicus briefs should therefore be denied without prejudice.

### III. CONCLUSION

The Court currently has under consideration the Defendants' legal argument that the doctrine of judicial abstention is fatal to the Plaintiffs' lawsuit in this case.  If the Court is persuaded by this argument and dismisses the Plaintiffs' complaint against the Defendants, O'Sullivan's motion to intervene should be denied as moot.  Otherwise, the motion to intervene should be denied with prejudice and alternative motion to file amicus briefs denied without prejudice for all of the above reasons.

Dated:  February 8, 2008                MICHAEL J. AGUIRRE, City Attorney


By:   s/George Schaefer
      GEORGE SCHAEFER, SBN #139399
      Deputy City Attorney

Attorneys for Defendant
The City of San Diego

10

# DECLARATION OF SERVICE

I, the undersigned, declare under penalty of perjury that I am over the age of eighteen years and not a party to this action; and that I served the following document(s):

- **OPPOSITION OF THE CITY OF SAN DIEGO AND MAYOR JERRY SANDERS TO VALERIE O'SULLIVAN'S MOTION TO INTERVENE**

- **REQUEST FOR JUDICIAL NOTICE FROM THE CITY OF SAN DIEGO AND MAYOR JERRY SANDERS IN SUPPORT OF DEFENDANT'S OPPOSITION TO VALERIE O'SULLIVAN'S MOTION TO INTERVENE**

on the individuals listed below in the manner indicated.

### Electronic Mail

I served the following by electronic mail at the e-mail addresses listed below:

- **Christina Bull Arndt**
  christina.arndt@doj.ca.gov
- **Paul Robert Kennerson**
  paul@kennersongrant.com, danna@kennersongrant.com
- **Bryan W Pease**
  bryanpease@gmail.com

Executed: February 8, 2008, at San Diego, California.

                                              s/George F. Schaefer
                                              **GEORGE F. SCHAEFER**
                                              E-mail: GSchaefer@sandiego.gov