

# EXHIBIT A

CIVIL BUSINESS OFFICE 12
CENTRAL DIVISION

2004 MAR 12  P 2: 24

CLERK-SUPERIOR COURT
SAN DIEGO COUNTY, CA

MAR 15 '04

RECEIVED
CITY CLERK'S OFFICE
04 MAR 12 PM 3:57
SAN DIEGO, CALIF

1 | Paul R. Kennerson [SB #45430]
   | John K. Grant [SB #149318]
2 | **KENNERSON & GRANT, LLP**
   | 101 West Broadway, Suite 1150
3 | San Diego, California 92101
   | Telephone: (619) 236-8555
4 | Facsimile: (619) 236-0555

5 | Attorneys for Plaintiff VALERIE O'SULLIVAN

6

7

8 **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9 **COUNTY OF SAN DIEGO**

10 | VALERIE O'SULLIVAN,                    Case No. **GIC 826918**

11 |          Plaintiff,                   **COMPLAINT**

12 | v.                                    1. **PRIVATE ATTORNEY GENERAL**
13 | CITY OF SAN DIEGO, a municipal entity, 2. **BREACH OF TRUST AND**
   | and FOES 1 through 500, inclusive,       **FIDUCIARY DUTIES**
14 |                                       3. **DECLARATORY RELIEF**
   |          Defendants.
15

16

17 ## I. <u>BACKGROUND</u>

18    1.    This lawsuit is brought as a private attorney general by VALERIE O'SULLIVAN,

19 who at all times herein mentioned was and now is a resident of the village of La Jolla,

20 California, located in and part of the City of San Diego, County of San Diego, State of

21 California.

22    2.    The lawsuit involves a portion of a beach area on the Pacific Ocean generally

23 located at the intersection of Coast Boulevard and Jenner Street in the village of La Jolla, City of

24 San Diego, County of San Diego, State of California.  In 1931 the State of California deeded

25 certain property in that location, the metes and bounds of which are described in Exhibit A to

26 this Complaint, in trust to the City of San Diego for the purposes stated in the grant, to-wit, for

27 exclusive use as a public park and pool for children and other uses incident thereto, all as more

28 particularly described by the terms and conditions of the grant in trust contained in Exhibit A.

1

3.    Essentially contemporaneously with the grant in trust from the State of California to the City of San Diego Ellen Browning Scripps, now deceased, a great benefactress of the City of San Diego, donated money to the City for the construction of a breakwater in order to form what became known, and remains known to this day, as the "Children's Pool." Pursuant to the grant of the aforesaid property in trust, the metes and bounds of which generally coincide with the area of the sea and beach demarcated by the sea wall, the Children's Pool has--since its inception up to approximately 1994, and ending on September 4, 1997--been used as a public facility for swimming and bathing by its intended beneficiaries, and particularly by children as a children's pool.

4.    In or about 1994, marine mammals (principally harbor seals, sometimes hereafter "seals" or obvious variants) which had previously hauled out at Seal Rock, a rock in the water to the immediate north-northeast of Children's Pool, or elsewhere, began steadily to haul out upon and occupy the Children's Pool. In connection with their occupancy of its waters and the beach adjoining it, the Children's Pool came increasingly to be off-limits to human use or occupation, such that, over time, the City of San Diego, by signage, barriers and otherwise, prohibited or discouraged public use of the Children's Pool by the beneficiaries of the aforesaid trust, including children who were residents of or visitors to the City of San Diego.

5.    The marine mammals, and in particular the harbor seals, which have occupied the Children's Pool, enjoy certain protections under the United States Marine Mammal Protection Act 16 U.S.C. § 1661, et seq. ("MMPA"). The act provides, *inter alia*, that "taking" of marine mammals is prohibited under the act. "Taking" consists, in one form, of harassment of a marine mammal, which requires an act of pursuit, torment or annoyance that has the potential to injure a marine mammal in the wild or significantly disrupt its behavioral patterns. The MMPA, by its terms, defines its jurisdiction, and does not apply to Children's Pool. Furthermore, the MMPA contains certain provisions by which seals can be "deterred" from an area where they are causing damage to public or private property or are endangering personal safety and can be taken for the protection of the public health and welfare or for the nonlethal removal of "nuisance animals" (as that term is used in the act). In particular, the MMPA permits a private person or government

2

1  employee to deter seals that are damaging public or private property, respectively, or

2  endangering personal safety and--in the case of a government official acting within his or her

3  official duties--allows the humane taking of "nuisance animals" by nonlethal measures or marine

4  mammals endangering the public health and welfare.

5      6.    Starting in 1994, and especially after September 4, 1997, to and including the

6  present time, the occupancy of Children's Pool by seals has damaged public and private

7  property.  During that time the seals have become "nuisance animals" from the standpoint of the

8  legislated trust purpose of the Children's Pool.

9      7.    In addition, seal occupancy of the waters and the adjoining beach eventually

10 resulted in contamination of the waters and beach at the Children's Pool, such that the Children's

11 Pool was polluted beyond the safe or reasonable tolerance by humans, and especially children,

12 was closed to public use on September 4, 1997, and remained so until April 1, 2003, when the

13 City of San Diego purported to  permit joint human and seal use of the Children's Pool.

14      The announced ambition of joint use was an arrant fiction, conjured up by the

15 trustee City of San Diego for unknown reasons, since people using the pool on those purported

16 terms, such as Plaintiff herein, were charged as violators of the MMPA in so doing and thus

17 swam only at risk of federal prosecution.  Moreover, contamination of the Children's Pool by

18 marine mammals made it effectively unavailable for any human use, especially by children.  And

19 the trustee City of San Diego, by signs and barriers across its entire accessible side, cordoned off

20 and thus in effect closed down the Children's Pool  to use by its intended beneficiaries.  These

21 conditions remain the visible status of the trustee's so-called joint-use policy at the Children's

22 Pool.

23      8.    Starting in 1994, and especially after September 4, 1997, to and including the

24 present time, fecal coloform and other contaminants from harbor seals in the waters and beach at

25 the Children's Pool have constituted a hazard to personal safety and have endangered the public

26 health and welfare.

27      9.    Plaintiff is informed and believes, and thereon alleges, that on or about October

28 15, 2003, public studies and tests for contamination of some 448 California beaches showed that

1   Children's Pool was one of the most contaminated beaches in the state.

2       10.    Starting in 1994, and especially after September 4, 1997, the marine mammals

3   occupying Children's Pool have caused, and continue to cause, damage to public and private

4   property, in particular the trust property that is the Children's Pool, have become "nuisance

5   animals," and have constituted, and continue to constitute, a danger to the personal safety and

6   the health and welfare of intended beneficial users of the pool. The trustee City of San Diego

7   has failed and refused, and continues to fail and refuse, to take any effective action whatsoever,

8   including measures permitted under the MMPA, to deter the marine mammals from the damage

9   they cause and the hazards they constitute. This is so despite offers from MMPA enforcement

10   authorities of the United States to assist the trustee City of San Diego in deterring marine

11   mammals from the Children's Pool.

12       11.    Furthermore, the MMPA contains provisions by which application can be made to

13   the United States Secretary of Commerce for an exemption from the moratorium on taking under

14   certain terms and conditions set forth in the act. Part of the relief sought in this action, among

15   other desired relief, is to compel the trustee City of San Diego to apply to the Secretary for any

16   necessary exemption for the Children's Pool, one of the most contaminated beaches in the State

17   of California, in order to deter the marine mammals occupying it from further damaging it and

18   to stop the "nuisance" and the hazards to personal safety and the public health and welfare they

19   continue to pose.

20       12.    At various times during the occupancy by the marine mammals of Children's Pool

21   the City Council of the City of San Diego has discussed the problem and has called for legal

22   opinions from the City of San Diego City Attorney. In particular, and without limitation, on or

23   about March 29, 1999, upon motion of Councilman Juan Vargas, passed by the then-current City

24   Council, the City Council voted to examine the entire background of the Children's Pool

25   including "the legality, and how it was left in the will," presumably referring to the will of Ellen

26   Browning Scripps. (It was commonly thought, in error, that the will of Ellen Browning Scripps

27   had bequeathed the land to the City of San Diego, whereas the truth appears in paragraphs two

28   and three above, i.e., that the State of California had given the property in trust to the City of San

4

**COMPLAINT**

1  Diego and Ellen Browning Scripps had donated the money to build the breakwater.)  Despite a

2  passed motion to that effect, the City of San Diego has failed and refused, and continues to fail

3  and refuse, to explore the legalities of the background of the trust, its current status, or the status

4  of the MMPA as it applies to the Children's Pool trust.  Moreover, the City of San Diego has

5  failed and refused, and continues to fail and refuse, to explore or take  available exemptions from

6  the moratorium on taking or legal measures to stop the continuing damage to public and private

7  property, the ongoing "nuisance" and the hazards to personal safety and the public health and

8  welfare caused by the seals in occupancy at the Children's Pool.

9          13.    It is estimated, and will be proved at the time of trial, that as many as 1,000,000

10  beneficiaries of the trust have been unable to use the Children's Pool who would otherwise have

11  used it during the period of its practically or legally prohibited use, which has caused damage in

12  an amount unspecified but which will be proved at trial.  Beneficiaries of the trust will continue

13  to be damaged in the same manner in the future unless the trustee City of San Diego is compelled

14  to perform its duty by making use of available remedies to deter marine mammals from the trust

15  property.

16          14.    It is the prayer of this action, brought under a private attorney general theory, as

17  follows:

18          a.    To compel the City of San Diego to observe the terms of the trust by, *inter*

19  *alia*, taking lawful measures (1) to deter marine mammals from causing and continuing to cause

20  damage to public and private property at Children's Pool in La Jolla; (2) to stop them from

21  endangering personal safety and the public health and welfare; and (3) to abate the "nuisance"

22  there, all or any by way of a mandatory injunction;

23          b.    A declaration by the court or the trier of fact that the City of San Diego has

24  breached the terms of the trust and continues to be in breach of its trust obligations and its

25  fiduciary duties under the grant by the State of California, is knowingly in breach of such

26  obligations and duties, and is responsible, by way of surcharge or otherwise, for all damages

27  which flow from its breaches;

28

5

1           c.     For attorneys fees in this action, including on a continuing basis in order to

2 permit careful, proper, appropriate and thorough prosecution of the action;

3           d.     For costs of suit; and

4           e.     Such other and further relief as the court deems just and proper.

5

6                          **II.  FIRST CAUSE OF ACTION**

7      15.     Plaintiff incorporates all the foregoing allegations as part of the First Cause of

8 Action.

9      16.     Plaintiff sues FOES 1 through 500 herein and will substitute their true names and

10 capacities when that information is ascertained.  Plaintiff is informed and believes and thereon

11 alleges that FOES sued herein as 1 through 500 are responsible in some fashion for the events

12 and happenings herein referred to, and upon the theories hereinafter expressed, are thereby liable

13 under those theories in the fashion aforesaid.  Plaintiff further believes and thereon alleges that

14 Defendants sued herein as FOES 1 through 500 are the agents, servants and employees of each

15 other, or are independent contractors or joint venturers with certain other defendants, and thus, if

16 not directly involved in the activities hereinbefore mentioned, are responsible in some

17 representative or agency capacity, or otherwise, for the events and happenings referred to upon

18 the theories expressed herein.

19      17.     Defendants are in breach of their trust obligations pursuant to the grant of the

20 Children's Pool property, as set forth in Exhibit A hereto, and the law.

21      18.     This action is appropriate to be brought under a private attorney general theory

22 because it seeks enforcement of an important right affecting the public interest and the result of

23 this lawsuit will inure to the benefit of members of the public, as beneficiaries of the trust,

24 deprived of a trust asset by the negligence and otherwise wrongful conduct of the trustee City of

25 San Diego and FOES 1 through 500.

26 ///

27 ///

28 ///

### III.    SECOND CAUSE OF ACTION

19.    Plaintiff incorporates all the foregoing allegations as part of the Second Cause of Action.

20.    Defendants are in breach of their fiduciary obligations under the trust agreement as contained in Exhibit A hereto and the law.  As such, they are liable to Plaintiff as hereinbefore set forth.

### IV.    THIRD CAUSE OF ACTION

21.    Plaintiff incorporates all the foregoing allegations as part of the Third Cause of Action.

22.    Defendants had notice of the legal status of the Children's Pool from its inception in 1931 upon the grant of the land in trust to the City of San Diego.  Evidenced by the events as set forth above, the City of San Diego at all times knew, or should have known, of its obligation as a trustee to prevent "nuisance," to safeguard the property from damage and to eliminate hazards to personal safety and to the public health and welfare by reasonable measures that could have been, and can continue to be, taken under the MMPA to stop the "nuisance," to deter the seals from causing such continuing damage and hazards to personal safety and to protect the public health and welfare.

23.    Despite such knowledge and awareness, the City of San Diego has failed and refused, and continues to fail and refuse, to take the indicated and appropriate action under the law to stop marine mammals from causing such damage or endangering such personal and public rights.

### V.    FOURTH CAUSE OF ACTION

24.    Plaintiff incorporates all the foregoing allegations as part of the Fourth Cause of Action.

25.    A controversy has arisen and a dispute exists as between Plaintiff and other members of the public and Defendants as to the obligations imposed by Exhibit A and the law

7

00007

and the consequent obligations encumbent upon said defendants; the nature, extent and duration of their trust obligations thereunder; the nature, extent and duration of their fiduciary duties thereunder; their breach thereof; whether, and to what extent, Defendants, and each of them, knowingly violated their trust obligations or fiduciary duties; and the damages caused by the foregoing.

WHEREFORE, Plaintiff herein as a private attorney general seeks the relief as stated above in paragraph 14 against the City of San Diego and FOES 1 through 500.

KENNERSON & GRANT, LLP

Dated: March 12, 2004

By: *Paul Kennerson*

Paul Kennerson
Attorney for Plaintiff VALERIE O'SULLIVAN

COMPLAINT

# CHAPTER 937.

*An act granting certain tide and submerged lands of the State of California to the city of San Diego, San Diego county, in said state, upon certain trusts and conditions.*

[Approved by the Governor June 15, 1931.  In effect August 14, 1931.]

*The people of the State of California do enact as follows:*

SECTION 1.  There is hereby granted to the city of San Diego, county of San Diego, all the right, title and interest of the State of California, held by said state by virtue of its sovereignty, in and to all that portion of the tide and submerged lands bordering upon and situated below the ordinary high water mark of the Pacific ocean described as follows:

Beginning at the intersection of the ordinary high water mark of the Pacific ocean with a line bearing S. 87° 40' W. from the monument marking the intersection of Coast boulevard south with Jenner street as said monument, said Coast boulevard south and said Jenner street are designated and shown on that certain map entitled "Seaside subdivision number 1712" and filed June 23, 1920, in the office of the county recorder of San Diego county, State of California; thence N. 350', thence E. 300', thence S. 185' more or less to the ordinary high water mark of the Pacific ocean, thence in a general southwesterly direction along the ordinary high water mark of the Pacific ocean to the point of beginning, all

*[margin note: Grant of tidelands to city of San Diego.]*

*[margin note: Description.]*

---

in the Pacific ocean, State of California, to be forever held by said city of San Diego and its successors in trust for the uses and purposes and upon the express conditions following, to wit:

(a)  That said lands shall be devoted exclusively to public park, bathing pool for children, parkway, highway, playground and recreational purposes, and to such other uses as may be incident to, or convenient for the full enjoyment of, such purposes;

(b)  The absolute right to fish in the waters of the Pacific ocean over said tidelands or submerged lands, with the right of convenient access to said waters over said lands for said purpose is hereby reserved to the people of the State of California.

(c)  That there is excepted and reserved to the State of California all deposits of minerals, including oil and gas, in said land, and to the State of California, or persons authorized by the State of California, the right to prospect for, mine and remove such deposits from said land.

