1   Paul R. Kennerson, State Bar No. 45430
    **KENNERSON & GRANT**
2   101 West Broadway, Suite 1150
    San Diego, CA 92101
3   Telephone:    +1 619 236 1255
    Facsimile:    +1 619 236 0555
4   Email:    paul@kennersongrant.com

5   Attorneys for Proposed Intervenor

6

7

8                    UNITED STATES DISTRICT COURT

9                 SOUTHERN DISTRICT OF CALIFORNIA

10  ANIMAL PROTECTION AND RESCUE          Case No. **07 CV 2320 JM (AJB)**
    LEAGUE a nonprofit corporation, and
11  DOROTA VALLI, an individual,          **OPPOSITION TO MOTION FOR
                                          PRELIMINARY INJUNCTION**
12              Plaintiffs,
                                          **DATE:    2/21/08**
13      v.                                **TIME:    4:30 p.m.**
                                          **CRTRM:   16**
14  THE STATE OF CALIFORNIA, THE CITY
    OF SAN DIEGO DEPARTMENT OF PARKS
15  AND RECREATION, MAYOR JERRY
    SANDERS, and DOES 1 to 100,
16
                Defendants.
17

18

19

20

21

22

23

24

25

26

27

28

SDODMS1/685829.1

07 CV 2320 JM (AJB)
OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

Plaintiffs ask this Court to disturb the delicate balance of power between the state and federal governments by issuing a preliminary injunction that effectively overturns a State Court judgment. Furthermore, Plaintiffs' seek to do so in an action where they are not likely to succeed on the merits of their claim. Plaintiffs' argument that the federal Marine Mammal Protection Act ("MMPA") requires a separation rope be installed at the Children's Pool has already been unsuccessfully litigated in the State Court system. Plaintiffs present no evidence of irreparable harm and the California State Court has already determined that proposed intervenor, Ms. Valerie O'Sullivan, acts in furtherance of the interests of the people of the State of California on the issue herein presented. Since each factor to be considered by this Court before issuance of a preliminary injunction weighs heavily against Plaintiffs, Ms. O'Sullivan respectfully requests that this Court deny Plaintiffs' application.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

In 1931, Ellen Scripps completed construction of a 300-foot concrete breakwater and resultant ocean water bathing pool, known as the Children's Pool. Notice of Lodgment in Support of O'Sullivan's Opposition to *Ex Parte* Application for Temporary Restraining Order ("NOL") Exhibit 1: August 26, 2005 Final Statement of Decision, p. 5. The State of California granted lands, including the Children's Pool, to be forever held by the City of San Diego in trust. *Id.* As a condition of the trust, the City of San Diego was to devote the land "exclusively to public park, bathing pool for children, parkway, highway, playground and recreational purposes, and to such other uses as may be incident to, or convenient for the full enjoyment of, such purposes…" *Id.* at p. 6.

Despite the City of San Diego's obligations as trustee of the Children's Pool, the City of San Diego allowed the condition of the Children's Pool to deteriorate to such a point that it could not, and was not, being used as a public park or bathing pool for children. *Id.* at 29. One condition preventing the Children's Pool from its intended use was that the City of San Diego took action to separate the seals from humans by closing off the Children's Pool to humans and *installing a separation rope*. *Id.* at p. 30.

1

On March 12, 2004, Ms. O'Sullivan, as a private attorney general and resident of San Diego, filed a Complaint against the City of San Diego in San Diego Superior Court for breach of its obligations under the 1931 Trust to manage and maintain the Children's Pool for swimming ("State Court Complaint").  *See* NOL Exhibit 2: September 7, 2007 Decision of the California Court of Appeals, p. 9; Declaration of Paul Kennerson in Support of O'Sullivan's Opposition to *Ex Parte* Application for Temporary Restraining Order ("Kennerson Decl."), ¶ 2.

