BRYAN W. PEASE (SB# 239139)
302 Washington St. #404
San Diego, CA 92103
ph: (619) 723-0369
fax: (619) 923-1001
email: bryanpease@bryanpease.com

Attorney for Plaintiffs

UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANIMAL PROTECTION AND RESCUE LEAGUE, a nonprofit corporation, and DOROTA VALLI, an individual,<br><br>          Plaintiffs,<br><br>          v.<br><br>THE STATE OF CALIFORNIA, THE CITY OF SAN DIEGO DEPARTMENT OF PARKS AND RECREATION, MAYOR JERRY SANDERS, AND DOES 1 TO 100,<br><br>          Defendants. | Civil Action, Case No. 07 CV 2320 JM AJB<br><br>PLAINTIFFS' RESPONSE TO ABSTENTION ARGUMENTS |

# INTRODUCTION

Neither <u>Rooker-Feldman</u> nor <u>Younger</u> principles apply because plaintiffs were not parties to the state court litigation, and there is a longstanding principle that every plaintiff is entitled to his own day in court in the forum of his choice. The privity argument does not apply to a <u>Rooker-Feldman</u> analysis, and would only provide a very narrow exception to the rule that <u>Younger</u> only applies to previous parties to the state court litigation. However, plaintiffs are in no way in privity with defendants.

# ARGUMENT

## I.   Rooker-Feldman does not apply

A litigant who was not a party to the state-court litigation, and therefore was unable to appeal the judgment in state court, is not precluded under the Rooker-Feldman doctrine from filing suit in federal district court. <u>Johnson v. De Grandy</u> (1994) 512 U.S. 997, 1005-1006, 114 S. Ct. 2647 (Rooker-Feldman doctrine has no application to federal suit brought by nonparty to state suit); see <u>Exxon Mobil Corp. v. Saudi Basic Indus. Corp.</u> (2005) 544 U.S. 280, 125 S. Ct. 1517, 1521-1522 (Rooker-Feldman doctrine is confined to cases brought by "state-court losers complaining of injuries caused by state-court judgments").

The <u>Rooker-Feldman</u> doctrine does not apply to persons who participated in state-court litigation as *amici curiae*. <u>Bennett v. Yoshina</u> (9th Cir. 1998) 140 F.3d 1218, 1223-1224, (*amici curiae* are not actually parties to case, cannot conduct discovery, and do not have right to appeal from adverse decision). In the state litigation, the City did not appeal its adverse decision to the U.S. Supreme Court, nor would there have been any basis to since the City did not take the position in its appeal that the MMPA precluded the relief awarded, and the issues decided were state law issues regarding how to interpret the Tidelands Grant.[1] Because plaintiffs in the present federal case were not parties to the state litigation, they could not have forced the City to

---

[1] On appeal, the City argued that NOAA should have been added as an indispensable party but notably did not argue that the MMPA definitively precludes the relief that was granted. Amicus briefs that made that argument were rejected for filing by the Court.

appeal to the U.S. Supreme Court to consider federal issues, and Rooker-Feldman does not bar plaintiffs from asserting their own federal claims in federal court.

Prospective Intervenor cites both Johnson and Bennett, but then states inexplicably and without analysis that these cases do not apply because Plaintiffs are in "privity" with the City. As discussed further below, there is no such privity. Further, the concept of privity does not apply to a Rooker-Feldman analysis.

Rooker-Feldman and preclusion doctrines are not the same. See Lance v. Dennis (2006) 546 U.S. 459, 126 S. Ct. 1198 (in applying Rooker-Feldman to bar federal suit by nonparty to state-court proceedings, "[t]he District Court erroneously conflated preclusion law with Rooker-Feldman. Whatever the impact of privity principles on preclusion rules, Rooker-Feldman is not simply preclusion by another name.") Prospective Intervenor cites Maymo-Melendez v. Alvarez-Ramirez (1st Cir. 2004) 364 F.3d 27, 33, for the proposition that Rooker-Feldman is just a variation of *res judicata*, but this is clearly not the case given the later Supreme Court holding. In Lance, the Supreme Court squarely held that "[t]he Rooker-Feldman doctrine does not bar actions by nonparties to an earlier state-court judgment simply because, for purposes of preclusion law, they could be considered in privity with a party to the judgment."

## II. Younger does not apply

Younger abstention principles can apply to non-parties in very limited circumstances. See Doran v. Salem Inn (1975) 422 U.S. 922, 924-925, 95 S. Ct. 2561 (mere commonality of interest with a party to state court litigation is insufficient to justify abstention); Green v. City of Tucson (9th Cir. 2001) 255 F.3d 1086, 1099-1100 (Supreme Court has recognized existence of narrow circumstances in which connection between federal plaintiffs and state court parties is so close that Younger may apply). "Congruence of interests is not enough, nor is identity of counsel, but a party whose interest is so intertwined with those of the state court party that direct interference with the state court proceeding is inevitable may, under Younger, not proceed." Id. at 1100. "The Supreme Court has since reaffirmed, in a related but separate context, the principle that, absent **extraordinary circumstances**, each plaintiff is entitled to his own day in

court, and that therefore the mere existence of litigation brought by other parties with similar interests does not bar a plaintiff from pursuing his own litigation." <u>Id</u>. (Emphasis added).

