BRYAN W. PEASE (SB# 239139)
302 Washington St. #404
San Diego, CA 92103
ph: (619) 723-0369
fax: (619) 923-1001
email: bryanpease@bryanpease.com

Attorney for Plaintiffs

## UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANIMAL PROTECTION AND RESCUE LEAGUE, a nonprofit corporation, and DOROTA VALLI, an individual, <br><br> Plaintiffs, <br><br> v. <br><br> THE STATE OF CALIFORNIA, THE CITY OF SAN DIEGO DEPARTMENT OF PARKS AND RECREATION, MAYOR JERRY SANDERS, AND DOES 1 TO 100, <br><br> Defendants. | Civil Action, Case No. 07 CV 2320 JM AJB <br><br> REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION <br><br> Date: February 21, 2008 <br><br> Time: 4:30pm <br><br> Courtroom: 16 |

**INTRODUCTION**

The Court's January 19 scheduling order instructed Prospective Intervenor to file any opposition to Plaintiffs' motion to intervene by February 8, and for Plaintiffs to file a reply by February 15, for a February 22 hearing.  The Court's February 4 order moved this hearing to February 21, pursuant to a joint motion filed on January 29.  The order also noted that the Court would entertain a joint motion for a continuance should the parties wish to submit additional briefing or evidence.  However, Prospective Intervenor had not yet submitted an opposition, and plaintiffs had not yet submitted a reply for the preliminary injunction motion, pursuant to the January 19 order, so Plaintiffs are hopeful that the Court will consider this reply.  With the first seal pup of the season having been born on February 12, any further delay will almost make the issue moot.  Prospective Intervenor also made the assumption that opposition and reply briefs are still to be submitted on this motion and filed its opposition on February 8.[1]  Plaintiffs submit this reply in support of their motion for a preliminary injunction on February 14, a day earlier than originally ordered, in order to accommodate the earlier hearing date.

When Prospective Intervenor caused the Court to delay the preliminary injunction hearing with an ex parte application, Plaintiffs submitted their own hasty ex parte application asking for just one portion of the requested relief, the pupping season rope, before the matter could be heard on notice.  The Court denied this request on the grounds that Plaintiffs had failed to identify a federal statute expressly preempting the Tidelands Grant, and that conflict preemption does not necessarily apply given the exceptions contained in the MMPA.  The Court also noted that to prevail, Plaintiffs would have to identify a provision of the MMPA requiring a rope barrier.  Additionally, the Court found that Plaintiffs had not shown irreparable harm would result if the rope is not placed.  Finally, the Court requested further briefing on abstention

---

[1]  The City also submitted its opposition to Prospective Intervenor's motion to intervene on February 8, and submitted a joint motion, which was granted by the Court, noting that the City neglected to calendar February 7 as the new deadline for a timely opposition.  Prospective Intervenor agreed to that joint motion but oddly did not add its own similar request for an extension.

1

1    principles, which are being briefed separately on a condensed schedule, with the other parties'

2    replies to Plaintiffs' response due on February 18.

3         As discussed below, the MMPA expressly preempts state law in the broadest possible

4    terms.  Plaintiffs submit that because the City Council has mandated that there be a pupping

5    season rope, they do not have to show that the MMPA <u>requires</u> a rope, but simply that the

6    MMPA preempts state law that would otherwise <u>prohibit</u> such a rope.  Finally, plaintiffs wish to

7    point out that the Court must have been referring to the original declaration submitted by Dorota

8    Valli on December 17 when it states that Plaintiffs "fail to identify a single incident of harm or

9    harassment" since pupping season began December 15.  The declaration Ms. Valli submitted on

10   January 28 states:

11              Since seal pupping season began December 15, 2007, I have gone to Children's
                Pool Beach for an average of 6 hours every single day and maintained an
12              educational booth there, except for January 5 and 6 due to heavy rain. Almost
                every day (sometimes several times a day), there have been incidents of
13              harassment in which individuals as well as groups of people have come too close
                to the pregnant seals scaring them into the ocean or have thrown objects, like
14              rocks, at the resting seals. Usually I am able to convince people not to approach
                the seals, but sometimes people go right up to them anyway, causing them to
15              stampede into the water. If other employees and volunteers of APRL and I were
                not present at the beach constantly with signs, many more people would walk
16              right up to the seals and disturb them, which in the past has resulted in
                miscarriages and pups being separated from their mothers.
17

18

19        Ms. Valli submits a further updated declaration with this reply, including video of

20   harassment and flushing incidents, and detailed logs showing every documented incident since

21   December 15, 2007.  Plaintiffs also submit a declaration from Joe Cordaro, wildlife biologist for

22   NOAA.[2]  Due to the unlikelihood of this court ordering the beach closed as requested by NOAA,

23   plaintiffs instead focus solely on the pupping season guideline rope in this reply.