*[margin note: Uses.]*

*[margin note: Fishing.]*

*[margin note: Reservation of minerals, etc.]*



# EXHIBIT B

FILED
CIVIL BUSINESS OFFICE 10
CENTRAL DIVISION

2004 APR -9 P 4: 06

CLERK-SUPERIOR COURT
SAN DIEGO COUNTY, CA

1  CASEY GWINN, City Attorney
   ANITA M. NOONE, Assistant City Attorney
2  JOHN P. MULLEN, Deputy (CSB No. 160510)
   DEBBIE M. SMITH, Deputy (CSB No. 208960)
3      Office of the City Attorney
       1200 Third Avenue, Suite 1100
4      San Diego, California 92101-4100
       Telephone:  (619) 533-5800
5      Facsimile:   (619) 533-5856

6  Attorneys for Defendant
   CITY OF SAN DIEGO

7

8          **SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO**

9  VALERIE O'SULLIVAN,                    )    Case No. GIC 826918
                                          )
10             Plaintiff,                 )    **DEFENDANT CITY OF SAN DIEGO'S**
                                          )    **ANSWER TO PLAINTIFF VALERIE**
11     v.                                 )    **O'SULLIVAN'S COMPLAINT**
                                          )
12  CITY OF SAN DIEGO, a municipal entity, and )  I/C Judge:  Hon. William C. Pate
    FOES 1 through 500, inclusive,        )    Dept.:  60
13                                        )    Complaint filed:  March 12, 2004
               Defendant.                 )    Trial:  Not Set
14                                        )

15         Defendant, CITY OF SAN DIEGO, answers Plaintiff's unverified Complaint for:

16  (1) Private Attorney General; (2) Breach of Trust and Fiduciary Duties; and (3) Declaratory

17  Relief on file herein as follows:

18         Pursuant to California Code of Civil Procedure section 431.30(d), Defendant City of San

19  Diego generally denies each and every allegation of Plaintiff's unverified Complaint, each cause

20  of action thereof, and denies that Plaintiff is entitled to any relief prayed for.

21                            **AFFIRMATIVE DEFENSES**

22         As separate, distinct and affirmative defenses to each and every cause of action in the

23  First Amended Complaint on file herein, Defendant, CITY OF SAN DIEGO, alleges as follows:

24                                       I

25         The facts alleged in the Complaint do not state a claim against Defendant City of San

26  Diego.

27  / / /

28  / / /

                                         1
────────────────────────────────────────────────────────────────
DEFENDANT CITY OF SAN DIEGO'S ANSWER TO PLAINTIFF VALERIE O'SULLIVAN'S COMPLAINT

## II

The Complaint is barred, in whole or in part, by the applicable statute of limitations, including but not limited to, California Code of Civil Procedure sections 338, 340, 343, 1094.6, Probate Code section 16460, and San Diego Municipal Code section 121.0102.

## III

Plaintiff failed to comply with the claim presentation requirements set forth in Government Code sections 901, *et seq.* and such other sections of said Code as may be applicable.

## IV

Plaintiff is not entitled to the recovery of its attorneys' fees California Code of Civil Procedure section 1021.5, or any other applicable code section.

## V

Plaintiff lacks standing to pursue any claim against Defendant, CITY OF SAN DIEGO.

## VI

Plaintiff is barred from recovery by the equitable doctrine of laches.

## VII

Plaintiff has failed to exhaust its administrative remedies or its judicial remedies as a condition precedent to bringing such action.

## VIII

Plaintiff is barred by the doctrine of unclean hands.

## IX

Each cause of action in the Complaint is moot.

## X

Each cause of action in the Complaint and any remedy sought by Plaintiff is preempted or prohibited by the Federal Marine Mammal Protection Act [MMPA] (42 U.S.C. § 1361, *et. seq.*).

/ / /

/ / /

2

00011

**XI**

The City cannot be compelled to exercise its discretion in a particular manner, including, but not limited to, compelling it to submit an application for a take permit under the MMPA.

**XII**

Each cause of action and remedy sought by Plaintiff is prohibited by the Supremacy Clause of the United States Constitution.

**XIII**

The matters raised in the Petition are not ripe for review.

**XIV**

Plaintiff is barred from recovery of any kind under the equitable defenses of waiver and estoppel.

**XV**

Defendant owes no fiduciary duty to Plaintiff.

**XVI**

Plaintiff's Complaint fails to state a cause of action because at all times relevant thereto, Defendant exercised reasonable diligence to discharge any and all duties owed to Plaintiff, if any duty to Plaintiff existed.

**XVII**

Defendant acted reasonably, in good faith and with proper cause at all relevant times.

**XVIII**

The conduct of Defendant, and its agents and employees, in connection with the matters alleged in the Complaint was wholly consistent with the tidelands trust.

**XIX**

Plaintiff fails to state a cause of action because each cause of action and remedy sought would cause the City to perform an illegal or impossible act.

**XX**

The conduct of Defendant, and its agents and employees, in connection with the matters alleged in the Complaint was proper due to changed circumstances.

3

DEFENDANT CITY OF SAN DIEGO'S ANSWER TO PLAINTIFF VALERIE O'SULLIVAN'S COMPLAINT

00012

## XXI

Defendant is informed and believes and thereon alleges that the Complaint is barred, in whole or in part, because of intervening and superceding independent causes unforeseeable to this responding Defendant.

## XXII

The conduct of Defendant, and its agents and employees, in connection with the matters alleged in the Complaint was done under the proper exercise of the police power.

## XXIII

Defendant cannot maintain a declaratory relief cause of action pursuant to California Code of Civil Procedure section 1060 since no actual controversy exists regarding the parties' respective obligations.

## XXIV

Defendant is informed and believes and thereon alleges that Plaintiffs' requested relief should be denied because it is contrary to public policy and violates the separation of powers doctrine.

## XXV

Defendant, CITY OF SAN DIEGO, for a separate, distinct, and affirmative defense, is informed and believes and thereon alleges that Defendant reserves the right to assert any additional defenses in the event that they are discovered to be appropriate.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

4

DEFENDANT CITY OF SAN DIEGO'S ANSWER TO PLAINTIFF VALERIE O'SULLIVAN'S COMPLAINT

WHEREFORE, Defendant prays for judgment as follows:

1.      Judgment be entered in favor of Defendant and against Plaintiff;

2.      Plaintiffs take nothing by their Complaint;

3.      Defendant receives its costs of suit incurred herein;

4.      Defendant be awarded attorney's fees;

5.      Such other relief as the court deems just and proper.


Dated: April _____9_____, 2004          CASEY GWINN, City Attorney


                                        By _____
                                           JOHN P. MULLEN
                                           DEBBIE M. SMITH
                                           Deputy City Attorneys

                                        Attorneys for Defendant
                                        CITY OF SAN DIEGO

5

DEFENDANT CITY OF SAN DIEGO'S ANSWER TO PLAINTIFF VALERIE O'SULLIVAN'S COMPLAINT

1 | CASEY GWINN, City Attorney
ANITA M. NOONE, Assistant City Attorney
2 | JOHN P. MULLEN, Deputy (CSB No. 160510)
DEBBIE M. SMITH, Deputy (CSB No. 208960)
3 | Office of the City Attorney
1200 Third Avenue, Suite 1100
4 | San Diego, CA 92101-4100
Telephone: (619) 533-5800
5 | Facsimile: (619) 533-5856

FILED
CIVIL BUSINESS OFFICE 10
CENTRAL DIVISION

2004 APR -9 P 4: 06

CLERK-SUPERIOR COURT
SAN DIEGO COUNTY, CA

6 | Attorneys for Defendant
CITY OF SAN DIEGO

7

8 | **SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO**

9 | DECLARATION OF | Case No. GIC 826918
SERVICE BY MAIL | *Valerie O'Sullivan v. City of San Diego*

10

11 | I, Cindy McNary, declare that I am, and was at the time of service of the papers herein referred to, over the age of eighteen years and not a party to the action; and I am employed in the
12 | County of San Diego, California, in which county the within-mentioned mailing occurred. My business address is 1200 Third Avenue, Suite 1100, San Diego, California, 92101.
13

14 | I further declare that I am readily familiar with the business' practice for collection and processing of correspondence for mailing with the United States Postal Service; and that the
15 | correspondence shall be deposited with the United States Postal Service this same day in the ordinary course of business.

16 | I served the following document(s): **DEFENDANT CITY OF SAN DIEGO'S ANSWER TO PLAINTIFF VALERIE O'SULLIVAN'S COMPLAINT**, by placing a copy
17 | thereof in a separate envelope for each addressee named hereafter, addressed to each such addressee respectively as follows:

18

19 |
| Paul Kennerson | Attorneys for Plaintiff |
| KENNERSON & GRANT, LLP | *VALERIE O'SULLIVAN* |
| 101 West Broadway, Suite 1150 | Tel: (619) 236-8555 |
| San Diego, CA 92101 | Fax: (619) 236-0555 |

21 | I then sealed each envelope **and placed it for collection and mailing with the United**
22 | **States Postal Service** this same day, at my address shown above, following ordinary business practices.

23 | I declare under penalty of perjury under the laws of the State of California that the
24 | foregoing is true and correct. Executed on **Friday, April 9, 2004**, at San Diego, California.

25

26

27 | *Cindy McNary*
Cindy McNary

28

1

PROOF OF SERVICE BY MAIL (C.C.P. §§ 1013(a); 2015.5)

00015

# EXHIBIT C

Paul R. Kennerson  [SB #45430]
John K. Grant  [SB #149318]
**KENNERSON & GRANT, LLP**
101 West Broadway, Suite 1150
San Diego, California 92101
Telephone: (619) 236-8555
Facsimile: (619) 236-0555

Attorneys for Plaintiff  VALERIE O'SULLIVAN

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SAN DIEGO

| | |
|---|---|
| VALERIE O'SULLIVAN, | Case No:  GIC 826918 |
| Plaintiff, | **FIRST AMENDMENT TO COMPLAINT** |
| v. | **JUDGE:**   William C. Pate |
| CITY OF SAN DIEGO, a municipal entity; STATE OF CALIFORNIA; and FOES 1 through 500, inclusive, | **DEPT.:**   60 **COMPLAINT FILED:**   March 12, 2004 |
| Defendants. | |

        This First Amendment to Complaint (See Exhibit A.) names the STATE OF CALIFORNIA

("State") as an indispensable or necessary party herein inasmuch as title to or the character of certain

trust property described in the Complaint is at issue, and the State's rights or interests in the property

may be affected hereby.  The State is joined by court order (Exhibit B to this Amendment).


                        **KENNERSON & GRANT, LLP**


Dated: March 16, 2005            By: *Paul C Kennerson*
                        Paul Kennerson
                        Attorney for Plaintiff VALERIE O'SULLIVAN

1

FIRST AMENDMENT TO COMPLAINT

# E X H I B I T    A

FILED
CIVIL BUSINESS OFFICE 12
CENTRAL DIVISION

2004 MAR 12  P 2: 24

CLERK-SUPERIOR COURT
SAN DIEGO COUNTY, CA

Paul R. Kennerson [SB #45430]
John K. Grant [SB #149318]
**KENNERSON & GRANT, LLP**
101 West Broadway, Suite 1150
San Diego, California 92101
Telephone: (619) 236-8555
Facsimile: (619) 236-0555

Attorneys for Plaintiff VALERIE O'SULLIVAN

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

### COUNTY OF SAN DIEGO

|  |  |
|---|---|
| VALERIE O'SULLIVAN,<br><br>　　　　Plaintiff,<br><br>v.<br><br>CITY OF SAN DIEGO, a municipal entity,<br>and FOES 1 through 500, inclusive,<br><br>　　　　Defendants. | Case No. GIC 826918<br><br>**COMPLAINT**<br><br>1. **PRIVATE ATTORNEY GENERAL**<br>2. **BREACH OF TRUST AND**<br>　　**FIDUCIARY DUTIES**<br>3. **DECLARATORY RELIEF** |

## I.  BACKGROUND

1.　　　This lawsuit is brought as a private attorney general by VALERIE O'SULLIVAN, who at all times herein mentioned was and now is a resident of the village of La Jolla, California, located in and part of the City of San Diego, County of San Diego, State of California.

2.　　　The lawsuit involves a portion of a beach area on the Pacific Ocean generally located at the intersection of Coast Boulevard and Jenner Street in the village of La Jolla, City of San Diego, County of San Diego, State of California. In 1931 the State of California deeded certain property in that location, the metes and bounds of which are described in Exhibit A to this Complaint, in trust to the City of San Diego for the purposes stated in the grant, to-wit, for exclusive use as a public park and pool for children and other uses incident thereto, all as more particularly described by the terms and conditions of the grant in trust contained in Exhibit A.

1

3. Essentially contemporaneously with the grant in trust from the State of California to the City of San Diego Ellen Browning Scripps, now deceased, a great benefactress of the City of San Diego, donated money to the City for the construction of a breakwater in order to form what became known, and remains known to this day, as the "Children's Pool." Pursuant to the grant of the aforesaid property in trust, the metes and bounds of which generally coincide with the area of the sea and beach demarcated by the sea wall, the Children's Pool has--since its inception up to approximately 1994, and ending on September 4, 1997--been used as a public facility for swimming and bathing by its intended beneficiaries, and particularly by children as a children's pool.

4. In or about 1994, marine mammals (principally harbor seals, sometimes hereafter "seals" or obvious variants) which had previously hauled out at Seal Rock, a rock in the water to the immediate north-northeast of Children's Pool, or elsewhere, began steadily to haul out upon and occupy the Children's Pool. In connection with their occupancy of its waters and the beach adjoining it, the Children's Pool came increasingly to be off-limits to human use or occupation, such that, over time, the City of San Diego, by signage, barriers and otherwise, prohibited or discouraged public use of the Children's Pool by the beneficiaries of the aforesaid trust, including children who were residents of or visitors to the City of San Diego.

5. The marine mammals, and in particular the harbor seals, which have occupied the Children's Pool, enjoy certain protections under the United States Marine Mammal Protection Act 16 U.S.C. § 1661, et seq. ("MMPA"). The act provides, *inter alia*, that "taking" of marine mammals is prohibited under the act. "Taking" consists, in one form, of harassment of a marine mammal, which requires an act of pursuit, torment or annoyance that has the potential to injure a marine mammal in the wild or significantly disrupt its behavioral patterns. The MMPA, by its terms, defines its jurisdiction, and does not apply to Children's Pool. Furthermore, the MMPA contains certain provisions by which seals can be "deterred" from an area where they are causing damage to public or private property or are endangering personal safety and can be taken for the protection of the public health and welfare or for the nonlethal removal of "nuisance animals" (as that term is used in the act). In particular, the MMPA permits a private person or government

2

employee to deter seals that are damaging public or private property, respectively, or endangering personal safety and--in the case of a government official acting within his or her official duties--allows the humane taking of "nuisance animals" by nonlethal measures or marine mammals endangering the public health and welfare.

6.    Starting in 1994, and especially after September 4, 1997, to and including the present time, the occupancy of Children's Pool by seals has damaged public and private property. During that time the seals have become "nuisance animals" from the standpoint of the legislated trust purpose of the Children's Pool.

7.    In addition, seal occupancy of the waters and the adjoining beach eventually resulted in contamination of the waters and beach at the Children's Pool, such that the Children's Pool was polluted beyond the safe or reasonable tolerance by humans, and especially children, was closed to public use on September 4, 1997, and remained so until April 1, 2003, when the City of San Diego purported to  permit joint human and seal use of the Children's Pool.

The announced ambition of joint use was an arrant fiction, conjured up by the trustee City of San Diego for unknown reasons, since people using the pool on those purported terms, such as Plaintiff herein, were charged as violators of the MMPA in so doing and thus swam only at risk of federal prosecution. Moreover, contamination of the Children's Pool by marine mammals made it effectively unavailable for any human use, especially by children. And the trustee City of San Diego, by signs and barriers across its entire accessible side, cordoned off and thus in effect closed down the Children's Pool  to use by its intended beneficiaries. These conditions remain the visible status of the trustee's so-called joint-use policy at the Children's Pool.

8.    Starting in 1994, and especially after September 4, 1997, to and including the present time, fecal coloform and other contaminants from harbor seals in the waters and beach at the Children's Pool have constituted a hazard to personal safety and have endangered the public health and welfare.

9.    Plaintiff is informed and believes, and thereon alleges, that on or about October 15, 2003, public studies and tests for contamination of some 448 California beaches showed that

3

Children's Pool was one of the most contaminated beaches in the state.

10.    Starting in 1994, and especially after September 4, 1997, the marine mammals occupying Children's Pool have caused, and continue to cause, damage to public and private property, in particular the trust property that is the Children's Pool, have become "nuisance animals," and have constituted, and continue to constitute, a danger to the personal safety and the health and welfare of intended beneficial users of the pool.  The trustee City of San Diego has failed and refused, and continues to fail and refuse, to take any effective action whatsoever, including measures permitted under the MMPA, to deter the marine mammals from the damage they cause and the hazards they constitute.  This is so despite offers from MMPA enforcement authorities of the United States  to assist the trustee City of San Diego in deterring marine mammals from the Children's Pool.