## A.      James Lecky's Testimony Before the City Council

Entered into evidence in Ms. O'Sullivan's State Court Action was the September 14, 2004 testimony of James Lecky, from the National Marine Fishery Services ("NMFS"), the federal agency charged with enforcing the MMPA, before the San Diego City Council regarding the NMFS's position relative to the seal population at the Children's Pool.  Kennerson Decl., ¶ 8.  Mr. Lecky testified in pertinent part:

> There has been a fair amount of confusion about the Marine Mammal Act and its role in this thing, and I wanted to come and provide my view, and the agency's view on what exactly the Marine Mammal Act has to do with this situation.  And the bottom line is we really view this as a local government issue, and I'll explain that in my comments here.
>
> The Marine Mammal Protection Act was actually passed in 1972, and this is a very protective piece of legislation.
>
> ***
>
> It doesn't anticipate very well what we do with healthy populations and it didn't really provide much in the way of tools, although there have been amendments recently to improve the situation to deal with expanding pinniped populations.  I think we're really fortunate in California to be adjacent to the most diverse population of marine mammals in the world off our Southern California coast.  Included in that are 3 species of pinnipeds – seals and sea lions – that are increasing at regular rates on the order of 6% per year, and approaching optimum sustainable population levels which are sort of the floor of the level we like to see all these populations at.
>
> They are causing problems as they expand up and down the coast in terms of invading harbors, causing property damage, and limiting access to beaches that are important for other public uses.  The tools that are available to the City and other local government agencies really reside in §109(h).  And §109(h) of the statute allows local city government agencies and their employees to 'take' marine mammals. 'Take' is defined as harass, harm, hunt or kill – the limitations under 109(h) are that it's non-lethal, for the most part, there is an exception

2

SDODMS1/685829.1

for euthanasia.  But in this circumstance we are really talking about moving animals through use of harassment.  And animals can be moved out of an area if they are either presenting a public nuisance or they're causing a public health hazard.  So, it's up to the City to decide whether the water quality problem is considered a public health hazard they want to deal with or whether the ongoing conflicts on this beach are presenting a public nuisance that they want to resolve.  109(h) is an authority that is granted to local governments and state agencies and it doesn't require approval or permit from the federal agency.  So it's up to the local entities to use 109(h), and hence, that's the rationale when I say it's a local government issue – the federal government is not going to weigh in and say that you can or can't use 109(h) as a rationale for managing the situation at Children's Pool.

\*\*\*

Peters: So, I just want to make sure – some of these things you already dealt with – but harbor seals are not endangered or threatened, is that correct?

Lecky: That's correct.

\*\*\*

Peters: Would it be fair to say that the population is healthy?

Lecky: It's healthy.

Peters: The Children's Pool itself, is that necessary for the survival of the seal population, or for its health?

Lecky: No, it's not.

Peters: And there are other haul-out sites, at least some along the California coast, the Southern California coast?

Lecky: There are many haul-out sites along the California coast, and on the Channel Islands – both North and South.

Peters: You answered the question about 109(h).  Now, the Marine Mammal Protection Act does not make it illegal to step onto the beach or swim at the Children's Pool if there are no seals on beach, is that correct?

Lecky: No, it doesn't.

\*\*\*

Lecky: … A rookery has no specific status or designation under the Marine Mammal Protection Act that's different from any other habitat.

///

///

3

1

> Peters: Okay, so, just to make sure, there's no designation that the
> agency's made that would change the regulatory status of the
> [Children's Pool]?

2

3

> Lecky: That's correct.

4

NOL Exhibit 5:  September 14, 2004 Testimony of James Lecky.

5

**B.    Superior Court Judgment**

6

Ms. O'Sullivan's State Court Complaint proceeded in the Superior Court to judgment.  NOL

7

Exhibit 1: October 4, 2005 Judgment.  The California Superior Court's October 4, 2005 Judgment

8

required the City of San Diego, *inter alia*, to:

9

(1)    employ all reasonable means to restore the Pool to its 1941 condition by removing the

10

sand build-up;

11

(2)    reduce the level of water contamination in the Pool to levels certified by the County

12

of San Diego as being safe for humans;

13

(3)    maintain the beach sand so that it does not pose a health hazard to humans; and

14

(4)    fully comply with the court order "no later than six (6) months after the date this

15

order is issued."  *Id.*; NOL Exhibit 1:  August 26, 2005 Final Statement of Decision, p. 31.