<u>Younger</u> is generally inapplicable to non-parties to a state court suit. <u>See</u> <u>Richards v. Jefferson County</u> (1996) 517 U.S. 793, 796-802, 116 S. Ct. 1761.  In <u>Richards</u>, the Court held that although three plaintiffs challenging a state tax represented "essentially identical" interests to distinct individuals who brought a subsequent challenge to the tax, the latter group was denied due process when it was barred from asserting claims because of the earlier litigation.

The <u>Younger</u> abstention doctrine does not apply to non-parties to state court litigation simply because the non-parties could have intervened in parallel state court suit. <u>Green v. City of Tucson</u> (9th Cir. 2001) 255 F.3d 1086, 1098-1104; <u>Benavidez v. Eu</u> (9th Cir. 1994) 34 F.3d 825, 832 (<u>Younger's</u> scope is closely circumscribed to parties actually involved in state litigation).

Congruence of interest and even identity of counsel, not an issue in this case, are insufficient to invoke <u>Younger</u>. <u>See</u> <u>Doran v. Salem Inn</u> (1975) 422 U.S. 922, 924-929, 95 S. Ct. 2561 (mere commonality of interest with a party to state court litigation is insufficient to justify abstention; although respondents were represented by common counsel and had similar business interests and problems, the respondents were "apparently unrelated in terms of ownership, control, and management"); <u>see</u> <u>South Cent. Bell Tel. Co. v. Alabama</u> (1999) 526 U.S. 160, 167-168, 119 S. Ct. 1180 (earlier litigation by parties with similar interests cannot preclude subsequent plaintiffs from bringing own suit even though they were aware of the prior litigation and shared counsel with earlier plaintiffs); <u>see</u> <u>also</u> <u>Favish v. Office of Independent Counsel</u> (9th Cir. 2000) 217 F.3d 1168, 1171 (although plaintiff was counsel in earlier case involving identical claims, counsel could not be bound by earlier judgment).

"The notion that a federal court plaintiff automatically loses his right to proceed in federal court if there is any state court case pending in which he could intervene to adjudicate his federal law issue cannot be squared with <u>Richards</u>. The consequence of such a required-intervention principle would be that entirely independent individuals could be bound by the

3      RESPONSE TO ABSTENTION ARGUMENTS<br>CASE NO. 07 CV 2320 JM AJB

forum choice of strangers…" <u>Green</u> at 1102.  In partially overruling <u>Green</u> on other grounds, the Ninth Circuit held, "We do not, however, retreat from <u>Green's</u> more general observation that 'although there are limited circumstances in which . . . abstention by federal courts is appropriate, those circumstances are 'carefully defined' and 'remain the exception, not the rule.'"  <u>Gilbertson v. Albright</u>, 381 F.3d 965, 969 fn2 (9th Cir. 2004).

The overriding principle for all of these cases is that every plaintiff is entitled to its own day in court, in the forum of his or her choice.  The Seventh Circuit has also extensively discussed the importance of this principle and the functional approach required for a privity analysis under <u>Richards,</u> <u>supra</u>, 517 U.S. 793.  <u>Tice v. American Airlines Inc.</u> (7th Cir. 1998) 162 F.3d 966, 971-972.  As further discussed below, plaintiffs have in no way been in privity with the City or State.

**III.     Plaintiffs are not in privity with defendants**

The only reason given by prospective intervenor for why plaintiffs must be in privity with the City is that they supposedly "had an identity of interest with the City of San Diego in the State Court Action (both parties purport to represent the interests of those residents who desire that the seals remain at Children's Pool and advance the exact same arguments in support of their position)."  Proposed intervenor's abstention briefing at 5:7-8.  However, "parallel legal interests alone, identical or otherwise, are not sufficient to establish privity, or to bind a plaintiff to a decision reached in another case involving another plaintiff."  <u>Headwaters Inc. v. United States Forest Serv.</u> (9th Cir. 2005) 399 F.3d 1047, 1054.