24

25

26

27   _____

28   [2] Mr. Cordaro submitted an identical declaration for the City when it requested "clarification" on
     the "rope issue."  However, the state court ruled that it could not consider new evidence.
                                                    2
                                           PLAINTIFFS' REPLY IN SUPPORT OF
                                           MOTION FOR PRELIMINARY INJUNCTION
                                           CASE NO. 07 CV 2320 JM AJB

**ARGUMENT**

**I.    The state law purporting to prevent the City from maintaining a pupping season rope is preempted by the MMPA**

The Marine Mammal Protection Act expressly preempts state law:

> No State may enforce, or attempt to enforce, any State law or regulation **relating to the taking** of any species (which term for purposes of this section includes any population stock) of marine mammal within the State unless the Secretary has transferred authority for the conservation and management of that species (hereinafter referred to in this section as 'management authority') to the State under subsection (b)(1).

USC 1379(a) [Emphasis added].  The U.S. Supreme Court has held that the words "relating to…express a broad pre-emptive purpose":

> The ordinary meaning of these words is a broad one – "to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with," Black's Law Dictionary 1158 (5th ed. 1979) -- and the words thus express a broad pre-emptive purpose.  <u>Morales v. Trans World Airlines, Inc.</u>, 504 U.S. 374, 382, 119 L. Ed. 2d 157 (1992).

The Tidelands Grant of 1931 is a "State law or regulation relating to the taking of any species" because it requires a harbor seal rookery to be used as a "bathing pool," and for the City as trustee to "take" harbor seals to preserve its status as a bathing pool.  <u>O'Sullivan v. City of San Diego</u>, 2007 Cal. App. Unpub. LEXIS 7265 (Cal.App. September 7, 2007), attached as Exhibit E to the Declaration of Bryan W. Pease in support of motion for preliminary injunction.

The legislative history makes clear that the purpose of MMPA preemption is not to foreclose protective measures such as sanctuaries:

> This subsection authorizes the Secretary to develop effective working cooperative arrangements with state agencies and officials in order to carry out the purposes of this Act. It is not the intention of this Committee to foreclose effective state programs and protective measures such as sanctuaries; it is rather our intention to allow the development of a unified integrated system of management for the benefit of the animals and to encourage the states to take all actions which are consistent with this objective.

<u>See</u> Declaration of Dorota Valli in support of reply in support of preliminary injunction ("Valli reply declaration") ¶ 6.  The City of Carpinteria totally fences off the seal rookery on its

beach every pupping season by city ordinance.  See Valli reply declaration ¶ 8-10, 12.  Other state and local entities do the same.  See Valli reply declaration ¶ 15.  The rope barrier mandated by the San Diego City Council was requested by NOAA, merely acts as a guideline, and is consistent with the purposes of the MMPA.

The Supremacy Clause of the U.S. Constitution, USCS Const. Art. VI, Cl 2, states:

> This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

See Gonzales v. Raich (2005) 545 U.S. 1, 29 ("The Supremacy Clause unambiguously provides that if there is any conflict between federal and state law, federal law shall prevail.") "It is well-established that the federal courts have jurisdiction under 28 USC § 1331 over a preemption claim seeking injunctive and declaratory relief. See, e g, Verizon Md, Inc v Pub Serv Comm'n of Md, 535 US 635, 641-43, 122 S. Ct. 1753, 152 L. Ed. 2d 871 (2002)."  In re NSA Telcoms. Records Litig., 2007 U.S. Dist. LEXIS 53456 at 45.  Since the validity and enforceability of a state law is at issue here, the State is an indispensable party.