11.    Furthermore, the MMPA contains provisions by which application can be made to the United States Secretary of Commerce for an exemption from the moratorium on taking under certain terms and conditions set forth in the act.  Part of the relief sought in this action, among other desired relief,  is to compel the trustee City of San Diego to apply to the Secretary for any necessary exemption for the Children's Pool, one of the most contaminated beaches in the State of California, in order to deter the marine mammals occupying it from further damaging it and to stop the "nuisance" and the hazards to personal safety and the public health and welfare they continue to pose.

12.    At various times during the occupancy by the marine mammals of Children's Pool the City Council of the City of San Diego has discussed the problem and has called for legal opinions from the City of San Diego City Attorney.  In particular, and without limitation, on or about March 29, 1999, upon motion of Councilman Juan Vargas, passed by the then-current City Council, the City Council voted to  examine the entire background of the Children's Pool including "the legality, and how it was left in the will," presumably referring to the will of Ellen Browning Scripps.  (It was commonly thought, in error, that the will of Ellen Browning Scripps had bequeathed the land to the City of San Diego, whereas the truth appears in paragraphs two and three above, i.e., that the State of California had given the property in trust to the City of San

4

Diego and Ellen Browning Scripps had donated the money to build the breakwater.)  Despite a passed motion to that effect, the City of San Diego has failed and refused, and continues to fail and refuse, to explore the legalities of the background of the trust, its current status, or the status of the MMPA as it applies to the Children's Pool trust.  Moreover, the City of San Diego has failed and refused, and continues to fail and refuse, to explore or take available exemptions from the moratorium on taking or legal measures to stop the continuing damage to public and private property, the ongoing "nuisance" and the hazards to personal safety and the public health and welfare caused by the seals in occupancy at the Children's Pool.

13.    It is estimated, and will be proved at the time of trial, that as many as 1,000,000 beneficiaries of the trust have been unable to use the Children's Pool who would otherwise have used it during the period of its practically or legally prohibited use, which has caused damage in an amount unspecified but which will be proved at trial.  Beneficiaries of the trust will continue to be damaged in the same manner in the future unless the trustee City of San Diego is compelled to perform its duty by making use of available remedies to deter marine mammals from the trust property.

14.    It is the prayer of this action, brought under a private attorney general theory, as follows:

a.    To compel the City of San Diego to observe the terms of the trust by, *inter alia*, taking lawful measures (1) to deter marine mammals from causing and continuing to cause damage to public and private property at Children's Pool in La Jolla; (2) to stop them from endangering personal safety and the public health and welfare; and (3) to abate the "nuisance" there, all or any by way of a mandatory injunction;

b.    A declaration by the court or the trier of fact that the City of San Diego has breached the terms of the trust and continues to be in breach of its trust obligations and its fiduciary duties under the grant by the State of California, is knowingly in breach of such obligations and duties, and is responsible, by way of surcharge or otherwise, for all damages which flow from its breaches;

5

c.    For attorneys fees in this action, including on a continuing basis in order to permit careful, proper, appropriate and thorough prosecution of the action;

d.    For costs of suit; and

e.    Such other and further relief as the court deems just and proper.

## II.  FIRST CAUSE OF ACTION

15.    Plaintiff incorporates all the foregoing allegations as part of the First Cause of Action.

16.    Plaintiff sues FOES 1 through 500 herein and will substitute their true names and capacities when that information is ascertained.  Plaintiff is informed and believes and thereon alleges that FOES sued herein as 1 through 500 are responsible in some fashion for the events and happenings herein referred to, and upon the theories hereinafter expressed, are thereby liable under those theories in the fashion aforesaid.  Plaintiff further believes and thereon alleges that Defendants sued herein as FOES 1 through 500 are the agents, servants and employees of each other, or are independent contractors or joint venturers with certain other defendants, and thus, if not directly involved in the activities hereinbefore mentioned, are responsible in some representative or agency capacity, or otherwise, for the events and happenings referred to upon the theories expressed herein.

17.    Defendants are in breach of their trust obligations pursuant to the grant of the Children's Pool property, as set forth in Exhibit A hereto, and the law.

18.    This action is appropriate to be brought under a private attorney general theory because it seeks enforcement of an important right affecting the public interest and the result of this lawsuit will inure to the benefit of members of the public, as beneficiaries of the trust, deprived of a trust asset by the negligence and otherwise wrongful conduct of the trustee City of San Diego and FOES 1 through 500.

/ / /

/ / /

/ / /

00118

## III.  SECOND CAUSE OF ACTION

19.    Plaintiff incorporates all the foregoing allegations as part of the Second Cause of Action.

20.    Defendants are in breach of their fiduciary obligations under the trust agreement as contained in Exhibit A hereto and the law.  As such, they are liable to Plaintiff as hereinbefore set forth.

## IV.  THIRD CAUSE OF ACTION

21.    Plaintiff incorporates all the foregoing allegations as part of the Third Cause of Action.

22.    Defendants had notice of the legal status of the Children's Pool from its inception in 1931 upon the grant of the land in trust to the City of San Diego.  Evidenced by the events as set forth above, the City of San Diego at all times knew, or should have known, of its obligation as a trustee to prevent "nuisance," to safeguard the property from damage and to eliminate hazards to personal safety and to the public health and welfare by reasonable measures that could have been, and can continue to be, taken under the MMPA to stop the "nuisance," to deter the seals from causing such continuing damage and hazards to personal safety and to protect the public health and welfare.

23.    Despite such knowledge and awareness, the City of San Diego has failed and refused, and continues to fail and refuse, to take the indicated and appropriate action under the law to stop marine mammals from causing such damage or endangering such personal and public rights.

## V. FOURTH CAUSE OF ACTION

24.    Plaintiff incorporates all the foregoing allegations as part of the Fourth Cause of Action.

25.    A controversy has arisen and a dispute exists as between Plaintiff and other members of the public and Defendants as to the obligations imposed by Exhibit A and the law

00119

and the consequent obligations encumbent upon said defendants; the nature, extent and duration of their trust obligations thereunder; the nature, extent and duration of their fiduciary duties thereunder; their breach thereof; whether, and to what extent, Defendants, and each of them, knowingly violated their trust obligations or fiduciary duties; and the damages caused by the foregoing.

WHEREFORE, Plaintiff herein as a private attorney general seeks the relief as stated above in paragraph 14 against the City of San Diego and FOES 1 through 500.

KENNERSON & GRANT, LLP

Dated: March 12, 2004                     By: *Paul Kennerson*
                                          Paul Kennerson
                                          Attorney for Plaintiff VALERIE O'SULLIVAN

8

# CHAPTER 937.

*An act granting certain tide and submerged lands of the State of California to the city of San Diego, San Diego county, in said state, upon certain trusts and conditions.*

[Approved by the Governor June 15, 1931. In effect August 14, 1931.]

*The people of the State of California do enact as follows:*

SECTION 1. There is hereby granted to the city of San Diego, county of San Diego, all the right, title and interest of the State of California, held by said state by virtue of its sovereignty, in and to all that portion of the tide and submerged lands bordering upon and situated below the ordinary high water mark of the Pacific ocean described as follows: *Grant of tidelands to city of San Diego.*

Beginning at the intersection of the ordinary high water mark of the Pacific ocean with a line bearing S. 87° 40' W. from the monument marking the intersection of Coast boulevard south with Jenner street as said monument, said Coast boulevard south and said Jenner street are designated and shown on that certain map entitled "Seaside subdivision number 1712" and filed June 23, 1920, in the office of the county recorder of San Diego county, State of California; thence N. 350', thence E. 300', thence S. 185' more or less to the ordinary high water mark of the Pacific ocean, thence in a general southwesterly direction along the ordinary high water mark of the Pacific ocean to the point of beginning, all *Description.*

---

in the Pacific ocean, State of California, to be forever held by said city of San Diego and its successors in trust for the uses and purposes and upon the express conditions following, to wit:

(a) That said lands shall be devoted exclusively to public park, bathing pool for children, parkway, highway, playground and recreational purposes, and to such other uses as may be incident to, or convenient for the full enjoyment of, such purposes; *Uses.*

(b) The absolute right to fish in the waters of the Pacific ocean over said tidelands or submerged lands, with the right of convenient access to said waters over said lands for said purpose is hereby reserved to the people of the State of California. *Fishing.*

(c) That there is excepted and reserved to the State of California all deposits of minerals, including oil and gas, in said land, and to the State of California, or persons authorized by the State of California, the right to prospect for, mine and remove such deposits from said land. *Reservation of minerals, etc.*

# EXHIBIT    B

# SUPERIOR COURT OF CALIFORNIA

### County of San Diego

DATE: March 8, 2005          DEPT.  60          REPORTER A:

PRESENT HON. WILLIAM C. PATE

JUDGE

CLERK:  DIANE HOWARD

F    I    L    E    D

Clerk of the Superior Court

MAR 0 8 2005

By D. HOWARD, Deputy

---

GIC 826918    VALERIE O'SULLIVAN
Plaintiff,
vs.

CITY OF SAN DIEGO
Defendant.

---

Following oral argument on 3/7/05, the Court finds that the State of California is an indispensable party pursuant to CCP Section 389 and must be joined as a necessary party in accordance with California Public Resources Code Section 6308.

Plaintiff's Complaint in this action is based on Defendant City of San Diego's alleged breach of the "Uses" provision of the 1931 act granting the tide and submerged lands at issue to the City of San Diego (hereinafter "Grant Act"). [See Grant Act, attached to Plaintiff's Complaint as Exhibit A.]  The act provides in pertinent part:  "There is hereby granted to the city of San Diego, county of San Diego, all the right, title and interest of the State of California, held by said state by virtue of its sovereignty, in and to all that portion of the tide and submerged lands ... to be forever held by said city of San Diego and its successors, in trust for the uses and purposes and upon the express conditions following, to wit:  (a) That said lands shall be devoted exclusively to public park, bathing pool for children, parkway, highway, playground, and recreational purposes ..." Plaintiff alleges that the City has breached its duties under the Grant Act by permitting the continued occupation of these tidelands by harbor seals, which, in turn has allegedly resulted in contamination of the Children's Pool and has "prohibited or discouraged public use of the Children's Pool by beneficiaries of the aforesaid trust, including children who were residents of or visitors of the City of San Diego." [See Complaint, ¶¶4,7; see also Exhibit A to Complaint.]  Plaintiff seeks mandatory injunctive and declaratory relief as follows:

a.          To compel the City of San Diego to observe the terms of the trust by, *inter alia,* taking lawful measures (1) to deter marine mammals from causing and continuing to cause damage to public and private property at Children's Pool in La Jolla; (2) to stop them from endangering personal safety and the public health and welfare; and (3) to abate the 'nuisance' there, all or any by way of a mandatory injuction;

b.          A declaration by the court or the trier of fact that the City of San Diego has breached the terms of the trust and continues to be in breach of its trust obligations and its fiduciary duties under the grant by the State of California, is knowingly in breach of such obligations and duties, and is responsible, by way of surcharge or otherwise, for all damages which flow from its breaches...

[Complaint, ¶14.]

PAGE 1 OF 2

00123

The Court hereby finds that California Public Resources Code Section 6308 is applicable. Section 6308 mandates that "[w]henever an action or proceeding is commenced by or against a county, city, or other political subdivision or agency of the State *involving* the title to or the boundaries of tidelands or submerged lands that have been or may hereafter be granted to it in trust by the Legislature, the State of California shall be joined as a necessary party defendant in such action or proceeding." [Emphasis added.] The Grant Act, by its express terms grants "all the right, *title* and interest" in the property at issue to the City "in trust for the uses and purposes and upon the express conditions" provided in the Grant Act, including but not limited to, a "bathing pool for children," and Plaintiff has brought an action against the City based on its alleged breach of this use. Section 6308 is not limited on its face to quiet title actions, and this action certainly "*involves* the title" to the tidelands at issue. [CA Public Resources Code, §6308.] As noted by the California Supreme Court in *Abbot Kinney Co. v. Los Angeles* (1959) 53 Cal. 2d 52 at 58: "The enactment of section 6308 clearly demonstrates that the Legislature recognized that the state's important interest in preserving and enforcing the trust in the tidelands required that the state be represented in any action against a city involving the *character* or boundaries of such tidelands. We therefore conclude that the Legislature intended that the state should be an indispensable party to any such action, and that its presence should be a condition of the court's jurisdiction." [Internal citations omitted, emphasis added.]

The Court further finds that the State is also an indispensable party pursuant to CCP Section 389 because the injunctive and declaratory relief requested by Plaintiff, "if granted, would injure or affect the interest" of the State. [*Save Our Bay, Inc.* (1996 4th DCA) 42 Cal.App.4th 686,692, internal citations omitted.] Contrary to Plaintiff's counsel's argument based on *Atwood v. Hammond* (1935) 4 Cal.2d 31, the State's interest in the outcome of this litigation is not merely limited to the potential for future legislative action to amend or revoke the Grant Act. As stated in *Atwood* at 38-39: "Upon a grant to a municipality, subject to the public trust ... the lands are not placed entirely beyond the supervision of the state, but it may continue to protect the public interests." However, the Atwood case expressly noted that "[t]he question as to how far the state may go in changing regulatory provisions contained in an original granting act is not involved in this case." [*Id.* at 39.] "...[O]ne of the purposes of the law in authorizing the conveyance by the state of its tidelands to municipalities is to promote the general welfare of said municipalities and *of the grantor itself.*" [*Atwood* at 45, emphasis added.] "Giving the [Grant Act's] language its ordinary and reasonable meaning, it would seem clear that the state intended to and did convey whatever title and interest it had in these lands to the city, in fee simple, *subject* to certain conditions and upon certain trusts..., [and] the grantee of an estate on condition subsequent takes the fee, subject only to forfeiture for breach of the condition." [*City of Long Beach v. Marshall* (1938) 11 Cal.2d 609, 613, emphasis added.] If the City is, as alleged by Plaintiff, in breach of the Grant Act's condition subsequent, the State would have the right of reentry and/or power of termination. [*Id.*; see also *Parry v. Berkeley Hall School Foundation* (1937) 10 Cal.2d 422, 425-427 and *The People ex rel. The State Lands Commission v. City of Long Beach* (1962) 200 Cal.App.2d 609, 620 citing *Taylor v. Continental Southern Corp.* (1955) 131 Cal.App.2d 267, 272.] Thus, as a practical matter, regardless of the ultimate findings of this Court, continuing the instant litigation absent the State as a party may not result in the finality admittedly sought by all parties relative to this long-standing issue.

In accordance with Section 6308, service shall be made upon the chairman of the State Lands Commission and upon the Attorney General within ten (10) days.

IT IS SO ORDERED.

*William C. Pate*

Dated: 3/8/05

William C. Pate
Judge of the Superior Court

# Superior Court of California
## County of San Diego

| | COURT USE ONLY |
|---|---|
| PLAINTIFF(S)  VALERIE O'SULLIVAN | FILED |
| | Clerk of the Superior Court |
| | MAR 0 8 2005 |
| DEFENDANT(S)  CITY OF SAN DIEGO | By: D. HOWARD, Deputy |
| CLERK'S CERTIFICATE OF SERVICE BY MAIL(CCP 1013a(4)) | CASE NUMBER:<br>GIC 826918 |

I, DIANE HOWARD, for the Clerk of the Superior Court of the State of California, for the County of San Diego, do hereby certify that: I am not a party to the cause referred to herein; that on the date shown below, I placed a true copy of the:

### 3/8/05 MINUTE ORDER RE: INDISPENSABLE PARTY

in a separate envelope, addressed to each addressee shown below; each envelope was then sealed and, with postage thereon fully prepaid, was deposited in the United States Postal Service at:

San Diego    Vista    El Cajon    Chula Vista, California.

| NAME | ADDRESS |
|---|---|
| LESLIE FITZGERALD | OFFICE OF THE CITY ATTORNEY, CIVIL DIVISION<br>1200 THIRD AVE STE 1100<br>SAN DIEGO, CA 92101 |
| PAUL KENNERSON | KENNERSON & GRANT, LLP<br>101 W BROADWAY STE 1150<br>SAN DIEGO, CA 92101 |
| DEBBIE SMITH | OFFICE OF THE CITY ATTORNEY, CIVIL DIVISION<br>1200 THIRD AVENUE, STE. 1100<br>SAN DIEGO, CA 92101 |

Clerk of the Superior Court

By: _____
DIANE HOWARD

Date: 3/8/05

00125

## PROOF OF SERVICE BY MAIL

O'SULLIVAN v. CITY OF SAN DIEGO
San Diego Superior Court Case No.GIC 826918

I, the undersigned, declare: That I am, and was at the time of service of the papers herein referred to, over the age of eighteen years, and not a party to the action; and I am employed in the County of San Diego, California in which county the within-mentioned service occurred. My business address is 101 West Broadway, Suite 1150, San Diego, California 92101.