16

In its Final Statement of Decision, the California Superior Court addressed the City of San

17

Diego's argument that removal of the seals from the Children's Pool is prohibited by the Marine

18

Mammal Protection Act ("MMPA").  In response, the court stated,

19

> The City's position is refuted by its own evidence… the City has been
> repeatedly advised the its City Manager and NMFS [the federal agency
> charged with enforcement of the MMPA] that the City can take
> appropriate action to remediate the safety and health situation at
> Children's Pool without violating the MMPA…The City knew as early
> as 1997 that under these exceptions [in the MMPA] it could deter the
> seals at the Children's Pool.

20

21

22

23

*Id.* at p. 25.

24

**C.    California Court of Appeals Decision**

25

The City of San Diego appealed from the October 4, 2005 Judgment to the California Court

26

of Appeals.  The California Court of Appeals affirmed the Judgment of the Superior Court in its

27

entirety.  *See* NOL Exhibit 2: September 7, 2007, Decision of the California Court of Appeals, p. 9.

28

The California Court of Appeals specifically addressed the argument that the MMPA prohibits the

4

injunction issued by the California Superior Court.  After a lengthy discussion of the language and

exceptions of the MMPA, the Court of Appeals held as follows:

> We, like the trial court and the parties, assume marine mammals
> located at the Children's Pool are *generally* subject to the MMPA.
> However, the evidence admitted at trial supports a reasonable
> inference that the section 109(h) exception to the MMPA (i.e., 16
> U.S.C. s1379(h)) and a similar exception under title 16 United States
> Code section 1371(a)(4)(A) apply to allow the relief sought by
> O'Sullivan and awarded by the trial court.  Because feces from the
> substantial number of seals at the Children's Pool result in high levels
> of water pollution, it can reasonably be concluded there is damage to
> public property and danger to the health and safety of persons at the
> Children's Pool within the meaning of those exceptions.  Considering
> those circumstances, the trial court could reasonably conclude those
> exceptions to the MMPA applied and did not preclude its injunction
> against City requiring City to, in effect, remediate those problems by
> restoring the Children's Pool to its 1941 condition.

NOL Exhibit 2:  September 7, 2007 Decision of the California Court of Appeals, pp. 45-46.

The City of San Diego petitioned the Supreme Court of California for review.  On November

28, 2007, the Supreme Court of California denied the petition for review.  NOL Exhibit 3:

November 28, 2007 Supreme Court of California Denial of Review.

**D.    Motion To Clarify The Court's Injunction Before The Superior Court**

After the California Supreme Court's denial of review, the City of San Diego filed a "Motion

to Clarify the Court's Injunction" which requested that the Superior Court to reconsider the "rope

issue" and permit the City of San Diego to place a rope barrier on the shore of the Children's Pool

cutting off public access thereto.  *See* NOL Exhibit 4: January 3, 2008 Tentative Ruling of the

Superior Court of California; Kennerson Decl., ¶ 7.  The Superior Court declined to rehear the issue

stating:

> Specifically, the 'rope issue' was discussed in both this Court's and the
> Court of Appeal's final rulings in favor of Plaintiff and against the
> City.  Ultimately, both Courts found that the placement of a 'rope
> barrier cutting off public access to the Pool'… resulted in the City's
> breach of its obligations as trustee under the subject Trust.

*Id.*  The court further stated, "the relevant issue has been considered and decided, and the Court's

directives to the City are clear and unambiguous."  *Id.*

Notwithstanding the State Court Action, and the California Superior Court's clear and

unambiguous order, the Plaintiffs in this matter filed their Complaint and request that this Court

5

grant a preliminary injunction. The Plaintiffs' Complaint is based upon the allegation that the MMPA "requires a permit to be issued for activities that will involve disturbance of marine mammals". Pltfs' Cmplt, ¶ 18. Plaintiffs' Motion for Preliminary Injunction seeks to require the installation of a rope barrier at the Children's Pool. Pltfs' Mtn. for Prelim. Inj. The Plaintiffs seek an order in *direct contravention* with the California Superior Court Judgment in the State Court Action. Plaintiffs essentially ask this Federal District Court to overturn Ms. O'Sullivan's state court victory.