Further, plaintiffs have different interests from the City and advance different legal arguments.  The City never argued that the MMPA preempts the Tidelands Grant, nor did it even argue in its appeal that Section 109(h) prohibits dredging.  The remedy ordered in <u>O'Sullivan</u> went beyond what O'Sullivan even asked for, which was for the City to be forced to disperse the seals, and the City could not have expected such an extreme ruling.  On appeal, the City argued that NOAA should have been added as an indispensable party, but notably did *not* argue that the MMPA definitively prohibits the remedy ordered.  This is clear from the Court of Appeal

4    RESPONSE TO ABSTENTION ARGUMENTS
CASE NO. 07 CV 2320 JM AJB

decision, which noted that the City accepts that 109(h) allows the relief ordered. "City assumes arguendo that the trial court correctly ruled section 109(h)'s exception to the general prohibitions of the MMPA would not preclude the relief sought by O'Sullivan. Nevertheless, City argues the DOC or the NMFS was an indispensable party…" See Declaration of Bryan Pease in Support of Motion for Preliminary Injunction ("Pease dec."), Ex. E, pp. 105-106 (pp. 44-45 of the decision). Plaintiff, on the other hand, vehemently argues that 109(h) does preclude the relief sought by O'Sullivan and ordered by the state court, so Plaintiff is clearly not in privity with the City.

The City could not effectively argue that the MMPA prohibits dredging, because the City was considering taking such action absent a court order and believed that it could take such action if it wanted to. Only when it determined that dredging would be too costly did the City back off from this concept, and in defending O'Sullivan, the City's main argument was that the order was a violation of separation of powers. The MMPA was only used as a last ditch effort to stop an extremely costly and complex remedy ordered by the state court, and then only to argue that NOAA should have been added as a party. The City had to strike a delicate balance in the state litigation, wishing to preserve the legislative powers of the City Council to dredge if it wanted to (or if a benefactor stepped forward to fund it), but not be required to if it did not want to or could not afford it. With respect to the rope, the City successfully defended two lawsuits at the time O'Sullivan was being litigated in which the state courts ruled the City could not be forced to keep the rope up based on the argument that it had created a de facto seal rookery and needed to comply with CEQA before taking the rope down. See Declaration of Dorota Valli in Support of Reply in Support of Preliminary Injunction ("Valli Reply Dec."), ¶ 5. However, no party has yet argued that the federal MMPA requires the relief requested by plaintiffs, which is that the Tidelands Grant itself be limited or struck down on the grounds that the MMPA simply does not allow the State to force the City to use a seal rookery primarily as a "bathing pool."

The relief requested by O'Sullivan at trial was for the City to remove the seals. The City halfheartedly raised the argument at trial that removing the seals could violate the MMPA, but the court found that section 109(h) allows the City to do just that, based on the City's *own*

5 RESPONSE TO ABSTENTION ARGUMENTS
CASE NO. 07 CV 2320 JM AJB

*evidence*. See Pease Dec., Ex. J, p. 152:11 (p. 25:11 of decision).  This is not surprising since the City itself held that belief.  Since the City had considered taking such action on its own and wished to leave that option open for the future, the City could not effectively argue that it was not permitted as a matter of law to remove the seals.  However, rather than directly order the City to remove the seals, the judge ordered the City to remove the sand build-up and restore the beach to its 1941 configuration, which would also remove the favored haul-out spot of the seals.

Plaintiffs are not seeking to enjoin the state court proceeding, in which the City is currently being forced to spend a fortune hiring experts and consultants to figure out how to dredge the beach without causing coastal and cliff erosion, as well as assess the impact that it will have on the seals.  Perhaps during this ongoing process another way to comply with the state court's order will be found, such as opening up the sluiceways to restore water quality.  The state court can continue to force the City to go through that process to fulfill its obligations under the Tidelands Grant and fully explore all options.

If, at the end of its EIR and other assessments and permitting processes, it is determined that the City can go ahead and dredge the beach without causing the surrounding cliffs to cave in and without violating the MMPA, the City can go ahead and do that, but most experts predict these site specific animals will continue to come back to the same site as they have for thousands of years[2], though fewer of them will fit because there will be less sand.  Or, it is possible that at the end of the administrative processes, it will be determined that the City cannot dredge the beach without violating state or federal law.

Regardless of the end result of the ongoing administrative proceedings being supervised by the state court, there will still have never been a ruling as to whether the MMPA allows a seal rookery to be used primarily as a "bathing pool" in the first place, because no court has yet considered that underlying question.  Other parties that attempted to raise the MMPA issue

---

[2] The sea wall was built right on top of what was then called "seal rock," and Proposed Intervenor stipulated in its state court action that seals commonly used the area prior to the sea wall being built.

directly as *amici curiae* were not even permitted to file briefs in the Court of Appeal, and that was never the issue before the state courts. Plaintiffs are not seeking to enjoin the permitting process for dredging—rather they are seeking to ensure that the City does not remove seals or sand without getting the necessary permits, pursuant to federal law. This does not conflict with the state court order, because that order also requires the City to comply with all state and federal laws. Plaintiffs are seeking to establish what the federal law is with respect to these issues, in a federal court, which is something that has yet to be determined.