Federal courts are not bound by state court interpretations of federal law.  See United States v Montana (9th Cir. 1943) 134 F2d 194, cert den (1943) 319 US 772, 87 L Ed 1720, 63 S Ct 1438. ("The reliance on the decision of the Montana Supreme Court does not seem fruitful. Its interpretation of the federal statute, is, of course, not binding on the federal courts [citations]."); Grantham v. Avondale Indus. (5th Cir. 1992), 964 F.2d 471, 473 ("It is beyond cavil that we are not bound by a state court's interpretation of federal law regardless of whether our jurisdiction is based on diversity of citizenship or a federal question."); Pauk v. Board of Trustees of City University of New York (2d Cir. 1981), 654 F.2d 856, 866 n. 6 (a state court decision cannot preclude a federal court's more authoritative decision on matters of federal law).

In determining the interaction between state and federal law, the United States Supreme Court has held that if the state court excluded railroad employees from the worker's compensation act as a matter of construction of the state statute, federal courts were bound by

1    that construction, but if the state court's ruling was based on an erroneous interpretation of the

2    effect of federal law on the state statute, federal courts were not bound by that erroneous

3    interpretation.  <u>Tipton v Atchison, T. & S. F. R. Co.</u> (1936), 298 US 141, 151-152; 80 L Ed

4    1091.  In the present case, this court is not bound by a state court's interpretation of the effect of

5    federal law on the Tidelands Grant.

6    **I.    This Court is not bound by the state court's erroneous belief that exceptions to the**

7    **MMPA allow the State to prohibit a guideline rope**

8          The Court of Appeal in <u>O'Sullivan</u> ruled that the seals at CPB are generally subject to the

9    MMPA, but "the evidence admitted at trial supports a reasonable inference that the section

10   109(h) exception to the MMPA (i.e.,16 U.S.C. § 1379(h)) and a similar exception under title 16

11   United States Code § 1371(a)(4)(A) apply to allow the relief sought by O'Sullivan and awarded

12   by the trial court."  <u>See</u> Pease Dec., Ex. E at p. 106 (p. 45 of decision).  The Court only

13   considered this factor with respect to whether NOAA should have been named as an

14   indispensable party, because the City never argued that the MMPA actually prohibits the relief

15   ordered.  The Court went on to note that the trial court order specifically ordered the City not to

16   violate any State or Federal law, and concluded that it was not necessary to name NOAA in order

17   to ensure that the MMPA is not violated by the remedy that was ordered.

18         There is no analysis in either the trial court ruling or the Court of Appeal ruling as to how

19   these exceptions to the MMPA would allow a state law to prohibit a guideline pupping season

20   rope at the request of NOAA.  Neither exception can allow private citizens to harass marine

21   mammals[3], and the point of the guideline rope is to prevent private citizens from unwittingly

22   violating the MMPA by getting too close to the seals.  In its recent denial of the City's request

23   for "clarification on the rope issue," the state court seems to be assuming that because the seals

24   are going to be forced to leave anyway, there is no point in having a rope.  However, NOAA will

25

26   _____

27   [3]  § 1371(a)(4)(A) allows private citizens to use deterrence to defend private property, not an

28   issue here.  This section does not allow <u>private</u> citizens to use deterrence to defend <u>public</u>
     property.

                                         5          PLAINTIFFS' REPLY IN SUPPORT OF
                                                    MOTION FOR PRELIMINARY INJUNCTION
                                                    CASE NO. 07 CV 2320 JM AJB

1   not allow the seals to be removed during pupping season and has specifically requested closing

2   down the beach or at least a rope to protect the seals during this limited time.

3          The state court's assumption that an entire colony of harbor seals can be deemed

4   "nuisance animals" and removed is also flawed, and certainly not binding on this federal court.

5   The MMPA nowhere defines "nuisance animal," and the Secretary has never issued regulations

6   specifying what qualifies as a "nuisance animal." However, the Marine Mammal Commission

7   ("MMC"), an independent federal agency created under the MMPA and charged with

8   recommending to the NMFS actions needed to further the MMPA's policie, see 16 U.S.C. §

9   1402(a).8, advocates for a commonsense definition of "nuisance animals."

10         The MMC would require a seal to be (1) "acting in an abnormal way or responding to

11  some unnatural stimulus" and (2) "more than [a] mere inconvenience or interference with

12  competing human activities" before that seal constituted a "nuisance animal." See Valli dec., Ex.

13  K, p54.   The MMC uses the following examples to illustrate its definition:

14              [M]arine mammals that merely haul out or congregate in
                areas of natural habitat should not be considered to be
15              nuisance animals, even if people would like to make other use
                of such areas. If, however, the marine mammals are attracted
16              to an area because of non-natural changes to such areas, (e.g.,
                the construction of boat floats on which animals may haul
17              out), such animals could be considered nuisance animals.
18              (Id.)