I served the following documents:

### FIRST AMENDMENT TO COMPLAINT

on the parties in said action by placing a true copy thereof in a separate sealed envelope for each addressee named hereafter, addressed to each such addressee respectively as follows:

Leslie A. FitzGerald, Esq.                  Attorneys for Defendant
Office of the City Attorney                 CITY OF SAN DIEGO
1200 Third Avenue, Suite 1100
San Diego, CA 92101
Telephone: (619) 533-5800
Facsimile: (619) 533-5856


and I then sealed each envelope and, with the postage thereon fully prepaid, placed it for mailing in accord with our business' practice on March 16, 2005, at San Diego, California.

I am readily familiar with our business practice for collecting, processing, and mailing correspondence and pleadings with the United States Postal Service. Such correspondence and pleadings are deposited with the United States Postal Service on the same day that it is placed for mailing in the ordinary course of business.

I hereby certify that I am employed in the office of a member of the Bar of this Court at whose direction the service was made.

Executed March 16, 2005, at San Diego, California.


Danna Duncan
Danna Duncan

# EXHIBIT D

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SAN DIEGO, CENTRAL DIVISION

| | | |
|---|---|---|
| VALERIE O'SULLIVAN, | ) | Case No. GIC 826918 |
| | ) | |
| Plaintiff, | ) | **STIPULATION OF AGREED FACTS;** |
| | ) | **ORDER THEREON** |
| v. | ) | |
| | ) | |
| CITY OF SAN DIEGO, a municipal | ) | |
| corporation, and FOES 1 through 500 inclusive, | ) | I/C Judge:  Hon. William C. Pate |
| | ) | Dept.:  60 |
| Defendant. | ) | Cmplt filed:  March 12, 2004 |
| | ) | Trial:  March 4, 2005 |

The parties to the above-captioned action, by and through their attorneys of record, hereby stipulate and agree to the following set of facts for purposes of the trial in this matter:

1.  On August 14, 1931, the State of California granted certain tide and submerged lands of the State of California to the city of San Diego by Stats. 1931, Chapter 937. A copy of Stats. 1931, Chapter 937 (hereafter referred to as "Trust") is included as Court Exhibit 500.

2.  The legal boundaries of the Trust are depicted in Court Exhibit 502.

3.  The Trust property commonly is referred to as the "Children's Pool" or "Casa Beach" (hereafter referred to as "Children's Pool").

4.  In 1930, Ellen Browning Scripps donated money for and had a breakwater constructed on the west side of the property that later became part of the Trust.

5.  Harbor seals have been present in the vicinity of the Trust property since at least the 1930s.

1

00051

STIPULATION OF AGREED FACTS; [PROPOSED] ORDER THEREON

6.     Over the years, marine mammals, primarily harbor seals, began hauling out on the area referred to as Seal Rock, which is northwest of the Children's Pool.

7.     Over the years, marine mammals, primarily harbor seals, began hauling out on the sand at the Children's Pool.

8.     The number of harbor seals at the Children's Pool has increased over the years.

9.     The Trust property has been used by the public since 1931.

10.     In August 1994, the City Council established a 5-year Seal Rock Marine Mammal Reserve immediately surrounding the area known as Seal Rock. The reserve did not include the Children's Pool area.

11.     The 5-year Seal Rock Marine Mammal Reserve expired in August 1999.

12.     The National Marine Fisheries Service requires other entities to obtain a letter of agreement in lieu of a permit before they are granted permission to rescue or release a marine mammal. SeaWorld obtained such a letter of agreement from the National Marine Fisheries Service.

13.     SeaWorld has released rehabilitated seals at the Children's Pool as part of their Stranded Animal Program.

14.     The last seal release by SeaWorld at the Children's Pool was in 2001.

15.     The County Department of Environmental Health is responsible under state law for providing testing for contamination of ocean and bay recreational waters, and for notifying the public when bacteria is present. These water quality notification mechanisms include closing a beach or providing an advisory that the water is or may be contaminated. The notifications are posted on the affected property, the County of San Diego's web page, are available by telephone hotline, and are faxed regularly to the Union Tribune.

16.     In September 1997, the County Department of Environmental Health posted the waters at the Children's Pool as closed to human contact because water testing revealed fecal contamination.

00052

17.     DNA testing determined that the contamination primarily was from seal feces.

2

18. The County Department of Environmental Health changed the status of the beach water quality notification from closure to an advisory in 1999. However, the county erroneously failed to remove the closure signs at the Children's Pool until 2003.

19. A water quality advisory has remained in effect at the Children's Pool from 1999 to the present.

20. In September 2004, the City Council approved a resolution authorizing preliminary studies for a sand dredging project and directing that the rope barrier and sign posts be immediately removed, and that new signs be installed. These things were later done.

21. Photographs of the Children's Pool taken in late February 2005 are contained in Court Exhibits 518-537.

22. The Plaintiff, Valerie O'Sullivan, did not file a claim for damages with the City of San Diego before filing this lawsuit.

IT IS SO STIPULATED. The foregoing stipulation shall not preclude any party from introducing additional relevant evidence in this or any other action.

Dated: March 3, 2005                    KENNERSON & GRANT, LLP


By _Paul Kennerson_
       Paul Kennerson


Attorneys for Plaintiff
VALERIE O'SULLIVAN


Dated: March 3, 2005                    MICHAEL J. AGUIRRE, City Attorney


By _Leslie A. FitzGerald_
       Leslie A. FitzGerald
       Deputy City Attorney


Attorneys for Defendant
CITY OF SAN DIEGO

00053

STIPULATION OF AGREED FACTS; [PROPOSED] ORDER THEREON

# EXHIBIT E

1  BILL LOCKYER, Attorney General
      of the State of California
2  J. MATTHEW RODRIQUEZ,
      Senior Assistant Attorney General
3  NANCY A. SAGGESE State Bar No. 62609
      Deputy Attorney General ·
4  300 South Spring Street
   Los Angeles, California 90013
5  Telephone:   (213) 897-2699
   Facsimile:   (213) 897-2801
6
   Attorneys for Defendant
7  State of California, acting by and
   through the State Lands Commission
8

9          SUPERIOR COURT OF THE STATE OF CALIFORNIA
10                    COUNTY OF SAN DIEGO
11
12
13
14  VALERIE O'SULLIVAN,                    CASE NO. GIC 826918
15              Plaintiff,                 STIPULATION OF STATE OF
                                           CALIFORNIA; [PROPOSED]
16                                         ORDER
17        v.
                                           Assigned to Hon. William C. Pate
18  CITY OF SAN DIEGO, a municipal
    entity; STATE OF CALIFORNIA; and       Date:
19  FOES 1 through 500, inclusive,         Time:
                                           Dept:   60
20              Defendants.                Complaint Filed:   March 12, 2004

21

22        The State of California, acting by and through the State Lands Commission

23  (State), hereby stipulates by and through its attorneys of record as follows:

24        ·    In 1931, the California Legislature granted to the City of San Diego (City) in trust all

25  of the State's sovereign interest in certain tide and submerged lands within the City to be

26  "devoted exclusively to public park, bathing pool for children, parkway, highway,

27  playground, and recreational purposes . . ." (Statutes of 1931, ch. 937, § 1(a).)

28  ///

1    Thereafter, a sea wall was constructed on the west side of the trust grant lands to form

2    what is known as the "Children's Pool," and for many years was used for swimming and

3    bathing by the public.

4    Over the years, marine mammals, principally harbor seals, began to haul out upon and

5    occupy the Children's Pool area.  Under the City's "joint use policy," human and marine

6    mammal use of the Children's Pool is permitted.

7    In her complaint filed on March 12, 2004 (Complaint), plaintiff Valerie O'Sullivan

8    (O'Sullivan) seeks declaratory and mandatory injunctive relief to compel the City to deter

9    marine mammals from occupying the Children's Pool in La Jolla.

10    Defendant City denies that the City can be compelled to exercise its discretion to

11    administer its trust grant lands in a particular manner and denies that O'Sullivan is entitled

12    to any relief prayed for.

13    Because the use advocated by O'Sullivan and the uses allowed by the City are

14    permissible trust uses, the State agrees to be bound by a judgment entered in this matter that

15    grants the relief sought by O'Sullivan in her Complaint, essentially relief that would result

16    in the use of the Children's Pool area for public swimming rather than marine-mammal

17    watching; or that allows the City to continue using the Children's Pool area for marine-

18    mammal watching and/or public swimming.  Should either party file an appeal from the

19    judgment entered herein, the State reserves the right to request leave to file an amicus curiae

20    brief in the Court of Appeal.

21    IT IS SO STIPULATED.

22    Dated: June 9, 2005                    BILL LOCKYER, Attorney General
                                                                  of the State of California
23                                                         J. MATTHEW RODRIQUEZ
                                                                  Senior Assistant Attorney General
24                                                         NANCY A. SAGGESE
                                                                  Deputy Attorney General
25

26

27    NANCY A. SAGGESE
          Attorneys for Defendant, State of
28    California, acting by and through the
          State Lands Commission

2.

STIPULATION OF STATE OF CALIFORNIA; [PROPOSED] ORDER

# EXHIBIT F

9Paul R. Kennerson  [SB #45430]
John K. Grant  [SB #149318]
**KENNERSON & GRANT, LLP**
101 West Broadway, Suite 1150
San Diego, California 92101
Telephone: (619) 236-8555
Facsimile: (619) 236-0555

Attorneys for Plaintiff  VALERIE O'SULLIVAN

# SUPERIOR COURT OF THE STATE OF CALIFORNIA
## COUNTY OF SAN DIEGO

| | |
|---|---|
| VALERIE O'SULLIVAN, <br><br> Plaintiff, <br><br> v. <br><br> CITY OF SAN DIEGO, a municipal entity; STATE OF CALIFORNIA; and FOES 1 through 500, inclusive, <br><br> Defendants. | Case No:  GIC 826918 <br><br> **NOTICE OF ENTRY OF COURT'S ORDER AWARDING ATTORNEYS' FEES AND COSTS TO PLAINTIFF VALERIE O'SULLIVAN AS PREVAILING PARTY** <br><br> **JUDGE:**  William C. Pate <br> **DEPT:**  60 <br> **COMPLAINT** <br> **FILED:**  March 12, 2004 |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

    **PLEASE TAKE NOTICE** that on December 16, 2005, after briefing and oral argument on Plaintiff Valerie O'Sullivan's Motion for Attorneys' Fees, the Honorable William C. Pate entered an order granting Plaintiff's request for attorneys' fees in the sum of $468,906.00, as set forth in the Minute Order attached to this notice as Exhibit A.  On December 16, 2005, the Court also heard argument on Defendant City of San Diego's Motion to Tax Costs, and entered an order on December 19, 2005, granting Plaintiff costs in the sum of $10,941.13 as set forth in the Minute Order attached to this notice as Exhibit B.

    **PLEASE TAKE NOTICE** that on December 21, 2005, the Court interlineated into the Judgment the amount of costs awarded, $10,941.13, and attorney fees awarded, $468,906.00, the

1

00532

1  fees *nunc pro tunc* to the date of Judgment, October 4th, 2005.  A copy of the Judgment is

2  attached to this notice as Exhibit C.

3

4                              **KENNERSON & GRANT, LLP**

5

6  Dated: January 5, 2006           By:

7                                   Paul R. Kennerson
                                     Attorney for Plaintiff VALERIE O'SULLIVAN
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                        2

                                                                00533



# EXHIBIT A

00534

# SUPERIOR COURT OF CALIFORNIA

## County of San Diego

DATE: NOVEMBER 23, 2005    DEPT. 60    REPORTER A: NOT REPORTED    CSR#

PRESENT HON. WILLIAM C. PATE

FILED

Clerk of the Superior Court

JUDGE

NOV 2 3 2005

CLERK:   CRYSTAL LUNT

By: C. LUNT, Deputy

BAILIFF:    REPORTER'S ADDRESS: P.O. BOX 120128

SAN DIEGO, CA 92112-4104

GIC826918    VALERIE O'SULLIVAN,

Plaintiff

vs.

CITY OF SAN DIEGO, a
municipal entity,

Defendant

## EX-PARTE MINUTE ORDER, NOTICE OF RULING ON
## PLAINTIFF'S MOTION FOR ATTORNEY FEES

The Plaintiff's Motion for Attorney Fees came on regularly for hearing on November 8, 2005, at 10:30 a.m. in Department 60. The Court heard argument by counsel and took the matter under submission.

The Court's ruling is as follows:

Plaintiff's Motion for Attorney Fees pursuant to CCP section 1021.5 is hereby GRANTED in part. Section 1021.5 provides: "Upon motion, a court may award attorneys' fees to a *successful* party ...in any action which has resulted in the enforcement of an important right affecting the public interest..."

"Under ... section [1021.5], the court may award attorney fees to a 'successful party' in any action that 'has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any.' ... [T]he private attorney general doctrine 'rests upon the recognition that privately initiated lawsuits are often essential to the effectuation of the fundamental public policies embodied in constitutional or statutory provisions, and that, without some mechanism authorizing the award of attorney fees, private actions to enforce such important public policies will as a practical matter frequently be infeasible.' Thus, the fundamental objective of the doctrine is to encourage suits enforcing important public policies by providing substantial attorney fees to successful litigants in such cases."

*Graham v. DaimlerChrysler* (2004) 34 Cal.4th 553, 565, internal citations omitted.] The first two prongs of section 1021.5 have been satisfied (a significant benefit has been conferred on the general public and the necessity of private enforcement is such as to make an award of fees appropriate). The Final Statement of Decision states at p. 31 that it was entered "...in order to protect the rights of the people of California to the full use and enjoyment of a unique asset, the Children's Pool." The City's argument that Plaintiff's action was unnecessary for enforcement of the terms of the trust because of the City Council's 9/14/04 Resolution fails in light of the Court's final factual finding at p. 18 of the

Page 1 of 2 pages

00535

O'SULLIVAN vs. CITY OF SAN DIEGO

GIC826918

Final Statement of Decision, which states: "The City has not undertaken any meaningful steps to return the Children's Pool to an unpolluted, safe and usable state since the meeting of September 14, 2004." [See Final Statement of Decision, p. 18.] The third prong (that fees should not be paid out of the recovery) is inapplicable as no monetary recovery was ordered.

The reasonable value of attorney services is the hourly amount to which attorneys of like skill in the area would typically be entitled [see *Ketchum v. Moses* (2001) 24 Cal. 4th 1122, 1133], and defense counsel's requested hourly fees are commensurate with attorneys with similar experience in the area. The Court determined the "lodestar" to be $390,755.00 and used a multiplier of 1.2 in light of the contingent risk in this novel, high-profile case in which no monetary damages were awarded. [*Id.*] The Court has reviewed the billing submitted, which is sufficiently detailed for the Court to make a proper determination, and hereby awards $468,906.00 in reasonable attorney fees.

The parties are to contact the Court to set a mutually convenient time for oral argument, if requested.

It is so ordered.