## II.

### THIS COURT SHOULD EXERCISE ITS DISCRETION TO DENY THE PLAINTIFFS' PROPOSED TEMPORARY RESTRAINING ORDER

A district court may issue a permanent injunction to "preserve existing conditions while [the court is] determining its own authority to grant injunctive relief." *United States v. United Mine Workers of America*, 330 U.S. 258, 293 (1947). There is currently no rope in place at the Children's Pool. Kennerson Decl., ¶ 9. Plaintiffs seek a preliminary injunction to require the City of San Diego to install a rope and thereby disturb the status quo. Pltfs' Mtn. for Prelim. Inj. Where a party seeks to disturb the status quo with a preliminary injunction, such a request will be subjected to high scrutiny and carry a heavy burden of persuasion. *See Tom Doherty Assocs., Inc. v. Saban Entertainment, Inc.*, 60 F.3d 27, 32-33 (2d Cir. 2000).

The traditional test within the Ninth Circuit for granting a preliminary injunction includes consideration of four factors: (1) the likelihood of the plaintiffs' success on the merits; (2) the threat of irreparable harm to the plaintiffs if the injunction is not imposed; (3) the relative balance of this harm to the plaintiffs and the harm to the defendant if the injunction is imposed; and (4) the public interest. *Alaska v Native Village of Venetie*, 856 F.2d 1384, 1388 (9th Cir 1988) (citing *Los Angeles Mem Coliseum Comm'n v National Football League*, 634 F.2d 1197, 1200 (9th Cir 1980)). Courts within the Ninth Circuit have collapsed these factors into a two-prong test requiring the moving party to show either (1) a combination of probable success on the merits and the possibility of irreparable harm, or (2) that serious questions are raised and the balance of hardships tips sharply in the moving party's favor. *Dumas v Gommerman*, 865 F.2d 1093, 1095 (9th Cir 1989); *Apple*

6

SDODMS1/685829.1

1    *Computer Inc v Formula Int'l, Inc*, 725 F.2d 521, 525 (9th Cir 1984).  Regardless of how the Ninth

2    Circuit test is applied, none of the factors weigh in Plaintiffs' favor.

3    **A.    Plaintiffs Are Not Likely To Succeed On The Merits**

4            Plaintiffs' entire case is premised upon Plaintiffs' erroneous allegation that the final orders of

5    the California State Courts in *O'Sullivan v. City of San Diego*[1] violate the MMPA.  *See Cmplt.*, ¶¶

6    18, 20.  Plaintiffs' entire motion for preliminary injunction is based on the erroneous premise that

7    placement of a guideline rope at the Children's Pool is required by the MMPA.  *See* Pltfs' Mtn. for

8    Prelim. Inj.  The propriety of the State Court orders and requirement of a guideline rope under the

9    MMPA have already been litigated and finally determined by both the California Superior Court and

10   California Court of Appeals.  *See* NOL Exhibit 1:  Judgment; NOL Exhibit 2:  Decision of the

11   California Court of Appeals.

12           James Lecky, the California Superior Court and the California Court of Appeals each

13   specifically addressed the MMPA and guideline rope issues, ultimately concluding placement of a

14   guideline rope is not required by the MMPA.  *See id.; see also,* NOL Exhibit 5:  Lecky Testimony.

15   The California State Courts took extensive care to acknowledge, discuss, protect and implement the

16   MMPA.  Plaintiffs present no evidence or argument that was not fully considered by the State Court.

17   As a result, there is no reason to believe any other court, state or federal, would come to a different

18   conclusion.

19   **B.    Plaintiffs Will Not Suffer Irreparable Harm By Failure To Grant a Preliminary**
         **Injunction**
20

21           Plaintiffs allege the guideline rope is necessary to prevent irreparable harm from occurring

22   during seal pupping season, which began on December 15, 2007.  Cmplt., Prayer, at ¶ 2.  It has now

23   been over one month since the beginning of pupping season with no guideline rope in place.  Despite

24   Plaintiffs' argument that a preliminary injunction is necessary to prevent irreparable harm, Plaintiffs

25   have offered no evidence that any irreparable harm has occurred since December 15, 2007.