While this process is ongoing, there are seals currently at CPB giving birth and nursing their young. NOAA has requested that the beach be closed during pupping season, just like other seal rookeries, and the City Council has mandated that a guideline rope be put up. The state court has refused to consider "new evidence" in determining whether the rope should be allowed, and ruled that Judge Pate's original order was clear and unambiguous on the "rope issue." See Declaration of George Schaefer in Support of Opposition to Motion for Preliminary Injunction ("Schaefer Dec."), Ex. D. However, no court has determined whether the MMPA preempts the Tidelands Grant, which will require experts and evidence on that topic. In the case at bar, all this court needs to determine to allow the guideline rope up during what is left of pupping season is that plaintiffs have raised "serious questions" on the merits and that the balance of hardships tips decidedly in plaintiffs' favor. Los Angeles Memorial Coliseum Commission v. National Football League (9th Cir. 1980) 634 F.2d 1197, 1201, 1203 & n.9. If it is possible that the MMPA preempts the Tidelands Grant at least during pupping season, that is sufficient to temporarily limit the Tidelands Grant's mandate that CPB be used exclusively as a "bathing pool" during that time, in order to preserve the status quo before a complete factual determination can be made.

Counsel for prospective intervenor remains free to continue collecting his over $1 million in attorney's fees from the City and compel the City through his state court action to spend millions more studying and attempting to implement the dredging project that he did not even request the court to order. The City unsuccessfully defended that action on grounds that the

7    RESPONSE TO ABSTENTION ARGUMENTS
CASE NO. 07 CV 2320 JM AJB

order violated separation of powers, and plaintiffs do not challenge that ruling here, nor do they wish to involve themselves in that case.  The state court has already determined the requirements of the Tidelands Grant and denied intervention by an environmental group before those issues were litigated.  The City only tangentially raised the MMPA issue but always maintained the position that it could remove the seals under 109(h), consistent with its desire to protect its legislative powers from overreaching by the courts.  The City effectively defended two lawsuits on that basis attempting to require it to put the rope barrier back up.  Plaintiffs in the present matter are not challenging interpretation of state law but only seek to have federal law enforced.

Plaintiffs submit that the MMPA preempts the Tidelands Grant, and a seal rookery cannot be used as a "bathing pool" as a matter of federal law, particularly during pupping season.  See 16 USC § 1379(a).  The state court's opinion that section 109(h) allows such action is supported only by hearsay evidence of James Lecky not made under oath, not subject to cross-examination, without proof that Mr. Lecky's statements accurately represent the formal position of NOAA on the issue, and in direct contradiction to a letter he wrote two years earlier, with no explanation for the contradiction.  See Schaefer Dec., Ex. E.  It is up to the federal courts to determine the application of 109(h), not an employee of NOAA, and not a state court relying on contradictory statements made outside of a courtroom by that employee.  The state court apparently understood that it had not carefully examined this issue when it included the caveat that the order shall not require the City to violate any state or federal law.

Federal courts are not bound by state court interpretations of federal law.  See United States v Montana (9th Cir. 1943) 134 F2d 194, cert den (1943) 319 US 772, 87 L Ed 1720, 63 S Ct 1438. ("The reliance on the decision of the Montana Supreme Court does not seem fruitful. Its interpretation of the federal statute, is, of course, not binding on the federal courts [citations]."); Grantham v. Avondale Indus. (5th Cir. 1992), 964 F.2d 471, 473 ("It is beyond cavil that we are not bound by a state court's interpretation of federal law regardless of whether our jurisdiction is based on diversity of citizenship or a federal question."); Pauk v. Board of Trustees of City

8                    RESPONSE TO ABSTENTION ARGUMENTS
                     CASE NO. 07 CV 2320 JM AJB

University of New York (2d Cir. 1981), 654 F.2d 856, 866 n. 6 (a state court decision cannot preclude a federal court's more authoritative decision on matters of federal law).

The relief sought in the present case goes well beyond anything the City argued to defend itself in state court. In state court, the City merely attempted to defend its City Council's right to not have to spend millions of taxpayer dollars into perpetuity on an ill-conceived remedy, based on principles of separation of powers. In the present case, plaintiffs submit that the MMPA preempts and limits the Tidelands Grant, something the City has never argued and does not agree with.

## CONCLUSION

Plaintiffs are entitled to have their own day in court. Abstention principles do not apply because plaintiffs were never parties to the state court action. Plaintiffs are not in privity with the City because they share different interests, and identity of interests alone is not sufficient to establish privity. Rooker-Feldman cannot apply to non-parties to the state litigation, and Younger abstention only applies to non-parties in very limited circumstances, not applicable here. For all of these reasons, jurisdiction is proper.

Dated: February 14, 2008

By: /s/ Bryan W. Pease  
Bryan W. Pease  
Attorney for Plaintiffs