19         If the MMC's guidance is followed here, the seals in their natural environment at CPB

20  could not possibly be considered "nuisance animals" under the MMPA.  The seals pose no

21  emergency to public health or safety, and their presence at CPB is no more than an

22  inconvenience to those individuals who want them gone.  Part of the reason the state court may

23  have misapplied federal law is that it believed that seals behaving naturally in their natural

24  habitat is some kind of an aberration.  "The occupation of the Children's Pool does not seem to

25  be a 'natural' phenomenon.  According to the evidence at trial, Children's Pool is the only public

26  beach in California that has been taken over by seals."  See Pease Dec., Ex. J at p. 157 (p. 30:26-

27  28 of the decision).  Fortunately for the ocean ecosystem, which depends on these rookeries to

28  maintain the seals' numbers at a level where they are a functional part of that ecosystem, this

PLAINTIFFS' REPLY IN SUPPORT OF
                                 MOTION FOR PRELIMINARY INJUNCTION
                                 CASE NO. 07 CV 2320 JM AJB

observation on the part of the state court was patently false.  The City of Carpinteria entirely fences off their beach during pupping season, and state parks along the coastline have similar protections for seals.  See Valli dec. ¶ 15.  The Carpinteria rookery has a rock configuration that provides similar shelter from waves as the sea wall does at CPB, a sea wall which was built on top of a similar rock configuration that facilitated the seal's use of CPB long before the sea wall was built in the first place.

In determining that § 109(h) allows the City to harass the seals at CPB, the state court relied entirely upon the hearsay statements of James Lecky made at a City Council meeting, not under oath, and not subject to cross examination.  In a letter to the City just two years earlier, Lecky wrote the exact opposite:

> The National Marine Fisheries Service (NOAA Fisheries) has determined that Section 109(h) does not apply to pinnipeds (seals and sea lions) on haulouts and rookeries, as these animals are not a threat to themselves or the general public and are not considered to be nuisance animals.  Therefore, the City of San Diego may not initiate any actions that would result in a permanent impact to the harbor seals at CPB.  (See Declaration of George Schaefer in Support of the Opposition to Plaintiffs' Motion for a Preliminary Injunction ("Schaefer dec."), Ex. E.)

The state court did not even attempt to explain this discrepancy, nor did it make its own independent determination of whether 109(h) applies.  It simply assumed that the remedy it ordered fell within the 109(h) exception, and included the caveat that the order is not to cause the City to violate any state or federal laws.  This Court is not bound by that erroneous application of federal law.

The legislative history of this section gives an example of the appropriate official being allowed to remove a seal trapped in a fish ladder.  See Declaration of Dorota Valli ¶ 7. The Secretary has promulgated a regulation implementing the 109(h) exception at 50 CFR 216.22. This section clearly refers to dealing with a single animal at a time ("a marine mammal"), and provides extensive requirements for documenting what happens to each animal taken.  It is highly unlikely these exceptions can be used to displace an entire colony of harbor seals from their natural habitat.

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION
CASE NO. 07 CV 2320 JM AJB

Even if section 109(h) did apply, the State still cannot maintain a law that "relates to the taking" of marine mammals, due to the MMPA's express preemption. Any State law that purports to prevent the City from cooperating with NOAA in preventing MMPA violations is necessarily unenforceable.

**III.    Plaintiffs will suffer irreparable harm**

The City is correct that there are plenty of administrative proceedings ahead in which Plaintiffs can challenge whether dredging can be allowed under the MMPA and other state and federal laws. However, the pressing issue before this Court right now is what is to happen to the seals in the meantime, particularly during pupping season. A guideline rope is crucial to protect the seals during pupping season and prevent MMPA violations. The only thing preventing the City Council's resolution from going into effect that would put this rope up is a state law requiring CPB to be used as a "bathing pool." Because that state law is "relating to the taking" of marine mammals, it is preempted by the MMPA and must be limited to not interfere with the objectives of Congress.

The state court's purpose in not allowing the rope under the Tidelands Grant is apparently to have the public unwittingly drive the seals off the beach by getting too close to them. "The City's decision to separate the seals from humans and then closing off the Pool to humans, likewise appears to have encouraged the seals to occupy more and more of the beach with ever increasing numbers." See Pease Dec., Ex. J at p. 157 (p. 30:23-25 of the decision). The implication is that by not separating seals from humans, the seals will be driven off the beach. However, it is a violation of the MMPA for humans to get too close to seals and drive them off the beach, and such activity is particularly harmful during pupping season when nursing pups can be separated from their mothers. The exceptions cited by the state court do not allow private citizens to harass seals.