Dated: November 23, 2005

WILLIAM C. PATE,

Judge of the Superior Court

00536



# EXHIBIT B

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO | |
|---|---|
| ☐ COUNTY COURTHOUSE, 220 W. BROADWAY, SAN DIEGO, CA 92101-3814<br>☒ HALL OF JUSTICE, 330 W. BROADWAY, SAN DIEGO, CA 92101-3827<br>☐ FAMILY COURT, 1555 6TH AVE., SAN DIEGO, CA 92101-3296<br>☐ MADGE BRADLEY BLDG., 1409 4TH AVE., SAN DIEGO, CA 92101-3105<br>☐ KEARNY MESA, 8950 CLAIREMONT MESA BLVD., SAN DIEGO, CA 92123-1187<br>☐ NORTH COUNTY DIVISION, 325 S. MELROSE DR., VISTA, CA 92083-6643<br>☐ EAST COUNTY DIVISION, 250 E. MAIN ST., EL CAJON, CA 92020-3941<br>☐ RAMONA, 1428 MONTECITO RD., RAMONA, CA 92065-5200<br>☐ SOUTH COUNTY DIVISION, 500 3RD AVE., CHULA VISTA, CA 91910-5649<br>☐ JUVENILE COURT, 2851 MEADOW LARK DR., SAN DIEGO, CA 92123-2792 | F I L E D<br>Clerk of the Superior Court<br><br>NOV 2 3 2005<br><br>By: C. LUNT, Deputy |
| PLAINTIFF(S)/PETITIONER(S)<br>VALERIE O'SULLIVAN | |
| DEFENDANT(S)/RESPONDENT(S)<br>CITY OF SAN DIEGO | Judge:    WILLIAM C. PATE<br>Dept.:    60 |
| CLERK'S CERTIFICATE OF SERVICE BY MAIL<br>(CCP 1013a(4)) | CASE NUMBER<br>GIC826918 |

I, **RAY SORENSEN**, certify that: I am not a party to the above-entitled case; that on the date shown below, I served the following document(s):

EX-PARTE MINUTE ORDER, NOTICE OF RULING ON PLAINTIFF'S MOTION FOR ATTORNEY FEES

on the parties shown below by placing a true copy in a separate envelope, addressed as shown below; each envelope was then sealed and, with postage thereon fully prepaid, deposited in the United States Postal Service at:
☒ San Diego   ☐ Vista   ☐ El Cajon   ☐ Chula Vista   ☐ Oceanside   ☐ Ramona,   California.

| NAME | ADDRESS |
|---|---|
| PAUL R. KENNERSON, ESQ.<br>KENNERSON & GRANT, LLP | 101 WEST BROADWAY, STE 1150<br>SAN DIEGO, CA 92101 |
| MICHAEL J. AGUIREE, City Attorney<br>ROBERT C. MARTINEZ, Deputy City Attorney | OFFICE OF THE CITY ATTORNEY<br>CIVIL DIVISION<br>1200 THIRD AVENUE, STE 1100<br>SAN DIEGO, CA 92101-4100 |

Date: NOV 2 3 2005

RAY SORENSEN
ACTING CLERK OF THE SUPERIOR COURT

By: _____, Deputy
CRYSTAL LUNT

CLERK'S CERTIFICATE OF SERVICE BY MAIL

00538

## SUPERIOR COURT OF CALIFORNIA

### County of San Diego

DATE: DECEMBER 19, 2005    DEPT. 60

PRESENT HON. WILLIAM C. PATE

JUDGE

CLERK:   CRYSTAL LUNT

BAILIFF:

REPORTER A: NOT REPORTED    CSR#

F I L E D

Clerk of the Superior Court

DEC 1 9 2005

By: C. LUNT, Deputy

REPORTER'S ADDRESS: P.O. BOX 120128

SAN DIEGO, CA 92112-4104

---

GIC826918    VALERIE O'SULLIVAN,
                        Plaintiff

vs.

CITY OF SAN DIEGO, a
municipal entity, et al.,
                        Defendant

### EX-PARTE MINUTE ORDER, NOTICE OF RULING ON
### DEFENDANT'S MOTION TO TAX COSTS

Defendant's Motion to Tax Costs came on regularly for hearing on December 16, 2005.  The Court heard argument of counsel and took the calculation discrepancy issue under submission.

The Court's ruling is as follows:

Defendant's Motion to Tax is hereby GRANTED in part and DENIED in part.

Although the Court notes that the photocopies of the numerous exhibits were very helpful to the Court as trier of fact [CCP, §1033.5 (a)(12)], no evidence was submitted as to the amount expended for photocopying.  Therefore, the Court finds that $2,292 is a reasonable amount for photocopying and hereby reduces the $5,753 sought in item 11 of the Memorandum of Costs by $3,083.87.

The Court finds the remainder of the costs claimed on Plaintiff's Memorandum of Costs to be recoverable pursuant to CCP section 1033.5 as they were reasonably necessary to the conduct of this litigation and are reasonable in amount.

The Court notes that mediation relative to this case, although voluntary, was reasonably necessary in light of the public controversy surrounding the case.  [See *Gibson v. Bobroff* (1996) 49 Cal.App.4th 1202, 1209.]

The Court hereby awards Plaintiff costs in the amount of $10,941.13.

It is so ordered.

Dated: December 19, 2005

_William C. Pate_

WILLIAM C. PATE,

Judge of the Superior Court

00539



# EXHIBIT G

1  MICHAEL J. AGUIRRE, City Attorney
   GEORGE F. SCHAEFER, Deputy City Attorney
2  California State Bar No. 139399
       Office of the City Attorney
3      1200 Third Avenue, Suite 1100
       San Diego, California 92101-4100
4      Telephone: (619) 533-5800
       Facsimile: (619) 533-5856
5

6  Attorneys for Defendant
   CITY OF SAN DIEGO
7

Exempt from fees per Gov't code 6103
To the benefit of the City of San Diego

8              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9              **COUNTY OF SAN DIEGO, CENTRAL DIVISION**

| | |
|---|---|
| 10 VALERIE O'SULLIVAN,      ) | Case No. GIC 826918 |
|                     ) | |
| 11        Plaintiff,   ) | **DEFENDANT CITY OF SAN DIEGO'S** |
|                     ) | **NOTICE OF MOTION AND MOTION** |
| 12    v.         ) | **TO CLARIFY THE COURT'S** |
|                     ) | **INJUNCTION** |
| 13 CITY OF SAN DIEGO, a municipal entity, and ) | |
| FOES 1 through 500, inclusive,   ) | |
| 14                     ) | Date:    *1-4-08* |
|        Defendant.   ) | Time:   *10:30 a.m.* |
| 15                     ) | Dept.:   60 |
|                     ) | I/C Judge:  Hon. Yuri Hofmann |
| 16                     ) | Cmplt Filed:  March 12, 2004 |
| 17                     ) | |
| 18                     ) | |
| 19 | |

20    TO:    PLAINTIFF VALERIE O'SULLIVAN AND HER ATTORNEY OF RECORD:

21    PLEASE TAKE NOTICE that on ~~December~~ *January* __4__, 200~~7~~*8* at *10:30* a.m., or as soon thereafter

22  as the matter may be heard in Department 60 of the above-entitled Court located at 330 West

23  Broadway, San Diego, California 92101, Defendant City Of San Diego (City) will make a

24  motion to clarify the Court's injunction. The City seeks clarification from the Court on whether

25  the injunction in this case enjoins the City from placing a rope barrier at Children's Pool Beach

26  in accordance with City Council Resolution No. 302160.

27       This motion is based on the contemporaneously filed memorandum of points and

28  authorities, the contemporaneously filed request for judicial notice, the accompanying

1

CITY OF SAN DIEGO'S NOTICE OF MOTION & MOTION TO CLARIFY

1    Declarations of NOAA Wildlife Biologist Joe Cordaro and George Schaefer, all pleadings,

2    papers and records in this action, and on any evidence and oral argument received at the hearing

3    on this application.

4          This motion will be finally ruled upon in open court on the date and time set forth above.

5    In accordance with Local Rule Div. I, Chapter I, Rule 2.19, you may obtain the Court's tentative

6    ruling by phoning (619) 531-3690 after 4:00 p.m. on the day before the hearing.

7         Dated:  December 11, 2007          MICHAEL J. AGUIRRE, City Attorney

8

9                                   By: _____

10                                      George F. Schaefer
                                       Deputy City Attorneys

11                                    Attorneys for Defendant
                                   CITY OF SAN DIEGO

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2

1 | MICHAEL J. AGUIRRE, City Attorney
GEORGE F. SCHAEFER, Deputy City Attorney
2 | California State Bar No. 139399
    Office of the City Attorney
3 |     1200 Third Avenue, Suite 1100
    San Diego, California 92101-4100
4 |     Telephone: (619) 533-5800
    Facsimile: (619) 533-5856

Exempt from fees per Gov't code 6103
To the benefit of the City of San Diego

6 | Attorneys for Defendant
CITY OF SAN DIEGO

8 |               **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9 |               **COUNTY OF SAN DIEGO, CENTRAL DIVISION**

10 | VALERIE O'SULLIVAN,                    )    Case No. GIC 826918
                                        )
11 |               Plaintiff,            )    **DEFENDANT CITY OF SAN DIEGO'S**
                                        )    **MEMORANDUM OF POINTS &**
12 |          v.                         )    **AUTHORITIES IN SUPPORT OF THE**
                                        )    **CITY'S MOTION TO CLARIFY THE**
13 | CITY OF SAN DIEGO, a municipal entity, and )  **COURT'S INJUNCTION**
     FOES 1 through 500, inclusive,     )
14 |                                     )
               Defendant.               )    Date:     *1-4-05*
15 |                                     )    Time:     *10:30 a.m.*
                                        )    Dept.:    60
16 |                                     )    I/C Judge:   Hon. Yuri Hofmann
                                        )    Cmplt Filed: March 12, 2004
17 |                                     )
                                        )
18 |                                     )
                                        )
19 |

20 |        The City of San Diego seeks clarification from this Court on whether this Court's

21 | injunction enjoins the City from installing a rope barrier at Children's Pool Beach during the

22 | harbor seals pupping season.

23 |               **I.  STATEMENT OF FACTS**

24 |        1.     On March 24, 2004 Plaintiff Valerie O'Sullivan brought a private Attorney

25 | General action against the City of San Diego seeking a declaration that the City had breached its

26 | fiduciary duties in its management of Children's Pool Beach under the 1931 Tidelands Trust.

27 | ///

28 | ///

                                        1
─────────────────────────────────────────────────────
           CITY'S P & As IN SUPPORT OF CITY'S MOTION TO CLARIFY

2.    After a Court trial, the Honorable William C. Pate found for the Plaintiff. Judge Pate ordered the following in an order of August 26, 2005:

> Therefore, in order to protect the rights of the people of California to the full use and enjoyment of a unique asset, the Children's Pool, the City, as trustee of the Children's Pool, is hereby ordered to employ all reasonable means to restore the Pool to its 1941 condition by removing the sand build-up and further reduce the level of water contamination in the Pool to levels certified by the County of San Diego as being safe for humans. Likewise, the City is ordered to maintain the beach sand so that it does not pose a health hazard to humans.

3.    The City appealed the Court's judgment to the Court of Appeal which affirmed in an unpublished decision. The City then petitioned to the California Supreme Court for review which was denied on November 28, 2007. The injunction was stayed by operation of law during the pendency of the appeal.

4.    On December 3, 2007 remittitur issued. Thus, the injunction is no longer stayed and the City must comply with the dredging order. The City's staff is making the arrangements to secure the necessary state and federal permits so that the court-ordered dredging can proceed.

5.    While the case was on appeal, the Federal Government requested on March 21, 2006 that the City of San Diego put up a rope barrier at Children's Pool Beach during the harbor seals pupping season. *See* Exhibit A to Schaefer Declaration.

6.    While the case was on appeal, the San Diego City Council enacted a resolution on January 8, 2007 calling for the installation of a rope barrier at Children's Pool Beach from December 15 through May 15th annually. *See* City's Request for Judicial Notice.

7.    Harbor seals breed shortly after weaning their pups, with blastocyst implantation in the female harbor seals occurring 1.5 to 3 months following breeding. The gestation period is approximately 9 months. Cordaro Declaration at ¶ 3. The first full-term harbor seal pups are usually born in early to mid-January. Pups typically wean from their mothers in approximately 4-7 weeks. The last pups of the season may not wean until the end of May. Cordaro Declaration at ¶ 6.

///

2

8.    Based on known breeding cycles, some pregnant harbor seals haul out at Children's Pool Beach as early as November. Cordaro Declaration at ¶ 4.

9.    The National Marine Fisheries Service ("NMFS") is responsible for enforcing the provisions of the federal Marine Mammal Protection Act, 16 U.S.C. Section 1361 *et seq.* ("MMPA"). The NMFS received documented reports of premature pups at Children's Pool on November 15, 2004, November 29, 2004, and December 9, 2004. The cause of the premature births was not determined by the NMFS, but human harassment of pregnant females could not be ruled out. Cordaro Declaration at ¶ 5.

10.    The NMFS lead biologist for Children's Pool Beach, Joe Cordaro, has opined that it is in the best interest of the seal colony inhabiting Children's Pool Beach for human beings to be kept a reasonable distance from this colony to prevent annoyance or harassment, especially during the pupping and nursing season, *i.e.*, November 1 through May 31, or whenever the last pup of the season is weaned, whichever comes first. Cordaro Declaration at ¶ 7.

11.    Based on his past observations, Cordaro has also opined that a rope barrier during this period serves to prevent harm to pregnant and nursing female harbor seals and serves to decrease the number of pups that may be abandoned because of the public's presence at the beach. Cordaro Declaration at ¶ 8.

12.    Furthermore, the Federal Government requested on November 30, 2007 that the City of San Diego put up a rope barrier at Children's Pool Beach during this period. *See* Exhibit B to Schaefer Declaration.

13.    Thus, a compelling public policy behind installation of a rope barrier is to protect pregnant harbor seals and their pups during the breeding season and deter citizens from violating the federal MMPA.

14.    Notwithstanding the City Council's resolution and the repeated requests of the Federal Government to protect the seals during pupping season, Plaintiff O'Sullivan contends that the Court injunction enjoins the City from putting up a rope barrier during the pupping season. The City contends it is not enjoined from installing the rope barrier

3

1  before dredging commences.  In an abundance of caution, however, the City moves this

2  Court to clarify whether it is enjoined from putting up the rope barrier in accordance with

3  the Council's resolution and requests of federal law enforcement officials.

## II.  ARGUMENT

The injunction in this case requires the City to do three things.  First, the City is

7  ordered to employ all reasonable means to restore Children's Pool to its 1941 condition

8  by removing the sand build-up.  The injunction sets forth a deadline of six months to

9  achieve this task.  Second, the City must "further reduce" the level of water contaminated

10  in the Pool to levels certified by the County of San Diego as being safe for humans.

11  Neither of these provisions forbid the City from installing a rope barrier to protect

12  pregnant female harbor seals or their pups during the six-month period of preparation for

13  

14  dredging.

15  The last requirement is that the City is ordered to "maintain" the beach sand so

16  that it does not pose a health hazard to humans.  The City contends that this requirement

17  must be considered in the context of the first two requirements.  So viewed, maintaining

18  the beach sand so it is not a health hazard to humans is to occur after the dredging occurs

19  

20  and measures are taken to further reduce the level of contaminated water.

21  Admittedly this last requirement of the injunction—maintaining the beach sand so

22  it does not oppose a health hazard to humans—is broad and ambiguous.  Presumably this

23  is what O'Sullivan relies on for her claim that the City is enjoined from putting up a rope

24  barrier on the beach sand for the purposes of protecting harbor seal mothers and the pups.

25  The fundamental flaw with O'Sullivan's claim is that an injunction which forbids

26  an act in terms so vague that men and women of common intelligence must necessarily

27  

28  guess as to its meaning and differ as to its application exceeds the power of a court.

4

1    *Pitchess v. Superior Court*, 2 Cal. App. 3d 644, 651 (1969) citing *Vernon v. Superior*

2    *Court*, 38 Cal. 2d 509, 513 (1952); *Weber v. Superior Court*, 26 Cal. 2d 144, 148 (1945);

3    *Brunton v. Superior Court*, 20 Cal. 2d 202, 205 (1942); and *Gottlieb v. Superior Court*,

4    168 Cal. App. 2d 309 (1959). In short, an injunction must not be uncertain and

5    ambiguous and the defendant must be able to determine from the order what he may and

6    may not do. *Redlands v. County of San Bernardino*, 96 Cal. App. 4th 398, 415 (2002).

7    

8          Nothing in the Court's injunction explicitly precludes the City from protecting

9    pregnant seals and seal pups. Clearly the Court never intended that its injunction would

10   increase the risk of inhumane treatment or harassment of marine mammals protected by

11   federal law. Restoration of the beach, not increasing the risk of animal cruelty, was this

12   Court's intention.

13   

14         Nevertheless, the City, in an abundance of caution, seeks clarification from this

15   Court on whether the injunction enjoins the installation of a rope barrier at Children's

16   Pool during the seal pupping season. The City is obligated to comply with the MMPA

17   and takes its responsibility to respect federal law seriously. In light of the repeated

18   demands of federal law enforcement officials that the rope barrier be installed, the City is

19   compelled to request this clarification.