26   Plaintiffs offer no evidence to suggest that first determining the merits of this action will result in

27

28   [1] *O'Sullivan v. City of San Diego*, California Superior Court, County of San Diego (Case No. GIC826918), California
     Court of Appeals, 4th Appellate District (Case No. D047382), Supreme Court of California (Case No. S157299).

7

1  any irreparable harm.  To the contrary, this Court has already found that "a short continuance of the

2  hearing date on Plaintiffs' motion for preliminary injunction… will not likely prejudice Plaintiffs."

3  January 17, 2008 Scheduling Order On Motion To Intervene, p. 2, n. 1.

4  **C.    The Balance of Harm Weighs Against Issuance Of A Preliminary Injunction**

5        A preliminary injunction would cause harm to Ms. O'Sullivan.  Ms. O'Sullivan litigated for

6  five years to obtain the Judgment requiring the City of San Diego to return the Children's Pool to a

7  bathing pool.  *See* Kennerson Decl., ¶ 2.  An important part of that Judgment is an injunction

8  preventing the City of San Diego from installing a guideline rope, such as the one requested by the

9  Plaintiffs.  The Judgment, entered by Judge Pate on October 4, 2005 also requires the City of San

10  Diego to comply with its terms *within six months of the order*.  *See* Judgment, p. 2 (fully comply

11  with the court order "no later than six (6) months after the date this order is issued").  Due to the

12  lengthy appellate process, Ms. O'Sullivan has now waited two and one-half years for compliance

13  with the State Court Judgment.

14  **D.    The Public Interest Weighs Against Issuance Of A Preliminary Injunction**

15        Both the California Superior Court and California Court of Appeals determined that Ms.

16  O'Sullivan acted as a private attorney general and conferred a significant benefit on the general

17  public because of her State Court Action.  The Court of Appeals stated:

18         However, the trial court expressly rejected that assertion, finding that a
          significant benefit *had* been conferred on the general public by
19         O'Sullivan's action because she obtained injunctive relief that
          protected 'the rights of the people of California to the full use and
20         enjoyment of a unique asset, the Children's Pool.'  We conclude the
          trial court did not abuse its discretion by concluding the injunctive
21         relief obtained by O'Sullivan conferred a significant benefit on the
          general public by requiring City to restore the Children's Pool to its
22         1941 condition, thereby making it both available and safe for
          swimming by children and others.  Although one effect of that
23         required restoration may be to discourage seals from hauling out and
          thereby reducing the number of, or eliminating, seals at the Children's
24         Pool that people can view, that purported 'negative' impact does not
          outweigh or countervail the significant public benefit obtained by
25         O'Sullivan in enforcing the terms of the Trust, which, as discussed
          above, is a public trust requiring that the Children's Pool be used for a
26         public park and bathing pool for children.

27  NOL Exhibit 2:  Decision of the California Court of Appeals, pp. 49-50.

28  *///*

8

1    Since it has already been determined that Ms. O'Sullivan is acted in the interest of the people

2    of California when obtaining her State Court Judgment, the public interest factor also weighs heavily

3    against issuance of a preliminary injunction.

4    **E.    Grant of a Preliminary Injunction Would Offend The Balance Of Power Between The**
     **State And Federal Governments**

5

6    Regardless of the outcome of the weighing of the above factors, grant of a preliminary

7    injunction will offend the balance of power between state and federal governments.

8    The federal Anti-Injunction Act prohibits a federal court from enjoining proceedings in a

9    state court.  28 U.S.C. §2283.  None of the Act's statutory exceptions apply in this instance.  *See id.*

10   The State Court proceedings are ongoing as the Judgment specifically states the "court will maintain

11   jurisdiction to oversee compliance with this order" and the City has not yet complied with the

12   Judgment.  NOL Exhibit 1:  Judgment, p. 2.

13   This lawsuit is barred by the *Rooker-Feldman* doctrine.  "Under *Rooker-Feldman*, a federal

14   district court does not have subject matter jurisdiction to hear a direct appeal from the final judgment

15   of a state court."  *Noel v. Hall*, 341 F.3d 1148, 1154 (9th Cir. 2003).  Where the federal plaintiff

16   complains of "harm caused by a state court judgment that directly withholds a benefit from (or

17   imposes a detriment on) the federal plaintiff, based on an allegedly erroneous ruling by that court,"