Plaintiffs have at least raised "serious questions" on the issue of whether a state requirement that a seal rookery be used as a "bathing pool" at all costs during pupping season is permissible under the MMPA. The City has acknowledged that there would be no harm to anyone in putting the rope up, but argues that a state court has already ruled that the City cannot

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION
CASE NO. 07 CV 2320 JM AJB

do so under the Tidelands Grant. Plaintiffs are not parties to the state court litigation, and as discussed separately, abstention principles do not apply for that reason. This court is not bound by the state court's erroneous application of federal law. At this early stage of the federal court proceedings, there is a limited factual record on which to make a decision. However, it is clear that the only argument against having a guideline pupping season rope is that it may actually prevent people from scaring seals away and thus violating the MMPA. Given the express preemption of the MMPA for any state law relating to the taking of marine mammals, this Court should not allow a state law to have the purpose of encouraging people to violate the MMPA, in direct contravention to the goals of Congress.

The cases cited by the State holding that the purpose of a preliminary injunction is to uphold the status quo also make clear that the Court necessarily does so with limited evidence. "Given this limited purpose, and given the haste that is often necessary if those positions are to be preserved, a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits." University of Tex. v. Camenisch, 451 U.S. 390, 395 (1981). Although Plaintiffs have not had an opportunity yet to present their case in full for why the Tidelands Grant requirement that CPB be used as a "bathing pool" should be struck down, the evidence before this Court strongly suggests that for the State to require the City to refrain from discouraging MMPA violations in cooperation with NOAA is an incompatible purpose to that of the MMPA. Upholding the status quo in this case means enforcing the City Council's directive in cooperation with NOAA to allow the annual pupping season rope barrier to go up as usual, which was in place last year and would be in place this year if not for the sudden application of an outdated state law. The harm to the seals and plaintiffs in not putting the rope up, in the face of requests from NOAA and a clear mandate from the City Council, is great, whereas the harm to defendants in putting the temporary rope up is nonexistent, while the 1931 Tidelands Grant is under challenge.

Plaintiffs respectfully request an order requiring the City to comply with the City Council's clear mandate to put up a rope barrier at Children's Pool Beach for the duration of pupping season, ending May 15. Plaintiffs had further requested that the City be ordered to close

9

the sand level of Children's Pool Beach, that is, the sand itself but not the surrounding sea wall or walkways leading to the bathrooms, during pupping season in order to prevent MMPA violations.  Since that would upset the status quo, plaintiffs simply request an order specifying that the City Council <u>could</u> if it so chooses close CPB during pupping season, like Carpinteria does, because the MMPA does not allow the State to require a seal rookery to be used primarily as a "bathing pool" during pupping season, as such a requirement "relates to the taking" of marine mammals.  USC 1379(a).  Finally, plaintiffs request an order that defendants not harass or disturb seals without obtaining a permit under the MMPA, which based on past communications, there is a possibility the City may decide to do.

Neither defendant has addressed the third prong of a preliminary injunction analysis pointed out in plaintiffs' moving papers, which requires the court to consider the public interest. <u>Caribbean Marine Servs. Co. v. Baldrige</u>, 844 F.2d 668, 675 (9th Cir. 1988).  In the present case, the public interest falls squarely on the side of upholding laws passed by and for the people of San Diego through their duly elected City Council to protect a treasured natural resource.  Taking public interest into account, combined with plaintiffs having at least raised "serious questions" on the merits of their claim and the likelihood of grave and irreparable injury all entitle plaintiffs to a preliminary injunction.  <u>Id</u>.

## CONCLUSION

The 1931 Tidelands Grant's requirement that Children's Pool Beach be used as a "bathing pool" should be limited to not apply to prevent a guideline rope during pupping season due to preemption of the Marine Mammal Protection Act.  Defendants would suffer no harm from such an order, whereas a denial of a preliminary injunction would case great harm to plaintiffs and the public.

Dated: February 14, 2008

By: <u>s/ Bryan W. Pease</u>
     Bryan W. Pease
     Attorney for Plaintiffs

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION
CASE NO. 07 CV 2320 JM AJB