20         Dated: December 11, 2007          MICHAEL J. AGUIRRE, City Attorney

21   

22   

23                     By: _____

                            George F. Schaefer

24                               Deputy City Attorneys

25                       Attorneys for Defendant

                    CITY OF SAN DIEGO

26   

27   

28   

5

1  | MICHAEL J. AGUIRRE, City Attorney
2  | George F. Schaefer, Deputy City Attorney
   | California State Bar No. 139399

Exempt from fees per Gov't code 6103
To the benefit of the City of San Diego

3  |    Office of the City Attorney
   |    1200 Third Avenue, Suite 1100
   |    San Diego, California 92101-4100
4  |    Telephone: (619) 533-5800
   |    Facsimile: (619) 533-5856

5

6  | Attorneys for Defendant
   | CITY OF SAN DIEGO

7

8  |               **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9  |               **COUNTY OF SAN DIEGO, CENTRAL DIVISION**

10 | VALERIE O'SULLIVAN,                    ) Case No. GIC 826918

11 |              Plaintiff,                ) **DECLARATION OF GEORGE F.**
   |                                        ) **SCHAEFER IN SUPPORT OF THE CITY**
12 |    v.                                  ) **OF SAN DIEGO'S MOTION FOR AN**
   |                                        ) **ORDER CLARIFYING THE COURT'S**
13 | CITY OF SAN DIEGO, a municipal entity, and ) **INJUNCTION**
   | FOES 1 through 500, inclusive,          )
14 |                                        ) Date:   1-4-08
   |              Defendant.                 ) Time:   10:30 a.m.
15 |                                        ) Dept.:  60
   |                                        ) I/C Judge:   Hon. Yuri Hofmann
16 |                                        ) Cmplt Filed:  March 12, 2004
   |                                        )
17 |                                        )
   |                                        )
18 | _____ )

19 |    I, George F. Schaefer, declare as follows:

20 |    1.    I am a Deputy City Attorney with the San Diego City Attorney's Office.

21 |    2.    I make this declaration based upon my own personal knowledge, except as to

22 | those matters set forth in this declaration on information and belief, and as to those matters, I

23 | believe them to be true.  If called upon to testify as to those matters stated in this declaration, I

24 | could and would competently testify to those matters.

25 |    3.    Exhibit A to my Declaration is a true and correct copy of a letter of March 21,

26 | 2006 addressed to Mayor Jerry Sanders and sent by the Office for Law Enforcement of the

27 | National Marine Fisheries Service.  A copy was sent to the San Diego City Attorney's Office.

28 | ///

---

1

**DECLARATION OF GEORGE F. SCHAEFER IN SUPPORT OF MOTION TO CLARIFY**

1    4.    Exhibit B to my Declaration is a true and correct copy of a letter of November 30,

2  2007 addressed to the San Diego City Attorney's Office and sent by the Office for Law

3  Enforcement of the National Marine Fisheries Service.

4    I declare under penalty of perjury under the laws of the State of California that the

5  foregoing is true and correct.

6    Executed this 11th day of December 2007 at San Diego, San Diego County, California.

7

8    _____
    George F. Schaefer

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2

**DECLARATION OF GEORGE F. SCHAEFER IN SUPPORT OF MOTION TO CLARIFY**

EXHIBIT A



**UNITED STATES DEPARTMENT OF COMMERCE**
National Oceanic and Atmospheric Administration
NATIONAL MARINE FISHERIES SERVICE
Office for Law Enforcement
Southwest Region
501 W. Ocean Blvd., Suite 4300
Long Beach, CA 90802

March 21, 2006

Mayor Jerry Sanders
City Administration Building
11th Floor
202 C Street
San Diego, CA 92101

Dear Mayor Sanders,

I am writing in regard to the marine mammals at La Jolla's Children's Pool and steps we can take to protect them and the people in the community. In the past few months, there have been numerous calls and other communications to NOAA's Office for Law Enforcement (OLE) regarding incidents of marine mammal harassment by the public at the Children's Pool Beach (CPB) in La Jolla, CA. As you know under the Marine Mammal Protection Act (MMPA), §16 U.S.C. 1372 (a)(2)(A), *it is unlawful for any person or vessel or other conveyance to take any marine mammal in waters or on lands under the jurisdiction of the United States.* Harassment is listed under the definition of 'take.'

> Take means to harass, hunt, capture, collect, or kill, or to attempt to... any marine mammal.

> Harassment (Level B) means any act or pursuit, torment, or annoyance which has the potential to disturb a marine mammal or marine mammal stock in the wild by causing disruption of behavioral patterns, including, but not limited to, migration, breathing, nursing, breeding, feeding, or sheltering but which does not have the potential to injure a marine mammal or marine mammal stock in the wild.

The CPB receives an estimated 80,000 visitors per month which increases the potential for seal/human interaction. OLE has placed two signs down on the beach which warn the public to keep a safe distance from the hauled out seals and sea lions. While the guidelines are useful, they have not prevented actions that could be considered harassment from occurring at the beach, particularly during pupping season. The OLE has received over 60 HOTLINE calls reporting alleged marine mammal harassment at the CPB since January 1, 2006. The agency responded to these complaints by increasing the number of patrols to the beach, especially on weekends but, resources do not afford us with the ability to maintain a constant presence.



Harbor seals haul out at CPB for breeding, nursing, molting, and resting. The pupping season at the CPB is from January through the end of April. Typically, the pup is born and weaned during the late spring. Nursing usually lasts about 3-6 weeks, averaging about 4 weeks until the pup is weaned. Unlike many other seal pups, harbor seals are able to swim at birth, but harbor seal mothers are very protective and the mother/pup bond is very important, particularly during the time immediately following birth.

California State Parks closed beaches in Arroyo Laguna and Piedras Blancas because of concerns of elephant seals being harassed at sites they are known to haul out to rest, give birth, care for their pups, and molt.

OLE is concerned that the public will continue to harass marine mammals and continue to be subject to citation under the MMPA at CPB. Therefore, we strongly recommend, as well, that the City close the CPB during the remainder of pupping season (through the end of April). The closure during this time will afford the City with time to decide, plan, and place into action a more permanent strategy for the CPB.

In the event you decide against a temporary closing of the beach, as conducted at Arroyo Laguna and Piedras Blancas, consider reinstating the CPB rope barrier that was once in place. Unfortunately, in the past the rope barrier did not deter the "determined" individual(s) from approaching the seals. The rope barrier will provide a clear message for those that have a sincere desire to respect the marine mammals present on the beach, and therefore will provide some level of heightened protection for the adult and newborn seals. The rope barrier will also aid in informing humans when they are more likely to be found in violation of the MMPA and potentially cited. This option has been supported by Susan Davis, Member of the U.S. Congress (House or Representatives).

OLE appreciates and looks forward to a continued opportunity to work with you in assisting you fulfill your goals as well as protect the animals and citizens of our community.

Sincerely,

Donald W. Masters
Special Agent in Charge

cc: Julie Teel, Office of the City Attorney
April Penera, City Manager's Office
Dale Jones, Director, Office for Law Enforcement
Rod McInnis, Regional Administrator, SW Region

EXHIBIT B



UNITED STATES DEPARTMENT OF COMMERCE
NATIONAL OCEANIC AND ATMOSPHERIC ADMINISTRATION
NOAA FISHERIES SERVICE
Office of Law Enforcement
501 W. Ocean Blvd., Suite 4300
Long Beach, CA 90802
November 30, 2007

San Diego City Attorney's Office
Nina M. Fain, Deputy City Attorney
1200 Third Ave, Suite 1100
San Diego, CA 92101

Dear Ms. Fain,

I am writing in regard to the marine mammals at La Jolla's Children's Pool and steps we can take to protect them and the people in the community. In the past few months, there have been numerous calls and other communications to NOAA's Office of Law Enforcement (OLE) regarding incidents of marine mammal harassment by the public at the Children's Pool Beach (CPB) in La Jolla, CA. As you know, under the Marine Mammal Protection Act (MMPA), 16 U.S.C. 1372 (a)(2)(A), *it is unlawful for any person or vessel or other conveyance to take any marine mammal in waters or on lands under the jurisdiction of the United States.* Harassment is listed under the definition of 'take.' Take means to harass, hunt, capture, collect, or kill, or to attempt to... any marine mammal.

Harassment (Level B) means any act of pursuit, torment, or annoyance which has the potential to disturb a marine mammal or marine mammal stock in the wild by causing disruption of behavioral patterns, including, but not limited to, migration, breathing, nursing, breeding, feeding, or sheltering but which does not have the potential to injure a marine mammal or marine mammal stock in the wild.

Joe Cordaro, NOAA Wildlife Biologist, advises that harbor seals haul out at CPB for breeding, nursing, molting, and resting. The first full-term pups are usually born in early-mid January. Pups wean from their mothers in approximately 4-7 weeks. The last pups of the season may not wean until the end of May.

The CPB receives numerous visitors each month which increases the potential for seal/human interaction. OLE has placed signs on the landings above the CPB, which warn the public to keep a safe distance from the hauled out harbor seals. While the guidelines are useful, they have not prevented actions that could be considered harassment from occurring at the beach, particularly during pupping season. OLE continues to receive HOTLINE calls reporting alleged marine mammal harassment at the CPB.

OLE is concerned that the public will continue to harass marine mammals and continue to be subject to citation under the MMPA at CPB. Therefore, we strongly recommend, that the City close the CPB starting December 15 through May 30 or, at a minimum, consider reinstating the CPB rope barrier that was once in place. Unfortunately, in the past the rope barrier did not deter the "determined" individual(s) from approaching the seals. The rope barrier will provide a clear message for those that have a sincere desire to respect the marine mammals present on the beach, and therefore will provide some level of heightened protection for the adults and newborn seals. The rope barrier will also aid in informing people when they are more likely to be found in violation of the MMPA and potentially cited.



NMFS remains concerned about the vulnerability of the seals at the rookery during the pupping season.

As in previous years, OLE appreciates your practice of implementing the rope barrier. The rope barrier has been a needed step in the right direction, but closing the beach would make a safer environment for the nursing seals. OLE appreciates and looks forward to a continued opportunity to work with you in assisting you achieving your goals as well as protecting the animals and citizens of our community.

Sincerely,

Donald W. Masters
Special Agent in Charge
NOAA Fisheries/OLE

cc:     April Penera, City Manager's Office
        Dale Jones, Director, Office of Law Enforcement
        Rod McInnis, Regional Administrator, SW Region
        Russ Strach, Assistant Regional Administrator for Protected Resources, SW Region

1  MICHAEL J. AGUIRRE, City Attorney
   George F. Schaefer, Deputy City Attorney
2  California State Bar No. 139399
       Office of the City Attorney
3       1200 Third Avenue, Suite 1100
        San Diego, California 92101-4100
4       Telephone: (619) 533-5800
        Facsimile: (619) 533-5856
5
   Attorneys for Defendant
6  CITY OF SAN DIEGO

7

8            SUPERIOR COURT OF THE STATE OF CALIFORNIA

9              COUNTY OF SAN DIEGO, CENTRAL DIVISION

10 VALERIE O'SULLIVAN,                  ) Case No. GIC 826918
                                        )
11            Plaintiff,                ) DECLARATION OF JOE CORDARO
                                        ) IN SUPPORT OF THE CITY OF SAN
12 v.                                   ) DIEGO'S MOTION FOR AN ORDER
                                        ) CLARIFYING THE COURT'S
13 CITY OF SAN DIEGO, a municipal entity, and ) INJUNCTION
   FOES 1 through 500, inclusive,       )                 1-4-08
14                                      ) Date:    December 12, 2007
              Defendant.                ) Time:    8:30 a.m.  10:30 a.m.
15                                      ) Dept.:   60
                                        ) I/C Judge: Hon. Yuri Hofmann
16                                      ) Cmplt Filed: March 12, 2004
                                        )
17                                      )
                                        )
18 _____)

19        I, Joe Cordaro, declare as follows:

20        1.      I am a biologist with the National Oceanic and Atmospheric Administration's

21 National Marine Fisheries Service (NMFS).  I have been employed as a biologist by NMFS for

22 19 years.

23        2.      I make this declaration based upon my own personal knowledge, except as to

24 those matters set forth in this declaration on information and belief, and as to those matters, I

25 believe them to be true.  If called upon to testify as to those matters stated in this declaration, I

26 could and would competently testify to those matters.

27        3.      My responsibilities at the NMFS include rendering opinions regarding the biology

28 of marine mammals to assist the NMFS in administering the Marine Mammal Protection Act, 16

                                        1
                        DECLARATION OF JOE CORDARO

U.S.C. Section 1361 *et seq.* Based on my education and experience in the field of biology, I am knowledgeable about the breeding season for harbor seals. Harbor seals breed shortly after weaning their pups, with blastocyst implantation in the female harbor seals occurring 1.5 to 3 months following breeding. The gestation period is approximately 9 months.

4.    I have been the lead biologist for the NMFS in matters relating to the colony of seals inhabiting Children's Pool Beach in La Jolla, California. Based on known breeding cycles, some pregnant harbor seals haul out at Children's Pool Beach as early as November.

5.    In 2004 I received documented reports of premature pups at Children's Pool on November 15, November 29, and December 9. The cause of the premature births was not determined, but human harassment of pregnant females cannot be ruled out.

6.    The first full-term harbor seal pups are usually born in early to mid-January. Pups typically wean from their mothers in approximately 4-7 weeks. The last pups of the season may not wean until the end of May.

7.    It is in the best interest of the seal colony inhabiting Children's Pool Beach for human beings to be kept a reasonable distance from this colony to prevent annoyance or harassment, especially during the pupping and nursing season, *i.e.*, November 1 through May 31, or whenever the last pup of the season is weaned, whichever comes first.

8.    Based on my past observations, a rope barrier during this period serves to prevent harm to pregnant and nursing female harbor seals and serves to decrease the number of pups that may be abandoned because of the public's presence at the beach.

9.    The barrier also deters the general public from getting so close to the seals as to cause disturbance, harassment, or annoyance of the animals.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this 10th day of December 2007 at San Diego, San Diego County, California.

JOE CORDARO
NOAA Wildlife Biologist

2

DECLARATION OF JOE CORDARO

1 | MICHAEL J. AGUIRRE, City Attorney
GEORGE F. SCHAEFER, Deputy City Attorney
2 | California State Bar No. 139399

Exempt from fees per Gov't code 6103
To the benefit of the City of San Diego

Office of the City Attorney
3 | 1200 Third Avenue, Suite 1100
San Diego, California 92101-4100
4 | Telephone: (619) 533-5800
Facsimile: (619) 533-5856

5

6 | Attorneys for Defendant
CITY OF SAN DIEGO

7

8 | **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9 | **COUNTY OF SAN DIEGO, CENTRAL DIVISION**

10 | VALERIE O'SULLIVAN,    ) Case No. GIC 826918

11 |     Plaintiff,     ) **DEFENDANT CITY OF SAN DIEGO'S**
     ) **REQUEST FOR JUDICIAL NOTICE**
12 |   v.     ) **IN SUPPORT OF MOTION TO**
     ) **CLARIFY THE COURT'S**
13 | CITY OF SAN DIEGO, a municipal entity, and ) **INJUNCTION**
FOES 1 through 500, inclusive,    )

14 |      )
    Defendant.    ) Date:  *1-4-08*
15 |      ) Time:  *10:30 a.m.*
     ) Dept.:  60
16 |      ) I/C Judge:  Hon. Yuri Hofmann
     ) Cmplt Filed: March 12, 2004
17 | _____)

18 |     In accordance with California Evidence Code §§ 452 and 453, the City of San Diego

19 | requests judicial notice of the following attached document:

20 |     Exhibit A: Resolution Number 302160 Adopted by the San Diego City Council on

21 | January 8, 2007.

22 |     Dated: December 11, 2007    MICHAEL J. AGUIRRE, City Attorney

23

24 |         By: _____

25 |         George F. Schaefer
        Deputy City Attorney

26 |         Attorneys for Defendant
        CITY OF SAN DIEGO

27

28

# EXHIBIT A

CLERK'S FILE COPY

(R-2007-621)
REV.COPY 2

RESOLUTION NUMBER __302160__

DATE OF FINAL PASSAGE __JAN 08 2007__

A RESOLUTION OF THE COUNCIL OF THE CITY OF SAN
DIEGO TO PLACE A ROPE BARRIER AT THE LA JOLLA
CHILDREN'S POOL DURING HARBOR SEAL PUPPING
SEASON AND FROM DECEMBER 15th THROUGH MAY 15th
ANNUALLY.