18   the federal court lacks jurisdiction under *Rooker-Feldman*.  *Id.* at 1162.  The *Rooker-Feldman*

19   doctrine looks to the relief sought and asks "is the federal plaintiff seeking to set aside a state

20   judgment, or does he present some independent claim."  *Id.* at 1164, citing *GASH Associates v.*

21   *Village of Rosemont*, 995 F.2d 726, 728-29 (7th Cir. 1993) (holding *Rooker-Feldman* applies where

22   GASH's injury was caused by the judgment).  "Where federal relief can only be predicated upon a

23   conviction that the state court was wrong, it is difficult to conceive the federal proceeding as, in

24   substance, anything other than a prohibited appeal of the state-court judgment."  *Pennzoil Co. v.*

25   *Texaco, Inc.,* 481 U.S. 1, 25 (1987) (concurring opinion of Marshall, J.).  Plaintiffs' Complaint rests

26   entirely upon alleged injury sustained as a result of the State Court Judgment,

27            "The Tidelands Grant as interpreted by Judge Pate and upheld by the
              State Court of Appeal violates the MMPA by requiring the City of San
28            Diego to maintain an artificial configuration of CPB that will harm

9

> marine mammals by removing their resting spot and allowing and
> encouraging the beach to be used in such a manner that is detrimental
> to marine mammals."

Cmplt. at ¶ 20. Since Plaintiffs allege injury allegedly caused by a State Court Judgment and seek a *de facto* federal district court appeal, under *Rooker-Feldman*, this Court lacks jurisdiction to entertain this matter.

Full faith and credit and collateral estoppel bar this lawsuit. Under 28 U.S.C. § 1738, federal courts must give "full faith and credit" to judgments of state courts. *Noel v. Hall*, 341 F.3d 1148, 1166 (9th Cir. 2003). Full faith and credit "commands a federal court to accept the rules chosen by the State from which the judgment is taken." *Id.* (under full faith and credit, applying Washington preclusion laws).

Under the substantive laws of the State of California, Plaintiffs' lawsuit is also barred by collateral estoppel.

> "[A] party will be collaterally estopped from relitigating an issue only
> if (1) the issue decided in a prior adjudication is identical with that
> presented in the action in question; *and* (2) there was a final judgment
> on the merits; *and* (3) the party against whom the plea is asserted was
> a party or in privity with a party in the prior adjudication."

*Lewis v. County of Sacramento*, 218 Cal. App. 3d 214, 217 (1990). Here, as demonstrated above, each issue presented by Plaintiffs' Complaint and *Ex Parte* Application was precisely determined by the California Superior and Appellate Courts to final judgment. Further, because the Plaintiffs had an identity of interest with the City of San Diego in the State Court Action (both parties purport to represent the interests of those residents who desire that the seals remain at Children's Pool and advance the exact same arguments in support of their position), the Plaintiffs are in privity with the City of San Diego and subject to collateral estoppel. Kennerson Decl., ¶ 3. Furthermore, the parties are in privity because rather than intervene in the State Court Action as parties, the Plaintiffs elected to file *amicus* briefs and take the disfavored "wait and see" approach. *Id.* ("Plaintiff had a full and fair opportunity to litigate… We cannot help but wonder what plaintiff's position on collateral estoppel would be had the [prior action been determined in his favor].") The California Court of Appellate-level courts (the California Court of Appeals and California Supreme Court) received fifteen *amicus* briefs. Kennerson Decl. at ¶ 3. To permit fifteen different interested parties to "wait

10

1  and see" and then file separate lawsuits until one of them prevails would result in an endless farrago

2  of litigation.

3        Lastly, this Court should abstain under *Younger*.  In *Younger*, the United States Supreme

4  Court held that a federal court should not intervene in ongoing state proceedings for reasons of

5  comity.  *Younger v. Harris*, 401 U.S. 37, 43-44 (1971).  "The normal thing to do when federal courts

6  are asked to enjoin pending proceedings in state court is not to issue such injunctions."  *Id.* at 45.