WHEREAS, on March 21, 2006, the National Oceanic and Atmospheric Administration,

the federal agency charged with the protection of marine mammals under the Marine Mammal

Protection Act, requested that the City of San Diego temporary close or replace the rope barrier

at the Children's Pool beach during pupping season due to concerns that the signs posted on the

beach warning the public to keep a safe distance from hauled-out seals, were ineffective at

preventing harassment of the seals, particularly during puppping season; and

WHEREAS, on April 5, 2006, the Natural Resources and Culture Committee determined

that a rope barrier during harbor seal pupping season was advisable to protect the marine

mammals and the public and voted 4-0 to recommend placing a rope barrier at the Children's

Pool beach during harbor seal pupping season each year; and

WHEREAS, on April 19, 2006, the Council of the City of San Diego adopted resolution

number R-301368 based on the recommendation from the Natural Resources and Culture

Committee, which approved the placement of the rope barrier at the Children's Pool during

pupping season from January 1st through May 1st on an annual basis; and

WHEREAS, on November 15, 2006, the Natural Resources and Culture Committee

determined that it is advisable to replace the rope barrier two weeks earlier, on December 15th,

and keep it up for two weeks longer, until May 15th, on an annual basis to better protect the seals

-PAGE 1 OF 3-

from harassment during the late stage of pregnancy and the nursing pups right after birth when they need to haul-out more often and for longer periods; and

WHEREAS, the Environmental Analysis Section of the City of San Diego Department of Development Services has determined that the replacement of the rope barrier is exempt from the provisions of the California Environmental Quality At (CEQA) pursuant to CEQA Guidelines section because it is a project "not to exceed five acres in size to assure the maintenance, restoration, enhancement or protection of habitat for fish, plants, or wildlife;" NOW THEREFORE,

BE IT RESOLVED by the City Council of San Diego that the Mayor or his designee is authorized to extend the period of placement of the rope barrier at the Children's Pool from December 15th through May 15th annually, and City staff is directed to replace the rope barrier as soon as possible within the time line; and

BE IT FURTHER RESOLVED by the City Council of San Diego that the City Attorney's Office is directed to determine what permits are required for the rope placement, and City staff is directed to pursue all permits, whatever they are, immediately.

APPROVED: MICHAEL J. AGUIRRE, City Attorney

By _____
　　Nina M. Fain
　　Deputy City Attorney

NMF:mm
11/21/06
12/01/06 CORR.COPY
12/12/06 REV.COPY
12/19/06 REV.COPY 2
Or.Dept:NR&C
R-2007-621
MMS#4084

*R* 302160

(R-2007-621)
**REV.COPY**

I hereby certify that the foregoing Resolution was passed by the Council of the City of San Diego at its meeting of ___DEC - 5 2006___.

ELIZABETH S. MALAND
City Clerk

By _____
Deputy City Clerk

Approved: **1-8-07**
     (date)

JERRY SANDERS, Mayor

Vetoed: _____
    (date)

JERRY SANDERS, Mayor

R- 302160

# REQUEST FOR COUNCIL ACTION
CITY OF SAN DIEGO

| | | 1. CERTIFICATE NUMBER: |
|---|---|---|

| TO: CITY ATTORNEY | 2 FROM: (ORIGINATING DEPARTMENT) NATURAL RESOURCES AND CULTURE COMMITTEE (CITY COUNCIL) | 3. DATE November 16, 2006 |
|---|---|---|

**4. SUBJECT:** Change of dates for the rope barrier placement at CHILDREN'S POOL ( Change from January 1, 2007, to December 15, 2006 and May 1, 2007 to May 15, 2007)

| 5. FOR INFORMATION, CONTACT: (NAME & MAIL STA.) Mary Ann Kempczenski, x65996, 10A | 6. TELEPHONE NO. 619-236-5996 | 7. CHECK HERE IF 1472A, "DOCKET SUPPORTING INFORMATION, "HAS BEEN COMPLETED ON PAGE 2: | X |
|---|---|---|---|

**8. COMPLETE FOR ACCOUNTING PURPOSES**

| FUND | | | | | | 9. ADDITIONAL INFORMATION/ESTIMATED COST: |
|---|---|---|---|---|---|---|
| DEPT. | | | | | | None |
| ORGANIZATION | | | | | | |
| OBJECT ACCOUNT | | | | | | |
| JOB ORDER | | | | | | |
| C.I.P. NO. | | | | | | |
| AMOUNT | | | | | | |

## 10. ROUTING AND APPROVALS

| ROUTE (S) | APPROVING AUTHORITY | APPROVAL SIGNATURE | DATE SIGNED | ROUTE (#) | APPROVING AUTHORITY | APPROVAL SIGNATURE | DATE SIGNED |
|---|---|---|---|---|---|---|---|
| 1 | NR&C Committee Consultant | _(signature)_ | 11/21/06 | 6 | | | |
| 2 | EAS | Allison Sherwood | 1/24/06 | 7 | | | |
| 3 | City Attorney | _(signature)_ (Nina Fain) | 11/21/06 | 8 | | | |
| 4 | | Note: This may need to be routed to add'l depts. | | 9 | NR&C Committee Consultant | _(signature)_ | 11/21/06 |
| 5 | | | | | MGR. DOCKET COORD. _____ COUNCIL REP. _____ | | |
| | | | | | RULES COMMITTEE [X] CONSENT [ ] ADOPTION _(signature)_ [ ] Refer to [ ] Date 12/5/06 | | |

**11. PREPARATION OF:** [X] RESOLUTION(S)  [ ] ORDINANCE(S)  [ ] AGREEMENT(S)  [ ] DEED(S)

Please prepare a resolution for City Council consideration for December 5, 2006 which would replace the rope barrier at Children's Pool from December 15, 2006 to May 15, 2007 and every December 15th through May 15th from this point forward, rather than from January 1st through May 1st in order to better protect the seals during pupping season.

1. (see attached City Attorney's memorandum)

**11a. MANAGER'S RECOMMENDATIONS:** ADOPT THE RESOLUTION(S)

**12. SPECIAL CONDITIONS (REFER TO A.R. 3.20 FOR INFORMATION ON COMPLETING THIS SECTION.)**

Council District:    District 1

R- 302160          DEC 05 2007

| | |
|---|---|
| Council District: | Dist__t 1 |
| Community Area: | All |
| City Clerk Instructions: | Send all copies to Mary Ann Kempczenski, 10A. |
| Environmental Impact: | This project is exempt from the California Environmental Quality Act [CEQA] pursuant to CEQA Guidelines sections 15333 and 15304(e) because it is a project "not to exceed five acres in size to assure the maintenance, restoration, enhancement, or protection of habitat for fish, plants, or wildlife." |

Attachments:
1. November 13, 2006 City Attorney Report regarding Early Placement of Rope Barrier at Children's Pool Change from January 1, 2007 to December 15, 2006
2. Resolution No. R-301368 previously adopted by City Council April 19, 2006, establishing the replacement of the rope barrier annually from January 1st through May 1st.

CM-1472 (Rev.9-94)                    C:\DOCUMENTS AND SETTINGS\NPAINNEWMAN\LOCAL SETTINGS\TEMP\1472 SEALS_1.DOC

| DOCKET SUPPORTING SUMMARY<br>CITY OF SAN DIEGO | DATE:<br>November 16, 2006 |
|---|---|

**SUBJECT:**

    Change of dates for the rope barrier placement at CHILDREN'S POOL ( Change from January 1, 2007, to December 15, 2006 and May 1, 2007 to May 15, 2007)

**BACKGROUND:**

    Pursuant to the NOAA recommendation and the recommendation made to the City Council by the Natural Resources and Culture Committee, the San Diego City Council passed resolution number R-301368 on April 19, 2006, which provided for the placement of the rope barrier to protect the seals during their pupping season from January 1st through May 1st every year from that point forward. On November 15, 2006, the Natural Resources and Culture Committee voted to make a recommendation to City Council for early placement of the rope barrier to December 15, 2006, to protect the mother seals and the unborn pups in the late stage of pregnancy when the mother seals need to haul-out on the beach to shelter themselves and rest before the birth of the pups. The Natural Resources and Culture Committee also voted to recommend to City Council that the placement of the rope barrier remain up for two weeks after the May 1st deadline, to May 15th, to protect the baby seals right after birth, when they may need to remain on the beach to rest and nurse before embarking into the ocean on their own for the first time. Thus, it would also make sense in terms of the NOAA recommendation to the City to expand the dates of the rope barrier.

R- 302160

BY LINE:  (CITY MANAGER/DEPT.HEAD/AUTHOR INITIALS)

SIGNATURES:

*Donna Frye*

ORIGINATING DEPT. HEAD

CITY MANAGER

{FOR MANAGERIAL DEPARTMENTS ONLY}

R- 302160

CONTINUATION - PAGE 4

WP60/WIN Version (Rev. 11-23-94)



# EXHIBIT H

1  MICHAEL J. AGUIRRE, City Attorney
   GEORGE F. SCHAEFER, Deputy City Attorney
2  California State Bar No. 139399
       Office of the City Attorney
3      1200 Third Avenue, Suite 1100
       San Diego, California 92101-4100
4      Telephone: (619) 533-5800
       Facsimile: (619) 533-5856
5
6  Attorneys for Defendant
   CITY OF SAN DIEGO
7

Exempt from fees per Gov't code 6103
To the benefit of the City of San Diego

F I L E D

Clerk of the Superior Court

JAN 1 8 2008

By: K. ROBERTS, Deputy

JAN 18 '08 PM 2:46

8              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9              **COUNTY OF SAN DIEGO, CENTRAL DIVISION**

| | |
|---|---|
| 10  VALERIE O'SULLIVAN, | Case No. GIC 826918 |
| 11          Plaintiff, | **CITY OF SAN DIEGO'S NOTICE OF COMPLIANCE WITH INJUNCTION** |
| 12      v. | |
| 13  CITY OF SAN DIEGO, a municipal entity, and FOES 1 through 500, inclusive, | Dept.:        60 I/C Judge:    Hon. Yuri Hofmann Cmplt Filed:  March 12, 2004 |
| 14 | |
| 15          Defendant. | |
| 16 | |
| 17 | |
| 18 | |

19          1.      On March 24, 2004 Plaintiff Valerie O'Sullivan brought a private Attorney

20  General action against the City of San Diego seeking a declaration that the City had breached its

21  fiduciary duties in its management of Children's Pool Beach under the 1931 Tidelands Trust.

22          2.      After a Court trial, the Honorable William C. Pate found for the Plaintiff.  Judge

23  Pate ordered the following in an order of August 26, 2005:

24
25          Therefore, in order to protect the rights of the people of California to the full use
            and enjoyment of a unique asset, the Children's Pool, the City, as trustee of the
26          Children's Pool, is hereby ordered to employ all reasonable means to restore the
            Pool to its 1941 condition by removing the sand build-up and further reduce the
27          level of water contamination in the Pool to levels certified by the County of San
            Diego as being safe for humans.  Likewise, the City is ordered to maintain the
28          beach sand so that it does not pose a health hazard to humans.

---
                                          1

3.     The City appealed the Court's judgment to the Court of Appeal which affirmed in an unpublished decision.  The City then petitioned to the California Supreme Court for review which was denied on November 28, 2007.  The injunction was stayed by operation of law during the pendency of the appeal.

4.     On December 3, 2007 remittitur issued.  Thus, the injunction is no longer stayed and the City must comply with the dredging order.

5.     Judge Pates' injunction provides, "The City is directed to file a report with this court, no later than sixty (60) days following entry of this order, setting forth what steps it has undertaken and intends to undertake to comply with this order."  Injunction at page 31: 17-20.  The City originally thought that it had 60 days from the date of remittitur (February 1, 2008) to file a compliance report; however, at a January 4, 2008 hearing, this Court indicated the report is due "two weeks."  Accordingly, the City files this report on January 18, 2008.

6.     Although the injunction sets a deadline of six months to dredge the beach, it also provides that, "Nothing contained in this order shall be construed as requiring the City to violate any law, rule or regulation of any federal, state or county government."  Injunction at page 31: 14-16.  In order for the City to dredge Children's Pool so that the level of water contamination can be reduced to safe levels for humans, the City must obtain the necessary permit from the United States Army Corp of Engineers. Under Section 404 of the federal Clean Water Act, 33 U.S.C. Section 1251 *et seq.*, a person, including a municipality, seeking to discharge dredged or fill materials into the waters of the United States must obtain such a permit.

7.     To obtain such a federal permit, the California Regional Water Quality Board must issue a Section 401 water quality certification.  The State is required to certify that the discharge will comply with the State's water-quality plan.  *See* 33 U.S.C. Section 1341(a); 33 CFR Section 325.2(b)(1).

8.     The California Coastal Act, Public Resources Code Section 3000 *et seq.*, requires a coastal development permit for the dredging project because Children's Pool Beach is located within the jurisdiction of the California Coastal Commission.

9.     The supporting declaration of Samir Mahmalji, a San Diego engineer, proves that

1    the City has applied for the necessary State and Federal permits so that court-ordered dredging

2    may proceed.[1] This contemporaneously filed declaration is incorporated by reference into this

3    compliance notice.[2]

4        10.    Before the Federal and State permits can be issued, the local necessary local

5    permits must obtained by the City. This entails the preparation of an environmental impact

6    document by a professional consultant. While the appeal was pending, the City's Department of

7    Development Services conducted the required "scoping" meeting for this purpose. *See* Exhibit F

8    to Mahmalji declaration.

9        11.    The current task the City now faces is to retain a consultant to prepare the

10    environmental document which will cost the City approximately $250,000. City staff is in the

11    process of securing the necessary funding from the San Diego City Council for this purpose. *See*

12    ¶ 9 and Exhibit 9 to Mahmalji declaration. After the environmental document is prepared, it will

13    be sent to all of the State and Federal resource agencies so that the permits to dredge can be

14    issued.

15        12.    Mr. Mahmalji has opined that it will take 1.5 to 3 years before dredging can

16    commence. *See* ¶ 15 to the Mahmalji declaration. A timeline can be found at Exhibit G to his

17    declaration. The City acknowledges that the timeline is inconsistent with Judge Pate's injunction

18    that states, "This order shall be fully complied no later than six (6) months after the date this

19    order issued." Injunction at page 31: 16-17. The City is unable to comply with requirements of

20    Federal and State environmental laws within six (6) months; therefore, the City will prepare a

21    motion to modify the Injunction to extend the deadline so that the City can obtain the necessary

22

---

23        [1] The City does not intend to apply for a permit under the federal Marine Mammal
Protection Act to "harass" the colony of seals at Children's Pool because NOAA officials have

24    represented that such a permit is unnecessary; however, that issue is the subject of current
litigation in the United States District Court for the Southern District of California in the case of

25    *Animal Protection Rescue League, et al., v. The State of California, et al.*, Case No. 07cv2320
JM AJB. The City is a defendant in that action and O'Sullivan has a pending application to

26    intervene.

27        [2] Although the injunction was stayed pending the appeal, the applications were filed
during the pendency of the appeal. The City did so to demonstrate its good faith in complying

28    even though it was not required to because of the stay.

1  Federal and State permits.

2      Dated:  January 18, 2008          MICHAEL J. AGUIRRE, City Attorney

3

4                                       By: _____

5                                            George F. Schaefer
                                            Deputy City Attorneys

6                                       Attorneys for Defendant
                                        CITY OF SAN DIEGO

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

4



# EXHIBIT I

Paul R. Kennerson  [SB #45430]
John K. Grant  [SB #149318]
**KENNERSON & GRANT, LLP**
101 West Broadway, Suite 1150
San Diego, California 92101
Telephone: (619) 236-8555
Facsimile: (619) 236-0555

Attorneys for Plaintiff  VALERIE O'SULLIVAN

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF SAN DIEGO

| | |
|---|---|
| VALERIE O'SULLIVAN,<br><br>             Plaintiff,<br><br>v.<br><br>CITY OF SAN DIEGO, a municipal entity;<br>STATE OF CALIFORNIA; and FOES 1<br>through 500, inclusive,<br><br>             Defendants. | Case No:  GIC 826918<br><br>**NOTICE OF MOTION FOR AN<br>AWARD OF ATTORNEYS FEES<br>FOLLOWING TRIAL**<br><br>**DATE:**        April 4, 2008<br>**TIME:**        10:30 a.m.<br>**DEPT:**        60<br>**JUDGE:**       Hon. Yuri Hofmann<br>**COMPLAINT<br>    FILED:**     March 12, 2004 |

TO:    ALL PARTIES AND THEIR ATTORNEYS OF RECORD

PLEASE TAKE NOTICE that on April 4, 2008,  at 10:30 a.m., or as soon thereafter as

counsel may be heard, before the Honorable Yuri Hofmann, in Department 60 of the above-entitled

court, located at 330 W. Broadway, San Diego, California, plaintiff herein will move the court for an

order awarding attorneys fees following trial to her counsel of record pursuant to CCP § 1021.5 and

other authority.