7  Because in this instance, the State Court Action is ongoing, implicates important state interests, and

8  provided Plaintiffs an adequate opportunity to litigate their claims, this Court should abstain from

9  hearing this lawsuit.  *San Remo Hotel v. City and County of San Francisco*, 145 F.3d 1095, 1103

10  (9th Cir. 1998) (*Younger* can be invoked if state proceedings are ongoing, implicate important state

11  interests, and provide the plaintiff an adequate opportunity to litigate federal claims).

12  ### III.

13  ### <u>CONCLUSION</u>

14        Based on the foregoing, this Court should deny Plaintiffs' Motion for Preliminary Injunction.

15  Dated:  February 8, 2008              KENNERSON & GRANT

16

17                              By:s/Paul R. Kennerson         

18                              Attorneys for Proposed Intervenor
                            Email:  paul@kennersongrant.com

19

20

21

22

23

24

25

26

27

28

11

# TABLE OF CONTENTS

**Page**

I.    FACTUAL AND PROCEDURAL BACKGROUND.................................................... 1

    A.    James Lecky's Testimony Before the City Council ...................................... 2

    B.    Superior Court Judgment ........................................................... 4

    C.    California Court of Appeals Decision.................................................. 4

    D.    Motion To Clarify The Court's Injunction Before The Superior Court ..................... 5

II.   THIS COURT SHOULD EXERCISE ITS DISCRETION TO DENY THE
     PLAINTIFFS' PROPOSED TEMPORARY RESTRAINING ORDER............................... 6

    A.    Plaintiffs Are Not Likely To Succeed On The Merits..................................... 7

    B.    Plaintiffs Will Not Suffer Irreparable Harm By Failure To Grant a Preliminary
       Injunction ...................................................................... 7

    C.    The Balance of Harm Weighs Against Issuance Of A Preliminary Injunction ........... 8

    D.    The Public Interest Weighs Against Issuance Of A Preliminary Injunction .............. 8

    E.    Grant of a Preliminary Injunction Would Offend The Balance Of Power
       Between The State And Federal Governments........................................... 9

III.  CONCLUSION .................................................................... 11

Baker & McKenzie LLP
12544 High Bluff Drive,
Third Floor
San Diego, CA 92130
+1 858 523 6200

i

SDODMS1/685829.1

# TABLE OF AUTHORITIES

Baker & McKenzie LLP
12544 High Bluff Drive,
Third Floor
San Diego, CA 92130
+1 858 523 6200

**Page**

## FEDERAL CASES

*Alaska v Native Village of Venetie,*
856 F.2d 1384 (9th Cir 1988) ...........................................................6

*Apple Computer Inc v Formula Int'l, Inc,*
725 F.2d 521 (9th Cir 1984) ...........................................................6

*Dumas v Gommerman,*
865 F.2d 1093 (9th Cir 1989) ...........................................................6

*GASH Associates v. Village of Rosemont,*
995 F.2d 726 (7th Cir. 1993) ...........................................................9

*Los Angeles Mem Coliseum Comm'n v National Football League,*
634 F.2d 1197 (9th Cir 1980) ...........................................................6

*Noel v. Hall,*
341 F.3d 1148 (9th Cir. 2003) ...........................................................9, 10

*Pennzoil Co. v. Texaco, Inc.,*
481 U.S. 1 (1987)...........................................................9

*San Remo Hotel v. City and County of San Francisco,*
145 F.3d 1095 (9th Cir. 1998) ...........................................................11

*Tom Doherty Assocs., Inc. v. Saban Entertainment, Inc.,*
60 F.3d 27 (2d Cir. 2000)...........................................................6

*United States v. United Mine Workers of America,*
330 U.S. 258 (1947)...........................................................6

*Younger v. Harris,*
401 U.S. 37 (1971)...........................................................11

## STATE CASES

*Lewis v. County of Sacramento,*
218 Cal. App. 3d 214 (1990) ...........................................................10

ii

# TABLE OF AUTHORITIES
### (continued)

**Page**

## FEDERAL STATUTES

16 U.S.C. § 1371...............................................................................................................5

16 U.S.C. § 1379...............................................................................................................5

28 U.S.C. § 1738.............................................................................................................10

28 U.S.C. §2283................................................................................................................9

Baker & McKenzie LLP
San Diego

iii