/ / /

/ / /

/ / /

/ / /

1

1    The motion will be based on this notice, the accompanying Memorandum of Points and

2    Authorities, the Notice of Lodgment  and exhibits thereto, the Declaration of Paul R. Kennerson, all

3    filed and served herewith, and such other evidence and argument as may be presented in

4    supplemental papers and at the time of the hearing.

5

6                                    **KENNERSON & GRANT, LLP**

7

8
                                          By: _Paul Kennerson_
9    Dated: January 11, 2008
                                          Paul Kennerson
                                          Attorney for Plaintiff VALERIE O'SULLIVAN
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                          2

1  Paul R. Kennerson  [SB #45430]
   John K. Grant  [SB #149318]
2  **KENNERSON & GRANT, LLP**
   101 West Broadway, Suite 1150
3  San Diego, California 92101
   Telephone: (619) 236-8555
4  Facsimile: (619) 236-0555

5  Attorneys for Plaintiff  VALERIE O'SULLIVAN

6

7

8              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9                        **COUNTY OF SAN DIEGO**

10

11  VALERIE O'SULLIVAN,                    )  Case No:  GIC 826918
                                           )
12            Plaintiff,                    )  **MEMORANDUM OF POINTS AND**
                                           )  **AUTHORITIES IN SUPPORT OF**
13  v.                                     )  **PLAINTIFF VALERIE**
                                           )  **O'SULLIVAN'S MOTION FOR AN**
14                                         )  **AWARD OF ATTORNEYS FEES**
                                           )  **FOLLOWING TRIAL**
15  CITY OF SAN DIEGO, a municipal entity; )
    STATE OF CALIFORNIA; and FOES 1        )  **DATE:**        April 4, 2008
16  through 500, inclusive,                )  **TIME:**        10:30 a.m.
                                           )  **JUDGE:**       Hon. Yuri Hofmann
17            Defendants.                   )  **DEPT.:**       60
                                           )  **COMPLAINT**
18  _____ )    **FILED:**      March 12, 2004

19

20                           <u>**INTRODUCTION**</u>

21        Valerie O'Sullivan, in her capacity as a private attorney general (CCP § 1021.5),

22  commenced this action on March 12, 2004 in this court.  The case was tried in the summer of

23  2005 and the decision given in Ms. O'Sullivan's favor on August 26, 2005 [Exhibit A to Notice

24  of Lodgment ("NOL")].  The ensuing judgment awarded costs, including fees under the private

25  attorney general provision of CCP § 1021.5.  Application for such fees, and for the mandatory

26  multiplier applicable to them (see *infra*), was later made and granted.  On December 21, 2005,

27

28

                                          1

1    the judgment was amended to award fees and costs to Ms. O'Sullivan *nunc pro tunc* to

2    October 4, 2005, the date of the original judgment (Exhibit B to NOL).

3        Defendant City of San Diego appealed the entire judgment, including the finding of Ms.

4    O'Sullivan's entitlement to fees under CCP § 1021.5 as well as the amount of them. The entire

5    judgment was affirmed by the Fourth District Court of Appeal (Exhibit C to NOL) and review

6    denied by the California Supreme Court (Exhibit D to NOL). Events in the case continued to

7    occur, of course, during the interim while the case was on appeal and the affirmed finding that

8    the case was properly brought in a private attorney general capacity entitles the plaintiff to those

9    interim fees. In addition, fees for the appeal itself are recoverable, as the Fourth District Court of

10   Appeal specifically noted and then later awarded (see Exhibits E, lines 7-8, and F, "Disposition,"

11   to NOL ). Plaintiff Valerie O'Sullivan here makes application for reasonable fees incurred since

12   November 1, 2005, the earlier award having been for fees incurred up to and including October

13   31, 2005, as well as costs since then. The amount of those fees, up to and including December

14   31, 2007, is $433,860.00.

15       Plaintiff also applies for the mandatory multiplier applicable to such fees. Because

16   applicable questions of law were paramountly more important and complex than the facts of the

17   case, and for other reasons discussed below, plaintiff applies for a mandatory multiplier of 1.85,

18   and thus seeks fees in the total amount of $802,641.00 plus costs of $2,728.00. (City is entitled

19   to a credit of $2,892.23 for an overpayment by that amount with the payment of the initial

20   award.)

21

22                                   **FEES**

23       Plaintiff is entitled to all fees incurred since the last award. As indicated above, the last

24   award of fees covered the period through October 31, 2005. Since that time, enormous

25   additional work has been accomplished on the case, including, but not limited to, work on the

26   appeal itself. The case is a case of considerable public attention and counsel is of necessity the

27   addressee, and required respondent, of huge numbers of communications, mostly by e-mail, with

28

1    people interested in the status of the case and related matters.  A good many of the interested

2    local parties were witnesses in the underlying case and thus have a keen interest in, if not a right

3    to, current information regarding its status.  These people include, but are not limited to:  Valerie

4    O'Sullivan, Anne Cleveland, John Steel, Carl Lind, Debbie Beacham, Jim Antrim, and Don

5    Perry.  The manner of accounting for time by e-mail is in the same fashion as was originally

6    done, all according to the Declaration of Laura Brandenberg (Exhibit G, ¶2, to NOL).  The

7    identical averaging system was applied to the huge number of e-mail traffic that has transpired

8    since November 1, 2005.  In addition, fees on the appeal itself are recoverable.  *Crawford v.*

9    *Board of Education*, 200 Cal. App. 3d 1397 (1988); *Lyons v. Chinese Hospital Assn.*, 136 Cal.

10   App. 4th 1331 (2006).  Exhibit H hereto sets forth in full the time records of counsel for the

11   plaintiff for time incurred since November 1, 2005.

12          The indicated procedure for an award of such fees is to arrive at the lodestar amount

13   (number of hours by an appropriate hourly rate). [See Memorandum of Points and Authorities of

14   original fee application, Exhibit I to NOL.]  In that connection, your applicant increased his

15   hourly fees on November 1, 2005 from $400 to $500 an hour and charges that, or more than that,

16   per hour to all hourly clients at the present time.  The lodestar amount in this instance is

17   $433,860.00.

18          Where "a statute creates a right for the prevailing party to recover attorney fees, the

19   prevailing party is also entitled to attorney fees on appeal."  *Villinger/Nicholls Development Co.*

20   *v. Meleyco*, 31 Cal. App. 4th 321, 329 (1995).  Here, fees are authorized under California Code

21   of Civil Procedure section 1021.5 for actions which result in the enforcement of an important

22   right affecting the public interest.  Cal. Code of Civ. Proc. 1021.5.  "Statutory authorization for

23   the recovery of attorney fees incurred in trial court proceedings necessarily includes attorney fees

24   incurred on appeal unless the statute specifically provides otherwise.  *Imperial Bank v. PIM*

25   *Electric, Inc.*, 33 Cal. App. 4th 540 (1995).  Fees incurred necessary to establish and defend a fee

26   claim are also recoverable.  *Serrano v. Unruh*, 32 Cal. 3d 621, 639 (1982) (granting reasonable

27   attorneys fees incurred to defend appeal from grant of attorneys' fees under Section 1021.5).

28

3

1    Prevailing counsel is entitled to fees for "*all time reasonably expended* in pursuit of the

2    ultimate result achieved in the same manner that an attorney traditionally is compensated by a

3    fee-paying client for all time reasonably expended on a matter." *Hensley v. Eckerhart*, 461 U.S.

4    424, 431 (1983) (emphasis added), *cited by MBNA America Bank, N.A. v. Gorman*, 2006 Cal.

5    App. LEXIS 2131 *18 (December 19, 2006). Under Section 1021.5, "absent facts rendering the

6    award unjust, parties who qualify for a fee should recover for *all hours* reasonably spent."

7    *Serrano v. Unruh*, 32 Cal. 3d 621, 632-33 (1982) (emphasis added). "Time is compensable if it

8    was reasonably expended and is the type of work that would be billed to a client." *MBNA*

9    *America Bank, N.A. v. Gorman*, 2006 Cal. App. LEXIS 2131 *18 (December 19, 2006). In

10    *MBNA*, the prevailing attorney presented the trial court with time records listing all of the

11    services performed and hours spent for the attorneys who worked on the matter. 61.25 hours

12    were billed on the case to perform entirely "ordinary litigation activities" such as:

13    "correspondences and telephone conferences with opposing counsel, legal research, drafting

14    legal documents, reviewing opposing counsel's filings, and preparation for and attending

15    hearings." *Id.* at 19. None of the services rendered appeared unusual or extraordinary. *Id.* For

16    the foregoing reasons, the Court of Appeals upheld the Superior Court's grant of the attorneys'

17    request for attorneys' fees. *Id.* at 21.

18    In *Vo v. Las Virgenes Municipal Water District*, 79 Cal. App. 4th 440, 447 (2000), the

19    trial court properly based its determination as to the amount of reasonable fees recoverable on

20    "the entire course of the litigation, including pretrial matters, settlement negotiations, discovery,

21    litigation tactics, and the trial itself." *Id.*

22    In *Citizens v. Rent Control v. City of Berkeley*, 181 Cal. App. 3d 213 (1986), the

23    prevailing attorney requested fees under Section 1021.5. In support of his request, the prevailing

24    attorney submitted summaries of hours worked, detailed the nature and procedural history of the

25    action and the services performed by each attorney at various stages of the litigation, from early

26    research through argument in the federal court. *Id.* at 232-33. The appellants challenged the

27    trial court's determination of reasonableness of fees on the grounds that the number of hours

28

4

1  (1,940) billed over the one year period between the California Supreme Court decision and oral

2  argument before the United States Supreme Court was "excessive considering that the issues had

3  already been briefed and presented twice in the state appellate courts." *Id.* at 233-34. The court

4  found the hours were neither excessive nor duplicative. The attorney submitted complete time

5  records documenting the following substantive work: preparing against arguments in appellants'

6  jurisdictional statement and appendix, motion to dismiss, opening and reply briefs, research

7  arguments raised in five amicus briefs, and new research on statistical, sociological and political

8  science topics. *Id.* at 234. The foregoing was set forth in the attorney's declaration. *Id.*

9        Based on the foregoing, all fees incurred for hours reasonably spent pursuing the action

10  since trial should be compensable. As long as such fees are justified by billing records, if it is a

11  fair fee to bill a client, it will be a fair fee to bill the opposing party. It is common practice to bill

12  a client for telephone calls and status updates, along with other tasks required by the fact of the

13  appeal, but not directly billable to brief preparation or oral argument.

14        But for the appeal, the work at the Children's Pool required by the judgment would long

15  since have been accomplished and little, if any, of the attorney's time since November 1, 2005

16  would have to have been spent. The City's conduct, and plaintiff's consequent need reasonably

17  to respond to it, are the reasons for most of the fees incurred.

18

19                              **MANDATORY MULTIPLIER**

20        A mandatory multiplier is required to be applied to the lodestar amount, in the nature of a

21  contingent award, because of the risk attendant upon pursuit of private-attorney-general

22  litigation, a reward widely recognized in the law and accepted as a needed motivation in cases of

23  recalcitrant defendants facing issues of public benefit. [See Memorandum of Points and

24  Authorities of original fee application, Exhibit I, pp. 5-12, to NOL.] *Graham v. DaimerChrysler*

25  34 Cal. 4th 553, 579, 581 (2004). The multiplier applied by Judge Pate to the lodestar amount in

26  the first award was 1.2. Your applicant suggests that for the following reasons, the lodestar

27  amount should be increased to 1.85 applicable to the fee award sought herewith.

28

5

1    The record of the trial in the case discloses very little real dispute regarding the factual

2    content of the lawsuit. No great contest was mounted by the City as to the facts of the case and

3    resolution of any minor factual conflicts was a matter of relative fluidity for Judge Pate who

4    made the initial decision. The case was complicated by the questions of the law involved in it.

5    The Court of Appeal opinion consumed some 55 pages and dealt with the major issues and the

6    minute details of all of the legal theories that came to be mounted in opposition to an award to

7    the plaintiff's side. There is no point in rehashing those arguments here, the decision having

8    already been made and the Supreme Court having denied review. The point is that the risk

9    factors involved in the appeal outweighed mightily the risk factors involved in the initial trial

10   where essentially uncontested facts were the predominating theme. Thus, it makes sense that

11   Judge Pate would apply a lower multiplier.[1] The court's exceeding caution in applying a

12   multiplier of 1.2 should be loosened apropos of this petition for additional fees incurred since the

13   initial award.

14       In addition, considerable forces were at work to overturn plaintiff's trial victory in this

15   case, and the consequent enormity of the risk in pursuing and bringing it to completion can be

16   seen in the number and the heftiness of the parties who sought *amicus* status in the Court of

17   Appeal or wrote *amicus* briefs in the Supreme Court. Five parties sought *amicus* status in the

18   Court of Appeal, including the Sierra Club, the California Coastal Commission, The Humane

19   Society of the United States, The League of California Cities, and other public animal-rights

20   entities. Their applications appear as Exhibits J-S to the NOL and plaintiff's response to each

21   petition appears immediately behind it. In the California Supreme Court, ten parties, including

22   some of the same as in the Court of Appeal as well as such other diverse powers as a local

23   congressperson, petitioned the California Supreme Court to hear the case. Their applications

24   appear herein (followed immediately by responses to them where responses were given, and, if

25   not, by the next petition in order) as Exhibits T through FF of the NOL. A casual glance at these

26

27    [1]   The lowest multiplier your applicant can find in any of the reported cases is a multiplier of

28   1.5.

6

1    *amicus* petitions discloses the high risk to plaintiff as a private attorney general that the decision

2    might be reversed.  Clearly no appealable stone was left unturned by the defendant and the 15-

3    some parties who addressed the case's legal issues.  This enormous risk was aggravated by the

4    fact that plaintiff's counsel's firm went, during the course of the case, from a two-partner-one-

5    associate firm to a two-partner firm (with the departure of Ms. Brandenberg to San Francisco), to

6    a one-lawyer firm (with the departure of John Grant from practice because of a terminal illness

7    of which the court may be aware).  The risk factors involved in the continued prosecution of this

8    case were, in short, enormous at the post-trial level and justify the application of the mandatory

9    multiplier asked for.

10       In addition to all the foregoing, further risk yet remains.  As this court is now aware, an

11    ancillary action has been filed in federal court seeking to obliterate the result obtained in the state

12    court.  Plaintiff Valerie O'Sullivan is obviously legally interested in that case, and must

13    intervene in it or in some way make her position known in the federal court so as not to permit

14    the abridgement of her rights hard fought-for and now established apropos of the Children's Pool

15    and duties of the City as trustee to administer it.

16

17                        **CONCLUSION**

18       The brevity of these points and authorities does not bespeak any insensitivity to the need

19    for fully adequate briefing of a request for so large an amount of fees. A previous award of fees

20    has been made in this case, together with the mandatory multiplier applied to it; that award has

21    been affirmed on appeal and has become the law of the case.  Thus, as a matter of law plaintiff is

22    entitled to fees, as well as to a mandatory multiplier of them.  And upon this, the second

23    application for fees, what is required is substantiation of the reasonable value of those fees, from

24    the commencement point of November 1, 2005 to the present.  Plaintiff herein submits that the

25    / / /

26    / / /

27    / / /

28

7

1   appropriate award in this case should be the lodestar amount of $433,860, multiplied by a factor

2   of 1.85, or $802,641.00 less a credit of $2,892.23, or $799,748.77, plus costs in the amount of

3   $2,728.

4

5        Respectfully submitted,

6                     **KENNERSON & GRANT, LLP**

7

8   Dated: January 11, 2008           By:_Paul Kennerson_

9                     Paul Kennerson
                            Attorney for Plaintiff VALERIE O'SULLIVAN

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

8